**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ROCA LABS, INC.                                   Case No:

       Plaintiff,

  v.

MARC J. RANDAZZA

       Defendant.

_____/

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §1331, 1332, 1441, and 1446, Defendant Marc J. Randazza ("Defendant"), hereby notifies the Court that the above-captioned action has been removed to the United States District Court for the Middle District of Florida, Tampa Division, based on the complete diversity of citizenship between the parties, an amount in controversy greater than $75,000.00, and the existence of a justiciable federal question.  A copy the complaint filed in the State Court Action is attached as **Exhibit A**.  A copy of the remaining documents filed in the State Court Action is attached as composite **Exhibit B.**.

This Notice of Removal has been filed within the time prescribed by 28 U.S.C. § 1446(b).

This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332(a).

Plaintiff filed this action in the Thirteenth Judicial Circuit in Hillsborough, Florida, Case No. 14-CA-011251 ("State Court Action"), alleging that statements of counsel associated with  legal pleadings can form the basis for a defamation claim.  This claim stems from the undersigned's representation of the defendant in the related case of *Roca Labs v. Opinion Corp.*, Case No.: 8:14-cv-02096-VMC-EAJ, currently pending in the United States District Court, Middle District of Florida, Tampa Division.  Attached hereto as **Exhibit C** is the declaration of Marc J. Randazza.  See Randazza Decl. ¶2.

This case is simply the most recent attempt by Roca Labs to pursue deceitful and vexatious tactics in order to evade the consequences of its ill-advised case against Opinion Corp.  For example, on October 13, 2014, Don Juravin, founder and vice president of Roca Labs sent a letter to the Nevada Attorney General's Office, making false accusations against Randazza, in an attempt to deprive Opinion Corp. of its choice of counsel.  Attached hereto as **Exhibit D** is Juravin's letter.  Attached hereto as **Exhibit E** is the Attorney's General's letter, stating that Juravin's claims were unfounded, and the matter was closed mere days later.  Thereafter, despite warnings to the contrary by the magistrate in the *Roca Labs v. Opinion Corp*. matter during a hearing on allegations of witness tampering, Roca Labs decided to sue one of the witnesses in its case against Opinion Corp.  *See Roca Labs v. Schaive et al.*, Circuit Court of the 17th Judicial Circuit, Broward County, Florida Case No.: CACE 14-020786. Attached hereto as **Exhibit F** is a copy of the complaint in that matter.  As those tactics have not generated the desired result, Roca Labs now has embarked on a personal crusade against Opinion Corp.'s chosen First Amendment attorney, Randazza.

Defendant is the only defendant in the State Court Action, and obviously consents to this removal.  The Complaint in the State Court Action was filed on November 6, 2014.  Defendant was notified thereof by email on November 7, 2014.  This Notice is timely-filed.

### Diversity of Citizenship

At all times that the Complaint was filed, Defendant is a citizen of the state of Nevada.

Plaintiff is a Florida corporation, with its principal place of business located in Sarasota Florida. Pursuant to 28 U.S.C. §1332(c)(1), a corporation is a citizen of the state in which it is incorporated and of the state where it maintains its principal place of business.  Plaintiff is a citizen of Florida.

### Amount in Controversy

The amount of controversy in this action exceeds $75,000.00.  Consistent with Florida practice and procedure in state circuit court cases, the Plaintiff only stated that it seeks a rote "in excess of $15,000.00" amount, and not a sum certain.  Where the plaintiff has not pled any sum certain, in order to remove the case from state court to federal court, the defendant must demonstrate only by a preponderance of evidence, that the amount in controversy is in excess of $75,000.00.  *Lowery v. Ala.*

*Power Co.*, 483 F.3d 1184, 1208 (11th Cir. 2007) ("in the removal context where damages are unspecified, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence").

If one examines the litigation history of Roca Labs, it becomes apparent that Roca Labs values cases such as this one far in excess of $75,000.  For example, in the *Opinion Corp.* matter, asserting similar defamation claims, Roca Labs initially asserted damages of $1,000,000.00 per claim, for a total of $10,000,000.00 in its Complaint, and later noted that its damages are now in excess of $42,000,000.00.  Attached hereto as **Exhibit G** is an e-mail from Mr. Hetz, counsel for Roca Labs in the *Opinion Corp.* matter, confirming same.

Further, it is well-settled that a defendant may use extrinsic communications to determine if the case is removable and the amount in controversy is satisfied.  See *Essenson v. Coale*, 848 F. Supp. 987, 989-990 (M.D. Fla. 1994).  Roca Labs' terms and conditions specifically state "**any report of any kind on the web will constitute defamation/slander and you agree to a predetermined compensation of $100,000**."  See <rocalabs.com/terms>.  Also attached hereto as **Exhibit H**.  Therefore, if Roca takes the position that *any* report of *any* kind on its product is worth $100,000, then certainly the allegedly "reckless" and "wrongful" and "defamatory" statements made by Randazza must be causing them in excess of $100,000 in damages.  *See* Exhibit A, at 19. In fact, if Roca's allegations are true, Randazza published at least five reports about Roca, thus the proper amount here, if we take Roca's valuation into account, is $500,000.00.

Additionally, in the demand letters Roca Labs sent to former customers who filed complaints with the Better Business Bureau, they demanded $200,000 for a single negative statement about their company or their product.  Attached hereto as **Exhibit I** is a composite of a sampling of the demand letters to former customers as a result of the complaint filed with the Better Business Bureau.  If Roca Labs believes that a truthful consumer review of its product is worth at least $200,000, then most certainly it must find Randazza's behavior to result in damages that far exceed even this amount.  Since Randazza has purportedly made at least 5 negative statements about Roca, thus Roca must believe its claims here to be worth at least $1,000,000.

Roca previously demanded an amount in controversy in excess of $1,000,000.00 per claim, for a total of $10,000,000.00 in the related case against Opinion Corp. See *Roca Labs v. Opinion Corp.*, 8:14-cv-02096-VMC-EAJ, at ECF 1. Furthermore, in an e-mail from Mr. Hetz, co-counsel for Roca Labs in the *Opinion Corp.* case, Roca Labs has stated that as a result of reviews posted by third parties on Opinion Corp.'s website, where customers are permitted to review their experience with Roca Labs' product and customer service, Roca Labs claims to have suffered $42,000,000.00 in damages, with damages increasing daily. See Exhibit G. If a few consumer reviews are causing $42,000,000.00 to this company, one can only imagine the crushing damages that Roca Labs must be suffering as a result of Randazza's alleged conduct, assuming any modicum of truth in these pleadings, and the complete absence of litigation privilege defenses.

Further, this case was filed in order to influence the trajectory and outcome of the *Opinion Corp.* case, by seeking to deprive Opinion Corp. of its chosen counsel. *See* Exhibit A, Roca Labs' Complaint ¶25-27. The allegations make it clear that this is part of the same controversy, and thus the amount in controversy in both cases should be viewed in tandem, when evaluating whether the amount in controversy threshold has been met. In light of the fact that this litigation is entirely premised on Randazza's representation of Opinion Corp. in the *Roca Labs v. Opinion Corp.* matter, it would seem that any damages Roca Labs is seeking here is in addition to the $42,000,000.00 that it is currently seeking in the related case. Therefore, at a minimum, the amount in controversy here is $42,015,000.00.

Moreover, in Roca Labs' Motion for Temporary Injunction, attached to the Complaint, Roca Labs has stated that it "has lost daily sales of thousands of dollars through the date of this filing, and those sales will continue to be lost until the actions of RANDAZZA are prohibited." *Exhibit A,* at ¶25. Therefore, if Randazza's statements began more than 60 days ago, as alleged in Plaintiff's Complaint, Exhibit A at ¶60, and Roca Labs loses "thousands" of dollars every day, then at the very least, Roca Labs is losing more than $2,000 per day ("thousands" suggests at least $2,000, but one can only guess what multiple of "thousand" they intended). At that rate, Roca Labs must be alleging that it has lost at a minimum, $120,000.00 in sales as a result of Randazza's statements, and that is only if

the court enters a preliminary injunction *today*.   Certainly, once it is denied, the conduct will go unrestrained for at least 18 months of litigation, meaning increased claimed damages.

It is proper to examine verdicts in similar cases in Florida in order to determine the amount in controversy.   Where the amount in controversy is not facially apparent, the district courts must make "'reasonable deductions, reasonable inferences, or other reasonable extrapolations' from the pleading to determine whether it is facially apparent that a case is removable." *Roe v. Michelin North America, Inc.*, 613 F.3d 1058 (11th Cir. 2010) (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744 (11th Cir. 2010)).   In making a reasonable extrapolation, one may evaluate other similar awards in other similarly situated cases.   In Florida, it is not unheard of for defamation suits to result in jury awards well in excess of one million dollars.   In 2006, a Florida jury awarded a plaintiff $11,300,000.00 in damages stemming from a defamation suit, in which the defendant was alleged to have referred to the plaintiff as a "crook", "con artist", and "fraud" in an online message board.   *Scheff v. Bock*, 03-022937-18 (Fla. Cir. Ct. 17th Cir., Broward Co., Fla. 2006).   In 2013, a Florida jury awarded a $1 billion verdict following online allegations by the defendant that the plaintiff was a "cheat." *Lennar Corp. v. Briarwood Capital LLC*, 08-055741-CA-01 (Fla. Cir. Ct. 11th Cir., Miami-Dade Co., Fla. 2013).   In 2012, a Florida jury awarded an elementary school principal $155,737,000.00 as a result of defamatory statements made by the City Manager.   *Murphy v. City of Aventura*, 09-57209-CA-24 (Fla. Cir. Ct. 11th Cir., Miami-Dade Co., Fla. 2012).   In 2011, an Orlando jury awarded a plaintiff $1.6 million. *Richard Mask v. Doug Guetzloe*, No. 07-CA-016024-O, (Fla. Cir. Ct. 9th Cir., Orange Co., Fla. 2011).   In 2003, a jury awarded a plaintiff $18,284,334.00 in damages for reputational losses.   *Anderson Columbia Co., Inc. v. Gannett Co., Inc. d/b/a The Pensacola News-Journal*, 2001 CA 001728 (Fla. Cir. Ct. 1st Cir., Escambia Co., Fla., 2003).   Therefore, the amount in controversy here is most certainly in excess of $75,000.00.

The jurisdictional amount in controversy analysis must also take into account the availability of punitive damages, which Roca Labs has sought.   "When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered, . . . unless it is apparent to a legal certainty that such cannot be recovered." *Brown v. Cunningham Lindsey U.S., Inc.*, 2005 U.S. Dist. LEXIS

38862, 2005 WL 1126670 (M.D. Fla. May 11, 2005), citing *Holley Equip. Co. v. Credit Alliance Corp.*, 821

F.2d 1531, 1535 (11th Cir. 1987).

In Florida, defamation *per se* comes with the presumption of damages, and therefore, with

liability comes the sufficiency of determination to award punitive damages as well.  *Lawnwood Med. Ctr.*

*Inc. v. Sadow*, 43 So. 3d 710, 729 (Fla. 4th DCA 2010) ("when the claim is defamation *per se,* liability

itself creates a conclusive legal presumption of loss or damage and is alone sufficient for the jury to

consider punitive damages").  In that case, the jury found liability in defamation per se, awarded only

nominal damages, but assessed a $5,000,000.00 award for punitive damages.

### Attorneys' Fees

Roca Labs has also demanded attorneys' fees[1] as part of the damages they feel entitled to.

Attorneys' fees are appropriately considered as part of the amount in controversy.  See *Lutz v. Protective*

*Life Ins. Co.*, 328 F. Supp. 2d 1350, 1356 (S.D. Fla. 2004) ("The Eleventh Circuit has simply stated that

a reasonable amount of those fees is included in the amount in controversy").  One can only guess

how much Roca Labs intends to spend on this case, and how much they will seek in attorneys' fees.

The Eleventh Circuit relies on the lodestar analysis to determine reasonable attorney's fees, which

takes into consideration the hourly rate of the attorney and the reasonable hours expended.  *Pelc v.*

*Nowak*, 2013 U.S. Dist. LEXIS 99804, 2013 WL 3771233 (M.D. Fla. July 17, 2013).  In that case, the

plaintiff prevailed on a motion for summary judgment for defamation and unfair competition, and the

court granted the plaintiff's motion for attorney's fees, awarding in excess of $82,000.00.

### Non-Monetary Relief Sought

In this Circuit, the courts have held that the "value of injunctive or declaratory relief for

amount in controversy purposes is the monetary value of the object of the litigation that would flow

to the plaintiffs if the injunction were granted." *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 973 (11th

Cir. 2002), citing *Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Elecs., Inc.*, 120

---

[1] Defendant does not concede that the claim for attorneys fees is meritorious, and in fact, no statutory
or contractual basis for awarding attorneys fees is alleged.  Nonetheless, the amount in controversy
must be based on the pecuniary amounts sought, whether or not legally supported.

F.3d 216, 218 (11th Cir. 1997).  The value of the declaratory relief must be high, as Roca Labs saw fit to include it as an independent claim.

Where injunctive relief is requested, the amount in controversy is measured by the value of the object of the litigation measured from the plaintiff's perspective. *Jackson v. Purdue Pharma Co.*, 2003 U.S. Dist. LEXIS 6998, 2003 WL 21356783 (M.D. Fla. Apr. 10, 2003).  In the *Roca Labs v. Opinion Corp.* matter, Roca Labs sought an injunction to protect against the $1,000,000.00 in alleged damages per claim.  The injunction was not granted in that case, and Roca Labs has now stated that the damages are in excess of $42,000,000.00.  See *Shell Oil Co. v. Altina Assocs.*, 866 F. Supp. 536, 540 (M.D. Fla. 1994) citing *Occidental Chemical Corp. v. Bullard*, 995 F.2d 1046 (11th Cir. 1993)(value of object of litigation is the amount in controversy).  Therefore, it would seem that the $10,000,000.00 sought in that action initially, mushroomed into $42,000,000.00 in damages, since Roca Labs did not receive the injunctive relief it sought.  Accordingly, it would seem that Roca Labs considers the lack of injunctive relief to be worth at least $32,000,000.00.

Roca Labs' business practices demonstrate that it values silencing negative commentary more than anything.  Its terms and conditions are designed around a gag clause, forcing customers' silence, which it believes is worth no less than $100,000.00. Attached hereto as **Exhibit J**.  Roca Labs has filed suit against a number of its prior customers as a result of their complaints to the Better Business Bureau, seeking to enforce the restrictive covenant of their terms and conditions. See Exhibit H.  Roca Labs has sent threatening demand letters to virtually every media outlet that has covered the *Opinion Corp.* litigation. Attached hereto as Exhibit I are copies of a sampling of letters sent to various websites that have covered that litigation.   The amount of claimed damages has increased to $42,000,000.00 in the *Opinion Corp.* case since litigation commenced. See Exhibit F.  The value of the injunctive relief alone, from the perspective of Roca Labs, can only be worth millions of dollars.

Furthermore, while not necessarily determinative in the amount in controversy, it is important to take into consideration the cost to defendant.  In this case, Defendant Randazza attests that complying with the requested injunctive relief would cost him in excess of $75,000.00.  See Randazza Decl. ¶9.  For an attorney to be personally sued as a result of statements made during the course of

litigation, and statements that the media made while discussing the litigation, while representing a client against the same party is destructive not only to Randazza's law practice, but to the integrity of the legal profession as a whole.  Randazza's statements have led to a multitude of witnesses against Roca Labs to come forward – witnesses who never would have done so, had this case been conducted in privacy, as Roca Labs prefers.  For an attorney to be enjoined from making statements that the opposing party does not like, in furtherance of professional and competent representation is entirely destructive to the attorney's ability to successfully represent his clients, and for the entire bar to continue zealously advocating for their chosen clientele.  This is compounded by the fact that Randazza is assisting in the assembly of a class action against Roca Labs, and seeking class members necessarily requires communication to the public.

### Federal Question Jurisdiction under 28 U.S.C. § 1331

A suit arises "under the Constitution, laws, or treaties of the United States," if "the plaintiff's well-pleaded complaint raises issues of federal law." *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997). As explained by the Supreme Court, "the presence of even one claim 'arising under' federal law is sufficient to satisfy the requirement that the case be within the original jurisdiction of the district court for removal." *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 386 (1998).

The Complaint raises a number of Federal questions.  While Plaintiff has been coy, attempting to avoid citing a federal statute, its Complaint makes it clear that it seeks determination over the validity of clear First Amendment issues, federal trademark rights, and 47 U.S.C. §230.  The prayer for relief makes it clear that this complaint is not limited to issues of Florida law, as it requests that the court "[d]etermine applicable law, **including** the provision(s) of Florida Statute that apply." (emphasis added).  "Including" was placed there for a reason.  Otherwise, why not simply ask that the court "determine the applicable provisions of Florida Statute that apply?"  With that, it is clear that the complaint raises at least three significant federal questions.

### Plaintiff's Complaint implicates the First Amendment

Roca Labs filed this suit against Randazza with the intent of suppressing Randazza's First Amendment rights.  The existence of a substantial First Amendment question in the elements of

Plaintiff's complaint is further supported by the fact that Roca Labs filed for injunctive relief under these claims as well.  Plaintiff's Motion for Preliminary Injunction seeks to restrain Randazza from making statements to the Court in the *Opinion Corp.* case, and seeking to enjoin Randazza from speaking about that case.  However, there is a "heavy presumption" against the constitutional validity of such relief.  *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971).  Roca Labs here claims that Randazza's statements during the course of litigation, and subsequent republication online, were made with the purpose of mocking, ridiculing, and humiliating Roca Labs.  Complaint ¶39.  However, this argument is insufficient.  See *Organization for a Better Austin*, 402 U.S. 418 ("It is elementary, of course, that in a case of this kind the courts do not concern themselves with the truth or validity of the publication… No prior decisions support the claim that the interest of an individual in being free from public criticism of his business practices in pamphlets or leaflets warrants use of the injunctive power of a court").  In order to prevail, it is an essential element of the Plaintiff's claim that it show the court that it can get past First Amendment constraints on the availability of its chosen relief.  This makes it an "essential element" of the plaintiff's claims.  See *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 13 (1983).  "It is an independent corollary of the well-plead complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in the complaint." *Id* at 22.  In order to receive the relief sought, the Plaintiff will need to prove that what it seeks outweighs the Defendant's First Amendment rights.

Based on the foregoing, resolution of a substantial federal question under the First Amendment is necessary to Plaintiff's claims, thereby making this case removable pursuant to 28 U.S.C. §1331.

### The Complaint Makes Allegations of Federal Trademark Law

Roca Labs has put at issue a number of purportedly registered trademarks.  Complaint ¶15. Federal courts have original jurisdiction over claims involving federal marks.  28 U.S.C. §1338(a). By placing the validity of these marks at issue, Roca Labs has invoked a federal question.  Validity of the marks cannot be made by a state court. *Hospitality Int'l, Inc. v. Sitaram, Inc.*, 2013 U.S. Dist. LEXIS 179697 (M.D. Fla. Aug. 26, 2013) ("the Lanham Act provides that federal district courts have original

jurisdiction over all actions arising under the Act, 'without regard to the amount of controversy or to diversity or lack of diversity of the citizenship of the parties'" citing 15 U.S.C. §1121). The inherent distinctiveness of trademarks is governed by 15 U.S.C. §1052(e), and as the Complaint claims that Roca Labs' marks are inherently distinctive, a federal court should make that determination.  Roca Labs has, while dancing around the subject of allegations of trademark violations, has put the topic squarely at issue here.

### The Complaint raises 47 U.S.C. §230

In various portions of the Complaint, Plaintiff raises 47 U.S.C. §230.  See Exhibit A, Plaintiff's Complaint, at ¶23, 51.  Despite taking efforts to avoid actually *citing* a federal case, the complaint makes clear allegations implicating the central legal issue in the *Opinion Corp.* case, 47 U.S.C. §230.  This raises an additional federal question, as this issue must be re-litigated in *this* case, since Plaintiff has seen that it likely will lose on it in the *Opinion Corp.* case – and would seemingly like a second advisory opinion. Nevertheless, the plaintiff has raised claims of which §230 determination is an essential element, and a federal court is better suited to decide them than a state court.

### Timing

Because Mr. Randazza removed this case on November 18, 2014, Defendant is within the 30 days of the date the Complaint was served upon him, as required under 28 U.S.C. §1446(b)(1).

### Process and Pleading

Pursuant to 28 U.S.C. §1446(a), copies of all process and pleadings served upon Defendants, and the pleadings now on file in the State Court action are attached as Exhibits hereto. See Exhibits A & B.

### Conclusion

This vexatious action is clearly a related case to the *Onion Corp* case pending in this District and Division. Based on the foregoing, Defendant has clearly indicated that the parties are diverse and the amount in controversy is in excess of the required $75,000.00 threshold.  Given that Roca Labs believes one negative comment about them on the Internet is worth at least $100,000.00, and that same negative comment, once litigation has commenced is worth $200,000.00 in damages, in addition

to punitive damages, compensatory damages, and attorneys' fees they have demanded, it is impossible to see how the amount in controversy here is less than $75,000.00.  This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332.  Separately, this Court has jurisdiction over this case, as it raises a federal question, pursuant to 28 U.S.C. §1331.  This Court has removal jurisdiction over this action pursuant to 28 U.S.C. §1441 and 1446.  Defendant therefore seeks to exercise his right, pursuant to 28 U.S.C. §1331, 1332, 1441, and 1446 to remove this action from the Hillsborough County Court, to the United States District Court for the Middle District of Florida.

Respectfully Submitted,

_____
Lawrence G. Walters
Florida Bar No. 776599
Walters Law Group
195 W. Pine Ave.
Longwood, FL 32750-4104
Voice: (407) 975-9150
Fax: (407) 774-6151
Toll Free: (800) 530-8137
E-mail: Larry@FirstAmendment.com

Luke C. Lirot
Florida Bar No. 714836
2240 Belleair Rd Ste 190
Clearwater, FL 33764-1703
United States
Phone: 727-536-2100
Fax: 727-536-2110
Email: luke2@lirotlaw.com
*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 1, 2014, I transmitted the foregoing document to the Clerk of the U.S. District Court, Middle District of Florida, Tampa Division, via overnight delivery, for filing. I also certify that a true and correct copy of the foregoing document is being contemporaneously served upon **John G. DeGirolamo, Esq.**, via email at johnd@inlawwetrust.com, and U.S. mail at 6000 South Florida Ave., P.O. Box 7122, Lakeland, FL 33807.


_____
Lawrence G. Walters

# EXHIBIT A

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH, FLORIDA

ROCA LABS, INC.,                                          CASE NO:

       Plaintiff,

vs.

MARC RANDAZZA,

       Defendant.

_____/

## **COMPLAINT AND VERIFIED MOTION FOR TEMPORARY INJUNCTION**

Plaintiff, **ROCA LABS, INC. ("ROCA")**, a Florida Corporation, by and through the

undersigned counsel, files this Complaint, Verified Motion for Temporary Injunction and

Declaratory Action against Defendant, **MARC RANDAZZA**, and states as follows:

## **PARTIES, JURISDICTION, AND VENUE**

1.  This is an action for injunctive relief, declaratory relief, and for breach of contract involving

    damages in excess of $15,000, exclusive of interest, costs and attorneys' fees.

2.  Venue is proper in this Honorable Court as this is an action for Tortious Interference and

    Defamation *Per Se* and seeks an award of money damages, including actual damages,

    punitive damages and reasonable attorneys' fees and costs; an award of compensatory

    damages under common law claim of tortious interference with a contractual relationship; an

    award of compensatory damages under common law claim of tortious interference with a

    prospective relationship, an award of compensatory damages under common law claim of

    defamation and injunctive and declaratory relief all stemming from conduct that occurred in

    Florida.

1

3.  Plaintiff **ROCA** is a Florida for-profit corporation with its principal place of business at 7261A Tamiami Trail S, Sarasota, FL 34231.

4.  **RANDAZZA** is an individual residing in Nevada and practicing law in Florida.

5.  Pursuant to Florida Statutes Section 48.193(2), **RANDAZZA** is subject to personal jurisdiction in Florida because he committed a tortious acts within the State of Florida.

6.  Pursuant to Florida Statutes Section 48.193(1)(a), **RANDAZZA** is subject to personal jurisdiction in Florida because he practices law within the State of Florida and maintains a law office within the State of Florida.

7.  **ROCA** retained the undersigned counsel and agreed to pay a reasonable fee for its services.

8.  All conditions precedent to the filing of this Complaint, if any, have been satisfied, performed, or waived.

## GENERAL ALLEGATIONS

### A.  PLAINTIFF ROCA

9.  **ROCA** is a Florida for-profit corporation that was formed in 2006 as Appealing Ventures, Inc.  It changed its name to Roca Labs, Inc. in 2009.

10. **ROCA** manufactures food additives (sometimes referred to a nutraceuticals) and is the inventor of the proprietary Gastric Bypass Alternative® that is an effective weight loss option for people who are trying to lose in excess of 50 pounds.

11. **ROCA**'s products have been purchased and used by thousands of people as a surgery-free alternative to gastric bypass.

12. **ROCA**'s products are safe and effective when used as directed.  Thousands of individuals have used **ROCA** products to lose weight.

13. **ROCA**'s products are a natural alternative to surgery and to the best of its knowledge, no one has required medical treatment or hospitalization from the proper use of **ROCA**'s products.

14. **ROCA** made significant investments in product development and in its intellectual property rights.

15. **ROCA** owns numerous registered trademarks including: **ROCA** Labs®, Gastric Bypass Alternative®, Gastric Bypass Surgery Alternative®, Gastric Bypass Effect®, Gastric Bypass Results®, Natural Gastric Bypass®, Gastric Bypass No Surgery® and Anti Cravings®. **ROCA**'s trademarks are inherently distinctive.

16. **ROCA** invests heavily in an online marketing and advertising program that has run in Florida and across the United States.

17. **ROCA** markets and sells its products through its website, "www.rocalabs.com," where information on its products is available and consumers can purchase the product directly.

18. **ROCA** relies upon its reputation, internet reviews, and the weight loss success stories of its customers to generate new business and attract new customers.

19. **ROCA** relies upon its reputation and the weight loss success of its customers to generate new business and attract new customers.

20. Indeed, **ROCA** has a unique Money Back Reward program, where **ROCA** pays individuals a monetary sum for sharing their weight loss success stories.

21. A recent search for **ROCA** Labs on "YouTube" pulled up more than six-thousand (6,000) results, the majority of which are personal weight loss videos shared by individuals.

22. Unfortunately, due to the unencumbered nature of the internet, anyone with a keyboard can voluntarily and intentionally detract from the thousands of positive stories with just one harmful article, interview, tweet, blog, or posting.

23. For instance, Consumer Opinion Corp. and Opinion Corp. own and operate pissedconsumer.com (hereinafter collectively "Pissed Consumer"), an internet haven for consumers, competitors or even Pissed Consumer itself to denigrate, disparage, and defame thousands of small businesses, regardless of the truth or veracity of the posting.

24. Based on the website's name alone, Pissed Consumer invites inherently negative commentary to be disseminated on their website. In other words, a happy or satisfied consumer would not seek out *Pissed* Consumer to communicate a positive story to the world.

25. **ROCA**'s business relationships were and are interfered with by Pissed Consumer. As a result, **ROCA** continues to suffer irreparable harm at the hands of Pissed Consumer.

26. Pissed Consumer defamed and continues to defame **ROCA**.  As a result, **ROCA** continues to suffer irreparable harm at the hands of Pissed Consumer.

27. **ROCA** took legal action to protect its rights and reputation in the State of Florida and sued Pissed Consumer (*Roca Labs v. Consumer Opinion Corp.* and *Opinion Corp.* Case No 8:14-cv-2096-T-33EAJ Middle District of Florida) for issues concerning, among other things, Pissed Consumer's violations of Florida's Deceptive and Unfair Trade Practice Act, Tortious Interference, and Defamation.  **RANDAZZA** is legal counsel for Pissed Consumer in the foregoing matter.

### *B.   DEFENDANT RANDAZZA*

28. **RANDAZZA** is an individual residing Nevada.

29. **RANDAZZA** is an attorney and is licensed to practice law in the State of Florida and **RANDAZZA** maintains a law office in Florida.

30. **RANDAZZA** gained notoriety for providing legal services to the pornography and adult entertainment fields. He has represented a number of adult entertainment companies, including Kink.com, BangBus.com, and MilfHunter.com.[1]

31. **RANDAZZA** has been an outspoken advocate for Phillip Greaves, the author of "*The Pedophiles Guide to Love and Pleasure.*" Mr, Greaves pled no contest to criminal charges in Florida because of his distribution of the book in Florida.

32. **RANDAZZA** adopted the use of the Latin term "*murum aries attigit*" to describe his approach to litigation. The foregoing phrase translates to "the ram has touched the wall," and refers to the ancient Romans' strategy of not allowing mercy and slaughtering everyone in a city if they did not surrender before the Roman battering ram touched the city's walls. **RANDAZZA** adopted this term for his approach to the legal profession, and consequently, behaves as if litigation is his own war.[2]

33. Despite being an Officer of the Court and a practicing member of the Florida Bar, **RANDAZZA** has waged his war against **ROCA** by intentionally and maliciously publishing many false and defamatory statements in his pleadings, with the intent to share them to his contacts in the media, and indeed by directly speaking to the media about **ROCA** with the intent to have them publish false, misleading and defamatory articles about **ROCA**, and by

---

[1] *See* Wikipedia (http://en.wikipedia.org/wiki/Marc_Randazza)
[2] *Id.*

harassing and making derogatory statements about **ROCA** via his personal social media sites including his Twitter account.

34. **RANDAZZA** announced his war against **ROCA** via a simple email to Paul Berger, counsel for **ROCA**, that simply read *murum aries attigit*. (*See below*, Exhibit 1 email from **RANDAZZA** to Paul Berger).



35. Fortunately, we are not the ancient Romans and do not live in fear of attacks from battering rams.  However, **RANDAZZA** waged modern day warfare by attacking and bullying his perceived enemy **ROCA** in the media for the sole purpose of harming **ROCA** and crippling it financially by battering away its customers.

36. Indeed, the Institute for Defense and Government Advancement has said the following: "harnessing and controlling messages distributed via the internet and social media will be a next big battleground to win the heart and minds of the world's masses regardless of who is the enemy of the day.  The question of which nations will control and push out the message most effectively will become increasingly important.  One thing is clear; whoever controls the message controls the masses.  And whoever controls the masses will have the ability to win future wars."[3]

37. Through his own words, **RANDAZZA** is admittedly waging a modern war in the online media against **ROCA**.

---

[3] *Psychological Warfare in the Social Media Era: Winning Hearts and Minds through Facebook and Twitter?*, Nick Younker, Institute for Defense and Government Advancement, September 7, 2010.

38. **RANDAZZA** uses whatever opportunity his has to fight his war against **ROCA**.   For example, just recently **RANDAZZA** used the children's holiday of Halloween in an attempt to humiliate **ROCA** and malign the company in public by making the intentionally false and malicious statement "Some fucker put Roca Labs' shit in my kids candy bag!" (*See* Tweet below).   The Tweet came from his personal Twitter account "@marcorandazza," and has been retweeted to more than 5,000 people as of the date of this filing.



39. The foregoing defamation is not the first perpetration by **RANDAZZA**; rather, he routinely issues statements about **ROCA** on Twitter. The statements are not related to litigation between **ROCA** and Opinion Corp., but are made with malice and with the purpose to mock, ridicule, humiliate, harm, and continue his war against **ROCA**.

40. As a Member of the Florida Bar and an Officer of the Court, **RANDAZZA's** statements are more likely to be viewed as true and correct by the general public.   When **RANDAZZA**

makes the statement "Some fucker put Roca Labs' shit in my kids candy bag!" because of his respected position an ordinary individual may believe it to be true.

41. According to the *Creed of Professionalism* for trial lawyers established by the Florida Bar;

> (1) A lawyer is both an officer of the court and an advocate. As such, the lawyer always should strive to uphold the honor and dignity of the profession, avoid disorder and disruption in the courtroom, and maintain a respectful attitude toward the court; (4) A lawyer should be courteous and civil in all professional dealings with other persons. Lawyers should act in a civil manner regardless of the ill feelings that their clients may have toward others. Lawyers can disagree without being disagreeable. Effective and zealous representation does not require antagonistic or acrimonious behavior. Whether orally or in writing, lawyers should avoid vulgar language, disparaging personal remarks, or acrimony toward other counsel, parties, or witnesses; and (7) A lawyer must not use any aspect of the litigation process, including discovery and motion practice, as a means of harassment.

42. **RANDAZZA**'s actions show his disdain for the Court system, the rules that govern the Florida Bar, and our legal system.   To **RANDAZZA**, winning the war and harming his opponents is what is most important.  There is no room for civility, truth, or justice.

### C.  *THE DEFAMATORY STATEMENTS*

#### 1)  Original Dissemination to the Media Prior to Court Pleadings

43. **RANDAZZA** made defamatory statements *first* to the media, then repeated them in *subsequent* Court filings.

44. Beginning on or about September 8, 2014, and continuing to present date, **RANDAZZA** went to his friends in the online media and caused select webzines / online media sites to encourage the publishing of false and defamatory articles about ROCA (*See* Exhibit 2 September 8 & 9, 2014 articles).

45. **RANDAZZA** went to the media before he made any responsive pleadings in the *Roca Labs v. Opinion Corp.* case.

46. **RANDAZZA** is referenced in the articles contained within Exhibit 2, and the articles reference information that **RANDAZZA** provided to the media outlets.

47. **RANDAZZA** encouraged the media for the sole purpose of harassing, defaming, and injuring **ROCA** as part of his war against **ROCA**.

48. **RANDAZZA**'s war against **ROCA** began with him telling the media that **ROCA** was snake oil salesman, **ROCA's** products did not work, made people sick, were a health hazard, and that the government was going to close **ROCA** down.

49. On September 8, 2014, TechDirt, an online magazine (or webzine), which claims 1.2 million unique visitors a month, published the first of what would be a long series of negative articles about **ROCA** from the "good thing we never bought anything from Roca Labs dept." at TechDirt (*See* Exhibit 2).

50. The September 8, 2014 article states that **ROCA** is the "manufacturer of 'dietary supplements' some of which they label with highly questionable claims that I imagine would not be supported by anything the FDA would consider to be credible evidence."

51. The article *foreshadows* the later defenses **RANDAZZA** would put forth on behalf of Opinion Corp. and references ROCA's Complaint stating, "Almost everything there is ridiculous. Presenting a platform for people to express their own opinions is not encouraging them to break any contract (which, again, is of dubious legality in the first place). Second, the site is not authoring or co-authoring the posts. Third, there's no evidence that anything being posted is 'false.' Fourth, what does Twitter's total user base have to do with anything?"

52. **RANDAZZA** caused these articles to be published, and, based on his past dealings with TechDirt, knew the articles would be disseminated all throughout the internet.

53. Interestingly, without ever reading the Complaint, TechDirt was familiar with the arguments against Pissed Consumer and its future defenses.

54. Further, on September 9, 2014, BoingBoing.net wrote "Roca Labs sells dubious snake-oil like a 'Gastric Bypass Alternative.'"  Once again these words would *foreshadow* the words used by **RANDAZZA** in the pleadings.

55. As a result of **RANDAZZA's** communications with the media, and his own voluntary actions of dissemination, the Defamatory Statements about **ROCA** were thereby purposefully and resolutely published and disseminated to numerous third-parties in online magazines, websites, and blogs.

56. **RANDAZZA** unequivocally acted with intent and malice in making and distributing the Defamatory Statements.

### 2)  The Subsequent Dissemination in Court Pleadings

57. On or about ***September 18, 2014***, **RANDAZZA** filed Pissed Consumer's *Opposition to Plaintiff's Motion for Entry of a Temporary Injunction* (attached as Exhibit 3), which ironically includes the same false, malicious and defamatory statements he previously made to the media a little more than a week earlier.  These statements include, but are not limited to:

   a.  **ROCA** shows little concern for what happens to its users;

   b.  [**ROCA** sounds] like a disreputable company, producing tubs of snake oil (or snake oil goop, as it were);

    c. **ROCA** Labs is desperately trying to force a cone of silence over each and every customer that discovers that **ROCA** Labs' product is not only a specious remedy for weight issues, but a potential cause of additional health problems;

    d. Plaintiff [**ROCA**], desperate to sell as many tubs of goo to the public as it can before regulatory agencies come knocking; and

    e. [**ROCA** Products may cause] a possible health crisis.

58. Additionally, in Pissed Consumer's *Emergency Motion for a Temporary Restraining Order* (attached as Exhibit 4), filed on or about ***September 22, 2014***, **RANDAZZA** repeated his false, malicious and defamatory statements he previously made to the media including, but not limited to:

    a. **ROCA**'s product threatens the health and welfare of at least a portion (if not all) of its users; and

    b. **ROCA** has threatened them [its customers].

    (These statements along with the statements referenced in the paragraphs, *supra*, are hereinafter collectively referred to as "Defamatory Statements.")

59. The Defamatory Statements were first made as factual allegations in the media, and cannot be claimed to be his personal opinion, puffery, or supposition.

60. Therefore, chronologically speaking, **RANDAZZA** made his Defamatory Statements *first* to the media on *September 8, 2014*, and then approximately ten days later memorialized the exact same statements in Court pleadings on *September 18 and 22, 2014*, respectively.

61.  Not Surprisingly, in Pissed Consumer's Answer to Roca Labs's Complaint, which was filed with the Middle District Court on September 11, 2014 and submitted by **RANDAZZA**,

Pissed Consumer claims little or no knowledge about **ROCA**.   Again, chronologically speaking, there was a claim of no knowledge about **ROCA** after **RANDAZZA** had been defaming **ROCA** to the media.

62. These statements were repeated by TechDirt, BoingBoing, ArsTechnica, and other media outlets (*See* Composite Exhibit 5).  For example on September 22, 2014, TechDirt published an article that contained the following:

> As the filing questions, all of these should raise red flags about the company and its products:
>
> Does that sound like an upstanding company that stands behind its safe and reliable product? Or does that sound like a disreputable company, producing tubs of snake oil (or snake goop, as it were), and which knows that too much truth will hurt its fly-by-night bottom line? Roca Labs is desperately trying to force a cone of silence over each and every customer that discovers that Roca Labs' product is not only a specious remedy for their weight issues, but a potential cause of additional health problems. Plaintiff, desperate to sell as many of its tubs of goo to the public as it can before regulatory agencies come knocking does its best to bully its former customers into silence.

63. **RANDAZZA** promoted the article at TechDirt that repeated his Defamatory Statements about **ROCA** on his Twitter account.

 **Marc J. Randazza**
@marcorandazza   

 Heh:  techdirt.com/articles/20141…

64. **RANDAZZA** also had Tracy Coenen, an accountant and colleague, publish an article entitled "Roca Labs Weight Loss Scam" that repeats the defamatory statements (*See* Exhibit 6). Mrs. Coenen has a long standing relationship with **RANDAZZA**, and on February 2, 2013 wrote on her Facebook page "First Amendment lawyer Marc Randazza is amazing." There would be no other reason for an Illinois accountant to publish on her blog an article about Roca Labs other than her relationship with **RANDAZZA** and to assist her friend with his war against **ROCA**.  Mrs. Coenen also Tweeted about her article, calling Roca Labs a "scam":



65. Essentially, **RANDAZZA** restated his previously made Defamatory Statements in his subsequent Court pleadings in hopes of shielding himself from liability under judicial litigation privilege.  In all events, it is abundantly clear that **RANDAZZA**, a seasoned litigator specializing in First Amendment and Defamation practices, should know that the judicial litigation privilege cannot be used as a sword and a shield.

### D.  *RANDAZZA CAUSED AND CONTINUES TO CAUSE INJURY TO ROCA*

66. The publications of Defamatory Statements by **RANDAZZA** brought disgrace, humiliation, injury, and loss to **ROCA**'s business relationships, reputation, and goodwill in the community.

67. These publications, and ensuing purposeful dissemination, regarding **ROCA** hurt **ROCA**'s business**,** drove away customers, and interfered with **ROCA**'s ability to sell its products.

68. **RANDAZZA** made the Defamatory Statements in the media *first*, and then *subsequently* in Court pleadings at a later date.

69. At the time **RANDAZZA** voluntarily made the Defamatory Statements, he did not have any genuine knowledge or regard for the truth and veracity of the Defamatory Statements regarding **ROCA**'s customer care.

70. At the time **RANDAZZA** voluntarily made the Defamatory Statements, he did not have any genuine knowledge or regard for the truth and veracity of the Defamatory Statements regarding any health risks associated with **ROCA** products, which have safely been used by more than 10,000 people.

71. At the time **RANDAZZA** voluntarily made the Defamatory Statements, he did not have any genuine knowledge or regard for the truth and veracity of the Defamatory Statements regarding any alleged (solely by **RANDAZZA**) government actions against **ROCA**.[4]

---

[4] **ROCA** is unaware of any pending investigation or inquiry into its company as alleged by **RANDAZZA**.  Indeed, if *assuming arguendo*, there were an ongoing investigation, it would be hard to believe that any U.S. Government Regulation Agency, including the Food and Drug Administration, would share such confidential information with a private citizen.

72. At the time **RANDAZZA** voluntarily made the Defamatory Statements, he did not have any genuine knowledge or regard for the truth and veracity of the Defamatory Statements regarding **ROCA**'s internal business policies and programs.

73. In truth, **RANDAZZA** knew when he made his Defamatory Statements that they lacked merit, lacked truth, were unsubstantiated, and were injurious to **ROCA**.

74. The Defamatory Statements caused and continue to cause injury, harm, and damage to **ROCA**, including but not limited to irreparable harm, public humiliation, and unwarranted ill-repute in the community, which in this case extends to the internet.

75. The Defamatory Statements were disseminated by **RANDAZZA** to numerous third-parties, with the full knowledge that those third-parties would further disseminate his Defamatory Statements.

76. Based on the foregoing, **RANDAZZA** engaged in conduct which was intentional, fraudulent, malicious, oppressive, and/or he engaged in conduct with such gross negligence as to indicate a wanton disregard for the rights of **ROCA**.

77. **RANDAZZA** was politely asked to stop speaking to the media by Paul Berger, counsel for Roca Labs.  On September 26, 2014, Mr. Berger sent **RANDAZZA** an email respectfully requesting that he stop speaking to the media, informing him of his limited immunity and providing him with notice to retract his statements in accordance with Florida law.  (*See* Exhibit 7).

78. **RANDAZZA'S** response to the email by Mr. Berger, was to immediately distribute the email to the media and to Tweet about it.



**Marc J. Randazza** @marcorandazza · Sep 28
Roca Labs' attorney's latest hit? He sent me an email threatening to sue
me personally for defamation for (in part) using term "snake oil".

  ★ 2 

79. TechDirt published the following:

Roca Labs' lawyer, Paul Berger, also sent threatening emails to Randazza himself, suggesting
that Randazza had been "making defamatory comments" to the media. The email exchange,
which Randazza filed as an exhibit with his filing, shows Randazza responding to Berger
asking what specific defamatory quote he's talking about. Berger instead quotes
PissedConsumer's legal filing (about calling Roca Labs' product "snake oil"), which we (and,
I believe) other news publications, quoted. Randazza pointed out to Berger that it was not a
quote from him but rather in his pleadings, and then asked (one assumes, sarcastically) if
Berger is truly asking Randazza to retract a statement from his motion for preliminary
injunction. I would assume that Berger is aware of the concept of litigation privilege, so
either he didn't fully read Randazza's earlier filings, he forgot about litigation privilege, or
he's just blustering for the sake of blustering. Randazza's latest filing suggests the latter may
be the case:

The desperation continued with Roca threatening personal claims against the Defendants'
attorney for statements made in the course of litigation.

80. In addition, two days after the email **RANDAZZA** once again took to Twitter, but this time

to mock **ROCA's** legal team.



81. It is clear that **RANDAZZA** believes that litigation is war, and that pleadings are a miraculous battle shield that permits lawyers to make intentionally false, misleading and defamatory statements for the sole purpose of inflicting as much injury on an adversary as possible.   **RANDAZZA's** strategy is to beat up **ROCA** in the court of public opinion, to drive away its customers, and hope that **ROCA** will "cry uncle" and give up its day in Court.

<div align="center">

**COUNT I**
**TORTIOUS INTERFERENCE WITH ROCA**'s
**PROSPECTIVE ECONOMIC RELATIONSHIPS**

</div>

82. The allegations set in forth in paragraphs 1 through 81 are incorporated by reference as if fully repeated herein.

83. **ROCA** derives it revenues through online sales of its product to consumers seeking to lose weight.

84. **ROCA** has an actual prospective economic relationship with internet users that search for **ROCA** and its products on search engines.

85. **RANDAZZA** is aware of the existence of **ROCA**'s prospective economic relationship with internet users who desire to purchase **ROCA**'s weight loss products.

86. **RANDAZZA** made and disseminated Defamatory Statements with the knowledge that they would reach **ROCA**'s potential consumers and cause them to view false, negative and misleading information when they search the internet using search engines.

87. **RANDAZZA** knowingly and intentionally warned (essentially counseled) internet users against the purchase of **ROCA** products.

88. The conduct of **RANDAZZA** tainted the actual prospective economic relationship with numerous consumers and these customers were lost because of the malicious and intentional conduct of **RANDAZZA**.

89. Indeed, customers have refused to order and reorder from **ROCA** as a direct and proximate result of **RANDAZZA'**s intentional interference with said relationships.

90. But for the intentional interference, **ROCA** would have sold products to the internet users.

91. As a direct and proximate cause of **RANDAZZA's** conduct, consumers have not purchased **ROCA** products.

92. Thus, as a direct and proximate cause of the **RANDAZZA's** intentional and unjustified tortious interference, **ROCA** has suffered non-monetary and monetary damages.

WHEREFORE, Plaintiff, **ROCA LABS, INC.,** respectfully requests that this Honorable Court declare that Defendant, **MARC RANDAZZA**, has intentionally disrupted and interfered with **ROCA**'s prospective economic relationships, and further, that this Honorable Court grant temporary and permanent injunctive relief against the violating conduct, and award **ROCA** with an amount fair and just to account for its money damages, interest, reasonable attorneys' fees, and costs incurred herein, and for such other relief as this Court deems just and proper.

## COUNT II
## DEFAMATION *PER SE*

93. The allegations set in forth in paragraphs 1 through 92 are incorporated by reference as if fully repeated herein.

94. **RANDAZZA** is representing Pissed Consumer in a case justifiably brought against those Defendants by **ROCA** in the State of Florida.

95. **RANDAZZA** authored and filed several pleadings in that action, including Exhibits 3 and 4.

96. However, *prior to filing* the foregoing Court pleadings, **RANDAZZA** made and disseminated false, malicious and Defamatory Statements to the media.

97. **RANDAZZA** authored and published the Defamatory Statements to the media and disseminated the content via social media websites.

98. *After the foregoing mass dissemination* of the Defamatory Statements *to the media* perpetrated by **RANDAZZA**, he *subsequently* repeated his Defamatory Statements over a week later in Court filings.

99. It is unequivocal that **RANDAZZA** made and disseminated his Defamatory Statements *first* to the media *on September 8*, *and then ten days later* in Court pleadings.

100.    In truth, **RANDAZZA** knew when he made his Defamatory Statements that they lacked merit, lacked truth, were unsubstantiated, and were injurious to **ROCA**.  The Defamatory Statements were made only for his own war against **ROCA** and for **RANDAZZA's** own public relations efforts.

101.    **RANDAZZA**'s Defamatory Statements caused and continue to cause injury, harm, and damage to **ROCA**, including, but not limited to irreparable harm, public humiliation, and unwarranted ill-repute in the community, which in this case extends to the internet.

102.    **RANDAZZA**'s Defamatory Statements were made and disseminated by **RANDAZZA** to numerous third-parties, with the full knowledge that those third-parties would in fact further disseminate his Defamatory Statements.

103.    As a direct and proximate result of **RANDAZZA**'s reckless, wrongful and malicious statements, **ROCA** has suffered significant loss of reputation as well as business opportunities.

104.    **ROCA**'s losses include, but are not limited to, the failure of **ROCA** to sell its product to identifiable potential customers as well as significant lost revenues from other potential customers.

105.    Based on the foregoing, **RANDAZZA** engaged in conduct which was intentional, fraudulent, malicious, oppressive, and/or he engaged in conduct with such gross negligence as to indicate a wanton disregard for the rights of **ROCA**.

106.    The Defamatory Statements made by **RANDAZZA** against **ROCA** constitute defamation *per se* under the law.

107.    **RANDAZZA** was provided with notice as required by Chapter 770, *Florida Statute*. A true a correct copy of the email notice is attached hereto as Exhibit 7.

108.    **RANDAZZA** confirmed his receipt of the foregoing notice when he referenced the notice in a Court filing, shared the communication with the media, disseminated the notice on the internet, and used the notice to further harass and harm **ROCA**. *See* Exhibit 8.

WHEREFORE, Plaintiff, **ROCA LABS, INC.,** respectfully requests that this Honorable Court declare that Defendant, **MARC RANDAZZA**, has defamed **ROCA** *per se*, and further grant temporary and permanent injunctive relief against the violating conduct, and award **ROCA** with an amount fair and just to account for its money damages, interest, reasonable attorneys' fees, and costs incurred herein, and for such other relief as this court deems just and proper.

## COUNT III
## DECLARATORY RELIEF AGAINST RANDAZZA

109.    The allegations set in forth in paragraphs 1 through 108 are incorporated by reference as if fully repeated herein.

110.    This is an action for declaratory relief pursuant to Section 86.011, *Florida Statute*.

111.    There is a bona fide, actual, present practical need for declaratory relief in this matter.

112.    A present controversy with ascertainable facts exists between the parties in this matter.

113.    **RANDAZZA** has intentionally interfered with **ROCA**'s economic relationship with potential customers when he made his Defamatory Statements to the media, and then later memorialized the exact statements in Court pleadings.

114.    **RANDAZZA**'s conduct directly and proximately caused **ROCA** to monetary damages that continue to accrue, as well as irreparable harm to **ROCA**'s reputation.

115.    **ROCA** is in doubt as to their rights under Florida law and is in need of a present declaration whether the conduct of **RANDAZZA**, *i.e.*, the Defamatory Statements, tortiously interfered with **ROCA**'s prospective economic relationship with potential customers.

116.    **ROCA** is in doubt as to their rights under Florida law and is in need of a present declaration whether the conduct of **RANDAZZA**, *i.e.*, the Defamatory Statements, defamed **ROCA** *per se*.

117.    There is a bona fide, actual dispute between the parties based on the refusal of **RANDAZZA** to cease and desist its conduct after **ROCA** has requested same.  *See* Exhibits 7 and 8.

118.    **ROCA** seeks relief in order to enforce contractual and legal rights, and does not merely seek legal advice from this Honorable Court.

119.    **ROCA**'s right to recovery is dependent upon the Court's finding of facts and/or application of same to Florida law.

120.    The parties' interests in this declaration of rights are actual, present, adverse and antagonistic of fact and/or law.

WHEREFORE, Plaintiff, **ROCA LABS, INC.,** requests the Court to:

a.      Take jurisdiction of the subject matter and parties hereto;

b.      Determine applicable law, including the provision(s) of *Florida Statute* that apply to the parties;

c.      Declare that **RANDAZZA** has intentionally, tortiously interfered with **ROCA**'s economic relationship with consumers;

e.      Declare that **RANDAZZA** has defamed **ROCA** *per se*;

g.      Declare that **ROCA** has suffered economic damages as proximate result of Defendant's conduct;

h.      Declare that **ROCA** is entitled to attorneys' fees and costs against **RANDAZZA** and determine the amounts thereof;

i.      Declare that **ROCA** is entitled to award of monetary damages against **RANDAZZA** and determine the amounts thereof;

j.      Declare that **RANDAZZA** cease and desist his defamatory conduct;

k.      Award damages, interest, and taxable costs against **RANDAZZA**; and

m.      Award any other relief this Court deems just and proper against **RANDAZZA.**

WHEREFORE, Plaintiff, **ROCA LABS, INC.,** respectfully requests that this Honorable Court enter judgment against Defendant, **MARC RANDAZZA**, for all damages, attorneys' fees, and costs.

# EXHIBIT B

### VERIFIED MOTION FOR ENTRY OF A TEMPORARY INJUNCTION

Plaintiff, **ROCA LABS, INC.,** by and through its undersigned counsel and pursuant to Rule 1.610 of the Florida Rules of Civil Procedure and Section 688.003, *Florida Statute*, hereby moves this Court to enter a temporary/preliminary injunction forcing Defendant, **MARC RANDAZZA**, to (a) cease and desist intentionally and tortiously interfering with the business relationships of **ROCA**, (b) formally retract, in writing, any and all previously made and/or disseminated Defamatory Statements of or about **ROCA**, and (c) remove any and all previously made Defamatory Statements of or about **ROCA** from media outlets in which **RANDAZZA** has an interest in, controls, or otherwise has authority over its content. In support hereof, **ROCA** states as follows:

### INTRODUCTION

This motion is supported by the verified factual allegations in the *Complaint* filed contemporaneously herewith, and said allegations are incorporated by reference and will not be reiterated verbatim herein.  As stated above, **RANDAZZA** made Defamatory Statements about **ROCA** *first* to the media, and then repeated them verbatim in *subsequent* Court filings. The publications of the Defamatory Statements brought disgrace, humiliation, injury, and loss to **ROCA**'s business relationships, reputation, and goodwill in the community.  These publications about **ROCA** hurt **ROCA**'s business**,** drove away customers, and interfered with **ROCA**'s ability to sell its products. The foregoing conduct tortiously interfered with the business practices and relationships of **ROCA**.

The verified allegations conclusively demonstrate that (a) there is a substantial likelihood that **ROCA** will prevail on the merits of this case and (b) in the absence of injunctive relief to

maintain the status quo pending the outcome of the case, **ROCA** will suffer immediate and irreparable injury.

## MEMORANDUM OF LAW

### A.  STANDARD FOR INJUNCTIVE RELIEF

Under Florida law, there are four prerequisites to the granting of preliminary injunctive relief: (1) the plaintiff will suffer irreparable harm; (2) the plaintiff has no adequate remedy at law; (3) there is substantial likelihood that the plaintiff will prevail on the merits; and (4) a temporary injunction will serve the public interests.  *Provident Mgt. Corp. v. City of Treasure Island*, 796 So.2d 481, 485 n. 9 (Fla. 2001); *Naegel Outdoor Advertising Co., Inc. v. City of Jacksonville*, 659 So.2d 1046, 1047 (Fla. 1995).

### B.  INJUNCTIVE RELIEF IS APPROPRIATE

As a general rule, a trial court has sound discretion to grant injunctions. *Precision Tune Auto Case, Inc. v. Radcliff*, 731 So.2d 744, 745 (Fla. 4th DCA 1999).  Further, the purpose of a preliminary injunction is to prevent future harm.  *Advantage Digital Sys., Inc. v. Digital Imaging Servs., Inc.,* 870 So. 2d 111, 116 (DCA Fla. 2004)("By its nature, an injunction restrains commission of a future injury; a court cannot prevent what has already occurred.")  Thus, it is not necessary for a party seeking a preliminary injunction to wait until harm has occurred; such a delay would defeat the purpose of injunctive relief.  The facts of this case demonstrate that all of the elements are easily satisfied, and the requested injunction should be issued by this honorable Court.

### 1)  *In the Absence of Injunctive Relief, ROCA Will Suffer Irreparable Harm*

Irreparable injury is an injury which is of a peculiar nature, so that compensation in money cannot atone for it.  *Mullinix v. Mullinix*, 182 So. 2d 268 (Fla. 4th DCA 1966); *First Nat. Bank n St. Petersburg v. Ferris*, 156 So. 2d 421 (Fla. 2nd DCA 1963).   Due to the nature of the internet (which is the arena for the majority of the events that gave rise to this cause), defamatory postings can cause great harm with very little effort.

The actions taken by **RANDAZZA** created an immediate and viable state of emergency for **ROCA**, which has already caused **ROCA** to incur substantial damages and which threaten further immediate and irreparable harm, *to wit*: (a) **ROCA** has lost daily sales of thousands of dollars through the date of this filing, and those sales will continue to be lost until the actions of **RANDAZZA** are prohibited or cured and (b) the conduct of **RANDAZZA** tainted the actual prospective economic relationship with numerous consumers and these customers were lost because of the malicious, intentional conduct of **RANDAZZA**.   Indeed, the actions taken by **RANDAZZA** threaten to destroy **ROCA**'s business.   There is likely potential irreparable harm that is reasonably likely to result in the absence of an injunction.

### 2)  *Plaintiffs Do Not Have An Adequate Remedy at Law*

**ROCA** does not have an adequate remedy law because an injunction is the only means available to stop **RANDAZZA** from tortiously interfering with the business practices and relationships of **ROCA**.   If an injunction is not issued, **ROCA** will likely continue to lose business relationships that can never be reestablished.   Further, monetary damages that would arise from **RANDAZZA**'s continued misconduct are not readily ascertainable and, in all events, would be insufficient to compensate **ROCA** for the wrongs committed by **RANDAZZA**.   Given

the vagaries associated with calculating lost business, lost customers, and lost goodwill in the community, no legal remedy can adequately compensate **ROCA** for **RANDAZZA**'s actions.

### *3)  Plaintiffs Are Substantially Likely To Prevail On The Merits*

**ROCA** is substantially likely to prevail on the merits in this matter, particularly with respect to the issues raised by this Motion.  **ROCA** does not request that the Court pre-judge all of the issues raised by its Complaint; rather, the relief requested herein is narrowly limited to ensuring that **RANDAZZA** (a) cease and desist intentionally and tortiously interfering with the business relationships of **ROCA**, (b) formally retract, in writing, any and all previously made and/or disseminated Defamatory Statements of or about **ROCA**, and (c) remove any and all previously made Defamatory Statements of or about **ROCA** from the media outlets in which **RANDAZZA** has an interest in, controls, or otherwise has authority over its content.

**RANDAZZA** made Defamatory Statements about **ROCA** *first* to the media, and then repeated them verbatim in *subsequent* Court filings.  The parties are unequivocally aware of the certain Defamatory Statements at issue. Further, as shown in the *Verified Complaint for Damages and Injunctive Relief* , the defenses **RANDAZZA** will undoubtedly attempt to raise are inapplicable as a matter of fact and law.  The publications of the Defamatory Statements brought disgrace, humiliation, injury, and loss to **ROCA**'s business relationships, reputation, and goodwill in the community. These publications about **ROCA** hurt **ROCA**'s business**,** drove away customers, and interfered with **ROCA**'s ability to sell its products.  The foregoing conduct tortiously interfered with the business practices and relationships of **ROCA**. Thus, the *Verified*

*Complaint for Damages and Injunctive Relief* does in fact and law demonstrate that **ROCA** is likely to prevail on the merits.

### 4)   *An Injunction is in the Public Interest*

**ROCA** seeks an injunction in order to prevent further monetary damages and other irreparable harm from lost business, lost customers, and lost goodwill that is reasonably likely to occur if **RANDAZZA** continues to defame **ROCA** and tortiously interfere with the business practices and relationships of **ROCA**.  Under these circumstances, an injunction is in the public's interest.  *See Pino v. Spanish Broad. Corp.*, 564 So.2d 186, 189 (Fla. 3d DCA 1990)(holding that the public is entitled to rely on certainty in contracting and the protection of property rights; indeed, commercial development depends on the ability of a company to protect its legitimate business interests); *see also Silvers v. Dis-Com Sec., Inc.*, 403 So.2d 1133, 1137 (Fla. 4th DCA 1981) ("[i]f contracts are to have any viability at all, there must be some means of meaningful enforcement available for the courts….").

### C.  BOND

In cases in which a Temporary Injunction is issued, a bond is required to be posted by the movant; the amount of the bond is completely within the Court's discretion.  *See* Fla.R.Civ.P. 1.610(b); *Montville v. Mobile Medical Industries, Inc.*, 855 So.2d 212, 215 (Fla 4th DCA 2003) (holding that "the trial court is generally afforded discretion in setting the amount of a bond for a temporary injunction entered pursuant to Rule 1.610(b)").  Generally, the amount of the bond should reflect the damages that are reasonably foreseeable if the injunction is found to have

wrongfully issued.  In this case, a bond of no more than $1,000.00 is appropriate because of the (a) narrow injunctive relief sought and (b) lack of monetary damage suffered by **RANDAZZA**.

## CONCLUSION

WHEREFORE, Plaintiff, **ROCA LABS, INC.,** by and through undersigned counsel, moves this Court to enter a temporary/preliminary injunction forcing Defendant, **MARC RANDAZZA**, to (a) cease and desist intentionally and tortiously interfering with the business relationships of **ROCA**, (b) formally retract, in writing, any and all previously made and/or disseminated Defamatory Statements of or about **ROCA**, and (c) remove any and all previously made Defamatory Statements of or about **ROCA** from the media outlets in which **RANDAZZA** has an interest in, controls, or otherwise has authority over its content.

## REQUEST FOR ATTORNEY'S FEES

Plaintiff, **ROCA LABS, INC.,** requests an award of attorney's fees, costs, and such other relief that the Court finds to be appropriate.

## DEMAND FOR JURY TRIAL ON COMPLAINT

Plaintiff, **ROCA LABS, INC.,** hereby demands trial by jury as to all issues so triable as to the Complaint.

Respectfully submitted on this 6th day of November, 2014.

*/s/ John DeGirolamo*

JOHNNY G. DEGIROLAMO, ESQ.

FLORIDA BAR NO: 0089792

*The Law Offices of John DeGirolamo, Esq.*

6000 South Florida Avenue,

P.O. Box 7122, Lakeland, FL 33807

*Attorney for Plaintiff, Roca Labs, Inc.*

Phone: (863) 603-3461

Email: JohnD@inlawwetrust.com

## VERIFICATION BY DON KARL JURAVIN

BEFORE ME, the undersigned authority, personally appeared Don Juravin, upon being duly sworn, deposes and states:

Under penalties of perjury, I, Don Juravin, am Vice President of Roca Labs, Inc. declare and affirm on this 25 day of October, 2014, under oath, pursuant to § 92.525, Florida Statutes, that I have read the foregoing *Complaint and Motion*, and declare that the facts stated in it are true to the best of my knowledge and belief and irreparable harm and damage will result if the relief is not granted.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Don Karl Juravin

_____
NOTARY PUBLIC, State of Florida

My Commission Expires



ANTONIO GONZALEZ
Notary Public, State of Florida
Commission# EE 185555
My comm. expires Apr. 1, 2016

30

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document has been e-filed via the Florida State E-Portal on this 6th day of November, 2014.


*/s/ John DeGirolamo*

JOHNNY G. DEGIROLAMO, ESQ.

# Exhibit 1



Roca Labs adv. Pissed Consumer   Inbox   x

**Marc Randazza** <mjr@randazza.com>
to me

Sep 18

*murum* aries attigit

...

# Exhibit 2

11/5/2014    'Dietary Supplement' Company Tries Suing PissedConsumer, Citing Buyer's Agreement To Never Say Anything Negative | Techdirt

Case 8:14-cv-03014-SCB-MAP    Document 1    Filed 12/02/14    Page 49 of 125 PageID 49

Insider Shop    Insight Community    Step2         Search Techdirt    Search

Techdirt    Wireless News    Innovation    Case Studies    Startups    Net Neutrality         Preferences    Register    Sign In

Main    Submit a Story    🔊 RSS

Follow Techdirt

<< Comcast Using Packet Injection To Push Its Own...        ·::·        'Trusted Third Parties' Add One More Link In... >>

## 'Dietary Supplement' Company Tries Suing PissedConsumer, Citing Buyer's Agreement To Never Say Anything Negative

from the good-thing-we-never-bought-anything-from-roca-labs dept

**Legal Issues**
by Mike Masnick
Mon, Sep 8th 2014
1:32pm

0

Filed Under:
dietary
supplements,
gastric bypass
alternative,
opinion, pissed
consumer, reviews,
secondary liability,
section 230

Companies:
consumer opinion
corp.,
pissedconsumer,
roca labs

Permalink.

Roca Labs is a company that describes itself as a manufacturer of "dietary supplements" some of which they label with highly questionable claims that I imagine would not be supported by anything the FDA would consider to be credible evidence. In particular, they have something called "Gastric Bypass Alternative" which claims to help people lose weight -- though I would treat such claims skeptically without further proof. Indeed, it appears that many of Roca Labs' buyers are not happy about it. The Better Business Bureau gives Roca Labs an F grade due to the large number of complaints, many of which remain unresolved. Meanwhile the site PissedConsumer also has a bunch of complaints about Roca Labs and its products -- and it appears that the PissedConsumer page ranks rather highly on Google for searches on Roca Labs. Roca Labs is -- apparently -- not happy about that.

So it has now sued the parent company of PissedConsumer, Consumer Opinion Corp, trying to get the reviews taken down. The lawsuit is worth reading. It claims that PissedConsumer is engaged in "deceptive and unfair trade practices" and that part of this is... because customers of Roca Labs agree to never say anything negative about the company.

> Roca sells its products directly to the public and in exchange a discounted price, Roca's customers agree under the terms and conditions of said purchase that regardless of their outcome, they will not speak, publish, print, blog or write negatively about Roca or its products in any forum.

Of course, any such agreement is of questionable legality. However, we've certainly been seeing a lot of these questionable "no negative reviews or you pay" agreements showing up lately.

But, you say, PissedConsumer isn't the issue here, right? After all, the company never agreed to those conditions, even if the buyers did agree to them (whether or not they're legally sound). Roca is trying to get around that by arguing that because it has this clause and because PissedConsumer urges angry consumers to complain, the company is "tortiously interfering" with Roca's business because it's encouraging people to break the agreement. I'm not joking.

> Defendants deliberately and tortiously interfere with Roca Lab's customers by encouraging them to breach their customer agreement with Roca as Defendants author or co-author false, malicious and negative posts about Roca that are published on their subject website and Twecred to Twitter's 271 million users.

Where to start? First of all, no. Almost everything there is ridiculous. Presenting a platform for people to express their own opinions is not encouraging them to break any contract (which, again, is of dubious legality in the first place). Second, the site is not authoring or co-authoring the posts. Third, there's no evidence that anything being posted is "false." Fourth, what does Twitter's total user base have to do with anything? It appears that @PissedConsumer's account has a few thousand followers.

None of this matters anyway, because even if any of the other arguments made sense (and none of them seem to make much, if any, sense) PissedConsumer is clearly well protected by Section 230 of the CDA, which protects websites from the actions of their users. And, of course, PissedConsumer and its legal team are well aware of all this having hit back at previous bogus legal threats in the past. I don't expect Roca Labs will get very far with this complaint. However, if you'd like to see which complaints Roca Labs especially wants deleted, check page four of the complaint below, where the company conveniently lists out the statements it doesn't like. And, because they're so wrong on just about every other legal claim, it seems worth noting that many of them are clearly statements of opinion, rather than anything that would be clearly defamatory anyway (and if they were defamatory the company would need to go after those individuals who made them in the first place, rather than the company hosting the content).

To print the document, click the "Original Document" link to open the original PDF. At this time it is not possible to print the

Advertisement

[Ad]

**Essential Reading**

**Hot Topics**

6.5    Former NSA Lawyer Says Reason Blackberry Failed Was 'Too Much Encryption' Warns Google/Apple Not To Make Same Mistake

5.6    Latest EFF DMCA Exemption Requests Include The Right to Tinker With and Maintain Unsupported Video Games

5.3    Attention Kim Kardashian: You Can't Sue Another Woman For Having A Big Ass And An Instagram Account

**New To Techdirt?**

Explore some core concepts:

An Economic Explanation For Why DRM Cannot Open Up New Business Model Opportunities

Step One To Embracing A Lack Of Scarcity: Recognize What Market You're Really In

Infinity Is Your Friend In Economics

read all »

**Techdirt Reading List**


Remix: Making Art and Commerce Thr...
Lawrence Lessig (Hardcover - Oct 16, 2008)
$0.01
★★★★☆

Reclaiming Fair Use: How to Put Balan...
Patricia Aufderheide, Peter Jaszi (Paperback - A...
$12.85
★★★★☆

Hollywood's Copyright Wars: From Edi...
Peter Decherney (Hardcover - Apr 10, 2012)
$31.05
★★★★☆

Patent Failure: How Judges, Bureaucr...
James Bessen, Michael J. Meurer (Paperback - ...
$25.60
★★★★☆

1 2 3 4 5 >

Get Widget    Privacy     amazon.com

11/5/2014    Dietary Supplement Company Tries Suing Pissed Consumer, Citing Buyer's Agreement To Never Say An... | Techdirt

Case 8:14-cv-03011-SCB-MAP   Document 1   Filed 12/02/14   Page 50 of 125   PageID 50

document with annotations.

Techdirt Insider Chat

we won't be seeing that torture report after all

**silverscarcat:** *Sad face*

Udall should have ran on the platform that stated that he was for less government intrusion in your lives.

**RadioactiveSmurf:** It does bother me that candidates who stand up for the people have a harder time getting re-elected. People complain about not being represented but when they are they vote that candidate out. Sends a bad message to politicians

**silverscarcat:** That's because Udall didn't campaign enough on representing the people and standing up for their rights.

**Violynne:** Stupid country? Try a stupid planet.

**Machin Shin:** Just think, with us pushing to go to Mars, before long it will be "stupid solar system"

Get the Insider Chat!

Advertisement



Tweet   70    Like   1.1k    ▲ ▼   17 points    g+1

31 Comments | Leave a Comment

If you liked this post, you may also be interested in...

- Pianist Dejan Lazic Defends His Takedown Request By Pointing Out That The WaPo Reviewer Is Really Mean
- Misguided Pianist Asks Washington Post To Remove A Less-Than-Wonderful Review Under Right To Be Forgotten
- Magistrate Judge Not Impressed By Roca Labs' Legal Arguments: Recommends Against An Injunction
- Roca Labs Story Gets More Bizarre: Senator Threatens Bogus Defamation Lawsuit, While Nevada Quickly Rejects Bogus Bribery Charge
- Roca Labs Exec Claims Marc Randazza Bribed Nevada Politician To Get Anti-SLAPP Law Passed

Recent Stories

**Wednesday**

06:22   Former NSA Lawyer Says Reason Blackberry Failed Was 'Too Much Encryption' Warns Google/Apple Not To Make Same Mistake (23)

04:21   Latest EFF DMCA Exemption Requests Include The Right to Tinker With and Maintain Unsupported Video Games (22)

01:16   UK Launches Orphan Work Licensing Scheme, Misses Huge Opportunity To Make It Better (8)

**Tuesday**

21:13   Airbnb Competitor Sues San Francisco For Making New 'Legalize Airbnb' Law Too Restricted To Airbnb (4)

17:00   DailyDirt: Who Needs A Mouse And Keyboard Anymore? (16)

15:57   Here's Hoping Judge Ignores The Nutty Plaintiff With An Important Case On NSA Surveillance Of Business Records (21)

14:58   Virginia Police Departments Have Been Collaborating On An Ad Hoc, Secret Phone Record Database (13)

13:50   Chris Hadfield's Outer Space Version Of Space Oddity Is Back... But It Still Never Should Have Gone Away (23)

12:46   Russia Dismantles Steve Jobs Memorial, Fearing That Tim Cook's Homosexuality Might Be Contagious (58)

11:36   Pianist Dejan Lazic Defends His Takedown Request By Pointing Out That The WaPo Reviewer Is Really Mean (27)

More

Advertisement

Reader Comments (rss)

(Flattened / Threaded)    Show All Comments ▼

1.   Baron von Robber, Sep 8th, 2014 @ 2:02pm    insightful | funny | report

   I foresee a Popehat signal in the near future.

   [ reply to this | link to this | view in thread ]

2.   Roger Strong (profile), Sep 8th, 2014 @ 2:06pm    insightful | funny | report

   Paging Ken...

   PopeHat's summary of On Press case applies to Roca Labs and it's crack legal team:

   The hardest game on the internet is one I call "C/S/T", which is short for "Crazy, Stupid, Or Troll?" Whoever is running the internet-threat operation under the name "On Press, Inc." has certain defining characteristics – truculence, functional illiteracy, and a grasp of law cobbled together by listening to 13-year-olds swearing at each other on Xbox Live.

   [ reply to this | link to this | view in thread ]

3.   observer, Sep 8th, 2014 @ 2:06pm    insightful | funny | report

   Re:

   He's already tweeting about it.

   [ reply to this | link to this | view in thread ]

4.   Anonymous Coward, Sep 8th, 2014 @ 2:15pm    insightful | funny | report

   They give ALL of their customers a "discount"?

11/5/2014    Dietary Supplement Company Tries Suing PissedConsumer, Citing Buyer's Agreement To Never Say Anything Negative | Techdirt

Case 8:14-cv-03011-SCB-MAP   Document 1   Filed 12/02/14   Page 51 of 125 PageID 51

That's not called a discount. That's called a price.

[ reply to this | link to this | view in thread ]

5.  ACasey (profile), Sep 8th, 2014 @ 2:17pm    insightful  funny  report

Talk about the Streisand Effect!

[ reply to this | link to this | view in thread ]

6.  Vidiot (profile), Sep 8th, 2014 @ 2:22pm    insightful  funny  report

Their own brand of dyspepsea

Number 2 search result via Google for "Roca Labs":

Better Business Bureau, West Florida - "This business is not accredited," followed by:

Additional Complaint Information

It has come to BBB's attention that the company will demand the removal of any complaint, web post or other publication that constitutes a breach of the terms and conditions agreed to by the consumer at the time of purchase, regardless of whether or not the consumer complaint is resolved.

[ reply to this | link to this | view in thread ]

7.  kenichi tanaka (profile), Sep 8th, 2014 @ 2:25pm    insightful  funny  report

That's crazy because it's like saying "I robbed a bank because lyrics in a rap song told me too". Does Roca Labs make any sense and are they serious?

First of all, just because Roca Labs has it written that you cannot post negative comments about its products after you purchase them, doesn't mean that Roca Labs has a leg to stand on. Any court in this country, on this planet, would laugh Roca Labs out of their court for being so restrictive on consumers in the first place. Why? Because that violates an individual's first amendment right to free speech. Roca cannot claim that your purchase of their product prevents you from speaking negatively about their company. After all, if that were true, then why aren't they suing the Better Business Bureau?

I don't even see this passing the laugh test with any competent court because any judge in this country would dismiss any such lawsuit before it could even get put on the docket.

[ reply to this | link to this | view in thread ]

8.  ACasey (profile), Sep 8th, 2014 @ 2:29pm    insightful  funny  report

Re:

Freedom of speech and internet businesses rarely go together. Just see all those "defamation" cases.

[ reply to this | link to this | view in thread ]

9.  Anonymous Coward, Sep 8th, 2014 @ 2:46pm    insightful  funny  report

I must say, Roca's got guts referencing the Florida Deceptive and Unfair Trade Practices Act, when you consider THEIR practice of not allowing consumers to say anything negative about them.

Of course, if the allegations about PissedConsumer are correct in that they sell "reputation management" where they ask companies for money to take down complaints, then PissedConsumer is hardly an innocent victim here. It's possible that this case is two bad actors going against each other.

[ reply to this | link to this | view in thread ]

10.  Gracey (profile), Sep 8th, 2014 @ 3:02pm    insightful  funny  report

[quote]PissedConsumer urges angry consumers to complain that the company is "tortiously interfering" with Roca's business[/quote]

No. Roca's unfounded claims and poor products are interfering with their business.

Maybe they should just sue themselves.

[ reply to this | link to this | view in thread ]

11.  connermac725 (profile), Sep 8th, 2014 @ 3:04pm    insightful  funny  report

11/5/2014 Dietary Supplement Company Tries Suing Pissed Consumer, Citing Buyer's Agreement To Never Say An... | Techdirt

Case 8:14-cv-03014-SCB-MAP Document 1 Filed 12/02/14 Page 52 of 125 PageID 52

Just an Idea

Maybe if they answered the complaints from their customers they would not have to vent in other places. Instead of the we suck so this is going to ignore you business model they have now

[ reply to this | link to this | view in thread ]

12. Anonymous Coward, Sep 8th, 2014 @ 3:21pm

insightful | funny | report

All they need to do is get Congress to pass a law making "Printing or saying mean things about me/us" illegal. Then they have to figure out how to enforce it.

[ reply to this | link to this | view in thread ]

13. Mark Noo, Sep 8th, 2014 @ 3:23pm

insightful | funny | report

Puffery or Buggery

Now that people pay such large amounts for advertising. Now that they consult psychologist and professional marketers can anything be said to be "puffery" any more.

With 50 percent of our GDP (I think that is the number) dependent on consumer spending should we change the the word "puffery" to "buggery" so that people will better understand what unfettered marketing really is?

I think we should.

[ reply to this | link to this | view in thread ]

14. DannyB (profile), Sep 8th, 2014 @ 3:26pm

insightful | funny | report

EULAs

By opening this bottle of high quality dietary supplement, and in consideration of the discount price you were offered, you agree to the 80 page EULA (provided on microfilm, inside the bottle).

[ reply to this | link to this | view in thread ]

15. kenichi tanaka (profile), Sep 8th, 2014 @ 3:48pm

insightful | funny | report

Roca Labs needs to understand that you cannot sue somebody for exercising their first amendment rights. But, I gotta give them credit for having big balls for trying to do exactly that. It will be the first time that someone has been sued for practicing their right to free speech.

[ reply to this | link to this | view in thread ]

16. Anonymous Coward, Sep 8th, 2014 @ 3:58pm

insightful | funny | report

Even sadder than the lawsuit is the sheer number of lawyers willing to make these kinds of bullshit claims on their clients' behalf. You'd think they'd rather be defending thieves, murderers and pedophiles -- at least then they'd have a chance of being on the right side of justice (after all, not everyone who is accused of these things is guilty).

[ reply to this | link to this | view in thread ]

17. Anonymous Coward, Sep 8th, 2014 @ 4:02pm

insightful | funny | report

s/Twecred/tweeted/g

The PDF has more readable and less twecred text.

[ reply to this | link to this | view in thread ]

18. That Anonymous Coward (profile), Sep 8th, 2014 @ 4:05pm

insightful | funny | report

And the sense of entitlement grows.
Because we business, we have a right nto perfect glowing reviews, even when we fail our customers.
If you dare tell anyone how we failed you, you owe us money because we lost potential sales.
Our dropping sales figures are because people said mean things online and not because we are a company so shitty we have to attempt to gag you into silence with the threat of lawsuits.

[ reply to this | link to this | view in thread ]

19. ACasey (profile), Sep 8th, 2014 @ 4:37pm

insightful | funny | report

Re:

Pretty pathetic, eh? Somebody actually did this sort of thing to me 7 years ago on Amazon - I gave a negative review of a (self-published, mind you) book I didn't like, and the author sent me a extortion letter demanding a

260 fine. I didn't pay it, of course, because I had a lawyer, but what about the people who didn't?

[ reply to this | link to this | view in thread ]

20.  Anonymous Coward, Sep 8th, 2014 @ 7:18pm    [ insightful ] [ funny ] [ report ]

Who wants to bet that copyright law has foisted all these unreasonable expectations to some degree?

Until recently it was the copyright industries whining about "lost sales" in arguments that would never fly in the analog world. And now suddenly everyone is arguing that consumers should never be allowed to say anything bad about any product, because "contract law" and "lost sales".

[ reply to this | link to this | view in thread ]

21. That One Guy (profile), Sep 8th, 2014 @ 8:29pm    [ insightful ] [ funny ] [ report ]

Re: Re:

On Amazon? Oh did they get off lightly if that's all you did, from what I've heard, Amazon is extremely touchy about that sort of thing, and simply forwarding the email to them would likely have gotten the author kicked clean off their service. They do not look kindly on people/companies who try and bully buyers, and for good reason.

[ reply to this | link to this | view in thread ]

22. Anonymous Coward, Sep 9th, 2014 @ 7:36am    [ insightful ] [ funny ] [ report ]

Re:

Yeah that is for sure. Having that policy in the first place makes them look worse than anything that a customer could say about them. It shows not only did they know that they would have problems but their response is to cover it up instead of trying to fix the issue.

[ reply to this | link to this | view in thread ]

23. John Fenderson (profile), Sep 9th, 2014 @ 8:02am    [ insightful ] [ funny ] [ report ]

Re:

"you cannot sue somebody for exercising their first amendment rights"

This is not true as a blanket statement. You can absolutely contractually agree to restrict your first amendment rights and be sued if you break that agreement. Pretty much every job I've had has included a non-disclosure agreement, for instance. That restricts my first amendment rights, but should I break it I can expect a lawsuit.

[ reply to this | link to this | view in thread ]

24. Just Another Anonymous Troll, Sep 9th, 2014 @ 9:30am    [ insightful ] [ funny ] [ report ]

Re:

[cough] Kleargear [cough]

[ reply to this | link to this | view in thread ]

25. Ian, Sep 9th, 2014 @ 5:16pm    [ insightful ] [ funny ] [ report ]

Re:

Actually, you *can* sue someone for exercising their first amendment rights. The first amendment insulates you - to a degree - from *government* abridging your free speech rights. While it's a very difficult hurdle to overcome, private persons and entities can and do successfully sue folks for shooting off their mouths. Defamation and libel cases work out for plaintiffs all the time. The real underlying issues will - in general terms, since I haven't researched the law - revolve around (a) whether the restriction on discussing the product or Roca is lawful; (b) if it is, whether Roca can prove pissedcustomer.com and its parent was aware of and sought to interfere with existing contractual relationships between Roca and its suckers, er, customers; (c) if so, whether Roca was damaged by that knowing interference. In my view (a) is a dead bang loser for Roca, but assuming the gag requirement is valid, they have big problems with (b) and (c). Looking forward to Ken White's more penetrating analysis, to be sure.

[ reply to this | link to this | view in thread ]

26. Regretfulness (profile), Sep 10th, 2014 @ 3:26pm    [ insightful ] [ funny ] [ report ]

The world has a way of dealing with scumbags. The practice of including nondisparagement clauses in consumer contracts will soon be illegal in California. http://bit.ly/1umy6O5
Other progressive states will follow.

[ reply to this | link to this | view in thread ]

11/5/2014     Dietary Supplement Company Tries Suing Pissed Consumer, Citing Buyer's Agreement To Never Say Anything Negative | Techdirt

Case 8:14-cv-03014-SCB-MAP   Document 1   Filed 12/02/14   Page 54 of 125   PageID 54

27. ![] Sheogorath (profile), Sep 13th, 2014 @ 9:19am      | insightful | funny | report |

The Better Business Bureau gives Roca Labs an F grade due to the large number of complaints, many of which remain unresolved.
Really? Or is the actual case that Roca are simply too cheap to buy a better rating from the BBB?

[ reply to this | link to this | view in thread ]

28. ![] Carl, Sep 14th, 2014 @ 9:40am      | insightful | funny | report |

$800?

From p.5 of the complaint: "Discounts average $800". Really? That's an extraordinary figure. How much does this product cost that they can discount it by that much? Does this cost as much as a car?

How can such a thing be unregulated?

[ reply to this | link to this | view in thread ]

29. ![] Robert, Sep 14th, 2014 @ 12:29pm      | insightful | funny | report |

Roca Labs, should be shut down for fraud and deceptive trade.

I imagine that if this comes to the notice of the Attorney General of the US; that Roca Labs should soon loose its license to market in the US and this highlights the reasons corporate officers should be charged criminally, imprisoned, and forbidden from selling any products in the market place ever again (even a garage sale). It is my hope that the judge will see this for what it is a nuisance suit, with no legitimate merit ... based on a contract with no legitimacy; and it will bring to light this company's neglectful and dangerous impact on the any community. In full transparency, I am not, not have I ever been a customer of Roca Labs ... however the allowance of the persistance of charlaton con artistry groups like this are a blight on any market and cause harm to me through making products less viable for all of us. The market is served and the consumer is served by not allowing con men to con. End Roca Labs; they will not be missed ... more over indict its officers for racketeering, fraud, wire fraud, and deceptive practises ... up to and including ... proliferating illegitimate contracts.

[ reply to this | link to this | view in thread ]

30. ![] Anonymous Coward, Sep 22nd, 2014 @ 11:50pm      | insightful | funny | report |

Re: Roca Labs, should be shut down for fraud and deceptive trade.

They're small potatoes and probably will be. If they were one of the big multinationals, no way. Look at the crap the Pharma industry is pulling, daily! And getting away with it, daily!

[ reply to this | link to this | view in thread ]

31. ![] Kevin, Oct 19th, 2014 @ 10:00pm      | insightful | funny | report |

Suits/Freedom of Speech

I agree freedom of speech should be protected. When a person goes to far and their comments become defaming and or slanderous then they can be held libel for sure. People get sued and lose all the time for not wording their "freedom of speech" correctly. Pissedconsumer.com relies on a loophole to try and squeeze between the legal cracks. You can say and do whatever you feel big enough to do, but don't whine if you get sued or in trouble for it. There's a fine line and we should be able to say what we want it seems we just can't offend anyone by it or if it is worded in the wrong manner there will be consequences.

[ reply to this | link to this | view in thread ]

## Add Your Comment

Have a Techdirt Account? Sign in now. Want one? Register here

| | |
|---|---|
| Name | [_____] |
| Email | [_____]  ☐ Get Techdirt's Daily Email |
| URL | [_____] |
| Subject | [_____] |
| Comment | [_____] |

Options    ☐ Save me a cookie

Submit    Preview

- Note: A CRLF will be replaced by a break tag (<br>), all other allowable HTML will remain intact
- Allowed HTML Tags: <b> <i> <a> <em> <br> <strong> <blockquote> <hr> <tt>

<< Comcast Using Packet Injection To Push Its Own...          'Trusted Third Parties' Add One More Link In... >>



**Company**
About Us
Advertising Policies
Privacy

**Contact**
Help & Feedback
Media Kit
Sponsor/Advertise
Submit a Story

**Tools & Services**
Twitter
Facebook
RSS
Techdirt for Mobile
Research & Reports

**More**
Insight Community
Step2
Insider Shop

Brought to you by Floor64

**Dietary supplement company sues website for providing a forum for dissatisfied customers**

Cory Doctorow at 3:00 pm Tue, Sep 9, 2014

SHARE               TWEET                    STUMBLE                    COMMENTS

Roca Labs sells dubious snake-oil like a "Gastric Bypass Alternative," and their terms of service forbid their customers from ever complaining; they say that Pissedconsumer.com committed "tortious interference" by providing a place where disgruntled buyers could air their grievances.



But, you say, PissedConsumer isn't the issue here, right? After all, the company never agreed to those conditions, even if the buyers did agree to them (whether or not they're legally sound). Roca is trying to get around that by arguing that because it has this clause and because PissedConsumer urges angry consumers to complain that the company is "tortiously interfering" with Roca's business because it's encouraging people to break the agreement. I'm not joking.

*Defendants deliberately and tortiously interfere with Roca Lab's customers by encouraging them to breach their customer agreement with Roca as Defendants author or co-author false, malicious and negative posts about Roca that are published on their subject website and Twecred to Twitter's 271 million users.*

'Dietary Supplement' Company Tries Suing PissedConsumer, Citing Buyer's Agreement To Never Say Anything Negative [Mike Masnick/Techdirt]

**DISCUSS**

**READ MORE AT BOING BOING**



**Norwegian atheist velociraptor trike: the movie**

**Mel Brooks cement prank at the Chinese Theater**

**Stellar bargains at Top Shelf Comix's $3 sale!**

AD BY FEDERATED MEDIA

**Inside The Howling Tongues' Rockin' 'Paste' Performance**



-from Paste Magazine-

The Howling Tongues know how to get a crowd moving, but when it comes to

CLICK TO VIEW



ABOUT US    CONTACT    ADVERTISE    PRIVACY    TOS    •    FACEBOOK    TWITTER    RSS    EMAIL

# Exhibit 3

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROCA LABS, INC.,                                        Case No:  8:14-cv-2096-T-33EAJ

       Plaintiff,

   v.

CONSUMER OPINION CORP. and
OPINION CORP.,

       Defendants.

_____/

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR ENTRY OF A TEMPORARY INJUNCTION**

    DEFENDANTS, OPINION CORP & CONSUMER OPINION CORP., hereby

oppose Plaintiff's Motion for Entry of a Temporary Injunction.[1]

**I.    Introduction**

    Roca Labs ("Roca") is a company that *really* wants to avoid criticism.  However, instead

of doing so by delivering a quality product and quality service, it seeks to suppress all criticism

through underhanded (if not illegal) means.  No matter what kind of hyperbole or unsupported

assertions the Plaintiff tries to throw into the docket, *that* is why we are before this Honorable

Court, nothing more, nothing less.

_____

[1] Plaintiff improperly conflates these two entities, but for the purposes of this opposition, the Defendants will forgive this, as it is largely irrelevant to the outcome of the motion.  The Motion is doomed for far less technical reasons than claims against the wrong party.

RANDAZZA | LEGAL GROUP

Roca sells a diet product, as an alternative to gastric bypass surgery. Roca claims that its "components are Guar Gum, Konjac, Inulin, Beta Glucan, Xanthan Gum, Maltodextrin, Vitamins B-6, B-12, C," and flavoring. ECF 2 at 51.[2] Roca claims "these fibers are activated by large amounts of water and occupy most of the stomach, leaving only 20% available for food intake."[3] In other words, Roca Labs' product primarily consists of industrial-food thickening agents that expands and increases the viscosity of water. Declaration of Dr. Thomas Parisi, attached hereto as Exhibit 1 (hereinafter "Parisi Decl.") ¶8. The theory is simple: If you fill your stomach with it, you don't have room, or hopefully desire, to fill it with anything else.[4] A layperson might readily presume that such a scheme would result in weight loss. However, this low-tech, low-research formula is of specious value to many people – as such an approach can lead to health problems and even weight *gain* in some users. Parisi Decl. ¶¶9-10.

Even legitimate, FDA-approved medicines, foods, and medical treatments, will have varying results and physical reactions. Part of how our body of knowledge grows, in the absence of FDA trials, is through consumers sharing their experiences. Parisi Decl. ¶¶15-17. This is almost imperative in the often shady underworld of "nutraceuticals," which are neither FDA approved, nor seemingly regulated by anyone except their producers' own ethics, such as they are.[5] Therefore, consumers need feedback from prior users, so that they can at least have some

---

[2] In a promotional video, a spokes model vacantly reads from a teleprompter and misleadingly states that the ingredients are "approved by the World Health Organization," as if that United Nations institute took some time off from fighting ebola in order to stamp its imprimatur on Roca's concoction. <youtube.com/watch?v=0wNYozD1XEM> (last visited 15 Sept. 2014).

[3] <youtube.com/watch?v=0wNYozD1XEM>

[4] <youtube.com/watch?v=gJ9UeimqSqs&list=UUl7sVLkpP6ivf1P8BIyPW_g>

ability to predict side effects or efficacy issues.  Parisi Decl. ¶18. Without this feedback, the public is put at risk.  Parisi Decl. ¶19. But, Roca shows little concern for what happens to its users – if its product works for them, then Roca wants that information out there, but woe unto the user who gets sick or finds it ineffective.  If they don't keep their traps shut, Roca threatens to sue them.  See Exhibit 2 (Example of Roca's threats issued to dissatisfied customers); see also Exhibit 3, Declaration of Jennifer Schaive ("Schaive Decl.") ¶11).[6]

The Defendants provide a consumer review site upon which users share their experiences with any number of consumer goods and services.  See Exhibit 4 (declaration of Michael Podolsky (hereinafter Podolsky Decl.")).   Roca Labs is only one of thousands of businesses reviewed on Defendants' site.  Podolsky Decl. ¶8. Some reviews are negative.  Some are gushingly positive.  The Defendants do not author any of the reviews, which are all provided by third parties.  Podolsky Decl. ¶9. With respect to content, the Defendants are agnostic, hoping that the power of the marketplace of ideas will give consumers the ability to make an informed decision about whether they wish to put Roca Labs' concoction into their bodies, and whether they trust their health to this "nutraceutical" manufacturer.  Podolsky Decl. ¶10.

---

[5] Roca Labs discloses a number of possible side effects, in a YouTube video starring "Dr. Ross Finesmith."
<youtube.com/watch?v=sfZpZ-0zTus&list=UUl7sVLkpP6ivf1P8BIyPW_g>
<youtube.com/watch?v=F7HQx2oZxY8&list=UUl7sVLkpP6ivf1P8BIyPW_g>
However, "Dr." Finesmith does not appear to be a physician licensed in any state.

[6] Some of these threats are signed by a "paralegal" who purports to "represent" Roca Labs.  See Exhibit A to Schaive Decl.  Among other concerns, this is the unauthorized practice of law.  Activity that involves an important legal right of another is the practice of law. See *Florida Bar v. Sperry*, 140 So. 2d 587, 591 (Fla. 1962), vacated on other grounds, 373 U.S. 379 (1963); *Florida Bar v. Warren*, 655 So.2d 1131 (Fla. 1995) (corresponding with parties relative to a legal matter constitutes the practice of law).

A critical reader would likely presume that something is amiss upon reading the key clause in Roca Labs' purchase terms.[7]  ECF 2 at 46.  "*In exchange for a significant discount… customers contractually agree that, regardless of their outcome, they will not speak, publish, print, blog or write negatively about ROCA or its products in any forum.*"  ECF 2 at ¶ 24, ¶144.  However, these same terms fail to disclose the amount of this "discount" or "subsidy."  ECF 2 at 46; *see* Walsh Decl. ¶4.  Roca then requires its customers to agree *inter alia* that they "*consent to and agree to entry of an injunction… in enforcement of your violation of this term and condition,*" and that the customer will then pay an elevated price for the product.  ECF 2 at ¶ 130-131, 136.  This is alongside the company's "no refunds" and "no returns" policies, and a waiver of any chargeback rights even if the product never arrives.  ECF 2 at 48-49.  See Exhibit 6 (declaration of Tameka Anderson, describing the inequity of Roca Labs' "no refunds" policy); *see also* Schaive Decl. ¶¶13-19.  Roca Labs tries to scare its customers with clauses that provide it with a unilateral right to recoup not only an elevated price for the product, but "*any expenses we incur in resolving the issue*", and that if any of them make a negative comment, it will (apparently even if true) "*constitute defamation per se, entitling [Roca Labs] to injunctive relief and damages.*"[8]  ECF 2 at 53.  The *coup de grace* is a section providing for a one-sided attorneys' fees provision, if a user dares to utter a negative word in public.

> Your breach of the Agreement as it relates to your obligation to refrain from making, posting, or otherwise commenting negatively about the Formula, Website, or The Company, is deemed a material breach of the Agreement, and

---

[7] That is, if they read them.  They do not appear to be something the average consumer would read or could understand.  *See* Exhibit 5, Declaration of Margaret Walsh ("Walsh Decl.") ¶4.

[8] While Roca may claim that this provision amounts to a stipulation of irreparable harm justifying injunctive relief, the Court is not bound by such a purported stipulation between the parties.  *Clark v. Merrill Lynch*, 1995 U.S. Dist. LEXIS 11541 (M.D. Fla. June 15, 1995).

you agree to pay all costs and attorney's fees related to The Company's subsequent efforts to enforce this term of the Agreement.[9]

ECF 2 at 58-59.

Does that sound like an upstanding company that stands behind its safe and reliable product? Or does that sound like a disreputable company, producing tubs of snake oil (or snake goop, as it were), and which knows that too much truth will hurt its fly-by-night bottom line? Roca Labs is desperately trying to force a cone of silence over each and every customer that discovers that Roca Labs' product is not only a specious remedy for their weight issues, but a potential cause of additional health problems.[10] Plaintiff, desperate to sell as many of its tubs of goo to the public as it can before regulatory agencies come knocking does its best to bully its former customers into silence. Schaive Decl. ¶11; Exhibit A to Schaive Decl.

Roca Labs now seeks this Court's assistance to scrub consumer review sites of negative reviews, or seemingly any reviews at all, by filing this lawsuit. Roca wishes to deprive the public of these reviews, even if they might alert a consumer to a possible health crisis. In this spirit, Roca comes to this Court seeking a prior restraint, unethically trying to cast a sanctionable defamation claim as something else, in the hope that this Court will not notice.

//

//

//

---

[9] Presumably, Roca Labs' demand for attorneys' fees in the prayer for relief is based upon its position that the Agreement is enforceable against the Defendants, and thus Roca Labs believes that this clause binds the Defendants as well.

[10] Noting that the Defendant is a New York company, it sounds to the Defendants like Roca is a company that wants to be called to task for violating New York law. This kind of agreement was held to be not only unenforceable, but subject to fines and injunctive relief prohibiting any further use of such language in New York. See *People v. Network Assocs.*, 758 N.Y.S.2d 466; 195 Misc. 2d 384 (N.Y. Sup. Ct. 2003).

## II.     Legal Analysis

### A.     Entry of a preliminary injunction is impermissible in this case

Temporary injunctive relief is not available to plaintiffs seeking to suppress allegedly defamatory speech.  *Concerned Citizens for Judicial Fairness v. Yacucci*, 2014 Fla. App. LEXIS 13670 (Fla. 4th DCA Sept. 3, 2014); *Vrasic v. Leibel*, 106 So. 3d 485, 486 (Fla. 4th DCA 2013); *Chevaldina v. R.K./FL Mgmt., Inc.,* 133 So. 3d 1086, 1091 (Fla. 3d DCA 2014).[11]  Presumably for that reason, Roca Labs has attempted to disguise this defamation claim as a Florida Deceptive and Unfair Trade Practices Act (FDUTPA) and tortious interference claim in order to try to side-step the clear case law that cuts against it in defamation actions.  But, no matter many times you call a "dog" a "duck," it will neither lay eggs nor quack.[12]  Styling a baseless defamation claim as something else does not shield it from First Amendment scrutiny and render palatable the most odiferous and despised remedy known to our courts – the prior restraint.  This exceptional relief is impermissible under Florida law and the First Amendment.

A prior restraint is an advance limitation on First Amendment activity. *Fantasy Book Shop, Inc. v. City of Boston*, 652 F.2d 1115, 1120 (1st Cir. 1981).  This includes an injunction that prohibits speech prior to a determination that the speech is unprotected. See *Near v. Minnesota*, 283 U.S. 697, 75 L. Ed. 1357, 51 S. Ct. 625 (1931).  There is a "heavy presumption" against their validity.  *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558, 43 L. Ed. 2d 448, 95 S. Ct. 1239 (1975); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 9 L. Ed. 2d 584, 83 S. Ct. 631 (1963); *New*

---

[11] This is even the case when the speech is *false*.  *Town of Lantana v. Pelczynski*, 290 So. 2d 566, 569 (Fla. 4th DCA 1974) ("Freedom from prior restraint upon speech and press extends to false, as well as true statements.")
[12] *See Fla. Bar v. Neiman*, 816 So. 2d 587, 599 (Fla. 2002) (Describing the "duck test").  This case involves the "inverse duck test."

*York Times Co. v. United States*, 403 U.S. 713, 714, 29 L. Ed. 2d 822, 91 S. Ct. 2140 (1971);

*Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419, 29 L. Ed. 2d 1, 91 S. Ct. 1575 (1971).

Nevertheless, the Plaintiff comes to this Court, with clearly inapplicable claims, attempting to engage in misdirection – by asking the court to avert its gaze from the fact that what the Plaintiff truly wants is a prior restraint removing consumer reviews from publication before a trial. That is a textbook example of a prior restraint, and as explained above, the Supreme Court has *roundly rejected* prior restraints. See *Kinney v. Barnes*, 57 Tex. Sup. J. 1428 at n.7, 2014 Tex. LEXIS 764 (Tex. 2014) (citing SOBCHAK, W., THE BIG LEBOWSKI, 1998).

Perhaps after a trial, if the proper defendants (the authors of the comments) appeared in the case, *and* their speech was found to be unlawful, a narrow injunction *might* issue, but even *that* would be a challenging exercise, for even injunctions against speech that come *after* a trial are usually impermissible prior restraints. See Erwin Chemerinsky, *Injunctions in Defamation Cases*, 57 SYRACUSE L. REV. 157, 165 (2007); see also *Oakley, Inc. v. McWilliams*, 879 F. Supp. 2d 1087, 1089 (C.D. Cal. 2012) ("Injunctions against any speech, even libel, constitute prior restraints: they prevent[] speech before it occurs, by requiring court permission before that speech can be repeated." (citation and internal quotation marks omitted)).

Nevertheless, Roca Labs asks this Court to invite a prime specimen of the precise genus and species of the most despised of all constitutional vermin. *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) (holding that prior restraints are "the most serious and least tolerable infringement on First Amendment rights"). This particular prior restraint would, quite likely, be the most offensive one that we could consider – as it seeks to suppress warnings about products

that have *actually made people ill.* Walsh Decl. ¶¶6-8.[13] Roca Labs wants this Court to help it hide the truth -- that its products make some people sick. Parisi Decl. ¶11-13; Walsh Decl. ¶¶6-8. This is information that needs to be disseminated to allow consumers to make an informed decision about Roca's product -- not censored.

Defamation plaintiffs seeking prior restraints are hardly rare. After all, if a company can enlist the power of the courts to stop criticism of its business practices, it scores a coup. But, as the Supreme Court said in *Organization for a Better Austin v. Keefe*, in overturning one, "[n]o prior decisions support the claim that the interest of an individual in being free from public criticism of his business practices . . . warrants use of the injunctive power of a court." 402 U.S. 415, 419-20 (1971). There are no modern cases in which a court has granted a preliminary injunction in a defamation claim that withstood appellate scrutiny. Armed with this knowledge, the Plaintiff attempted to dress up its defamation claim as a one of tortious interference and FDUTPA. This clumsy and unsuccessful sleight of hand[14] was an attempt to try to side-step the clear case law that cuts against prior restraints in defamation actions, and it is not a new page in the would-be censor's playbook. In *Chevaldina v. R.K./FL Mgmt.*, 133 So. 3d 1086 (Fla. 3d DCA 2013), the

---

[13] The complained-of statements are about evenly split between warnings about Roca Labs' product causing health problems, it simply not working, and complaints about Roca Labs' business practices, including the very "gag clause" that they seek to invoke in this case. Even in the absence of the Constitutional presumption against such an injunction, the negative policy implications of such an injunction are staggering.

[14] Despite claiming a right to injunctive relief under specious tortious interference and FDUTPA claims in the Motion ECF 5, the Plaintiff simply uses such claims as point headings, while still speaking in defamation terms. For example, in arguing that there is irreparable injury, the Plaintiff does not claim that existing contracts will be tortiously interfered with, nor that it will be deceived by an unfair business practice. Instead, the alleged harm is reputational. "Roca has already suffered harm to its reputation … Each week approximately one thousand people see the false and malicious negative reviews… Once a posting is made… damage to Roca's reputation is done…" ECF 5 at 15. Despite sprinkling the words FDUTPA and "tortious interference" in where we have placed ellipses, the Plaintiffs fail to turn this into anything but a garden variety defamation claim, where the Plaintiff should join countless others who have failed to convince a court to grant a prior restraint.

plaintiff tried to dress up its defamation claims as tortious interference claims for the purposes of seeking a preliminary injunction.  The trial court erroneously granted the motion, but the 3d DCA did not let it stand.  *Id.*[15]

Even if we were to suspend the First Amendment for the purposes of this case, the motion would still fail. Roca cannot possibly prevail on the claims raised in the motion, and thus, cannot show a *possibility*, much less a *likelihood* of success on the merits.  The Defendants are immune under 47 U.S.C. § 230, and therefore, is not liable for the content of any statements made by third parties, and thus none of the claims should survive even cursory review.  Further, the public interest would be grossly disserved by the requested censorship. To boot, there is no urgency supporting a finding of irreparable harm.[16]  Roca Labs failed to offer any evidence or a suggested security amount, violating Fed. R. Civ. P. 65 / Fla. R. Civ. P. 1.610.

## B.   Plaintiff has no likelihood of success on the merits

### 1.   Tortious Interference

To prevail in a tortious interference claim, a plaintiff must show "(1) the existence of a business relationship under which the plaintiff has legal rights; (2) knowledge of the relationship on the part of the defendant; (3) an **intentional and unjustified interference** with that relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the

---

[15] Florida *state* court judges seem less careful when it comes to prior restraints, despite the fact that **every** time they do, they get slapped down by their appellate courts.  See, e.g., *Concerned Citizens for Judicial Fairness v. Yacucci*, 2014 Fla. App. LEXIS 13670 (Fla. 4th DCA Sept. 3, 2014) (overturning unconstitutional prior restraint by Judge Shahood); *Chevaldina v. R.K./FL Mgmt.,*133 So. 3d 1086 (Fla. 3d DCA 2013) (Reversing Judge Leesfield's entry of an unconstitutional prior restraint when plaintiff claimed that the defamatory statements were made in furtherance of tortious interference); *Vrasic v. Leibel*, 106 So. 3d 485 (Fla. 4th DCA 2013) (overturning Judge Ross).

[16] Plaintiff has waited well in excess of two years to seek injunctive relief.  The Tweets Plaintiff complains of date back to at least June 2012.  ECF 2, Exhibit E.  The first comment on <pissedconsumer.com> was posted March 9, 2012.  ECF 2, Exhibit F.  This negates any claim of urgency warranting preliminary relief.

RANDAZZA | LEGAL GROUP

business relationship." *Bortell v. White Mountains Ins. Group, Ltd.*, 2 So. 3d 1041, 1048 (Fla. 4th DCA 2009) (emphasis added), see also *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985). Even if Defendants had knowledge of Roca Labs' customers beforehand, they would have been entirely justified warn them about the questionable product and unethical business practices, (as evidenced by the gag clause of the terms and conditions). "This cause of action requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Ethan Allen Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994).

Plaintiff's tortious interference claim swings on the notion that the Defendants "tortiously interfere[d] with Roca Lab's customers by encouraging them to breach their customer agreement with Roca" by posting reviews on the Defendants' website. ECF 5 at 2. While Defendants assert, *infra*, that this does not constitute tortious interference, neither Defendant denies that the Pissed Consumer website wishes for consumers to review products or services they have tried. But, this does not support liability, as there is no tort in allowing consumers to review products.

"[A]n action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Ethan Allen*, 647 So. 2d at 815. Roca Labs provides no evidence of an agreement which *would have been completed.* It simply speculates that everyone who reads the reviews is someone who was about to purchase Roca's questionable product, but after the would-be-buyer saw a warning that it might make them ill (or that the company requires purchasers to enter into an unconscionable contract) they

Defendant's Opposition to Motion for Preliminary Injunction

thought better of it.  That is not called "tortious interference," that is called "an informed consumer making an intelligent choice."

Further, the basis for Roca's claims is that anyone who purchased the product *must* have agreed to the "gag clause" limiting the customer's right to speak negatively (even truthfully so) about the product or the company.  ECF 5 at 2.  Anyone who did *not* buy the product would have no basis to agree to the gag-provision, and it would be inapplicable.  But, the "Agreement" that these would-be buyers would have entered into is itself unlawful, as discussed *infra.*

Even if these facts could support a tortious interference claim, a relationship with a *past customer* does not provide a basis for the claim.  *Ethan Allen,* 647 So. 2d at 815.  While Roca Labs has burdensome terms and conditions, we can find nowhere among those burdens any obligation to be a repeat customer.[17]  "The mere hope that some of its past customers may choose to buy again cannot be the basis for a tortious interference claim."  *Id.*  Therefore, Roca has no substantial likelihood of prevailing on the merits of its tortious interference claim, because the claim fails as a matter of law.

Finally, the tortious interference claim is barred as duplicative.  In cases addressing this scenario – a plaintiff claiming defamation and basing a claim of tortious interference with business relations upon that supposed defamation – the tortious interference claim is precluded.  *Orlando Sports Stadium, Inc. v. Sentinel Star Co.*, 316 So. 2d 607, 609 (Fla. 4th DCA 1975); *see Easton v. Weir*, 167 So.2d 245 (Fla. 2d DCA 1964) (holding that a single wrongful act gives rise to only a single cause of action).  The single action rule applies to tortious interference claims like the one

---

[17] In fact, repeat business does not seem to be Roca's business plan, and discovery will likely show very few repeat customers.

in this case. "In Florida, a single publication gives rise to a single cause of action." *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002).

In *Orlando Sports Stadium*, the plaintiff filed suit against a newspaper for defamation and tortious interference, alleging that the articles concerning the plaintiff were defamatory. 316 So. 2d at 608. The appellate court found that the defamation and tortious interference claims overlapped because they were based on the same articles and because the "thrust" of the complaint was that these articles were injurious to the plaintiff. *Id.* at 609. The extraneous tortious interference claim was "nothing more than elements of damage flowing from the alleged wrongful publications." *Id.* Roca Labs must establish an additional, distinct action that is not embodied within the defamation causes of action to bring a tortious interference claim. Therefore, without an independent basis, this claim itself cannot be sustained, much less serve as the basis for injunctive relief.

## a.    Roca Labs' Agreement is Unenforceable

Roca Labs uses the "Agreement" with their customers as the basis for much of its complaint. *"In exchange for a significant discount… customers contractually agree that, regardless of their outcome, they will not speak, publish, print, blog or write negatively about Roca or its products in any forum."* ECF 6 at 5 (emphasis added). Preliminarily, no Defendant is a party to, or bound by, this contract, and neither has an obligation to respect it. "[A] contract does not bind one who is not a party to the contract, or who has not agreed to accept its terms.'" *Marlite, Inc. v. Eckenrod*, 2012 U.S. Dist. LEXIS 118140, 2012 WL 3620024 (S.D. Fla. July 13, 2012), *citing Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1074-75 (11th Cir. 2003).

Even if the Defendants were so bound, the "gag clauses" in the Agreement are unconscionable and unenforceable, as to *anyone*. An unconscionable contract is one "'such as no

man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'" *Hume v. United States*, 132 U.S. 406, 411 (1889) (quoting *Earl of Chesterfield v. Janssen*, 28 Eng. Rep. 82, 100 (Ch. 1750)).[18] "In general, an unconscionable contract has been defined as one which is so grossly unreasonable as to be unenforceable because of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *King v Fox*, 7 NY 3d 181, 191 (2006); *see also McCollum v. Xcare.net, Inc.*, 212 F. Supp. 2d 1142, 1148 (N.D. Cal. 2002) (noting that "the California Supreme Court defined an unconscionable contract as one that considered in its context, is unduly oppressive"). Roca Labs complains that it put the Defendants on notice of the unconscionable contract, and on that basis claims that it compelled them to respect its outrageous (and unlawful) terms.

> The standard for injunctive relief with respect to restrictive covenants requires plaintiff to plead and prove: (1) the existence of an enforceable contract, including a statutorily-defined legitimate business reason supporting each restrictive covenant; (2) defendants' intentional breach of the restrictive covenants; and (3) that plaintiff has no adequate remedy other than injunctive relief.

*Milner Voice & Data, Inc. v. Tassy*, 377 F. Supp. 2d 1209, 1214 (S.D. Fla. 2005). Roca Labs cannot use the gag clauses as the basis for seeking injunctive relief, even as it applies to its customers who wrote the reviews on the Defendants' website, because Roca Labs has presented no legitimate business reason to support the gag clause.

> Legitimate business interest may include trade secrets; valuable confidential business or professional information that otherwise does not qualify as trade secrets; substantial relationships with specific prospective or existing customers; or customer goodwill

---

[18] Roca's contract is procedurally unenforceable as well as substantively so. Nowhere in their "Agreement" do they so much as discuss how much the "discounted" price is. This two-tiered pricing is an illusion. See *In re Zappos, Inc.*, 893 F. Supp. 2d 1058, 1064 (D. Nev. 2012).

associated with: an ongoing business by way of trade name, trademark, service mark, or 'trade dress,' or a specific geographic location, or a specific marketing or trade area.

*United Subcontractors, Inc. v. Godwin*, 2012 U.S. Dist. LEXIS 67061, 18, 2012 WL 1593173 (S.D. Fla. Feb. 3, 2012). Preventing customers from providing their opinion of Roca Labs' product is not a legitimate business interest, but instead is itself a deceptive trade practice. Any act "which unfairly takes advantage of the lack of knowledge, ability, experience or capacity of a consumer; or results in a gross disparity between the value received by a consumer and the price paid, to the consumer's detriment" constitutes an unconscionable trade practice. See *People v. Network Assocs.*, 758 N.Y.S.2d 466; 195 Misc. 2d 384 (N.Y. Sup. Ct. 2003). Deceiving customers about their ability to post factual reviews about the product online is itself unlawful in the Defendants' home district. *Id.* Of course, the end result of this unconscionable agreement is that the only information about this product that can be readily obtained is the fluff disseminated by the Plaintiff. Therefore, consumers buying this product are deprived of the ability to make an informed decision about something that could negatively affect their physical well-being. Parisi Decl. ¶15-19; Schaive Decl. ¶8, 18 And then, once they purchase it, based on information skewed by Roca's bullying of anyone who might share inconvenient truths, Roca refuses to give the consumers refunds if they are dissatisfied or even if they get ill from it. Schaive Decl. ¶¶6-7, 13, 16; Walsh Decl. ¶¶9, 14.

Suppressing consumer reviews is unconscionable and unenforceable – no matter what the product. New York law (the law that governs the Defendants' conduct) prohibits user agreements that restrict a customer's right to discuss the services. See *People v. Network Assocs.*, 758 N.Y.S.2d at 469. This is even more so when we consider the context. While Plaintiff calls its product a "food additive" (presumably to avoid FDA regulation), is the concoction a drug, a

food, or something else?  Whatever it is, this is a product that has made some consumers sick. Walsh Decl. ¶¶6-8.  Forcing them to remain silent, thus depriving other victims of the ability to make an informed decision, is unconscionable.

### 2.    FDUTPA

It is most ironic that Roca Labs seeks to invoke FDUTPA in this case, given its own practices.  The purpose of FDUTPA is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. §501.202(2); see also *Natural Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325 (11th Cir. 2008).  A proper analogy here might involve a pot and a kettle.

FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *City First Mortg. Corp. v. Barton*, 988 So.2d 82, 86 (Fla. 4th DCA 2008) (quoting *Rollins*, 951 So.2d at 869, *rev. den.*, 962 So.2d 335 (Fla. 2007)).  But, the *sine qua non* of a FDUTPA claim is that the plaintiff must be a consumer or a competitor wronged by the defendant's conduct.  *See Kertesz v. Net Transactions, Ltd.*,635 F. Supp. 2d 1339, 1349 (S.D. Fla. 2009) (holding that the original version of FDUTPA applied only to "consumers."  Legislative change of this term to "person" encompassed businesses, but did not broaden the degree of factual standing to bring a FDUTPA claim); *Dobbins v. Scriptfleet, Inc.*, 2012 U.S. Dist. LEXIS 23131, 2012 WL 601145 (M.D. Fla. Feb. 23, 2012) (same).  FDUTPA requires a consumer transaction. *Monsanto Co. v. Campuzano*, 206 F. Supp. 2d 1239, 1251 (S.D. Fla. 2002).

Florida courts clarified that while the language of the FDUTPA was amended with the 2001 revision, and substituted the word "person" for "consumer," there still must be a consumer relationship between the parties, to provide for FDUTPA standing.

[T]he legislative intent of the 2001 amendment was to clarify that 'remedies available to individuals are also available to businesses,' as opposed to creating a cause of action for non-consumers. Accordingly, the Court is not convinced that the 2001 amendment to FDUTPA creates a cause of action for [two parties], when there is no consumer relationship between them.

*Dobbins v. Scriptfleet, Inc.*, citing *Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1349 (S.D. Fla. 2009) (quoting Senate Staff Analysis and Economic Impact Statement, Florida Staff Analysis, SB 208, March 22, 2001, at p. 7). Roca is not a consumer of Defendants' services, and has not provided any evidence to suggest that it is. Roca Labs lacks FDUTPA standing.

Even if Roca had standing, it could not sustain a FDUTPA claim. Under the Act, an "unfair practice" is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *PNR, Inc. v. Beacon Prop. Mgmt.*, 842 So. 2d 773, 777 (Fla. 2003) (quoting *Samuels v. King Motor Co.*, 782 So.2d 489, 499 (Fla. 4th DCA 2001)). A "deceptive act" occurs when there is a "representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *PNR, Inc.*, 842 So.2d at 777 (quoting *Millennium Communs. & Fulfillment, Inc. v. Office of the AG, Dep't of Legal Affairs*, 761 So.2d 1256, 1263 (Fla. 3d DCA 2000)).

In this case, any affected consumer would be one who received an honest review from the Pissed Consumer website, and thus made an informed decision to purchase or not purchase the product. This is precisely the opposite of a FDUTPA claim.

Plaintiff says that a "practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious." ECF 5 at 12. Defendants agree. The suppression of consumer reviews, some of which warn consumers of negative health consequences, fits that description. Meanwhile, no reasonable person could

contort that definition into "allowing consumers to share their experiences to the benefit of other consumers."

Let us presume, *arguendo*, that Defendants are the evil conspiracy that Roca paints them to be; even reprehensible conduct is not actionable under FDUTPA absent loss or damage to a consumer. *Hetrick v. Ideal Image Dev. Corp.*, 758 F. Supp. 2d 1220, 1229-30 (M.D. Fla. 2010), citing *General Motors Acceptance Corp. v. Laesser*, 718 So. 2d 276, 277 (Fla. 4th DCA 1998). There is no identifiable loss or damage to a consumer here, and unless Roca is a consumer of the Defendants' services or products, it lacks standing to bring such a claim on behalf of other consumers who have no quarrel with the Defendants. Roca Labs calling this business "immoral," is not enough to give it standing under FDUTPA[19] (although it is ironic).

Furthermore, FDUTPA has no extraterritorial effect over these New York defendants. See *Carnival Corp. v. Rolls-Royce PLC*, 2009 U.S. Dist. LEXIS 107261 (S.D. Fla. Nov. 17, 2009) (holding "Plaintiffs' claim that Defendants violated FDUTPA must be based entirely on actions that occurred within Florida"); *Millennium Communications & Fulfillment, Inc. v. Office of Attorney General*, 761 So.2d 1256, 1262 (Fla. 3d DCA 2000) (affirming that the purpose of FDUTPA is to prohibit unfair and deceptive practices which transpire within Florida). Defendants are New York corporations, and consumers that post reviews on the Pissed Consumer website hail from

---

[19] Even if its practices are "unethical," which they are not, as a § 230 protected business, it still has immunity: Claims against another, far more maligned, consumer review business famously failed in Florida. "The business practices of Xcentric, as presented by the evidence before this Court, are appalling. Xcentric appears to pride itself on having created a forum for defamation. No checks are in place to ensure that only reliable information is publicized… However much as this Court may disapprove of business practices like those embraced by Xcentric, the law on this issue is clear. Xcentric enjoys complete immunity from any action brought against it as a result of the postings of third party users of its website." *Giordano v. Romeo*, 76 So. 3d 1100, 1102 (Fla. 3d DCA 2011).

all over the world.  The only thing that seems to have occurred in Florida is that Roca Labs itself engaged in questionable business practices here.

As if we need more, Plaintiff has no evidence of damages.  "Proof of actual damages is necessary to sustain a FDUTPA claim." *Dorestin v. Hollywood Imps., Inc.*, 45 So. 3d 819, 824 (Fla. 4th DCA 2010); *see Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984). Instead, Plaintiff makes generic, broad sweeping statements that it suffered damage.  ECF 6 at 14.  This is insufficient.  Further, it is not "damages" if a potential customer thinks better of the transaction after receiving truthful information about a product or a company's questionable business practices.  That is the marketplace of ideas at work.

Despite Roca's claims of Defendants' morality lapses, the only thing that is unethical in this case is that Roca Labs wishes to keep negative data out of the public eye – presumably so that any health problems it causes will never be reported in the light of day.  Parisi Decl. ¶¶20-22. The only thing that Roca Labs bases its claims of "immorality" upon is the fact that it does not want the truth out there – that its product does not work for everyone, and it makes some people sick.  Parisi Decl. ¶¶12-13, 24; Walsh Decl. ¶¶6-8.  Roca now wants this Honorable Court to be its censor, ordering these shared experiences wiped from publication, before a trial on the merits.  If this Court does so, then the next victim is on this Court's conscience.

### 3.    Defamation

Plaintiff only cites to tortious interference and FDUTPA as the basis for its request for a prior restraint, presumably because a preliminary injunction is not available in defamation cases. Nevertheless, they base the request on the foundation that the contents of the third party posts published on <pissedconsumer.com> are false and defamatory.  ECF 2 at 33.  Even if they are, the Pissed Consumer website is subject to immunity under 47 U.S.C. § 230, and cannot be held

liable for the content of statements made by third parties, not even for equitable remedies.  See *Giordano v. Romeo*, 76 So. 3d 1100 (Fla. 3d DCA 2011).

### a.      Section 230

The Pissed Consumer website only hosts third-party produced content appearing on <pissedconsumer.com> and is neither the author nor the editor of the reviews.  Podolsky Decl. ¶9.  Because it is a service provider, and not a publisher, Defendants are immune from liability under 47 U.S.C. § 230 (the "Communications Decency Act" or "CDA").  "The purpose of the CDA is to establish 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'" *Alvi Armani Med., Inc. v. Hennessey*, 629 F. Supp. 2d 1302, 1306 (S.D. Fla. 2008), quoting *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321-1322 (11th Cir. 2006).  In order to qualify as a service provider under Section 230, (1) the defendant must be a provider or user of an interactive computer service; (2) the cause of action must treat the defendant as a publisher or speaker of information; and (3) the subject information must be provided by another information content provider.  *Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*, 2008 U.S. Dist. LEXIS 11632, 26, 2008 WL 450095 (M.D. Fla. Feb. 15, 2008).  While Plaintiff wants to hold Defendants liable as the "publisher" of the Tweets that are generated from reviews posted on <pissedconsumer.com>, the Tweets are automatically broadcast third party statements, and are not written by the Defense.  Podolsky Decl. ¶11.  Accordingly, even this creative argument fails as a matter of law.

"[L]awsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions-such as deciding whether to publish, withdraw, postpone or alter content-are barred by the CDA."  *Hopkins v. Doe*, 2011 U.S. Dist. LEXIS 136038, 4, 2011 WL 5921446 (N.D. Ga. Nov. 28, 2011), citing *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir.

1997). Reviews posted on Pissed Consumer are automatically disseminated on Twitter, but that does not make Defendants "publishers" under the CDA, but instead falls within the purview of immunity. Defendants' users authored the statements. Dissemination of them does not trigger a § 230 exception. Disseminating the content to the public is not enough. "A 'provider' of an interactive computer service includes websites that host third-party generated content." *Regions Bank v. Kaplan*, 2013 U.S. Dist. LEXIS 40805, 47, 2013 WL 1193831 (M.D. Fla. Mar. 22, 2013); citing *Doe v. Friendfinder Network, Inc.*, 540 F. Supp. 2d 288, 293 (D.N.H. 2008).

Furthermore, Plaintiff is attempting to confer liability on Defendants as "co-authoring" the posts on the website because there is a set form that third-party users must use to submit reviews. However, providing a form for third parties to submit information to the website is also not sufficient to give rise to liability.

> The website's content submission form simply instructs users to '[t]ell us what's happening. Remember to tell us who, what, when, where, why.' The form additionally provides labels by which to categorize the submission. These tools, neutral (both in orientation and design) as to what third parties submit, do not constitute a material contribution to any defamatory speech that is uploaded.[20]

The submission form in this case is also neutral, and does not amount to "material contribution" such that could give rise to liability as the publisher of the third-party statements.[21]

Since Section 230 bars its claims against the Defendants, Plaintiff cannot show by clear and convincing evidence that it has a strong likelihood of success on the merits to warrant granting an injunction on any claims in this case at all.

---

[20] *Jones v. Dirty World Entm't Recordings, et al.*, 755 F.3d 398, 416 (6th Cir. 2014).

[21] The Plaintiff tries to rely upon the Ninth Circuit's decision in *Fair Hous. Council v. Roommates.com, LLC* for this argument, but in *Roommates*, the users had no choice but to render unlawful statements by using a drop down menu. 521 F.3d 1157, 1166 (9th Cir. 2008). This is why Roommates.com was held liable, and this is a most narrow ruling that does not constitute the wide gap in section 230 claimed by the Plaintiff. *Id.*

## C.     The Harm of an Injunction Outweighs its Benefit

The Plaintiff must prove that the alleged threatened injury to it would not disserve the public interest.  Silencing consumers, who share presumptively First Amendment protected opinions, because Roca Labs wants to sell more unverified product to make more people sick, harms the public interest because of the censorship inherent in the relief.  Furthermore, there are likely hundreds of other individuals who may be bilked just as prior customers were, by a product that not only does not guarantee weight loss, but may actually cause substantial medical harm.  Parisi Decl. ¶11-13. The public has a right to know about side effects and health hazards, and the Pissed Consumer website. provides a service that allows individuals to provide their experiences and opinions, both positive and negative, in order to create a better-informed public.  "Consumer reporting plays a vital role in ensuring that a company's desire to maximize profit, if abused, will not go unnoticed; and online fora for the exchange of those ideas play an increasingly large role in informing consumers about the choices that make sense for them." *Neumont Univ., LLC v. Little Bizzy, LLC*, 2014 U.S. Dist. LEXIS 69168 (D. Nev. May 20, 2014).

If the Court issues a prior restraint in this case, it will silence consumer warnings about a dangerous product.  Further, it would violate core First Amendment principles, and impinge on the public right to receive this information.  Plaintiff does not attempt to balance the equities to determine the relative harms.  Instead, Plaintiff simply states "Defendants will suffer little or no harm by ceasing to interfere with our contractual relationships and removing the interfering postings about Roca."  ECF 5 at 16.  Meanwhile, Plaintiff says nothing of the damage to free expression, nor of the damage to the public's right to know.

The standard is not whether suppressing free speech rights of Defendant would harm the Defendant (which it would), but instead, it is a balancing test of whether the harm to the

defendant and the public interest, if the injunction were granted, would outweigh the harm to the plaintiff if the injunction were not granted. Consumer protection and review sites are of the utmost constitutional importance. See, e.g., *Neumont Univ., LLC v. Little Bizzy*, LLC, 2014 U.S. Dist. LEXIS 69168; *Carver v. Bonds*, 135 Cal. App. 4th 328, 343 (2005). Postings intended to aid consumers in choosing among service providers, are "directly connected to an issue of public concern." See *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 897 (2004). Plaintiff cannot articulate any compelling interest sufficient to outweigh the harm to Defendant's rights of free speech, nor the public's right to know.

## D.     Plaintiff Shows No Irreparable Harm

Plaintiff simply, and generically states that "[i]f the injunction is not granted, Roca will face a substantial threat of irreparable injury." ECF 5 at 15. However, it offers up no evidence in support of this request for highly extraordinary relief.[22]

### 1.     Delay is fatal to Plaintiff's claim of irreparable harm

Plaintiff claims irreparable harm, yet waited more than two years to bring a claim. "Delay, or too much of it, indicates that a suit or request for injunctive relief is more about gaining an advantage (either a commercial or litigation advantage) than protecting a party from irreparable harm." *Pippin v. Playboy Entm't Group, Inc.*, 2003 U.S. Dist. LEXIS 25415, 5-6, 16 Fla. L. Weekly Fed. D 506 (M.D. Fla. July 1, 2003) (internal citations omitted). *See Love v. Blue Cross & Blue Shield of Ariz., Inc.*, 2010 U.S. Dist. LEXIS 39988, 38-39, 2010 WL 1249120 (S.D. Fla. Mar. 25, 2010) (delay is sufficient to deny a request for preliminary injunction), *Citibank, N.A. v.*

---

[22] Defendants agree that the more dissemination of the truth, the less Roca will likely sell. But, this is not a legal harm. It is as if a mugger were to sue for an injunction preventing someone from warning passer-by that the criminal is waiting in a dark alley, and that they should take an alternate route.

*Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) (finding that a ten week delay was sufficient to negate a plaintiff's claim of irreparable harm); *Badillo v. Playboy Entm't Group, Inc.*, 2004 U.S. Dist. LEXIS 8236, 8, 17 Fla. L. Weekly Fed. D 529 (M.D. Fla. Apr. 16, 2004) (finding that "a nine month delay is fatal in this case to Plaintiffs claims of irreparable harm").

### 2.     Plaintiff Has An Adequate Remedy at Law

The second requirement of demonstrating irreparable harm is that there must exist no adequate remedy at law.  The burden of irreparable injury cannot be met by mere economic injury.  "An injury is irreparable only if it cannot be undone through monetary remedies." *Taylor v. Florida State Fair Auth.*, 1995 U.S. Dist. LEXIS 17786, 17-18 (M.D. Fla. Aug. 15, 1995) *citing Sampson v. Murray*, 415 U.S. 61, 90, 94 S. Ct. 937, 953 (1974).  Courts that have analyzed this issue have found that defamation is a claim arising under law, not equity, and for which claimants are entitled only to legal relief (i.e., monetary damages). *See In re King World Productions*, 898 F.2d 56, 60 (6th Cir. 1990) (holding that fact that a physician may be embarrassed by publication of video allegedly showing him engaging in medical malpractice did not justify temporary restraining order).  Moreover, economic loss, even if difficult to quantify, is no basis for the entry of a preliminary injunction restricting speech." *Bollea v. Gawker Media, LLC*, 2012 U.S. Dist. LEXIS 162711, 13, 105 U.S.P.Q.2D (BNA) 1496, 40 Media L. Rep. 2601 (M.D. Fla. Nov. 13, 2012). Finally, Roca seems to have no trouble calculating its damages.  Roca says that every person who views the reviews is a *certain* customer, and thus Roca loses one sale.  If their claims are true, then the calculation is simple – count the views and multiply by the purchase price.[23]

*//*

---

[23] Defendants do not agree that this claim has any basis in fact or logic, but if it was good enough for the Plaintiffs to demand payment, they should be estopped from arguing that they now can't possibly do the math.

## E. Plaintiff Fails to Pledge Security

Federal Rule of Civil Procedure 65(c) provides that a district court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Fed. R. Civ. P. 65(c). A preliminary injunction is improper where a plaintiff "did not provide any such security, and the district court was unable to discern what amount was proper under Rule 65(c) because [the plaintiff] failed to adequately set forth facts on which the Court [could] make a reasoned determination as to the amount of security which must be posted." *Jones v. Brown*, 518 F. App'x 643, 644 (11th Cir. 2013). That is where we are now.

Additionally, in the alternative, as this Motion was initially filed in state court, Florida Rule of Civil Procedure 1.610 requires a movant to give bond in an amount the court deems proper before issuing a preliminary injunction. Fla. R. Civ. P. 1.610(b). "The purpose of an injunction bond is to provide sufficient funds to over the adverse party's costs and damages in the event the injunction is later deemed to have been improvidently entered." *Bieda v. Bieda*, 42 So.3d 859, 862 (Fla.3d DCA 2010). A trial court may not enter a preliminary injunction without complying with the bond requirement. Roca Labs' Motion includes no discussion of the bond requirement, as required under the Florida Rules of Civil Procedure.

In the event that this Honorable Court decides that it wishes to be the first court to ever sustain a prior restraint under the claims brought before it, the Court should note that Roca has brought at least one claim, FDUTPA, where the Defendant should have an opportunity to seek prevailing party attorneys' fees. Given the shotgun pleading in this case, it is clear that this plaintiff will seek to multiply these proceedings out of any proportion that might be reasonable under the law. Accordingly, it is foreseeable that the prevailing party fees in this case will be

above $200,000.  Therefore, any bond should be in excess of $200,000 for this alone, unless the Court wishes to make it clear that this case should end early, given its frivolous nature. Furthermore, if the statements are taken offline, the Defendant will lose months and months of viewers, and the suppression of such content will likely lead to at least a handful of victims with health problems from the concoction – which could have been avoided had the truth remained published.  Therefore, Roca Labs should be compelled to place at least $2.5 million in a "potential victims fund" bond.

## III.    CONCLUSION

Based on the foregoing, this Court must not issue an injunction.  Plaintiff has failed to prove any of the elements necessary to obtain a preliminary injunction, as they have not demonstrated likelihood of success on the merits, they have not demonstrated irreparable harm, and they have not adequately balanced the relative harms to Defendants and the public, to demonstrate that a preliminary injunction is warranted.  The public's interest in free speech and debate would be seriously, and negatively, impacted by an injunction against Defendant in this case.  The injunction Roca Labs wants would constitute an impermissible restraint on speech, one that the Florida courts, and courts around the country, have roundly rejected.

Respectfully Submitted,

*Marc J. Randazza*

_____
Marc J. Randazza, Esq.
Florida Bar No. 625566
RANDAZZA LEGAL GROUP
3625 S. Town Center Drive
Las Vegas, Nevada 89135
Tele:  702-420-2001
Fax: 305-437-7662
Email: ecf@randazza.com

CASE NO.: 8:14-cv-2096-T-33EAJ

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 18, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that a true and correct copy of the foregoing document is being served upon: Paul Berger, Esq. and Nicole Freedlander, Esq., counsel for Plaintiff, via transmission of Notices of Electronic Filing generated by CM/ECF and courtesy copies have been emailed to the following attorneys.

Paul Berger
P.O. Box 7898
Delray Beach, Florida 33482-7898
legal5@rocalabs.com

Nicole Freedlander
P.O. Box 402653
Miami Beach, Florida 33140
nicole@freedlanderlaw.com

Respectfully Submitted,

*Marc J. Randazza*
_____
Marc J. Randazza, Esq.
Florida Bar No. 625566
RANDAZZA LEGAL GROUP
3625 S. Town Center Drive
Las Vegas, Nevada 89135
Tele:  702-420-2001
Fax: 305-437-7662
Email: ecf@randazza.com

RANDAZZA | LEGAL GROUP

Defendant's Opposition to Motion for Preliminary Injunction

# Exhibit 4

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ROCA LABS, INC.,                                   Case No:  8:14-cv-2096-T-33EAJ

      Plaintiff,

v.

CONSUMER OPINION CORP. and
OPINION CORP.,

      Defendants.

_____/

## MOTION FOR AN EMERGENCY TEMPORARY RESTRAINING ORDER AND FOR AN ORDER TO SHOW CAUSE AS TO WHY ROCA LABS SHOULD NOT BE SANCTIONED FOR WITNESS INTIMIDATION

DEFENDANTS, OPINION CORP & CONSUMER OPINION CORP., hereby seek a temporary restraining order enjoining the Plaintiff from taking acts to intimidate and harass defense witnesses in this case, and seek sanctions against Plaintiff for already doing so.

**I.       Introduction**

Roca Labs (hereinafter, "Roca") sells a product, which it describes as a "nutraceutical." This product has questionable results, and has resulted in at least 78 complaints to the Better Business Bureau, and 34 complaints on the PisssedConsumer.com website.  Not only are the results questionable, but Roca's product threatens the health and welfare of at least a portion (if not all) of its users.  ECF 13-5.

To try and suppress consumers from sharing their experiences, including experiences that include negative health consequences, (ECF 13-5 at ¶7) Roca filed the instant action, hoping to put an end to any consumer sharing negative information about their product.  ECF 2 at 46.

In large part, the fulcrum upon which Roca's lever rests is its "Agreement."  ECF 2 at 46.  No matter how negative of an experience consumers have with the Roca product, the Agreement purports to bar them from making any negative statements about Roca's product or its business practices.  ECF 2 at 53-54.  Of course, this Agreement is unconscionable and unenforceable. See ECF 13 at 12.  But, that does not stop Roca from trying to scare consumers nationwide with threats of litigation, in the hope that the only information that will make it to the marketplace is information that Roca approves.

The Defense managed to contact a handful of Roca's prior customers to serve as fact witnesses in this case.  Most whom the Defense reached out to declined to respond, presumably due to the fact that Roca had already threatened them, or our of fear that Roca would retaliate against them for testifying.  Those concerns have proven to be well founded, as Roca has now threatened at least one of the witnesses in this case, Jennifer Schaive.  ECF 13-3.  Attached hereto as Exhibit 1 is the e-mail from Roca Labs to Ms. Schaive, threatening suit against her.  Attached hereto as Exhibit 2 is the declaration of Marc Randazza, Esq. attesting to the authenticity of the e-mail from Ms. Schaive.  Although Roca will likely claim that it simply seeks to enforce its "Agreement," the timing of its aggression against Ms. Schaive makes its intentions transparent – Roca wants to intimidate Ms. Schaive.  Further, its goals are likely broader than that. Roca Labs knows that if it follows through on its threats to file suit against Ms. Schaive, other witnesses will be far more reluctant to come forward.

Motion for Emergency TRO

In order to prevent Roca Labs from unlawfully interfering with witness statements in this lawsuit, the Defense seeks an immediate restraining order preventing Roca from threatening or otherwise harassing Ms. Schaive,[1] Ms. Anderson,[2] and Ms. Walsh,[3] by filing suit against witnesses in this case. Furthermore, Roca should be compelled to immediately disclose any and all communications it has engaged in with potential witnesses in this case, and should be enjoined from engaging in further threatening or harassing communications with any consumers who have negatively reviewed the product, at least until the enforceability of its Agreement has been adjudicated. That should be achieved at the October 8 hearing, and thus the relief sought should only impact Roca for 17 days.

**II.   Legal Analysis**

**A.   Standard for a TRO**

"A temporary restraining order protects against irreparable harm and preserves the status quo until a meaningful decision on the merits can be made." *Schiavo ex rel. Schindler v. Schiavo*, 358 F. Supp. 2d 1161, 1163 (M.D. Fla. 2005). In order to obtain a temporary restraining order, Plaintiff must demonstrate (1) a substantial likelihood that Plaintiff will eventually prevail on the merits; (2) a showing of irreparable injury to the Plaintiff unless the injunction issues; (3) proof that the threatened injury to Plaintiff outweighs whatever damage the proposed injunction may cause Defendant; and (4) a showing that the injunction, if issued, would not be adverse to the public interest. *Johnson v. U.S. Dept. of Agriculture*, 734 F.2d 774, 781 (11th Cir. 1984).

---

[1] ECF 13-3
[2] ECF 13-6
[3] ECF 13-5

Motion for Emergency TRO

No particular quantum of proof is required as to each of the four criteria. *Louis v. Meissner*, 530 F. Supp. 924, 925 (S.D. Fla. 1981) the trial court should use a balancing-type approach. *State of Texas v. Seatrain International, S. A.*, 518 F.2d 175, 180 (5th Cir. 1975) ("none of the four prerequisites has a fixed quantitative value. Rather, a sliding scale is utilized, which takes into account the intensity of each in a given calculus."). Even if the movant has little chance of success on the merits, "the importance of this requirement varies with the relative balance of threatened hardships facing each of the parties." *Louis v. Meissner*, 530 F. Supp. 924, 925 (S.D. Fla. 1981) (citing *Canal Authority v. Callaway* at 576). "Moreover, a showing that plaintiffs will be more severely prejudiced by a denial of the temporary restraining order or injunction then will defendants should it be granted, lessens the standard likelihood of success that must be met." *Id.*

**B.    The Factors**

**1.    There is a Substantial Likelihood that the Plaintiff will Prevail on the Merits of the Gag Clause's Enforceability**

The merits in this context are limited. The only merits that the Court need consider for the purposes of this Motion are the merits of the argument that the Roca "Gag Clause" is unenforceable. If it is not, then the threats against these witnesses (and most of the claims against the Defendants) will immediately evaporate.

The Agreement that Roca threatens these witnesses with is unconscionable. An unconscionable contract is one "'such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'" *Hume v. United States*, 132 U.S. 406, 411 (1889) (quoting *Earl of Chesterfield v. Janssen*, 28 Eng. Rep. 82, 100

(Ch. 1750)).[4]   "In general, an unconscionable contract has been defined as one which is so grossly unreasonable as to be unenforceable because of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."  *King v Fox*, 7 NY 3d 181, 191 (2006); *see also McCollum v. Xcare.net, Inc.*, 212 F. Supp. 2d 1142, 1148 (N.D. Cal. 2002) (noting that "the California Supreme Court defined an unconscionable contract as one that considered in its context, is unduly oppressive").  Roca Labs complains that it put the Defendants on notice of the unconscionable contract, and on that basis claims that it compelled them to respect its outrageous (and unlawful) terms.  Roca Labs has presented no legitimate business reason to support the gag clause.

> Legitimate business interest may include trade secrets; valuable confidential business or professional information that otherwise does not qualify as trade secrets; substantial relationships with specific prospective or existing customers; or customer goodwill associated with: an ongoing business by way of trade name, trademark, service mark, or 'trade dress,' or a specific geographic location, or a specific marketing or trade area.

*United Subcontractors, Inc. v. Godwin*, 2012 U.S. Dist. LEXIS 67061, 18, 2012 WL 1593173 (S.D. Fla. Feb. 3, 2012).  Preventing customers from providing their opinion of Roca Labs' product is not a legitimate business interest, but instead is itself a deceptive trade practice.  Any act "which unfairly takes advantage of the lack of knowledge, ability, experience or capacity of a consumer; or results in a gross disparity between the value received by a consumer and the price paid, to the consumer's detriment" constitutes an unconscionable trade practice.  See *People v. Network Assocs.*, 758 N.Y.S.2d 466; 195 Misc. 2d 384 (N.Y. Sup. Ct. 2003).  Deceiving customers about their ability to post factual reviews about the product online is itself unlawful in the Defendants'

---

[4] Roca's contract is procedurally unenforceable as well as substantively so.  Nowhere in their "Agreement" do they so much as discuss how much the "discounted" price is.  This two-tiered pricing is an illusion.  See *In re Zappos, Inc.*, 893 F. Supp. 2d 1058, 1064 (D. Nev. 2012).

home district.  *Id.*  Of course, the end result of this unconscionable agreement is that the only information about this product that can be readily obtained is the fluff disseminated by the Plaintiff.  Therefore, consumers buying this product are deprived of the ability to make an informed decision about something that could negatively affect their physical well-being.  ECF 13-1 at ¶15-19; ECF 13-3 at ¶¶8, 18.  And then, once they purchase it, based on information skewed by Roca's bullying of anyone who might share inconvenient truths, Roca refuses to give the consumers refunds if they are dissatisfied or even if they get ill from it.  ECF 13-3 at ¶¶6-7, 13, 16; ECF 13-5 at ¶¶9, 14.

Suppressing consumer reviews is unconscionable and unenforceable – no matter what the product. See *People v. Network Assocs.*, 758 N.Y.S.2d at 469.  This is even more so when we consider the context.  While Plaintiff calls its product a "food additive" (presumably to avoid FDA regulation), is the concoction a drug, a food, or something else?  Whatever it is, this is a product that has made some consumers sick.  ECF 13-5 at ¶¶6-8.  Forcing them to remain silent, thus depriving other victims of the ability to make an informed decision, is unconscionable.

Accordingly, the defendants have a substantial likelihood of success on the merits of the issue that the Roca "Agreement" is unenforceable.

## 2.    There Will Be Irreparable Injury Unless the Injunction Issues

This case is in a precarious state.  Roca has tried to intimidate the Better Business Bureau, as well as any consumer who might dare to share his constitutionally-protected opinions of Roca's product.  In this case, much of the defense may turn on testimony by former Roca Labs customers.  If this Court tolerates Roca's intimidation tactics, it will place more of Roca's consumers in fear that they too will be the victims of retaliatory legal action if they testify or discuss their negative experiences with Roca's product in any forum.  Once so frightened, it will

likely be difficult to pry them from their defensive postures.  This Court must show these people

that they need not fear that the Court will turn a blind eye to violations of 18 U.S.C. § 1512.

    3.    **The Threatened Injury Outweighs Whatever Damage the Proposed Injunction may cause to Roca**

        The injunctive relief sought is limited.  The defendants presume that at the October 8, 2014 hearing, the unenforceability of the Agreement's "gag clause" will be resolved.  Accordingly, the TRO can be as limited as a 17-day delay, if the court resolves the enforceability issue at the October 8 hearing.  If the court does not, the defendants will address extending the TRO into a preliminary injunction at that time.  "Fundamentally, temporary restraining orders are designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction."  *Wells v. Daugherty Sys.*, 2014 U.S. Dist. LEXIS 127762 (N.D. Ga. Sept. 12, 2014), see M.D. Fla. Local Rule 4.05 (temporary restraining orders will be entered in emergency cases to maintain the status quo).

    4.    **The Injunction Would Serve the Public Interest**

        The public interest is best served by the federal witness intimidation statute being upheld.  In the absence of our mutual respect for Section 1512, defendants will be subject to the whims and threats of abusive plaintiffs, who may wish to silence witnesses for the other side.  There is no possible way that a 17-day delay in any witness intimidation could adversely affect the public interest.

    5.    **There should be no need for a bond**

        There can be no damages to the Plaintiff in the issuance of a 17-day injunction, forcing the Plaintiff to simply stop committing felonies.  Nevertheless, the Defendants offer a bond of $10 in the interest of formality.

**C.      Witness Intimidation**

**1.      18 U.S.C. § 1512**

Witness intimidation is a crime.   See 18 U.S.C. §1512(b)(1) (Knowingly using intimidation or threats, to "influence, delay, or prevent the testimony of any person in an official proceeding" or attempting to do so, constitutes witness intimidation).  See 18 U.S.C. §1512(d)(1) (Witness tampering includes any action that "intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from attending or testifying in an official proceeding" or attempts to do so).

**2.      Roca's Acts Are Prohibited by 18 U.S.C. § 1512**

While the statute is normally considered in the context of violent threats, "[t]he section was written broadly to encompass non-coercive efforts to tamper with a witness." *United States v. Amato*, 86 F. App'x 447, 450 (2d Cir. 2004) (finding evidence sufficient to support conviction for witness tampering where the defendant, "[c]oncerned [the witness] would testify against him… directed intermediaries… to reach out to [the witness] and deliver a message."  A party offends Section 1512 if it is "motivated by an improper purpose." *United States v. Thompson*, 76 F.3d 442, 452 (2d Cir. 1996).  It is an improper purpose to cause a witness to withhold relevant facts about a defendant's wrongful acts.  See *United States v. Price*, 443 F. App'x 576, 582 (2d Cir. 2011).  Even when there is an absence of evident of intent behind the message, or an absence of evidence concerning the effect thereof, 18 U.S.C. § 1512 acts to prohibit a party from engaging in acts that may negatively influence testimony.  See *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 594-595 (S.D.N.Y.2014).

In this case, there can be no other conclusion, except that Roca's actions violate Section 1512.  The timing of its imminent threats against Ms. Schaive make it clear that the intent is to

intimidate her and any other parties who might be inclined to serve as witnesses in this case. This seems even more clear given that Roca seems to have selectively targeted Ms. Schiave, but did not send similar updated threats to other complaining parties, who have not appeared as witnesses in this case. See *Randazza decl.*  Even if Roca's behavior is a coincidence, there can be no question that it has had the *effect* of intimidating Ms. Schaive.  Further, it is clear that once Roca files its suit against Schaive, it will use that information to try and intimidate other witnesses.  One need look no further than the email sent to Ms. Schiave today, in which Roca brags about having already sued one unfortunate victim.  See Exhibit A.  The next round of letters will likely cite that Roca sued *two or more* witnesses.   Once this happens, this Court will be deprived of a key source of facts that will allow it to evaluate this case.

C.     **Remedies Sought**

The Defense seeks an immediate restraining order preventing Roca from threatening or otherwise harassing Ms. Schaive, Ms. Anderson, or Ms. Walsh, by filing suit against them or threatening to do so until at least October 8, 2014.  The Order should also prohibit taking these actions against any other witnesses in this case until at least October 8, 2014.

Furthermore, Roca should be compelled to immediately disclose any and all communications it has engaged in with witnesses or potential witnesses in this case, and should be enjoined from engaging in further threatening or harassing communications with any consumers who have negatively reviewed the product, at least until the enforceability of its Agreement has been adjudicated on or after October 8, 2014.

Furthermore, should Roca Labs file suit or otherwise threaten suit against any witness in this case, prior to the Court's determination of Roca's Motion for Preliminary Injunction, sanctions ought to be imposed against Roca.

### D.    Immediate Sanctions Are Appropriate

"A court may impose sanctions for litigation misconduct under its inherent power." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009). Furthermore, "[t]he key to unlocking a court's inherent power is a finding of bad faith… A party demonstrates bad faith by, inter alia, delaying or disrupting the litigation or hampering enforcement of a court order." *Id.*, citing *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). By intimidating witnesses in this case, Roca Labs is disrupting the litigation, and is threatening the very sanctity of this Court's procedure.

Roca knew precisely what it was doing, when it did it.  This coercive and unlawful conduct cannot be given this Honorable Court's imprimatur by the administration of a soft touch.  If a party engages in felonious activity, with the intent (or the foreseeable effect), of intimidating witnesses and thus placing an unwelcome finger on the scales of justice, that party should not be permitted to escape from such conduct with a mere admonishment that it should not commit any more felonies.  At the very least, Roca should be compelled to pay the costs and fees incurred in the bringing of this Motion and any subsequent fees and costs incurred in prosecuting the Motion.

## III.   CONCLUSION

Based on the foregoing, Defendant respectfully requests this Court grant the Motion for Emergency Temporary Restraining Order against Roca Labs, preventing them from continuing

to intimidate and threaten witnesses and potential witnesses in this case, at least until the Motion

for Preliminary Injunction has been adjudicated; and, Roca should be sanctioned for its conduct

leading to the necessity of filing this motion.

Respectfully Submitted,

*Marc J. Randazza*

_____
Marc J. Randazza, Esq.
Florida Bar No. 625566
RANDAZZA LEGAL GROUP
3625 S. Town Center Drive
Las Vegas, Nevada 89135
Tele: 702-420-2001
Fax: 305-437-7662
Email: ecf@randazza.com

RANDAZZA | LEGAL GROUP

CASE NO.: 8:14-cv-2096-T-33EAJ

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 22, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will transmit the motion to all counsel of record.  I also certify that a true and correct copy of the foregoing document is being served upon: Paul Berger, Esq. and Nicole Freedlander, Esq., via email.

Paul Berger
P.O. Box 7898
Delray Beach, Florida 33482-7898
legal5@rocalabs.com

Nicole Freedlander
P.O. Box 402653
Miami Beach, Florida 33140
nicole@freedlanderlaw.com

/s/ Theresa M. Haar_____
An employee / agent of
RANDAZZA LEGAL GROUP

RANDAZZA | LEGAL GROUP

Motion for Emergency TRO

**Exhibit 5**



| Insider Shop | Insight Community | Step2 |

Search Techdirt    **Search**

Techdirt    Wireless News    Innovation    Case Studies    Startups    Net Neutrality

Preferences    Register    Sign In

Main    Submit a Story    RSS

Follow Techdirt

<< Patent Troll Told That It Can't Sue The FTC...               DailyDirt: Genetic Information Is Everywhere... >>

# PissedConsumer Fights Back Against Roca Labs' Attempt To Silence Customer Complaints

*from the not-going-to-happen dept*

**Legal Issues**
by Mike Masnick
Mon, Sep 22nd 2014
3:48pm

0

We recently wrote about a rather questionable lawsuit filed by, Roca Labs, a "dietary supplement" company (it apparently prefers "nutraceutical") with a claimed "alternative" to gastric bypass surgery made up of some ingredients that they claim will expand and fill up your stomach so you're not hungry. When you buy, the company "offers" a "discount" if you agree to never, ever say anything bad about the company, ever:

> You agree that regardless of your outcome, you will not disparage RLN and/or any of our employees, products or services. This means that you will not speak, publish, cause to be published, print, tweet, review, blog or write negatively about RLN, or our products or employees in any way. You further agree that in an effort to prevent the publishing of libelous or slanderous content in any form, your acceptance of this sales contract prohibits you from taking any action that negatively impacts RLN, its reputation, products, services, management or employees.

**Filed Under:**
censorship,
defamation, dietary
supplements,
florida, gastric
bypass,
nutraceutical,
nutritional
supplements, pissed
consumer, tortious
interference

**Companies:**
consumer opinion
corp.,
pissedconsumer,
roca labs

**Permalink.**

There's also the flip side in that to get the discount, you also are expected to share the details of your results with the company, and they will promote them publicly (assuming they make the company look good):

> You will help promote RLN and our products by sharing your weight loss success with us. You agree to like us on Facebook and follow us on Twitter. You agree that from time to time we may contact you via electronic mail or telephone to learn about your success.

> You agree that we can use any and all information that you provide about your weight loss success in RLN marketing efforts.

Oh, and Roca Labs is so sure that you'll like its product that the company won't take it back. Ever. Under any circumstances. At all. You know the idea of a money back guarantee? Roca Labs doesn't do that -- even while admitting the product doesn't always work (more on that in a second). Bizarrely, Roca Labs argues that because it doesn't always work, you can't return it:

> An order is considered "shipped" once a USPS tracking number has been assigned. There are NO returns once the product has been shipped. DO NOT PURCHASE any product from us unless you agree to this no return policy. Your order is your acceptance of this RLN order is a special order and is non-refundable. We do not guarantee any results for the use of our product and individual results may vary. There are many factors that may prevent you from achieving your weight loss goal. Thus, our product cannot be returned

Also, while the company appears to have updated its terms and conditions, in its own filing, it included the earlier terms, which includes the claim that Roca Labs "ALWAYS WORKS." And also highlights the points made above:

- The Roca Labs Mixture ALWAYS works in limiting stomach space and it is UP TO YOU to decide on dosage and frequency, to serve/feed yourself small food quantities and avoid any fatty or high calorie foods in a similar fashion to post bariatric surgery. Success depends on following Instructions and being tuned to Suggested Use.

- You may choose to pay the full $1,580 price ("Full Price") for the Procedure or enjoy a "Subsidy" based on Terms such as: devotion to losing weight, making timely payments, approaching Roca Labs first and never be responsible for commenting anywhere negatively in any fashion. Failure to comply and you agree to pay immediately the Full Price and face legal demand for damages in the State of Florida.

- Roca Labs loves rewarding for success so failure is not rewarded and Money Back policy is for proven success only - no returns are accepted once ordered.

Either way, plenty of people have still been complaining. As we'd mentioned previously, the local Better Business Bureau gives the company an F rating, noting 73 complaints in the last three years. And yes, PissedConsumer has a bunch of complaints as well.

Advertisement



Essential Reading

## Hot Topics

**6.1** Court Says By Agreeing To AOL's Terms Of Service, You've 'Consented' To Search By Law Enforcement

**6.1** Now In Charge Of Congress, GOP Plans To Give Up Its Own Constitutional Powers To The Obama Administration

**5.7** Chicago Transit Cops Start Up Their Own Security Theater, Will Start Randomly Swabbing Bags For Explosive Residue

## New To Techdirt?

Explore some core concepts:

If Intellectual Property Is Neither Intellectual, Nor Property, What Is It?

The Grand Unified Theory On The Economics Of Free

Infinity Is Your Friend In Economics

read all »

Techdirt Reading List



Copyfraud and Other Abuses of Intelle...
Jason Mazzone (Hardcover - Oct 5, 2011)
$16.18
★★★★★



Need, Speed, and Greed: How the Ne...
Vijay V. Vaitheeswaran (Hardcover - Mar 13, 20...
$11.20
★★★★★

Knowledge and the Wealth of Nations:...
David Warsh (Paperback - May 17, 2007)
$12.98
★★★★☆

Free Culture: The Nature and Future o...
Lawrence Lessig (Paperback - Feb 22, 2005)
$10.24
★★★★½

1 2 3 4 5 >



Get Widget    Privacy        

Techdirt Insider Chat

Roca Labs is taking a somewhat unique view of the law that PissedConsumer is somehow "tortiously interfering" with Roca's business, by encouraging people to post reviews. In the world of Roca Labs, merely encouraging people to post reviews is tortious interference with the bogus gag clause in the company's terms of service.

PissedConsumer has now struck back with quite the opposition to Roca Lab's request for a temporary injunction. Written by lawyer Marc Randazza, it doesn't mince many words. Noting that Roca Labs really seems to want to avoid criticism, the filing includes (among other things) depositions by a doctor who looks into the ingredients in Roca Labs' product and comes away less-than-impressed, as well as the details of one of the people who filed a BBB complaint and... received a legal threat from Roca Labs in response. As the opposition filing notes, the questionable terms from Roca should already raise some questions:

> A critical reader would likely presume that something is amiss upon reading the key clause in Roca Labs' purchase terms.... "In exchange for a significant discount... customers contractually agree that, regardless of their outcome, they will not speak, publish, print, blog or write negatively about ROCA or its products in any forum." .... However, these same terms fail to disclose the amount of this "discount" or "subsidy." .... Roca then requires its customers to agree inter alia that they "consent to and agree to entry of an injunction... in enforcement of your violation of this term and condition," and that the customer will then pay an elevated price for the product.... This is alongside the company's "no refunds" and "no returns" policies, and a waiver of any chargeback rights even if the product never arrives.... Roca Labs tries to scare its customers with clauses that provide it with a unilateral right to recoup not only an elevated price for the product, but "any expenses we incur in resolving the issue", and that if any of them make a negative comment, it will (apparently even if true) "constitute defamation per se, entitling [Roca Labs] to injunctive relief and damages.".... The coup de grace is a section providing for a one-sided attorneys' fees provision, if a user dares to utter a negative word in public.

As the filing questions, all of these should raise red flags about the company and its products:

> Does that sound like an upstanding company that stands behind its safe and reliable product? Or does that sound like a disreputable company, producing tubs of snake oil (or snake goop, as it were), and which knows that too much truth will hurt its fly-by-night bottom line? Roca Labs is desperately trying to force a cone of silence over each and every customer that discovers that Roca Labs' product is not only a specious remedy for their weight issues, but a potential cause of additional health problems. Plaintiff, desperate to sell as many of its tubs of goo to the public as it can before regulatory agencies come knocking does its best to bully its former customers into silence.

To support its position that Roca Labs' products are of dubious benefit and that the company is a legal bully, PissedConsumer's filing includes some interesting related declarations. First up a declaration from Dr. Thomas Parisi on the nature of Roca Labs' product and whether or not it is likely to be an effective weight loss tool. Parisi notes that Roca's offering, 'which consists primarily of industrial food thickening agents," does not seem likely to live up to its claims of helping people lose weight by causing the mixture "to expand in the user's stomach, leaving her with no room or desire for anything else, thus prompting weight loss...." In fact, Dr. Parisi suggests, in actuality "it could lead to health problems in some individuals, including gastrointestinal distress. Moreover, based upon the ingredients contained in the Product, it could also cause additional unintended side effects in a large number of users, including diarrhea, bloating, intestinal discomfort, gas, constipation, intestinal blockage, dehydration, headaches, and dizziness."

Dr. Parisi goes through each named ingredient and notes why each is unlikely to aid in weight loss or why there is no evidence to suggest it aids in weight loss. In some cases, such as with Konjac, he notes that it's a Chinese laxative, and that "no competent medical physician would recommend regular use of it (or any laxative) as a treatment plan for weight loss." He further notes that with Maltodextrine, the product may be counterproductive:

> Maltodextrin is often used in commercially available protein shakes and similar products. However, because it contains high-glycemic carbohydrates, intake of maltodextrin would typically be avoided in individuals trying to achieve weight loss.

Dr. Parisi also notes how typical health products rely on clinical tests and consumer feedback, and thus Roca Labs' attempts to force silence on those for whom the product doesn't work seems out of step with any trustworthy health product. He specifically notes that "it is unethical for a health care professional to take steps to hide the side effects of any mediation or treatment from a patient." (I'm guessing that "mediation" is supposed to be "medication").

Then there's the declaration from Jennifer Schaive, detailing how she was not happy with the product, sought a refund, and complained to the BBB -- only to be threatened with a lawsuit from

Obama more or less powerless, or close to?

Christopher Best: No, he's still got plenty of power. He can veto anything they pass, if he wants, and they don't have a 2/3 majority to overrule him
And he can still write crazy unaccountable executive orders

Rikuo: okay thanks

Mark Harrill: yeah what CB said. What it changes is the mechanics of Congress, who is in charge of the committees and the R's can control the legislative agenda

Ninja: Now imagine if R's and D's had to share the power with C's, B's and other parties? I alliances would have to be made instead of the partisan warfare we are seeing

Mark Harrill: it would be human sacrifice, dogs and cats living together mass hysteria

Get the Insider Chat!

Advertisement

Recent Stories

**Thursday**

06:10  Dish Pulls CNN, Doesn't Think Customers Still Paying For It Are Missing Much (2)

04:09  Chicago Transit Cops Start Up Their Own Security Theater, Will Start Randomly Swabbing Bags For Explosive Residue (23)

01:08  Carl Malamud's Public.Resource.Org Joins Effort To Make Pay-Walled Indian Standards Freely Available (2)

**Wednesday**

21:08  Now In Charge Of Congress, GOP Plans To Give Up Its Own Constitutional Powers To The Obama Administration (23)

17:00  DailyDirt: Looking Fashionable In New Spacesuit Designs (7)

15:55  Hillary Clinton Still Refuses To Make Her Views Clear On Surveillance, In Either Direction (23)

14:48  Roca Labs Threatens Other Sites For Writing About Its Case, Files Another Questionable Document (10)

13:47  Australians' Stored Metadata Could Be Used In Any Civil Case, Including Against Copyright Infringement (25)

12:45  Pharma Officials Insist That There Is 'Zero Evidence' That Patents Harm Access To Medicine (21)

11:41  Germany's Top Publisher Admits Its Web Traffic Plummeted Without Google; Wants Politicians To 'Take Action' (48)

More

Advertisement

Roca Labs. She received a letter from Sharon King, who describes herself as a paralegal for Roca Labs, and the letter has some interesting claims as well, including that "Roca Labs does everything it promises to its customers." Of course, as you read the details, you realize the company means everything it promises... in its terms concerning not providing refunds and threatening to go after you should you say something negative about the company.

Back to Randazza's response. He notes that Roca Labs is trying to get around the fact that it can't use defamation law to get an injunction by pretending that this is a different issue altogether:

> Temporary injunctive relief is not available to plaintiffs seeking to suppress allegedly defamatory speech.... Presumably for that reason, Roca Labs has attempted to disguise this defamation claim as a Florida Deceptive and Unfair Trade Practices Act (FDUTPA) and tortious interference claim in order to try to side-step the clear case law that cuts against it in defamation actions. But, no matter many times you call a "dog" a "duck," it will neither lay eggs nor quack. Styling a baseless defamation claim as something else does not shield it from First Amendment scrutiny and render palatable the most odiferous and despised remedy known to our courts – the prior restraint. This exceptional relief is impermissible under Florida law and the First Amendment.

It goes on to explain the basic's of prior restraint and how the First Amendment forbids such an injunction. And then gets to the Section 230 defense for PissedConsumer, noting that the service provider is not responsible for any speech by its users, even if that speech was defamatory. Roca Labs tries to get around Section 230 by arguing that because PissedConsumer tweets out comments based on reviews on the site, that it is not protected by 230, but that's not how other courts have ruled. Previous 230 cases have found that reposting content -- even hand selected content -- still protects the service provider.

> The Pissed Consumer website only hosts third-party produced content appearing on and is neither the author nor the editor of the reviews.... Because it is a service provider, and not a publisher, Defendants are immune from liability under 47 U.S.C. § 230 (the "Communications Decency Act" or "CDA"). "The purpose of the CDA is to establish 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'" ... While Plaintiff wants to hold Defendants liable as the "publisher" of the Tweets that are generated from reviews posted on , the Tweets are automatically broadcast third party statements, and are not written by the Defense.... Accordingly, even this creative argument fails as a matter of law.

> "[L]awsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions-such as deciding whether to publish, withdraw, postpone or alter content-are barred by the CDA." ... Reviews posted on Pissed Consumer are automatically disseminated on Twitter, but that does not make Defendants "publishers" under the CDA, but instead falls within the purview of immunity. Defendants' users authored the statements. Dissemination of them does not trigger a § 230 exception. Disseminating the content to the public is not enough. "A 'provider' of an interactive computer service includes websites that host third-party generated content."

The filing also takes down the claim that PissedConsumer is somehow engaged in "tortious interference" by merely asking people to post reviews. First off, for it to be tortious interference, Roca Labs would have to show that PissedConsumer was engaged in intentional and unjustified interference. It seems unlikely that anyone at PissedConsumer had any clue about the dubious gag clause pushed by Roca Labs, and even if they did, asking people to post their opinions is hardly unjustified interference.

> Even if Defendants had knowledge of Roca Labs' customers beforehand, they would have been entirely justified warn them about the questionable product and unethical business practices, (as evidenced by the gag clause of the terms and conditions). "This cause of action requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered."...

> Plaintiff's tortious interference claim swings on the notion that the Defendants "tortiously interfere[d] with Roca Lab's customers by encouraging them to breach their customer agreement with Roca" by posting reviews on the Defendants' website. ECF 5 at 2. While Defendants assert, infra, that this does not constitute tortious interference, neither Defendant denies that the Pissed Consumer website wishes for consumers to review products or services they have tried. But, this does not support liability, as there is no tort in allowing consumers to review products.

It goes on to note that even if Roca's questionable legal terms are somehow enforceable against customers, they can only apply to current customers, not past customers.

> Even if these facts could support a tortious interference claim, a relationship with a past customer does not provide a basis for the claim.... While Roca Labs has

burdensome terms and conditions, we can find nowhere among those burdens any obligation to be a repeat customer.... "The mere hope that some of its past customers may choose to buy again cannot be the basis for a tortious interference claim." ... Therefore, Roca has no substantial likelihood of prevailing on the merits of its tortious interference claim, because the claim fails as a matter of law.

Not surprisingly, the filing also notes that Roca Lab's gag clause is almost certainly not legal in the first place:

Roca Labs complains that it put the Defendants on notice of the unconscionable contract, and on that basis claims that it compelled them to respect its outrageous (and unlawful) terms....

Roca Labs cannot use the gag clauses as the basis for seeking injunctive relief, even as it applies to its customers who wrote the reviews on the Defendants' website, because Roca Labs has presented no legitimate business reason to support the gag clause....

Preventing customers from providing their opinion of Roca Labs' product is not a legitimate business interest, but instead is itself a deceptive trade practice. Any act "which unfairly takes advantage of the lack of knowledge, ability, experience or capacity of a consumer; or results in a gross disparity between the value received by a consumer and the price paid, to the consumer's detriment" constitutes an unconscionable trade practice.

Finally, the filing attacks the idea that there's been a violation of Florida's unfair trade practices dispute, noting that the intent of that law seems ironically at odds with Roca Labs' attempted use of it. That is, the stated purpose of the law is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." And, since Roca is not a customer of Pissed Consumer and thus has no standing under the law. But again, even if it could, it's pretty clear there's no violation here:

Plaintiff says that a "practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious." ... Defendants agree. The suppression of consumer reviews, some of which warn consumers of negative health consequences, fits that description. Meanwhile, no reasonable person could contort that definition into "allowing consumers to share their experiences to the benefit of other consumers."

Let us presume, arguendo, that Defendants are the evil conspiracy that Roca paints them to be; even reprehensible conduct is not actionable under FDUTPA absent loss or damage to a consumer.... There is no identifiable loss or damage to a consumer here, and unless Roca is a consumer of the Defendants' services or products, it lacks standing to bring such a claim on behalf of other consumers who have no quarrel with the Defendants. Roca Labs calling this business "immoral," is not enough to give it standing under FDUTPA19 (although it is ironic).

And that's not even getting into the fact that the law requires everything to have happened in Florida (PissedConsumer is a NY-based operation) or the fact that you have to prove damages, and Roca Labs (conveniently) doesn't even bother to present any evidence of damages.

In the end, the filing is fairly damning across the board. It seems likely that Roca Labs went through its usual paces in trying to intimidate PissedConsumer over the negative reviews, not realizing that it might have competent legal help who could actually respond to the questionable legal theories that Roca Labs was using in trying to have negative reviews blocked and censored.

To print the document, click the "Original Document" link to open the original PDF. At this time it is not possible to print the document with annotations.

To print the document, click the "Original Document" link to open the original PDF. At this time it is not possible to print the document with annotations.

To print the document, click the "Original Document" link to open the original PDF. At this time it is not possible to print the document with annotations.



Tweet  35     Like  43     ⌃ ⌄  submit         g+1

**14 Comments** | **Leave a Comment**

If you liked this post, you may also be interested in…

- Roca Labs Threatens Other Sites For Writing About Its Case, Files Another Questionable Document
- Lena Dunham Once Again Threatens Lawsuit Over An Interpretation Of Her Book That She Doesn't Like
- Misguided Pianist Asks Washington Post To Remove A Less-Than-Wonderful Review Under Right To Be Forgotten
- Magistrate Judge Not Impressed By Roca Labs' Legal Arguments: Recommends Against An Injunction
- Roca Labs Story Gets More Bizarre: Senator Threatens Bogus Defamation Lawsuit, While Nevada Quickly Rejects Bogus Bribery Charge

**Reader Comments** (rss)

(Flattened / Threaded)                        Show All Comments ▼

1.    JoeCool (profile), Sep 22nd, 2014 @ 4:30pm        insightful  funny  report

FTFY

It's spelled "ROACH", not "ROCA".

[ reply to this | link to this | view in thread ]

2.    Anonymous Coward, Sep 22nd, 2014 @ 5:13pm        insightful  funny  report

Someone's got to come up with some lyrics to the YMCA, er ROCA regarding this issue.

[ reply to this | link to this | view in thread ]

3.    Anonymous Coward, Sep 22nd, 2014 @ 5:37pm        insightful  funny  report

"Defendants agree that the more dissemination of the truth, the less Roca will likely sell. But, this is not a legal harm. It is as if a mugger were to sue for an injunction preventing someone from warning passer-by that the criminal is waiting in a dark alley, and that they should take an alternate route."

What a filing.

[ reply to this | link to this | view in thread ]

4.    Anonymous Coward, Sep 22nd, 2014 @ 6:34pm        insightful  funny  report

Re:

Fat man.... theres a product for you
I said fat man.... need to lose that weight now
I said fat man.... need to eat less right now
We'll take .. your.. money...

We really fuck you R. O. C. A

We really fuck you R. O. C. A

Our product will give you the shits
Really make you think twice
Before you post some advice

[ reply to this | link to this | view in thread ]

5.    Ehud Gavron (profile), Sep 22nd, 2014 @ 7:01pm        insightful  funny  report

typo

In one block quote the beginning "E" of "Even" is missing:
ven if Defendants had knowledge of

E

(I'm sensitive to missing Es...)

[ reply to this | link to this | view in thread ]

6. Gracey (profile), Sep 22nd, 2014 @ 7:49pm

[ insightful ] [ funny ] [ report ]

huh.

Well, even though I know the wiki isn't exactly "always right" in this case, I think they might be:

[quote] The term "nutraceutical" has no meaning in US law [/quote]

Seems appropriate.

[ reply to this | link to this | view in thread ]

7. steell (profile), Sep 22nd, 2014 @ 7:58pm

[ insightful ] [ funny ] [ report ]

Rule number one, don't ever mess with Marc Randazza on First Amendment issues. And his pleadings are always great reading.

[ reply to this | link to this | view in thread ]

8. Kronomex, Sep 22nd, 2014 @ 8:37pm

[ insightful ] [ funny ] [ report ]

"Once we have your money you can take a flying f--k!"

[ reply to this | link to this | view in thread ]

9. Anonymous Coward, Sep 22nd, 2014 @ 8:42pm

[ insightful ] [ funny ] [ report ]

Go Marc

The best part of that whole response filing was footnote #22 on page 22 where he likened the "bad" postings as one pedestrian warning another about a mugger in an alley they are approaching, with the muggers complaining about interference with their business. Most apt!!

"22 - Defendants agree that the more dissemination of the truth, the less Roca will likely sell. But, this is not a legal harm. It is as if a mugger were to sue for an injunction preventing someone from warning passer-by that the criminal is waiting in a dark alley, and that they should take an alternate route."

[ reply to this | link to this | view in thread ]

10. Anonymous Coward, Sep 23rd, 2014 @ 1:01am

[ insightful ] [ funny ] [ report ]

Oh, boy, Whatever's not going to like this one bit.

[ reply to this | link to this | view in thread ]

11. spodula, Sep 23rd, 2014 @ 1:09am

[ insightful ] [ funny ] [ report ]

Dogs and ducks...

"But, no matter many times you call a "dog" a "duck," it will neither lay eggs nor quack."

Dear me, have you never heard of Dog eggs? (It may be a UK euphamism).. Still what they represent is a good measure of Roca Labs' complaint.

[ reply to this | link to this | view in thread ]

12. gyffes, Sep 23rd, 2014 @ 5:43am

[ insightful ] [ funny ] [ report ]

Y'know...

I like Randazza more and more all the time...

[ reply to this | link to this | view in thread ]

13. Anonymous Coward, Sep 23rd, 2014 @ 9:41am

[ insightful ] [ funny ] [ report ]

Marc Randazza for President.

[ reply to this | link to this | view in thread ]

14. Anonymous Coward, Oct 8th, 2014 @ 7:44am

[ insightful ] [ funny ] [ report ]

Re:

Really?
http://www.ripoffreport.com/r/marc-randazza-of-randazza-legal-group/las-vegas-nevada-89135/ma rc-randazza-of-randazza-legal-group-marc-randazza-of-randazza-legal-group-marc-randazza-1112488

[ reply to this | link to this | view in thread ]

## Add Your Comment

Have a Techdirt Account? **Sign in now**. Want one? **Register here**

| | |
|---|---|
| Name | |
| Email | ☐ Get **Techdirt's Daily Email** |
| URL | |
| Subject | |
| Comment | |

Options ☐ Save me a cookie

[Submit] [Preview]

- Note: A CRLF will be replaced by a break tag (<br>), all other allowable HTML will remain intact
- Allowed HTML Tags: <b> <i> <a> <em> <br> <strong> <blockquote> <hr> <tt>

<< Patent Troll Told That It Can't Sue The FTC...       ⠿       DailyDirt: Genetic Information Is Everywhere... >>



**Company**
About Us
Advertising Policies
Privacy

**Contact**
Help & Feedback
Media Kit
Sponsor/Advertise
Submit a Story

**Tools & Services**
Twitter
Facebook
RSS
Techdirt for Mobile
Research & Reports

**More**
Insight Community
Step2
Insider Shop

Brought to you by **Floor64**

Register | Log in



MAIN MENU ▾　　MY STORIES: 16 ▾　　FORUMS　　SUBSCRIBE　　JOBS

## LAW & DISORDER / CIVILIZATION & DISCONTENTS

# Weight loss firm demands $1 million from website hosting negative reviews

Lawyer for pissedconsumer.com says lawsuit is "bunk," prior restraint of speech.

by David Kravets - Sept 22 2014, 2:33pm EDT

104



Roca Labs® mixture

very limited stomach volume

gastric bypass effect

Users lost 100 lbs in 7 to 12 months

your weight loss may vary - not typical results

Enlarge
rocalabs.com

A Florida company selling an obesity product is suing a consumer website for hosting negative reviews of its dietary product. Roca Labs wants the US courts to award it in "excess" of $1 million in addition to blocking pissedconsumer.com from continuing the practice.

The lawyer for the New York-based online review site told Ars on Monday that the lawsuit [PDF] was "bunk," that its demands amount to a prior restraint of speech, and that the site itself is protected from defamation charges under the Communications Decency Act because it hosts the online review forum for others to use.

"Essentially, what they are saying, is my client is defaming them by allowing these negative reviews to be published. And that my client is engaged in tortious interference with their relationships with their customers, and that my client is practicing unfair and trade-deceptive practices," said attorney Marc Randazza in a telephone interview.

Roca Labs, on the other hand, maintains that the website is facilitating a breach of contract with their diet customers. Roca's customers consented, as part of their agreement when purchasing the Gastric Bypass Alternative, that "regardless of their outcome, they will not speak, publish, print, blog, or write negatively about Roca or its products in any forum."

**FURTHER READING**

**US LAW WOULD SAFEGUARD FREE-SPEECH RIGHTS TO CRITICIZE BUSINESS ONLINE**

Lawmaker says "it's un-American" to penalize consumers for "honest" reviews.

### LATEST FEATURE STORY ◢



**FEATURE STORY (2 PAGES)**

## The other Ebola fear: Your civil liberties

The power to quarantine is as "American as apple pie."

### WATCH ARS VIDEO ◢

## Feet-on with RocketSkates, which are exactly what they sound like

Motorized skates can travel up to ten miles, can replace your bike.

### STAY IN THE KNOW WITH ◢

### LATEST NEWS ◢

## Cops' use of facial recognition

The company goes on to say that the pissedconsumer.com site and its operators "deliberately and tortuously interfere with Roca Lab's customers by encouraging them to breach their customer agreement with Roca as Defendants author or co-author false, malicious, and negative posts about Roca that are published on their subject website and Tweeted to Twitter's 271 million users."

In its lawsuit, Roca notes that it provides upwards of an $800 discount to people who agree to the non-disparagement clause.

A hearing in the case, originally filed in Florida state court but transferred to federal court, is set for October 8.

Randazza filed his response [PDF] to Roca's claims on Thursday, days after a member of the House of Representatives offered legislation that would make it illegal for businesses to take action against consumers who write "honest" negative reviews online about products and services. Rep. Eric Swalwell (D-CA) said the measure would make it illegal for companies to have non-disparagement clauses in their consumer contracts.

"It's un-American that any consumer would be penalized for writing an honest review," Swalwell said. "I'm introducing this legislation to put a stop to this egregious behavior so people can share honest reviews without fear of litigation."

Swalwell's Consumer Review Freedom Act came a week after Gov. Jerry Brown signed a similar law in California that includes a $10,000 fine against companies that violate the so-called "Yelp bill." Swalwell's law, if passed by Congress and signed by President Barack Obama, would function nationwide.

Randazza said in his filing that "Roca Labs is desperately trying to force a cone of silence over each and every customer that discovers that Roca Labs' product is not only a specious remedy for their weight issues, but a potential cause of additional health problems. Plaintiff, desperate to sell as many of its tubs of goo to the public as it can before regulatory agencies come knocking, does its best to bully its former customers into silence."

The Better Business Bureau has given the company an "F" rating, with 73 complaints the last three years.

In order, Pissedconsumer.com ranks the "most complained about companies" as Walmart, Pizza Hut, Fedex, UPS and Avas Flowers.

### READER COMMENTS   104

| 216 | 138 | 37 |

---

**David Kravets** / The senior editor for Ars Technica. Founder of TYDN fake news site. Technologist. Political scientist. Humorist. Dad of two boys. Been doing journalism for so long I remember manual typewriters with real paper. Bikram Choudhury is my master.
@dmkravets on Twitter

← OLDER STORY        NEWER STORY →

## YOU MAY ALSO LIKE ⬈


**Man sues Comcast, claims ISP got him fired over billing dispute**


**Diet firm allegedly fakes endorsement from Fresh Prince's Carlton**


**Study: Comcast and Verizon connections to Cogent dropped below 0.5Mbps**


**Sponsored:** Upgrading Your IT Career

---


technology expands north of the border


Patent appeals court rebukes top tech lawyer for forwarding judge's e-mail


During Netflix money fight, Cogent's other big customers suffered too


*Call of Duty: Advanced Warfare* single-player review: Press X to care

POST-BOOM
**Orbital Sciences to shift ISS resupply launches to other rockets**

THREE DAYS LEFT…
*Legend of Zelda: Majora's Mask* remake announced for Nintendo 3DS

Florida Criminal Defense

by Florida Criminal Defense Lawyers Request a Free Case Evaluation Now!



**Feds bust online dating service that sent fake messages from "virtual cupids"**



**Sapphire manufacturer and Apple agree to part ways "amicably"**



**Developer of hacked Snapchat web app says "Snappening" claims are hoax [Updated]**



**Feds say Bitcoin miner maker Butterfly Labs ran "systematic deception" [Updated]**

## SITE LINKS

About Us

Advertise with us

Contact Us

Reprints

## SUBSCRIPTIONS

Subscribe to Ars

## MORE READING

RSS Feeds

Newsletters

## CONDE NAST SITES

Reddit

Wired

Vanity Fair

Style

Details

Visit our sister sites ▾

Subscribe to a magazine ▾

**VIEW MOBILE SITE**

© 2014 Condé Nast. All rights reserved
Use of this Site constitutes acceptance of our User Agreement (effective 1/2/14) and Privacy Policy (effective 1/2/14), and Ars Technica Addendum (effective 5/17/2012)
Your California Privacy Rights
The material on this site may not be reproduced, distributed, transmitted, cached or otherwise used, except with the prior written permission of Condé Nast.

Ad Choices ▷

BLOG    FEATURES    VIDEO    BBS    TWITTER    FACEBOOK    TUMBLR

**Right to complain: fighting back against Roca Labs**

Cory Doctorow at 12:00 pm Tue, Sep 23, 2014

SHARE          TWEET          STUMBLE          COMMENTS

Pissedconsumer, a website that's being sued by a supplements company called Roca Labs whose diet aids come with terms-of-service that prohibit complaining about them, has filed its opposition to Roca's request for an injunction -- it's quite a read.



Included in the injunction is an independent medical analysis that states that Roca's products are "primarily ... industrial food thickening agents" that "could lead to health problems in some individuals, including gastrointestinal distress. Moreover, based upon the ingredients contained in the Product, it could also cause additional unintended side effects in a large number of users, including diarrhea, bloating, intestinal discomfort, gas, constipation, intestinal blockage, dehydration, headaches, and dizziness."

Which would explain why Roca wants to be sure that its customers aren't allowed to complain about its products.

> A critical reader would likely presume that something is amiss upon reading the key clause in Roca Labs' purchase terms.... "In exchange for a significant discount... customers contractually agree that, regardless of their outcome, they will not speak, publish, print, blog or write negatively about ROCA or its products in any forum." .... However, these same terms fail to disclose the amount of this "discount" or "subsidy." .... Roca then requires its customers to agree inter alia that they "consent to and agree to entry of an injunction... in enforcement of your violation of this term and condition," and that the customer will then pay an elevated price for the product.... This is alongside the company's "no refunds" and "no returns" policies, and a waiver of any chargeback rights even if the product never arrives.... Roca Labs tries to scare its customers with clauses that provide it with a unilateral right to recoup not only an elevated price for the product, but "any expenses we incur in resolving the issue", and that if any of them make a negative comment, it will (apparently even if true) "constitute defamation per se, entitling [Roca Labs] to injunctive relief and damages.".... The coup de grace is a section providing for a one-sided attorneys' fees provision, if a user dares to utter a negative word in public...
>
> Does that sound like an upstanding company that stands behind its safe and reliable product? Or does that sound like a disreputable company, producing tubs of snake oil (or as it were), and which knows that too much truth will hurt its fly-by-night bottom line? Roca Labs is desperately trying to force a cone of silence over each and every customer that discovers that Roca Labs' product is not only a specious remedy for their weight issues, but a potential cause of additional health problems. Plaintiff, desperate to sell as many of its tubs of goo to the public as it can before regulatory agencies come knocking does its best to bully its former customers into silence.



PissedConsumer Fights Back Against Roca Labs' Attempt To Silence Customer Complaints

[Mike Masnick/Techdirt]

**DISCUSS**

**READ MORE AT BOING BOING**

| | | |
|---|---|---|
| Photos from Stasiland | Painting: "Cyber Seascape," Babaroga Vitomirov | Australian PM trades freedom for security, deserves neither |

AD BY FEDERATED MEDIA

## Simple Update, HUGE Payoff!



-from Vintage Revivals-

Technology is amazing isn't it? When we really stop and just look at what is not

CLICK TO VIEW
▼

Get your life in tune.

ABOUT US   CONTACT   ADVERTISE   PRIVACY   TOS   •   FACEBOOK   TWITTER   RSS   EMAIL



Insider Shop    Insight Community    Step2

Search Techdirt   Search

Techdirt   Wireless News   Innovation   Case Studies   Startups   Net Neutrality     Preferences   Register   Sign In

Main   Submit a Story   RSS

Follow Techdirt

<< Aussie Teenager Fearful For His Life After...     Former Mayor Giuliani To Defend Activision In... >>

# Roca Labs Sues Customer For Posting A Negative Review

from the that'll-win-new-customers,-i'm-sure dept

**Defamation**
by Mike Masnick
Thu, Sep 25th 2014
2:32pm

0

Filed Under:
contract, free
speech, gastric
bypass surgery,
negative reviews,
reviews, tortious
interference
Companies:
pissedconsumer,
roca labs

Permalink.

We've been covering the saga of Roca Labs for a few days now. This is the company that claims to make an "alternative" to gastric bypass surgery in the form of some "industrial food thickening agents" that (the company claims) will fill up your stomach and make you not want to eat. These claims are not FDA reviewed and an examination of the claims by a doctor found them to be questionable (to say the least). We became aware of the company because it had sued Consumer Opinion Corp., the company that owns the site PissedConsumer.com. The issue? Roca Labs has a terms of service that offers everyone a "discount" on its product if you agree to never, ever, say anything bad about the product ever (you also have to agree to share success stories with Roca and allow them to publicize those stories). In short, the terms of service are designed to only show positive results, and gag any negative results. Roca claims that it has to do this because results may vary, and negative results could be caused by other factors. Of course, doesn't that also mean that positive results could be caused by other factors as well?

Either way, Roca Labs sued PissedConsumer on the hilarious legal theory that by offering a forum for unhappy customers to post their story, it was "tortious interference" because it encouraged people to break the terms under which people bought the product. As we noted, this legal theory is fairly laughable, and PissedConsumer's legal response makes that fairly clear as well.

However, Roca Labs and its lawyers are apparently busy. They're not just suing PissedConsumer, but they're actually suing a customer who complained to the Better Business Bureau for "breach of contract" and "defamation per se." While her filing with the BBB included some statements that might reach the level of defamation, amusingly, Roca Labs does not attempt to show that her comments were false in any way. Rather, it relies on yet another ridiculously questionable term in its terms of service, saying that if you post something negative, it will automatically be considered "defamation per se." Here's the term:

> You agree that any such negative claim will constitute defamation per se

I don't think that's how defamation law works. At all. Even if this woman's comments to the BBB are defamatory (and I'm not saying they are), you can't just have someone sign a contract saying that if they do something, they'll be guilty of defamation.

Either way, all of this should make you wonder just what sort of company Roca Labs is in that it seems to not just sue its own customers for negative reviews, but to work so hard to stop negative reviews and to threaten and intimidate those who make complaints about their experience with the company.

To print the document, click the "Original Document" link to open the original PDF. At this time it is not possible to print the document with annotations.

Advertisement



Essential Reading

## Hot Topics

**6.1**   Court Says By Agreeing To AOL's Terms Of Service, You've 'Consented' To Search By Law Enforcement

**6.1**   Now In Charge Of Congress, GOP Plans To Give Up Its Own Constitutional Powers To The Obama Administration

**5.7**   Chicago Transit Cops Start Up Their Own Security Theater, Will Start Randomly Swabbing Bags For Explosive Residue

## New To Techdirt?

Explore some core concepts:

Saying You Can't Compete With Free Is Saying You Can't Compete Period

How Being More Open, Human And Awesome Can Save Anyone Worried About Making Money In Entertainment

The Future Of Music Business Models (And Those Who Are Already There)

read all »

Techdirt Reading List



Eat People: And Other Unapologetic R...
Andy Kessler (Paperback – Jul 31, 2012)
$13.83



On Internet Freedom
Marvin Ammori



Intellectual Property and Theories of ...
(Paperback – Dec 15, 2010)
$35.00



The Venturesome Economy: How Inn...
Amar Bhidé (Paperback – Jan 24, 2010)
$17.65

1 2 3 4 5 >

 Get Widget   Privacy    



Techdirt Insider Chat

**Christopher Best**: No, he's still got plenty of power. He can veto anything they pass, if he wants, and they don't have a 2/3 majority to overrule him
And he can still write crazy unaccountable executive orders

**Rikuo**: okay thanks

**Mark Harrill**: yeah what CB said. What it changes is the mechanics of Congress, who is in charge of the committees and the R's can control the legislative agenda

**Ninja**: Now imagine if R's and D's had to share the power with C's, B's and other parties? I alliances would have to be made instead of the partisan warfare we are seeing

**Mark Harrill**: it would be human sacrifice, dogs and cats living together mass hysteria

Get the Insider Chat!

Advertisement

Tweet 52    Like 30    ▲ ▼ 18 points    g+1

**23 Comments | Leave a Comment**

If you liked this post, you may also be interested in...

- Roca Labs Threatens Other Sites For Writing About Its Case, Files Another Questionable Document
- Pianist Dejan Lazic Defends His Takedown Request By Pointing Out That The WaPo Reviewer Is Really Mean
- Misguided Pianist Asks Washington Post To Remove A Less-Than-Wonderful Review Under Right To Be Forgotten
- We Hardly Knew Ye: Judge Dismisses Manuel Noriega's Publicity Rights Suit Against Activision
- Magistrate Judge Not Impressed By Roca Labs' Legal Arguments: Recommends Against An Injunction

## Reader Comments (rss)

(Flattened / Threaded)                                          Show All Comments ▼

1. jackn, Sep 25th, 2014 @ 2:59pm          insightful  funny  report

   Now even expecting moms can stay slim with Roca Labs

   http://rocalabs.com/faq/medical/during-pregnancy

   [ reply to this | link to this | view in thread ]

2. Spartacus-Consumer, Sep 25th, 2014 @ 3:47pm          insightful  funny  report

   It's time for a contest to see who can write the most glowing review....

   "As a satisfied customer, I recommend Roca Labs heartily to anyone who has a rodent infestation problem."

   "I lost 200 pounds ... when my girlfriend left me."

   "Concrete retaining walls are highly alkali, and hard on many bedding plants. The finest earth-friendly substitute I've found...."

   [ reply to this | link to this | view in thread ]

3. This comment has been flagged by the community. Click here to show it

4. Anonymous Coward, Sep 25th, 2014 @ 5:40pm          insightful  funny  report

   I just went through the gauntlet of questions to place an order. Funny thing is despite the policy stating you can order without agreeing to not post bad reviews... and thus get a discount. You cannot place an order until you agree to the "discount policy" and at no time is an alternate price available.

   [ reply to this | link to this | view in thread ]

5. That One Guy (profile), Sep 25th, 2014 @ 5:59pm          insightful  funny  report

   Re:

   So in other words the 'deal' of 'agree to these terms, get a discount' is nothing but a lie, the 'discount' price is the only one possible, making the 'offer' completely impossible to not accept.

   Also, please tell me you were just testing the order process and didn't place an actual order with them.

   [ reply to this | link to this | view in thread ]

6. Anonymous Coward, Sep 25th, 2014 @ 6:17pm          insightful  funny  report

   It seems legit i mean... I watched the video's got the consultation based on my body and diet. Was asked two or three mental questions as in why do I eat.. fun.. bored.. etc Oh I was also asked if I actually wanted to lose weight or not. Then it said consulting... bada bing bada boom... apparently I need their product.

   [img]http://mybroadband.co.za/vb/attachment.php?attachmentid=78295&d=1382427188[/img]

   [ reply to this | link to this | view in thread ]

Recent Stories

**Thursday**
06:10 Dish Pulls CNN, Doesn't Think Customers Still Paying For It Are Missing Much (2)
04:09 Chicago Transit Cops Start Up Their Own Security Theater, Will Start Randomly Swabbing Bags For Explosive Residue (23)
01:08 Carl Malamud's Public.Resource.Org Joins Effort To Make Pay-Walled Indian Standards Freely Available (2)

**Wednesday**
21:08 Now In Charge Of Congress, GOP Plans To Give Up Its Own Constitutional Powers To The Obama Administration (24)
17:00 DailyDirt: Looking Fashionable In New Spacesuit Designs (7)
15:55 Hillary Clinton Still Refuses To Make Her Views Clear On Surveillance, And That's A Problem (23)
14:48 Roca Labs Threatens Other Sites For Writing About Its Case, Files Another Questionable Document (10)
13:47 Australians' Stored Metadata Could Be Used In Any Civil Case, Including Against Copyright Infringement (25)
12:45 Pharma Officials Insist That There Is 'Zero Evidence' That Patents Harm Access To Medicine (21)
11:41 Germany's Top Publisher Admits Its Web Traffic Plummeted Without Google; Wants Politicians To 'Take Action' (48)

More ▶

Advertisement



7.   Anonymous Coward, Sep 25th, 2014 @ 8:33pm     [insightful] [funny] [report]

**Attorney fees**

Hang on a second.

From the purchase agreement:

> Should The Company institute legal or collection proceedings regarding returned/cancelled checks or cancelled/disputed credit cards/PayPal, the Customer will be responsible for all collection costs and attorney's fees, plus filing fees, for each returned or cancelled check or for each cancelled credit card/PayPal payment. Other than the above listed allowance for attorney's fees relating to payment/collection issues, neither the purchaser nor The Company shall be entitled to attorney fees for other disputes between the parties.

From the complaint:

> WHEREFORE. Plaintiff ROCA LABS, INC. respectfully requests that this Honorable Court declare that Defendant ALICE KING breached her contractual agreement, and further grant temporary and permanent injunctive relief against the breach, and award ROCA LABS, INC. with an amount fair and just to account for its money damages, interest, reasonable attorneys' fees, and costs incurred herein

They explicitly stated in the agreement that they weren't entitled to attorney fees, and yet they're seeking them?

[ reply to this | link to this | view in thread ]

8.   Padpaw (profile), Sep 25th, 2014 @ 10:01pm     [insightful] [funny] [report]

It works for the government via the NSA, maybe corporations have finally taken notice and are emulating threatening people when they don't get their way.

Corruption starts at the top and trickles all the way down

[ reply to this | link to this | view in thread ]

9.   Bonkers, Sep 26th, 2014 @ 6:27am     [insightful] [funny] [report]

**Is that really enforceable?**

So basically by placing an order for this product, you automatically waive your right to free speech? Is that even legally enforceable?

[ reply to this | link to this | view in thread ]

10.   David, Sep 26th, 2014 @ 6:38am     [insightful] [funny] [report]

**And now for something completely different**

Legal questions aside: if the idea is to have food sit longer in your stomach, wouldn't it be easier to just wolf down your food without chewing properly?

Mother would likely not approve but it still sounds healthier and better controllable than swallowing some solidify-in-stomach-again substance.

At least more cost-effective.

[ reply to this | link to this | view in thread ]

11.   ACasey (profile), Sep 26th, 2014 @ 7:32am     [insightful] [funny] [report]

I REALLY hope the judge upholds PissedConsumer.com's first amendment rights; this case is an obvious violation of them. People writing negative reviews about something is not defamatory in the slightest.

[ reply to this | link to this | view in thread ]

12.   Steerpike (profile), Sep 26th, 2014 @ 8:45am     [insightful] [funny] [report]

They need to start sanctioning attorneys who bring actions that they know, or should know, are unenforceable and basically just there to spend the defendant into submission.

[ reply to this | link to this | view in thread ]



13.   Anonymous Coward, Sep 26th, 2014 @ 10:29am    [insightful] [funny] [report]

Re:

I REALLY hope the judge upholds PissedConsumer.com's first amendment rights; this case is an obvious violation of them.

Well, technically THIS case is about a consumer's free speech rights. Pissedconsumer was in the other lawsuit.

People writing negative reviews about something is not defamatory in the slightest.

As long as the review is true, anyway. An intentionally false negative review almost certainly WOULD be defamatory.

[ reply to this | link to this | view in thread ]

14.   Steerpike (profile), Sep 26th, 2014 @ 12:31pm    [insightful] [funny] [report]

Re:

Roca Labs can't violate anyone First Amendment rights because they're a private party and not the government. However, they're asking for government action here against the speech they don't like, and that has First Amendment implications.

[ reply to this | link to this | view in thread ]

15.   Steerpike (profile), Sep 26th, 2014 @ 12:31pm    [insightful] [funny] [report]

Re:

Roca Labs can't violate anyone First Amendment rights because they're a private party and not the government. However, they're asking for government action here against the speech they don't like, and that has First Amendment implications.

[ reply to this | link to this | view in thread ]

16.   Baron von Robber, Sep 26th, 2014 @ 12:35pm    [insightful] [funny] [report]

Re: Is that really enforceable?

I wonder the same.

If I drew up a contract that stated "A negative review will mean that from that point forward, the customer becomes a slave to Roca."

I think most people would find that unreasonable.

So if it's unreasonable for the 13th Amendment, why not for any Amendment, in particular the 1st?

[ reply to this | link to this | view in thread ]

17.   John Fenderson (profile), Sep 26th, 2014 @ 2:21pm    [insightful] [funny] [report]

Re: Re:

"An intentionally false negative review almost certainly WOULD be defamatory."

Unless it was a clear expression of opinion rather than fact. Opinion cannot be defamatory.

[ reply to this | link to this | view in thread ]

18.   That One Guy (profile), Sep 26th, 2014 @ 4:57pm    [insightful] [funny] [report]

Re:

And again: Cases like these are why we need a federal anti-SLAPP law. When you can sue someone to shut them up, that's a problem, and needs to be fixed, and not just left to the states on an individual level to deal with it.

[ reply to this | link to this | view in thread ]

19.   Anonymous Coward, Sep 26th, 2014 @ 6:51pm    [insightful] [funny] [report]

Re: Re: Re:

"'An intentionally false negative review almost certainly WOULD be defamatory.'

Unless it was a clear expression of opinion rather than fact."

Obviously it would have to be a fact; I thought that was clear from the context. I'm not exactly sure how you could even have an intentionally false opinion.

[ reply to this | link to this | view in thread ]

20.  Anonymous Coward, Sep 26th, 2014 @ 7:33pm    insightful  funny  report

Re: Re: Is that really enforceable?

There are a ton of implied rights that you can contract away. You have the right to spend your money how you see fit - but you can sign a contract that specifies you must pay the mortgage company every month for the next 30 years. You have the right to spend your time as you see fit - but you can sign a contract specifying that you will build someone a house in the next month. You have a right to basic information about the drugs your doctor gives you - but you can agree to participate in a double-blind study where you and your doctor do not know whether you have been given a real drug or a placebo. You have the right to not be assaulted - but you can sign a contract to participate in a boxing match.

I think it's pretty established that in some cases, nondisparagement clauses are valid. (If I ruled the world I'd make them illegal, but that's not the current situation.) A slavery clause, on the other hand, would be unquestionably unconscionable. Hopefully this clause, given the context, would also be found unconscionable and therefore unenforceable.

But there's a much clearer reason. The 13th amendment is worded differently from the 1st. It says "Neither slavery nor involuntary servitude... shall exist within the United States, or any place subject to their jurisdiction." It doesn't merely limit Congress or the states. It doesn't merely state that people have a right to not be slaves. It categorically bans the existence of slavery. You can't sign a contract to do an illegal thing.

[ reply to this | link to this | view in thread ]

21. Daemon_ZOGG, Sep 26th, 2014 @ 8:58pm    insightful  funny  report

"Roca Labs Sues Customer For Posting A Negative Review"

Well, according to my 1st Amendment "opinion", it sounds to me like Roca fLabs is trying to protect a fraudulent, FDA Not-approved product. And doesn't want too many people to know about it.

[ reply to this | link to this | view in thread ]

22. Anonymous Coward, Sep 28th, 2014 @ 1:45am    insightful  funny  report

What a piece of "TOS"

No contract shall be binding should it infringe upon ones basic rights

[ reply to this | link to this | view in thread ]

23. Alice King, Oct 3rd, 2014 @ 9:00pm    insightful  funny  report

Re: Attorney fees

Since they are suing me personally, there are a number of insane boiler plate items added on to this lawsuit just to add on to the law suit, make them look like they are working harder than they are and they've repeated themselves at least 3 times on every item. 'Casue that never gets old.

There are so many things wrong with their so called "case" against me, they seem to for get I remember what they wanted from me too. I tried to get a refund after the first month, but they would not allow it because I had not sent in a before picture at the first day and since I lost no weight it could have sent the same picture and it have been the same pix.

I need the name of the Class Actions Lawyers name and number - proto get this shit off my heard.

[ reply to this | link to this | view in thread ]

## Add Your Comment

Have a Techdirt Account? Sign in now. Want one? Register here

Name
Email                                         ☐ Get Techdirt's Daily Email
URL
Subject
Comment

Options    ☐ Save me a cookie

[ Submit ] [ Preview ]

- Note: A CRLF will be replaced by a break tag (<br>), all other allowable HTML will remain intact
- Allowed HTML Tags: <b> <i> <a> <em> <br> <strong> <blockquote> <hr> <tt>

<< Aussie Teenager Fearful For His Life After...       ⠿       Former Mayor Giuliani To Defend Activision In... >>



**Company**
About Us
Advertising Policies
Privacy

**Contact**
Help & Feedback
Media Kit
Sponsor/Advertise
Submit a Story

**Tools & Services**
Twitter
Facebook
RSS
Techdirt for Mobile
Research & Reports

**More**
Insight Community
Step2
Insider Shop

techdirt

Brought to you by Floor64

BLOG        FEATURES        VIDEO        BBS        TWITTER            FACEBOOK            TUMBLR

**Weight-loss company sues customer for posting negative review to Better Business Bureau**

Cory Doctorow at 5:00 pm Thu, Sep 25, 2014

SHARE                    TWEET                        STUMBLE                        COMMENTS

Roca Labs makes the "Non Surgical Gastric Bypass" (which one expert says is mostly industrial food thickeners) with terms-of-sale that prohibit complaining if you get sick, or don't like the product, or feel like you were ripped off.

The customer they're suing lodged a complaint with the Better Business Bureau; Roca asserts "breach of contract" and "defamation per se," because under the terms of the company's fine-print, *any* customer complaint is automatically defamatory.



I don't think that's how defamation law works. At all. Even if this woman's comments to the BBB are defamatory (and I'm not saying they are), you can't just have someone sign a contract saying that if they do something, they'll be guilty of defamation.

Either way, all of this should make you wonder just what sort of company Roca Labs is in that it seems to not just sue its own customers for negative reviews, but to work so hard to stop negative reviews and to threaten and intimidate those who make complaints about their experience with the company.

Roca Labs Sues Customer For Posting A Negative Review [Mike Masnick/Techdirt]

(*Image: Complaint Department Grenade "Please Take a Number"*)

**DISCUSS**

**READ MORE AT BOING BOING**

**Billionaire told he can't block access to public beach**

**15 lessons from 15 years of blogging**

**Adjustable Pac Man and ghost ring**

AD BY FEDERATED MEDIA

**Simple Update, HUGE Payoff!**



-from Vintage Revivals-

Technology is amazing isn't it? When we really stop and just look at what is not



CLICK TO VIEW

Get your life in tune.

**ABOUT US**    **CONTACT**    **ADVERTISE**    **PRIVACY**    **TOS**    •    **FACEBOOK**    **TWITTER**    **RSS**    **EMAIL**

11/6/2014 Roca Labs Threatens To Sue All Three Former Customers Who Provided Evidence Against Roca In PissedConsumer Case | Techdirt

Case 8:14-cv-03014-SCB-MAP Document 1 Filed 12/02/14 Page 120 of 125 PageID 120



Insider Shop    Insight Community    Step2

Search Techdirt    Search

Techdirt    Wireless News    Innovation    Case Studies    Startups    Net Neutrality

Preferences    Register    Sign In

Main    Submit a Story    RSS

Follow Techdirt

<< Cops Seize Car When Told To Get A Warrant...

Why Won't The Press Admit That CIA Director... >>

# Roca Labs Threatens To Sue All Three Former Customers Who Provided Evidence Against Roca In PissedConsumer Case

from the the-ultimate-in-sleazy dept

Legal Issues
by Mike Masnick
Mon, Sep 29th 2014
5:38am

0

Filed Under:
consumer reviews,
evidence,
intimidation,
lawsuits, marc
randazza, opinions,
paul berger,
reviews,
tampering, threats,
witness

Companies:
consumer opinion
corp., roca labs

Permalink.

The Roca Labs story keeps getting more and more ridiculous. Each time you think the company couldn't act in a way that seems even more sleazy and questionable, it raises the bar. If you don't recall, Roca Labs sells a "dietary supplement" (they describe it as a "food additive" or a "nutraceutical") that, according to one doctor, "consists primarily of industrial food thickening agents" which the company claims is an "alternative" to gastric bypass surgery. More importantly, the company has some crazy terms of service that say if you buy the product the company will offer a "discount" in exchange for agreeing to never say anything negative about the product ever in any form (and requiring you to allow the company to showcase any positive results). One of our readers went through the ordering process and claims that the "discount" is a mirage -- as there appeared to be no way to order without the "discount" (i.e., without agreeing to the gag clause). Despite all this, there are numerous complaints about Roca Labs and its product both with the Better Business Bureau (which gives the company an F grade) and with PissedConsumer, where people have complained about both the company and the product.

In response, Roca Labs used some unique legal theories to sue PissedConsumer's parent company, Consumer Opinion Corp., claiming that it's "tortious interference" to solicit consumer reviews, given the company's gag order. PissedConsumer fought back, arguing that the gag clause was clearly unenforceable, questioning the quality of Roca's products, and highlighting the company's history of threatening lawsuits when people complained to the Better Business Bureau. On top of all that, we noted that Roca Labs decided, in the midst of all this, to sue a former customer for complaining to the Better Business Bureau. This lawsuit was filed the day after PissedConsumer responded to Roca's lawsuit, the timing of which will become more interesting as you read a little further.

If you're keeping score at home, among the questionable actions by Roca Labs (leaving aside any questions about the efficacy and safety of the product), we've got (1) a gag order that both demands silence if you're unhappy and compels endorsement if you are happy, (2) a questionable legal threat against a website that collects consumer reviews, and (3) legal threats and lawsuits against unhappy customers for merely complaining to the BBB about Roca Labs.

And now the company has taken it up to another level. As we noted, when PissedConsumer fought back, it included declarations from three former customers, all of whom had complained to the BBB. It had been a while since any of those former customers had heard from Roca Labs, but four days after PissedConsumer's response, all three of those customers received new letters from Roca Labs, threatening legal action for "breach of contract."

Marc Randazza, the lawyer for PissedConsumer, has now filed for a temporary restraining order against Roca Labs, claiming that the company is engaged in witness intimidation.

Via the attachments in the filing, you can see that Randazza had a ridiculous email conversation with Roca Labs' lawyer, Paul Berger, in which Randazza bent over backwards offering to allow the company to file such lawsuits if needed to avoid a statute of limitations, but otherwise asked the company to defer any such threats or legal action until after the court expresses an opinion on the legitimacy of Roca's gag order (which is expected next week). Berger appears unwilling to respond directly to what Randazza is clearly offering, and also makes some bizarre claims about not being able to respond as the legal representative of Roca Labs, despite his own email signature noting that he's the "independent general counsel" for the company and the fact that all the threat letters came directly from him (his reason: not being admitted to the bar in that part of Florida -- a meaningless excuse for the purpose of communications between lawyers, since that only concerns his ability to appear in court).

In the threat letters to the three customers sent on Monday morning, September 22nd, Berger directly references that one lawsuit he filed the previous Friday, September 19th, as evidence of the "seriousness" with which Roca takes these issues. So, the timeline: on Thursday, September 18th, PissedConsumer responds to Roca's lawsuit, including declarations from three former customers who complained to the Better Business Bureau, only to receive initial threats from Roca soon after, though no actual lawsuit (two of these happened in 2011, one earlier in 2014). On

Advertisement



Essential Reading

Hot Topics

6.2    Court Says By Agreeing To AOL's Terms Of Service, You've 'Consented' To Search By Law Enforcement

6.0    Now In Charge Of Congress, GOP Plans To Give Up Its Own Constitutional Powers To The Obama Administration

5.7    Chicago Transit Cops Start Up Their Own Security Theater, Will Start Randomly Swabbing Bags For Explosive Residue

New To Techdirt?
Explore some core concepts:

Saying You Can't Compete With Free Is Saying You Can't Compete Period

How Being More Open, Human And Awesome Can Save Anyone Worried About Making Money In Entertainment

The Future Of Music Business Models (And Those Who Are Already Here)

read all »

Techdirt Reading List



Remix: Making Art and Commerce Thr...
Lawrence Lessig (Hardcover - Oct 16, 2008)
$0.01
★★★★☆

No Law: Intellectual Property in the I...
David Lange, H. Jefferson Powell (Paperback - O...
$18.41

Moral Panics and the Copyright Wars
William Patry (Hardcover - Sep 3, 2009)
$11.98
★★★★½

The Gridlock Economy: How Too Much ...
Michael Heller (Paperback - Feb 23, 2010)
$2.04
★★★★½

1 2 3 4 5 >

Get Widget    Privacy



Friday, Roca sues a different former customer who complained to the Better Business Bureau. Then, early Monday morning, Roca sends letters to the three former customers whose declarations were part of the Thursday filing, pointing to the Friday lawsuit as evidence of how the company will sue customers who complain to the BBB. You can see all three threats embedded below.

As Randazza notes in his own filing, this appears to be a fairly clear attempt to "intimidate and harass defense witnesses." From the filing:

> So far, three of Roca's prior customers have agreed to serve as witnesses. Most others declined to respond, wishing to not get involved, out of fear that Roca would retaliate against them for testifying. Those concerns proved to be well-founded, as Roca threatened all three of the witnesses Opinion Corp. identified. The timing of its aggression against these three women makes its intentions transparent – Roca wants to intimidate them and any other potential witnesses in this case.

> As for Ms. Walsh and Ms. Anderson, it has been in excess of three years since they lodged their complaints with the Better Business Bureau. Roca threatened litigation at the outset, demanding they retract their complaints. Roca then went completely silent for more than three years. However, after such a long period of dormancy Roca <u>now</u> seeks to threaten imminent legal action against these witnesses. Nothing could have motivated Roca to reach out to these women after such a long period other than to try and intimidate witnesses in this case.

The filing only seeks a rather brief temporary restraining order, asking the court to block Roca from any such threats or lawsuits until after the October 8th hearing in this case, when it's likely the judge will determine if the original gag order from Roca Labs is legit. As Randazza notes, the only possible "harm" to Roca is delaying a possible lawsuit by less than two weeks (which seems completely minor given that Roca has ignored the issue with at least two of the customers in question for over three years). Furthermore, Randazza asks for any and all communications with those and other potential witnesses in the case to make sure that there hasn't been anything else that might be deemed witness harassment or intimidation.

To print the document, click the "Original Document" link to open the original PDF. At this time it is not possible to print the document with annotations.

To print the document, click the "Original Document" link to open the original PDF. At this time it is not possible to print the document with annotations.

Techdirt Insider Chat

Obama more or less powerless, or close to?

**Christopher Best**: No, he's still got plenty of power. He can veto anything they pass, if he wants, and they don't have a 2/3 majority to overrule him
And he can still write crazy unaccountable executive orders

**Rikuo**: okay thanks

**Mark Harrill**: yeah what CB said. What it changes is the mechanics of Congress, who is in charge of the committees and the R's can control the legislative agenda

**Ninja**: Now imagine if R's and D's had to share the power with C's, B's and other parties? I alliances would have to be made instead of the partisan warfare we are seeing

**Mark Harrill**: it would be human sacrifice, dogs and cats living together mass hysteria

Get the Insider Chat!

Advertisement



BUTTERBALL® TURKEY COUPONS

Print Coupons!

Recent Stories

### Thursday

06:10   Dish Pulls CNN, Doesn't Think Customers Still Paying For It Are Missing Much (2)

04:09   Chicago Transit Cops Start Up Their Own Security Theater, Will Start Randomly Swabbing Bags For Explosive Residue (23)

01:08   Carl Malamud's Public.Resource.Org Joins Effort To Make Pay-Walled Indian Standards Freely Available (2)

### Wednesday

21:08   Now In Charge Of Congress, GOP Plans To Give Up Its Own Constitutional Powers To The Obama Administration (24)

17:00   DailyDirt: Looking Fashionable In New Spacesuit Designs (7)

15:55   Hillary Clinton Still Refuses To Make Her Views Clear On Surveillance, And That's A Problem (23)

14:48   Roca Labs Threatens Other Sites For Writing About Its Case, Files Another Questionable Document (10)

13:47   Australians' Stored Metadata Could Be Used In Any Civil Case, Including Against Copyright Infringement (25)

12:45   Pharma Officials Insist That There Is 'Zero Evidence' That Patents Harm Access To Medicine (21)

11:41   Germany's Top Publisher Admits Its Web Traffic Plummeted Without Google; Wants Politicians To 'Take Action' (48)

More ⊙

Advertisement

11/6/2014 Roca Labs Threatens To Sue All Three Former Customers Who Provided Evidence Against Roca | Pissed off Customer Case ID: 122

Case 8:14-cv-03015-SCB-MAP Document 1 Filed 12/02/14 Page 122 of 125 PageID 122



To print the document, click the "Original Document" link to open the original PDF. At this time it is not possible to print the document with annotations.

To print the document, click the "Original Document" link to open the original PDF. At this time it is not possible to print the document with annotations.

11/6/2014 Roca Labs Threatens To Sue All Three Former Customers Who Provided Evidence Against Roca | Pissed Consumer Complaints

Case 8:14-cv-03014-SCB-MAP Document 1 Filed 12/02/14 Page 123 of 125 PageID 123

To print the document, click the "Original Document" link to open the original PDF. At this time it is not possible to print the document with annotations.



Tweet 34    Like 22    1 point    g+1

24 Comments | Leave a Comment

If you liked this post, you may also be interested in...

- Roca Labs Threatens Other Sites For Writing About Its Case, Files Another Questionable Document
- Lena Dunham Once Again Threatens Lawsuit Over An Interpretation Of Her Book That She Doesn't Like
- Pianist Dejan Lazic Defends His Takedown Request By Pointing Out That The WaPo Reviewer Is Really Mean
- Magistrate Judge Not Impressed By Roca Labs' Legal Arguments: Recommends Against An Injunction
- Roca Labs Story Gets More Bizarre: Senator Threatens Bogus Defamation Lawsuit, While Nevada Quickly Rejects Bogus Bribery Charge

## Reader Comments (rss)

(Flattened / Threaded)                                          Show All Comments ▼

1.  Anonymous Coward, Sep 29th, 2014 @ 6:10am          insightful | funny | report

    Witness intimidation

    I thought that witness intimidation is criminal offence?
    If so it seems that Roca's lawyer risk disbarrement...

    [ reply to this | link to this | view in thread ]

2.  ACasey (profile), Sep 29th, 2014 @ 6:33am          insightful | funny | report

Marc Randazza isn't the greatest lawyer in the world, but I'm glad he's on this case.

[ reply to this | link to this | view in thread ]

3.  Oblate (profile), Sep 29th, 2014 @ 6:40am          insightful   funny   report

So this is how they work...

> the company claims is an "alternative" to gastric bypass surgery.

Figured out how this works-
1. Gullible/ignorant person becomes customer of Roca Labs.
2. Person consumes 'alternative' weight loss supplement.
3. Person becomes irate/displeased with performance of the 'alternative'.
4. Person legitimately complains about Roca Labs.
5. Person is sued and harassed by Roca Labs.
6. Person must spend income on lawyer fees instead of food.
7. Due to financial based malnutrition and stress from lawsuits, person becomes thinner, and no longer needs gastric bypass surgery.
8. Person discovers that the supplement has worked as intended, just not in the method they thought it would.

[ reply to this | link to this | view in thread ]

4.  Anonymous Coward, Sep 29th, 2014 @ 6:44am          insightful   funny   report

Paid by the hour

The Roca Labs top lawyer must get paid by the hour for cases he works on for them. He is obviously drumming up enough legal trouble for them, that he will end up owning whatever assets are given to the defense in these obvious Streisand affect inducing actions.

[ reply to this | link to this | view in thread ]

5.  Anon E. Mous (profile), Sep 29th, 2014 @ 6:58am          insightful   funny   report

The more I read about this case, the more I get a Prenda like sense of Deja-vu in how the legal arguments from Roca seem to be filled with more filler than substance

The fact that they are suing people who were former customers many years later just adds to the air of desperation of Roca's case in my opinion and seem to be more concerned with the statues of limitation running out than actually saving fact and getting out of this mess.

Honestly the bad publicity that is going to surround this case almost reminds me of the KlearGear mess, in that trying to hold people to a policy that is coercive at best is just bad for business.

If your product isn't what is cracked up to be then people are going to complain about it. Maybe if they actually offered refund peoples complaints wouldn't be so bad.

If people are saying this product didn't work for me and I cant get a refund, then you cant expect them to sit by and just flush their cash down the drain and be all quiet about it

It would seem this is more about silencing the critics who say the product didn't work, as it may effect future sales. I guess it is easier to try and quiet your detractors then to fix your product

[ reply to this | link to this | view in thread ]

6.  ACasey (profile), Sep 29th, 2014 @ 7:19am          insightful   funny   report

Re:

Prenda wasn't nearly as bad as these people, IMO. They only sued over porn; these people are trying to stifle speech.

[ reply to this | link to this | view in thread ]

7.  Anonymous Coward, Sep 29th, 2014 @ 7:41am          insightful   funny   report

A rare sentence

Prenda wasn't nearly as bad as these people

Now that's a sentence I didn't expect I'd ever see.

[ reply to this | link to this | view in thread ]

8.  Anonymous Coward, Sep 29th, 2014 @ 7:59am          insightful   funny   report

Selling Snake Oil , should be hit and run why do you think the guys that started doing this always had a cart and

11/6/2014                    Roca Labs Threatens To Sue All Three Former Customers Who Provided Evidence Against Roca, Pissed Customer Can Edit | T…

Case 8:14-cv-03014-SCB-MAP   Document 1   Filed 12/02/14   Page 125 of 125 PageID 125

left town afterwards sooner or later the person you fooled is going to figure out your scam , repackage and move on.

[ reply to this | link to this | view in thread ]

9.   **Gracey** (profile), Sep 29th, 2014 @ 8:49am              `insightful`  `funny`  `report`

Re:

[quote]in how the legal arguments from Roca seem to be filled with more filler than substance[/quote]

Well why not? Isn't that the way they work ... the product is no different ... filled with more filler than substance too.

[ reply to this | link to this | view in thread ]

10.   **Andrew D. Todd**, Sep 29th, 2014 @ 9:34am              `insightful`  `funny`  `report`

Re: So this is how they work...

Fallacy in argument #6. If you shop around, junk food is much cheaper than good food, eg. salad. You can get a whole bag of Snickers bars for a couple of dollars. The thing about salad is that it spoils, and the shopkeeper is forever pitching stuff which has gone overdue, and that is reflected in the price. I just spent four dollars at the convenience store for a little tray containing half a dozen cherry tomatoes, three banana peppers, and three sprigs of broccoli. So, so, and such small portions...

Come to that, off-brand whiskey is remarkably cheap. If the pain of your existence is too great to tolerate, you can get completely bombed for a dollar or two, at the rate of twenty-five cents a drink (1.75 liters/$15, see Rite-Aid newspaper circular). Hogarth's famous engraving, Gin Lane, shows a sign reading: "drunk for one pence, dead drunk for twopence, straw for free." A penny, circa 1750, would be worth about a dollar now, so not much has changed. Except for the straw...

[ reply to this | link to this | view in thread ]

11.   Anonymous Coward, Sep 29th, 2014 @ 9:53am              `insightful`  `funny`  `report`

Re: Re:

...filled with more filler than substance...

What substance?

I don't see any substance.

[ reply to this | link to this | view in thread ]

12.   **G Thompson** (profile), Sep 29th, 2014 @ 10:30am              `insightful`  `funny`  `report`

I wonder if Roca are smart enough to see what is now about to happen to them and what Marc (who is really a master strategist) is doing here. Sun Tzu would be proud ;)

*munches popcorn*

[ reply to this | link to this | view in thread ]

13.   **Oblate** (profile), Sep 29th, 2014 @ 10:45am              `insightful`  `funny`  `report`

Re: Re: So this is how they work...

> I just spent four dollars at the convenience store

Well there's your problem. You are buying prepackaged at the premium convenience store rate. Buy normal sized amounts of whatever is on sale at the regular (inconvenience?) store and you won't pay nearly as much per serving.

So there is no fallacy. Just because someone may buy junk food that is cheaper than healthy food, does not mean that they must buy that junk food or that they have to spend their reduced budget on junk food instead of reasonably priced healthy food.

[ reply to this | link to this | view in thread ]

14.   David, Sep 29th, 2014 @ 10:48am              `insightful`  `funny`  `report`

Re: Re: Re:

The parties names are spelled correctly. There's your substance. Not much, but some.

[ reply to this | link to this | view in thread ]