UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROCA LABS, INC.,

       Plaintiff,                    CASE NO: 8:14-CV-03014-SCB-MAP

vs.

MARC RANDAZZA,

       Defendant.
_____/

## PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT

Plaintiff, ROCA LABS, INC. ("Roca"), a Florida Corporation, by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 15(a)(2), hereby moves this Court for entry of an Order granting leave to amend the Original Complaint. As explained further in the Memorandum of Law in Support of Plaintiff's *Motion for Leave to Amend The Complaint*, Plaintiff should be permitted leave to amend their Complaint. Plaintiff's proposed Amended Complaint is attached to this motion as Exhibit "1."

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), the undersigned counsel consulted with counsel for Defendant, Larry Walters, Esq., on January 22, 2015 via the telephone on two (2) occasions, and once more on January 27, 2015.

On January 22, 2015, Mr. Walters stated that he would not be able to provide a position on the relief sought herein without first undertaking discovery of Plaintiff concerning the basis for its amendment to add Florida Corporation Marc J. Randazza, P.A. d/b/a Randazza Legal

1

Group ("Randazza Group") to the action. As Mr. Walters was told, the basis for the amendment can be found by anyone with access to SunBiz.org, FloridaBar.org, the State Court dockets of Florida, and the Pacer Federal Court dockets, which include Defendant's own filings. Further, Mr. Walters was told by the undersigned that the amendment is based on newly discovered and/or confirmed evidence.

Moreover, nothing in the Rules confers upon Defendant an automatic right to conduct discovery to determine if an Amendment is permissible. Plaintiff declined to permit Defendant to perform discovery on this issue, believing that the basis for the amendment was sufficiently provided.[1] After the undersigned declined counsel's request for discovery, Mr. Walters stated on January 27, 2015 that he objects to the relief sought herein.

## MEMORANDUM OF LAW

### I.    INTRODUCTION

Plaintiff seeks leave to file an Amended Complaint based in large part upon the new factual allegations and evidence proffered in Defendant's *Motion To Dismiss or Transfer for Improper Venue Pursuant to Fed. R. Civ. P. 12(b)(3) and Incorporated Memorandum of Law* (Document 16) and to add a Party to the litigation that was identified based upon factual allegations in said Motion. In the Motion to Dismiss Defendants state "This claim stems from the Defendant's representation of the defendants in the related case of Roca Labs v. Opinion Corp., Case No.: 8:14-cv-02096-VMC-EAJ, currently pending in the United States District Court,

---

[1] Mr. Walters stated that filing the instant motion without allowing him to conduct discovery would be premature and violate Summary Judgment procedures. Ironically, Mr. Walters' client, as counsel in the Opinion Matter, filed an extensive Motion for Summary Judgment (Doc. 57) claiming, among other things, that he did not need to allow Roca Labs to conduct discovery prior to filing for Summary Judgment and that the Court should not allow Roca Labs to conduct discovery in that case.

Middle District of Florida, Tampa Division (the "Opinion Matter"). Defendant is thus alleging himself that Randazza's actions arose from his position at, and on behalf of, the Randazza Group.[2] As such, Randazza Group is an appropriate defendant from Florida, and joinder is appropriate.

It should be noted for purposes of the relief sought herein that the undersigned contacted Mr. Walters at 12:14 p.m. on January 22, 2015, to make him aware of the impending amendment. Mr. Walters stated during the first phone call that he would speak to his client concerning the proposed amendment and contact the undersigned later in the afternoon. Instead of calling, Defendant filed an Answer with the Court, effectively blocking Plaintiff from amending the Complaint as a matter of course and necessitating this motion practice. Counsel have since discussed that issue and put it to rest; however, the foregoing paragraph is necessary to put the Court

Further, Defendant, through counsel, stated orally and in writing his position that Plaintiff's amendment is a post-remand fraudulent joinder. In anticipation of a response or separate motion from the Defendant on that issue, Plaintiff details for the Court below why such an assertion is completely unsupportable and inappropriate.

The proposed Amended Complaint is attached to this motion as Exhibit "1." This Motion represents the first request for leave, and is not sought for purposes of delay or undue burden, and is not futile or prejudicial. Respectfully, the interests of justice support granting this Motion and permitting leave.

---

[2] Mr. Randazza represents Opinion Corp. as an attorney for Randazza Legal Group and signed all legal documents under the firm name Randazza Legal Group. He has done so in 2014 and 2015, despite maintaining in writing and orally in Court that Randazza Legal Group in Florida has ceased to exist as of December 31, 2014.

## II.     ARGUMENT

Federal Rule of Civil Procedure 15(a)(2) provides that a party may amend its pleadings by leave of Court or by written consent of the adverse party, and the Court "should freely give leave" to amend a complaint "when justice so requires." In particular, "timely motions to amend are held to a very liberal standard." *Smith v. Trans-Siberian Orchestra*, 728 F. Supp. 2d 1315, 1318 (M.D. Fla. 2010). The Amended Complaint updates the factual circumstances surrounding the present Defendant and his law firm as they pertain to the causes of action. Some of the facts and evidence were recently discovered and/or confirmed through Defendant's Exhibits that were submitted with his *Motion to Dismiss or Transfer for Improper Venue Pursuant to Fed. R. Civ. P. 12(b)(3) and Incorporated Memorandum of Law* (Doc. 16) and by Mr. Randazza's statements in a January 27, 2015 hearing in the Opinion Matter concerning his status in the Middle District.

Attached to the Defendant's Motion to Dismiss are Exhibits showing Mr. Randazza perpetrating his actionable conduct through his law firm that is operating and carrying on business in the State of Florida (Doc. 16-5). *See* Exhibit "2," which is a true and correct copy of Exhibit "5" from Doc. 16. Plaintiff was not previously aware that Mr. Randazza was using his business e-mail to commit the tortious acts giving rise to the claims at issue; rather, Plaintiff was under the impression that Mr. Randazza was using his *personal* e-mail and *personal* Twitter account. Plaintiff was aware that Mr. Randazza later used his business to publish and disseminate his original defamatory statements through Court pleadings in an attempt to invoke privilege, but not until Mr. Randazza filed his e-mails in support of his Motion to Dismiss did the Plaintiff gain the necessary confirmation of the connection between Randazza Group and the initial actionable conduct. While it was initially contemplated, the foregoing connection was not confirmed until

now, and ethically the undersigned declined to join Randazza Group until such confirmation was in hand.

As set forth below, the amendment includes new causes of action that are supported by relevant facts. Plaintiff respectfully submits that this is precisely the type of circumstance where the Court should freely grant leave to amend in the interests of justice. *See* Fed. R. Civ. P. 15(a)(2); *Smith v. Trans-Siberian Orchestra*, 728 F. Supp. 2d at 1318.

### A.     *Leave to Amend is Warranted in This Case*

#### i)     Defendant Will Not Suffer Any Prejudice and There is No Evidence That Plaintiff's Motives Were Dilatory

Defendants will not suffer any prejudice if the Court grants leave to file Plaintiff's Amended Complaint. The procedural history of the case shows that Plaintiffs have diligently prosecuted their claims. Indeed, the timing of this filing provides the Court a showing that Plaintiff sought to act immediately upon receiving new information pertinent to the case. Further, the Parties recently met and developed the parameters for a Case Management Report. Contained within said report is a proposed deadline for amendments of on or about March 15, 2015. Because Plaintiff wishes to act on new information rather than delay the action further, it seeks leave immediately. Any delay of the amendment is due to Defendant filing an Answer after being put on notice of the impending amendment.

Moreover, other equitable factors can be considered by the Court, and here, they weigh in favor of permitting Plaintiff's joinder. The case of *White v. Progressive Select Ins. Co.*, 2014 WL 172118 (M.D. Fla 2014) is instructive on this issue.[3] The instant matter is in its infancy, as was

---

[3] Defendant provided Plaintiff with the *White* case to support his position. Plaintiff analyzes the case in this Motion because it supports its position more so than Defendant's.  Plaintiff is obligated to point out that the *White* case resulted in remand and the clerk was directed to close the case and terminate any pending motions. Plaintiff's position on the potential of remand is discussed in the below sections.

the case in *White*; therefore, any change in posture of the parties at this early juncture will have little prejudicial effect on either Defendant. *Id*. Also, like *White*, the Parties here have not submitted their joint case management report; thus, there are no scheduling deadlines at this time. *Id.*

**ii)      Joinder is Proper and Most Certainly Not Fraudulent**

Defendant, through counsel, asserted orally and in e-mail communications that joinder of Randazza Group is fraudulent. Specifically, Defendant contends that joinder of Randazza Group is for no other lawful or ethical purpose than to affect diversity. Plaintiff agrees that there would in fact be a lack of diversity if Randazza Group is added; however, this does not change the fact that Randazza Group is a proper Florida Defendant. Plaintiff recognizes that upon Defendant raising a fraudulent joinder issue, the Court has the discretion whether to allow joinder. *White v. Progressive Select Ins. Co.*, 2014 WL 172118 (M.D. Fla 2014).

The Middle District of Florida in *Weir vs. DePuy Orthopaedics* analyzed and ruled on fraudulent joinder issues in late 2014. The Court in *Weir* stated that "[j]oinder is fraudulent when there is no possibility the plaintiff can prove a cause of action against the non-diverse defendant." *See Wier v. DePuy Orthopaedics, Inc.*, 2014 U.S. Dist. LEXIS 146353 (M.D. Fla. Oct. 14, 2014)(citing *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). "The burden of establishing fraudulent joinder is a heavy one. A district court must find joinder to be proper '[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the [non-diverse] defendants.'" *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superceded by statute on other grounds as recognized in Wilson v. Gen. Motors Corp.*, 888 F.2d 779, 782 n. 3 (11th Cir. 1989). Randazza Group is

unequivocally a Florida Corporation with an office operating in Florida subject to the claims set forth in Exhibit "1." Additionally, Florida is where the substantial events that gave rise to the claim occurred. *See* 28. U.S.C 1391(b). Simply put, the Exhibits supporting this Motion, combined with the fact that Randazza Group was fully operational and functioning at the time Defendant committed the intentional torts, proves joinder is proper and not fraudulent.[4]

In all events, Defendant's accusations of fraud are what placed remand back at-issue in this case. Should Plaintiff make a Motion to Remand this case to State Court, or if this Court grants such relief on its own accord, then Defendant's anticipated result is supported by the *Weir* Court: "[w]here a plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court." (citing *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir.1998); *see also Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir.1997).

### a. *Evidence Proves Defendant's Contrary Position*

Further, Defendant's position in several pleadings is that the alleged acts occurred in his capacity as an attorney for the Randazza Group. He takes said position to invoke privilege for his actions; however, merits are of no import at this stage, and Randazza Group is a proper Defendant even if this Court's jurisdiction is impacted. *See Wier v. DePuy Orthopaedics, Inc.*, 2014 U.S. Dist. LEXIS 146353 (M.D. Fla. Oct. 14, 2014)(holding that "[t]he role of the court is not to weigh the merits of a plaintiff's claim beyond the determination of whether the claim is colorable under state law."); *see also White v. Progressive Select Ins. Co.*, 2014 WL 172118

---

[4] Defendant claims his fictitious name has expired, and he is correct, but it didn't expire until December 31, *2014*. He continues to file pleadings in 2015, in Florida, as a member of the Florida bar, under the guise of the Randazza Group.

(M.D. Fla 2014)(stating that "[u]nder a fraudulent joinder analysis, whether the fraud claim will ultimately succeed is irrelevant. The fraud claim just has to be 'possible'.")

Under the doctrine of *Respondeat Superior* and agency theories, the Randazza Group is a proper Defendant to this action. *See United Techs. Corp. v. Mazer*, 556 F. 3d 1260, 1271 (11th Cir. 2009)(holding that "[a]n action falls within the scope of employment if the conduct (1) is of the kind the employee was employed to perform; (2) occurred within the time and space limits of the employee's employment; and (3) was activated at least in part by a purpose to serve the employment.") Mr. Randazza was an attorney for Randazza Group at the time the tortious acts occurred. *See* Exhibit "3," which is a composite Exhibit of Randazza Group's corporate filings with the State of Florida.

Moreover, Plaintiff anticipates an argument from the Defendant that he provides legal services strictly from Nevada and does not have an office or business through which he practices law in Florida. Every piece of evidence supplied to this Court under this filing points to the contrary. As can be gleaned from the attached Exhibits, Mr. Randazza is the Director, CEO, and Secretary of Randazza Group, which provides professional legal services. *See* Exhibit "3," Randazza Group's Articles of Incorporation. Further, Exhibit "4" is a print out of Randazza Group's website; specifically, the section concerning the Florida Office. The second page of Exhibit "4" states: "**STAFF AT THIS LOCATION MARC J. RANDAZZA**."[5] Furthermore, Randazza Group, found at [www.Randazza.com](www.Randazza.com), unequivocally advertises an active office in Florida. Any member of the public who views this website would conclude that this is an ongoing, operational business in Florida for the purposes of providing legal services.

---

[5] This Exhibit also shows a computer date of December 3, 2014, which was prior to the Court's Order on Remand and provides a basis for the undersigned's certification of persistent due diligence.

Perhaps most telling of whether Mr. Randazza owns and operates business in Florida for the purposes of practicing law is Exhibit "5," which is a filing in the Opinion Matter authored by Defendant (Doc. 54). In said filing, Mr. Randazza motions the Middle District of Florida to allow Attorney Ron Coleman from New York to be admitted *Pro Hoc Vice* in the Opinion Matter. In support of said Motion, Mr. Randazza makes the following statement: **"Pursuant to Local Rule 2.02, Ronald D. Coleman designates Marc J. Randazza, Esq., who maintains an office in the State of Florida for the practice of law."** *See* Exhibit "5." The filing is submitted and signed by Mr. Randazza, and no one else. After viewing all of the evidence provided with this Motion, it would be completely disingenuous to make the argument that Randazza Group operates solely from Nevada, but somehow petitioned a Court in the Middle District of Florida to be designated as local counsel through a Florida office.

### iii.     The Amendment is Not Futile

Finally, Plaintiff's amendment is not futile, particularly where the basis for the amendment (1) is supplied by the Defendant himself, (2) can be readily accessed by the general public, and (3) the Defendant is and has been aware of the potential for the claim against Randazza Group, regardless of whether he disputes its viability. Indeed, "[t]he plaintiff need not have a winning case; rather, the plaintiff need have only a possibility of stating a valid cause of action in order for the joinder to be legitimate." *See Wier v. DePuy Orthopaedics, Inc.*, 2014 U.S. Dist. LEXIS 146353 (M.D. Fla. Oct. 14, 2014)(citing *Stillwell v. Allstate Insurance Co.*, 663 F.3d 1329, 1333 (11th Cir. 2011). The Court must review the factual allegations in the light most favorable to the plaintiff and resolve uncertainties about the applicable law in favor of the plaintiff. *Id*.

Plaintiff affirmatively asserts that its claim against Randazza Group is well-founded and presents a valid cause of action that surpasses the standard set forth by the *Weir* Court. The facts surrounding the case, the conduct of the Defendant both in and out of Court, and the attachments hereto provide a sufficient basis for amendment and to dispute the claims of fraud by Defendant. Plaintiff anticipates Defendant will argue that his business is based in Nevada and that the Florida office does not supply any legal services. Such an assertion is contrary to each of the attached Exhibits and to his practice of law in Florida State and Federal Courts, under the Randazza Group, in the years 2014 and 2015.

> ### B.   The Undersigned and Plaintiff Sufficiently Performed Their Due Diligence

In the face of direct and calculated assertions from the Defense that this amendment will not comply with Federal Rule of Civil Procedure 11, the undersigned certifies that he performed his due diligence to comply with Rule 11, *to wit*: to the best of his knowledge, information, and belief, the undersigned formed, after an inquiry reasonable under the circumstances, that this amendment (1) is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support; and (4) the denials of factual contentions are warranted on the evidence. *See* Fed. R. Civ. P. 11(b). Additionally, case law in the Middle District of Florida and the facts here support the position taken by the Plaintiff.

//

//

10

### III.     CONCLUSION

The foregoing issues are of paramount concern and why, among other reasons, Plaintiff files the instant Motion. For the reasons set forth above, Plaintiff respectfully requests that this Court grant the relief sought herein, and attaches the Proposed Amended Complaint.

Respectfully submitted on this 29th day of January, 2015.

/s/ John DeGirolamo
JOHNNY G. DEGIROLAMO, ESQ.
FLORIDA BAR NO: 0089792
The Law Offices of John DeGirolamo, Esq.
6000 South Florida Avenue,
P.O. Box 7122, Lakeland, FL 33807
Attorney for Plaintiff, Roca Labs, Inc.
Phone: (863) 603-3461
Pr. Email:  JohnD@inlawwetrust.com
Sc. Email:  Legal4@RocaLabs.com

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on 29th day of January, 2015. I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF PACER system which will send a notice of electronic filing to the following:

Lawrence G. Walters, Esq. (E-mail: Larry@FirstAmendment.com)
Walters Law Group, 195 W. Pine Ave., Longwood, FL 32750

Luke Lirot, Esq. (E-mail: Luke2@lirotlaw.com)
Luke Litor, P.A., 2240 Belleair Road, Clearwater, FL 33764

Ira Perry Rothken, Esq. (E-mail: Ira@techfirm.net)
Jared Robinson Smith, Esq. (Email: Jared@techfirm.net)
Rothken Law Firm, 3 Hamilton Landing, Suite 280, Novato, CA 94949

*/s/ John DeGirolamo*
JOHNNY G. DEGIROLAMO, ESQ.

Exhibit 1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROCA LABS, INC.,
a Florida Corporation,

       Plaintiff,                     CASE NO: 8:14-CV-03014-SCB-MAP

vs.

MARC J. RANDAZZA, an individual,
and MARC J. RANDAZZA, P.A.
d/b/a RANDAZZA LEGAL GROUP,
a Florida Corporation,

       Defendants.
_____/

## FIRST AMENDED COMPLAINT[1]

Plaintiff, **ROCA LABS, INC.** (**"ROCA"**), a Florida Corporation, by and through the undersigned counsel, files this First Amended Complaint and Declaratory Action against Defendants, **MARC RANDAZZA ("RANDAZZA") and MARC J. RANDAZZA, P.A. d/b/a RANDAZZA LEGAL GROUP ("RANDAZZA GROUP")**(collectively referred to as "Defendant's") and states as follows:

## PARTIES, JURISDICTION, AND VENUE

1. This is an action for injunctive relief, declaratory relief, and for breach of contract involving damages in excess of $15,000, exclusive of interest, costs and attorneys' fees.

---

[1] In its present form, this document is Exhibit "1" to *Plaintiff's Motion for Leave to Amend the Complaint*. Should this Court grant the relief sought in said Motion, Plaintiff will file and serve a dated Amended Complaint without this footnote.

2.  Venue is proper in Florida as this is an action for Tortious Interference and Defamation *Per Se* and seeks an award of money damages, including actual damages, punitive damages and reasonable attorneys' fees and costs; an award of compensatory damages under common law claim of tortious interference with a prospective relationship, an award of compensatory damages under common law claim of defamation and declaratory relief all stemming from conduct that occurred in Florida.

3.  At all times material to the action, Plaintiff **ROCA** is and has been a Florida for-profit corporation with its principal place of business at P.O. Box 5039, Sarasota, FL 34242.

4.  At all times material to the action, **RANDAZZA** is and has been an individual residing in Nevada and practicing law in Florida.

5.  At all times material to the action, **RANDAZZA GROUP** is and has been a Florida for-profit corporation with its principal place of business at 2 South Biscayne Boulevard, Suite 2600, Miami, FL 33131.

6.  Pursuant to Florida Statutes Section 48.193(2), **RANDAZZA** is and has been subject to personal jurisdiction in Florida because he committed tortious acts within the State of Florida.

7.  Pursuant to Florida Statutes Section 48.193(1)(a), **RANDAZZA** is and has been subject to personal jurisdiction in Florida because he practices law within the State of Florida and operates, conducts, engages in, or carries on a business or business venture in this state and maintains an office or agency in this state.

8. Pursuant to Florida Statutes Section 48.193(2), **RANDAZZA GROUP** is and has been subject to personal jurisdiction in Florida because it committed tortious acts within the State of Florida.

9. Pursuant to Florida Statutes Section 48.193(1)(a), **RANDAZZA GROUP** is and has been subject to personal jurisdiction in Florida because it operates, conducts, engages in, or carries on a business or business venture in this state and maintains an office or agency in this state.

10. **ROCA** retained the undersigned counsel and agreed to pay a reasonable fee for its services.

11. All conditions precedent to the filing of this Complaint, if any, have been satisfied, performed, or waived.

## GENERAL ALLEGATIONS

### A.  PLAINTIFF ROCA

12. **ROCA** is a Florida for-profit corporation that was formed in 2006 as Appealing Ventures, Inc. It changed its name to Roca Labs, Inc. in 2009.

13. **ROCA** markets food additives (sometimes referred to a nutraceuticals) and is the marketer of the proprietary Gastric Bypass Alternative®, which is an effective weight loss option for people who are trying to lose in excess of fifty (50) pounds.

14. **ROCA**'s products have been purchased and used by thousands of people as a surgery-free alternative to gastric bypass.

15. **ROCA**'s products are safe and effective when used as directed. Thousands of individuals have used **ROCA** products to lose weight successfully.

16. **ROCA**'s products are a natural alternative to surgery and to the best of its knowledge, no one has required medical treatment or hospitalization from the proper use of **ROCA**'s products.

17. **ROCA** made significant investments in product development and in its intellectual property rights.

18. **ROCA** owns the registered trademark Roca Labs®.

19. **ROCA** invests heavily in an online marketing and advertising program that has run in Florida and across the United States.

20. **ROCA** markets and sells its products through its website, "www.rocalabs.com," where information on its products is available and consumers can purchase the product directly.

21. **ROCA** relies upon its reputation, internet reviews, and the weight loss success stories of its customers to generate new business and attract new customers.

22. **ROCA** relies upon its reputation and the weight loss success of its customers to generate new business and attract new customers.

23. Indeed, **ROCA** has a unique Money Back Reward program, where **ROCA** pays individuals a monetary sum for sharing their weight loss success stories.

24. A recent search for **ROCA** Labs on "YouTube" pulled up more than six-thousand (6,000) results, the majority of which are personal weight loss videos shared by individuals.

25. Unfortunately, due to the unencumbered nature of the internet, anyone with a keyboard can voluntarily and intentionally detract from the thousands of positive stories with just one harmful article, interview, tweet, blog, or posting.

26. For instance, Consumer Opinion Corp. and Opinion Corp. own and operate PissedConsumer.com (hereinafter collectively "Pissed Consumer"), an internet haven for consumers, competitors or even Pissed Consumer itself to denigrate, disparage, and defame thousands of small businesses, regardless of the truth or veracity of the posting.

4

27. Based on the website's name alone, Pissed Consumer invites inherently negative commentary to be disseminated on their website. In other words, a happy or satisfied consumer would not seek out *Pissed* Consumer to communicate a positive story to the world.

28. **ROCA**'s business relationships were and are interfered with by Pissed Consumer. As a result, **ROCA** continues to suffer irreparable harm at the hands of Pissed Consumer.

29. Pissed Consumer defamed and continues to defame **ROCA**.  As a result, **ROCA** continues to suffer irreparable harm at the hands of Pissed Consumer.

30. **ROCA** took legal action to protect its rights and reputation in the State of Florida and sued Pissed Consumer (*Roca Labs v. Consumer Opinion Corp.* and *Opinion Corp.* Case No 8:14-cv-2096-T-33EAJ Middle District of Florida) for issues concerning, among other things, Pissed Consumer's violations of Florida's Deceptive and Unfair Trade Practice Act, Tortious Interference, and Defamation. **RANDAZZA** and **RANDAZZA GROUP** are legal counsel for Pissed Consumer in the foregoing matter.

### B.  DEFENDANTS RANDAZZA AND RANDAZZA GROUP

31. **RANDAZZA** is an individual residing Nevada.

32. **RANDAZZA** is an attorney and is licensed to practice law in the State of Florida and **RANDAZZA** maintains a law office providing professional legal services in Florida.

33. According to **RANDAZZA GROUP**'s most recent Annual Report filed with the State of Florida on January 13, 2014, **RANDAZZA** is the Director, CEO, and Secretary of **RANDAZZA GROUP**. *See* Exhibit "1" attached hereto.

34. According to the Articles of Incorporation, **RANDAZZA GROUP** renders professional legal

services. *See* Exhibit "2" attached hereto.

35. **RANDAZZA** is the only shareholder or director of **RANDAZZA GROUP**. *See* Exhibit "2."

36. As of December 8, 2009, and at all times material to the action, **RANDAZZA GROUP** operated in Florida under the fictitious name "Randazza Legal Group." *See* Exhibit "3." Said fictitious name appears to have expired as of December 31, 2014, but remains "active" with the State of Florida and **RANDAZZA** and **RANDAZZA GROUP** continue to operate in Florida as **RANDAZZA GROUP**. At all times material to the action, **RANDAZZA GROUP** was an active business in the State of Florida.

37. Further, Exhibit "4" is a print out of **RANDAZZA GROUP**'s website; specifically, the section concerning the Florida Office. The second page of Exhibit "4" states: "**STAFF AT THIS LOCATION MARC J. RANDAZZA**."

38. Attached as Exhibit "5" is a letter from **RANDAZZA** and **RANDAZZA GROUP** depicting a letterhead (at the footer) advertising a Florida office.

39. At all times material to the action, **RANDAZZA** acted on behalf of, as a representative of, for the interests of, as the agent of, and as the employee of **RANDAZZA GROUP**. At all times material to the action, **RANDAZZA GROUP** backed, supported, and endorsed **RANDAZZA**.

40. At all times material to the action, **RANDAZZA** acted within the scope of his employment and/or ownership at **RANDAZZA GROUP**.

41. At all times material to the action, **RANDAZZA** knew that **ROCA** is a Florida Corporation with no other principle place of business in any other State.

42. At all times material to the action, **RANDAZZA GROUP** is and has been liable for the actions and conduct of **RANDAZZA** under the doctrine of Respondeat Superior and agency theories. **RANDAZZA GROUP** endorses and supports the actions of **RANDAZZA**.

43. **RANDAZZA** and **RANDAZZA GROUP** gained notoriety for providing legal services to the pornography and adult entertainment fields. Defendants has represented a number of adult entertainment companies, including Kink.com, BangBus.com, and MilfHunter.com.[2]

44. **RANDAZZA** has been an outspoken advocate for Phillip Greaves, the author of "*The Pedophiles Guide to Love and Pleasure.*"  Mr, Greaves pled no contest to criminal charges in Florida because of his distribution of the book in Florida.

45. **RANDAZZA** adopted the use of the Latin term "*murum aries attigit*" to describe his approach to litigation. The foregoing phrase translates to "the ram has touched the wall," and refers to the ancient Romans' strategy of not allowing mercy and slaughtering everyone in a city if they did not surrender before the Roman battering ram touched the city's walls. **RANDAZZA** adopted this term for his approach to the legal profession, and consequently, behaves as if litigation is his own war.[3]

46. Despite being an Officer of the Court and a practicing member of the Florida Bar, **RANDAZZA** has waged his war against **ROCA** by intentionally and maliciously publishing many false and defamatory statements in his pleadings, with the intent to share them to his contacts in the internet media, and indeed by directly speaking to the media about **ROCA** with the intent to have them publish false, misleading and defamatory articles about **ROCA**,

---

[2] *See* Wikipedia (http://en.wikipedia.org/wiki/Marc_Randazza)

[3] *Id.*

7

and by harassing and making derogatory statements about **ROCA** via social media sites including Twitter. This is part of a larger scheme for marketing purposes as set forth below.

47. **RANDAZZA** announced his war against **ROCA** via a simple email to Paul Berger, counsel for **ROCA**, that simply read *murum aries attigit.* (*See below*, and Exhibit "6," email from **RANDAZZA** to Paul Berger).



48. Fortunately, we are not the ancient Romans and do not live in fear of attacks from battering rams. However, **RANDAZZA** waged modern day warfare by attacking and bullying his perceived enemy **ROCA** in the media for the purpose of harming **ROCA**, crippling it financially by battering away its customers, and gaining new clients for himself and his firm..

49. The Institute for Defense and Government Advancement has said the following: "harnessing and controlling messages distributed via the internet and social media will be a next big battleground to win the heart and minds of the world's masses regardless of who is the enemy of the day. The question of which nations will control and push out the message most effectively will become increasingly important. One thing is clear; whoever controls the message controls the masses. And whoever controls the masses will have the ability to win future wars."[4]

50. Through his own words, **RANDAZZA** and the law firm that he created, owns and operates, **RANDAZZA GROUP**, are admittedly waging a modern war in the online media against **ROCA**, which is a Florida company that **RANDAZZA** constantly thinks about, worries

---

[4] *Psychological Warfare in the Social Media Era: Winning Hearts and Minds through Facebook and Twitter*?, Nick Younker, Institute for Defense and Government Advancement, September 7, 2010.

about, wonders about, is obsessed with, and with which he is is utterly and totally consumed. Indeed, his twitter account that is endorsed by **RANDAZZA GROU**P is filled with snippets about **ROCA**. **RANDAZZA** can't stop thinking about or talking about **ROCA**; indeed, it appears as if he needs it.

51. **RANDAZZA** uses whatever opportunity his has to fight his war against **ROCA**. For example, **RANDAZZA** used the children's holiday of Halloween in an attempt to humiliate **ROCA** and malign the company in public by making the intentionally false and malicious statement "Some fucker put Roca Labs' shit in my kids candy bag!" (*See* Tweet below). The Tweet came from the Twitter account "@marcorandazza," and has been retweeted to more than 5,000 people as of the date of this filing.



52. **RANDAZZA** routinely and continuously issues statements about **ROCA** on Twitter. For example in January, 2015 **RANDAZZA** "Tweeted" or "reTweeted" more than a dozen times

about **ROCA**. The statements are not related to litigation between **ROCA** and Opinion Corp., but are made with malice and with the purpose to mock, ridicule, humiliate, harm, and continue his war against **ROCA**. They are also a form of advertising for new clients.

53. According to the *Creed of Professionalism* for trial lawyers established by the Florida Bar;

> (1) A lawyer is both an officer of the court and an advocate. As such, the lawyer always should strive to uphold the honor and dignity of the profession, avoid disorder and disruption in the courtroom, and maintain a respectful attitude toward the court; (4) A lawyer should be courteous and civil in all professional dealings with other persons. Lawyers should act in a civil manner regardless of the ill feelings that their clients may have toward others. Lawyers can disagree without being disagreeable. Effective and zealous representation does not require antagonistic or acrimonious behavior. Whether orally or in writing, lawyers should avoid vulgar language, disparaging personal remarks, or acrimony toward other counsel, parties, or witnesses; and (7) A lawyer must not use any aspect of the litigation process, including discovery and motion practice, as a means of harassment.

54. Attached hereto as Exhibit "7" is a composite Exhibit of e-mail communications from **RANDAZZA** from a **RANDAZZA GROUP** e-mail account requesting other lawyers and a "fraud expert" to publish, disseminate, further, target, harass, and otherwise assist in defaming **ROCA**.

55. These communications were designed to entice further defamation against **ROCA** and were sent with the intent that the recipients would further publish and disseminate the materials attached and discussed. In one e-mail, a Florida attorney congratulates **RANDAZZA**.

56. In addition to being alarming conduct for and amongst lawyers, the e-mail to Darren Spielman, Esq., of Kain & Associates, Attorneys at Law, located Ft. Lauderdale, Florida shows the targeting of, and publication to, a third-party in Florida by **RANDAZZA**. *See* Exhibit "7."

57. **RANDAZZA**'s actions show his disdain for the Court system, the rules that govern the Florida Bar, and our legal system. To **RANDAZZA**, winning the war and harming his opponents is what is most important. There is no room for civility, truth, or justice. *See* Exhibit "5."

### C. THE DEFAMATORY STATEMENTS

#### 1) Original Dissemination to the Media Prior to Court Pleadings

58. **RANDAZZA** made defamatory statements *first* to the media, then repeated them in *subsequent* Court filings.

59. Beginning on or about September 4, 2014, and continuing to present date, **RANDAZZA** went to his friends in the online media and caused select webzines/online media sites to encourage the publishing of false and defamatory articles about ROCA. *See* Exhibit "8" September 8 & 9, 2014 articles.

60. **RANDAZZA** is referenced in the articles contained within Exhibit 8, and the articles reference information that **RANDAZZA** provided to the media outlets.

61. **RANDAZZA** went to the media *before* he made any responsive pleadings in the *Roca Labs v. Opinion Corp.* case.

62. **RANDAZZA** contacted for the media for two purposes: (1) harass, defame, and injure **ROCA** as part of a war against **ROCA** and (2) generate new legal clients for Defendants. This is evidenced by the attachments hereto, and the fact that every Court pleading filed by **RANDAZZA GROUP** emblazons its name across the side of each page to market itself through the publications within the pleadings. This practice is not permitted under any Local Rule.

63. **RANDAZZA**'s war against **ROCA** began with him telling the media that **ROCA** was snake oil salesman, **ROCA's** products did not work, made people sick, were a health hazard, and that the government was going to close **ROCA** down.

64. **RANDAZZA** went as far as to state that **ROCA's** was engaged in criminal activity whereby its products were made in Mexico and illegally smuggled into the United States and that **ROCA** was going to be closed by the U.S. Government at any minute. These assertions were fabricated out of whole cloth by Defendants.

65. On September 8, 2014, TechDirt, an online magazine (or webzine), which claims 1.2 million unique visitors a month, published the first of what would be a long series of negative articles about **ROCA** from the "good thing we never bought anything from Roca Labs dept." at TechDirt (*See* Exhibit "8").

66. The September 8, 2014 article states that **ROCA** is the "manufacturer of 'dietary supplements' some of which they label with highly questionable claims that I imagine would not be supported by anything the FDA would consider to be credible evidence."

67. The article *foreshadows* the later defenses **RANDAZZA** would put forth on behalf of Opinion Corp., *to wit*: "Almost everything there is ridiculous. Presenting a platform for people to express their own opinions is not encouraging them to break any contract (which, again, is of dubious legality in the first place). Second, the site is not authoring or co-authoring the posts. Third, there's no evidence that anything being posted is 'false.' Fourth, what does Twitter's total user base have to do with anything?"

68. Upon information and belief, the foregoing quote is directly attributable to **RANDAZZA** and reflects conversations between **RANDAZZA** and TechDirt.

69. **RANDAZZA** caused these articles to be published, and, based on his past dealings with TechDirt, knew the articles would be disseminated all throughout the internet. Moreover while not directly attributed to **RANDAZZA**, the articles were in fact a publishing of **RANDAZZA**'s statements to TechDirt.

70. TechDirt was familiar with the arguments against Pissed Consumer and its future defenses before they were filed with the Court or provided to **ROCA**. This information could only have been supplied by Defendants.

71. Further, on September 9, 2014, BoingBoing.net wrote "Roca Labs sells dubious snake-oil like a 'Gastric Bypass Alternative.'"  Upon information and belief these statements were first made by Defendants to the media, and as alleged below, subsequently repeated by Defendants in the pleadings.

72. As a result of **RANDAZZA**'s communications with the media, and his own voluntary actions of dissemination, the statements about **ROCA** were thereby purposefully and resolutely published and disseminated to numerous third-parties in online magazines, websites, and blogs.

73. **RANDAZZA** unequivocally acted with intent and malice in making and distributing the statements to TechDirt and BoingBoing.

74. As evidenced by the emails attached in Exhibit "7," **RANDAZZA's** acted to both harm **ROCA** and gain new clients at the expense of **ROCA**. The intent was for the recipients to publish, disseminate, and breed the defamation provided by **RANDAZZA** and **RANDAZZA GROUP**.

75. At all times material to the action, **RADAZZA** acted on behalf of, as a representative of, for the interests of, as the agent of, and as the employee of **RANDAZZA GROUP**.

      **2)**      **The Subsequent Dissemination in Court Pleadings**

76. On or about ***September 18, 2014***, **RANDAZZA** filed Pissed Consumer's *Opposition to Plaintiff's Motion for Entry of a Temporary Injunction* (attached as Exhibit "9"), which ironically includes the same false, malicious and defamatory statements he previously made to the media a little more than a week earlier. These statements include, but are not limited to:

    a.   **ROCA** shows little concern for what happens to its users;

    b.   [**ROCA** sounds] like a disreputable company, producing tubs of snake oil (or snake oil goop, as it were);

    c.   **ROCA** Labs is desperately trying to force a cone of silence over each and every customer that discovers that **ROCA** Labs' product is not only a specious remedy for weight issues, but a potential cause of additional health problems;

    d.   Plaintiff [**ROCA**], desperate to sell as many tubs of goo to the public as it can before regulatory agencies come knocking; and

    e.   [**ROCA** Products may cause] a possible health crisis.

77. Additionally, in Pissed Consumer's *Emergency Motion for a Temporary Restraining Order* (attached as Exhibit 10), filed on or about ***September 22, 2014***, **RANDAZZA** repeated his false, malicious and defamatory statements he previously made to the media including, but not limited to:

14

a. **ROCA**'s product threatens the health and welfare of at least a portion (if not all) of its users; and

b. **ROCA** has threatened them [its customers].

78.  The statements in paragraphs 76 and 77 were first made as factual allegations in the media, and cannot be claimed to be his personal opinion, puffery, or supposition.

79. Therefore, chronologically speaking, **RANDAZZA** made defamatory statements *first* to the media as early as *September 4, 2014*, and then approximately two weeks later memorialized the exact same statements in Court pleadings on *September 18 and 22, 2014*, respectively.

80.  Not Surprisingly, in Pissed Consumer's Answer to Roca Labs's Complaint, which was filed and submitted by **RANDAZZA** and **RANDAZZA GROUP** in the Middle District Court on September 11, 2014, Pissed Consumer claims little or no knowledge about **ROCA**. Again, chronologically speaking, there was a claim of no knowledge about **ROCA** *after* **RANDAZZA** had been defaming **ROCA** to the media.

81. At all times material to the action, **RADAZZA** acted on behalf of, as a representative of, for the interests of, as the agent of, and as the employee of **RANDAZZA GROUP**.

82. These statements were repeated by TechDirt, BoingBoing, ArsTechnica, and other media outlets (*See* Composite Exhibit "8"). For example on September 22, 2014, TechDirt published an article that contained the following:

As the filing questions, all of these should raise red flags about the company and its products:

Does that sound like an upstanding company that stands behind its safe and reliable product? Or does that sound like a disreputable company, producing tubs of snake oil (or snake goop, as it were), and which knows that too much truth will hurt its fly-by-night bottom line? Roca Labs is desperately trying to force a cone of silence over each and every customer that discovers that Roca Labs' product is not only a specious remedy for their weight issues, but a potential cause of additional health problems. Plaintiff,

desperate to sell as many of its tubs of goo to the public as it can before regulatory agencies come knocking does its best to bully its former customers into silence.

83. **RANDAZZA** promoted the article at TechDirt about **ROCA** on Twitter.



84. **RANDAZZA** also used Tracy Coenen, an accountant and colleague, to publish an article entitled "Roca Labs Weight Loss Scam" that further disseminates Defendants statements. *See* Exhibit "11." Mrs. Coenen has a long standing relationship with **RANDAZZA** and **RANDAZZA GROUP**, and on February 2, 2013 wrote on her Facebook page "First Amendment lawyer Marc Randazza is amazing." Further, there would be no other reason for an Illinois accountant to publish on her blog an article about Roca Labs other than her relationship with **RANDAZZA** and to assist her friend with his war against **ROCA**. Ms. Coenen also Tweeted about her article, calling Roca Labs a "scam":



**Tracy Coenen** @sequenceinc · Sep 22
Roca Labs Weight Loss Scam: Roca Labs sells a weight loss product that
may be viewed as a scam by ... bit.ly/1siJZ9c #fraudfiles



85. In all events, **RANDAZZA** restated his previously made defamatory statements in his subsequent Court pleadings in hopes of shielding himself from liability under judicial litigation privilege. It is abundantly clear that **RANDAZZA**, a seasoned litigator specializing in First Amendment and Defamation practices, should know that the judicial litigation privilege cannot be used as a sword and a shield.

86. Without hesitation, **RANDAZZA** continues to use the Court system to make and distribute baseless claims about **ROCA**. In a pleading filed in a second lawsuit brought by Opinion Corp. against Roca, **RANDAZZA** makes the following statement: "Roca Labs imports its questionable product from an unknown location in Mexico. Thus, the product must enter the United States through the Customs Service, assuming it is not smuggled across the border." *See* Exhibit "12," at page 8. **RANDAZZA** has no legitimate basis for this statement. The foregoing statements do not bear some relation to or connection with the subject of inquiry in the underlying lawsuit.

87. At all times material to the action, **RADAZZA** acted on behalf of, as a representative of, for the interests of, as the agent of, and as the employee of **RANDAZZA GROUP**.

### D.  *RANDAZZA AND RANDAZZA GROUP CAUSED AND CONTINUES TO CAUSE INJURY TO ROCA*

88. The publications of the statements referenced in Paragraphs 71, 76, 77, 82 and 86 (hereinafter collectively referred to as "Defamatory Statements") by **RANDAZZA** and

**RANDAZZA GROUP** brought disgrace, humiliation, injury, and loss to **ROCA**'s business relationships, reputation, and goodwill in the community.

89. These publications, and ensuing purposeful dissemination, regarding **ROCA** hurt **ROCA**'s business**,** drove away customers, and interfered with **ROCA**'s ability to sell its products.

90. **RANDAZZA** made several of the Defamatory Statements in the media *first*, and then *subsequently* in Court pleadings at a later date.

91. At the time **RANDAZZA** voluntarily made the Defamatory Statements, he did not have any genuine knowledge or regard for the truth and veracity of the Defamatory Statements regarding **ROCA**'s customer care.

92. At the time **RANDAZZA** voluntarily made the Defamatory Statements, he did not have any genuine knowledge or regard for the truth and veracity of the Defamatory Statements regarding any health risks associated with **ROCA** products, which have safely been used by more than 10,000 people.

93. At the time **RANDAZZA** voluntarily made the Defamatory Statements, he did not have any genuine knowledge or regard for the truth and veracity of the Defamatory Statements regarding any alleged government actions against **ROCA**.[5]

94. At the time **RANDAZZA** voluntarily made the Defamatory Statements, he did not have any genuine knowledge or regard for the truth and veracity of the Defamatory Statements regarding manufacturing of product in Mexico and any alleged smuggling of products into the U.S. from Mexico.

---

[5] **ROCA** is unaware of any pending investigation or inquiry into its company as alleged by **RANDAZZA** and **RANDAZZA GROUP**. Indeed, if *assuming arguendo*, there were an ongoing investigation, it would be hard to believe that any U.S. Government Regulation Agency, including the Food and Drug Administration, would share such confidential information with a private citizen and his Florida law firm.

95. At the time **RANDAZZA** voluntarily made the Defamatory Statements, he did not have any genuine knowledge or regard for the truth and veracity of the Defamatory Statements regarding **ROCA**'s internal business policies, manufacturing and programs.

96. In truth, **RANDAZZA** knew when he made his Defamatory Statements that they lacked merit, lacked truth, were unsubstantiated, and were injurious to **ROCA**.

97. The Defamatory Statements caused and continue to cause injury, harm, and damage to **ROCA**, including but not limited to irreparable harm, public humiliation, and unwarranted ill-repute in the community, which in this case extends to the internet.

98. The Defamatory Statements were disseminated by **RANDAZZA** to numerous third-parties, with the full knowledge and intent that those third-parties would further disseminate his Defamatory Statements.

99. Based on the foregoing, **RANDAZZA** engaged in conduct which was intentional, fraudulent, malicious, oppressive, and/or he engaged in conduct with such gross negligence as to indicate a wanton disregard for the rights of **ROCA**.

100.    **RANDAZZA** was politely asked to stop speaking to the media by Paul Berger, counsel for Roca Labs. On September 26, 2014, Mr. Berger sent **RANDAZZA** an email respectfully requesting that he stop speaking to the media, informing him of his limited immunity and providing him with notice to retract his statements in accordance with Florida law. *See* Exhibit "13."

101.    **RANDAZZA**'s response to the email from Mr. Berger, was to immediately distribute the email to the media and to Tweet about it.

19



**Marc J. Randazza** @marcorandazza · Sep 28
Roca Labs' attorney's latest hit? He sent me an email threatening to sue me personally for defamation for (in part) using term "snake oil".

    ★ 2  

102.    TechDirt published the following:

Roca Labs' lawyer, Paul Berger, also sent threatening emails to Randazza himself, suggesting that Randazza had been "making defamatory comments" to the media. The email exchange, which Randazza filed as an exhibit with his filing, shows Randazza responding to Berger asking what specific defamatory quote he's talking about. Berger instead quotes PissedConsumer's legal filing (about calling Roca Labs' product "snake oil"), which we (and, I believe) other news publications, quoted. Randazza pointed out to Berger that it was not a quote from him but rather in his pleadings, and then asked (one assumes, sarcastically) if Berger is truly asking Randazza to retract a statement from his motion for preliminary injunction. I would assume that Berger is aware of the concept of litigation privilege, so either he didn't fully read Randazza's earlier filings, he forgot about litigation privilege, or he's just blustering for the sake of blustering. Randazza's latest filing suggests the latter may be the case:

The desperation continued with Roca threatening personal claims against the Defendants' attorney for statements made in the course of litigation.

103.    In addition, two (2) days after the email **RANDAZZA** once again took to Twitter, but

this time to mock **ROCA's** legal team, which mockery still continues to this day.



104.    At all times material to the action, **RADAZZA** acted on behalf of, as a representative of, for the interests of, as the agent of, and as the employee of **RANDAZZA GROUP**.

105.    In an abundance of caution, Defendants were provided with notice that complies with Chapter 770, *Florida Statute*.  See Exhibit "13."

106.    It is clear that **RANDAZZA** and **RANDAZZA GROUP** believe that litigation is war, and that pleadings are a miraculous battle shield that affords lawyers the safehaven opportunity to make intentionally false, misleading and defamatory statements for the sole purpose of inflicting as much injury on an adversary as possible. **RANDAZZA** and **RANDAZZA GROUP**'s strategy is to: (1) beat up **ROCA** in the court of public opinion, to drive away its customers, and hope that **ROCA** will "cry uncle" and give up its day in Court; and (2) gain as many new clients as possible by making false and defamatory statements to the media in hopes of generating publicity about himself and his law firm.

<u>COUNT I</u>
**<u>TORTIOUS INTERFERENCE WITH ROCA's</u>**
**<u>PROSPECTIVE ECONOMIC RELATIONSHIPS</u>**
***DEFENDANT RANDAZZA***

107.    **The allegations set in forth in paragraphs 1 through 106 are incorporated by reference as if fully repeated herein.**

108.    **ROCA derives it revenues through online sales of its product to consumers seeking to lose weight.**

109.    **ROCA has an actual prospective economic relationship with internet users that search for ROCA and its products on search engines.**

110.    **RANDAZZA** is aware of the existence of **ROCA**'s prospective economic relationship with internet users who desire to purchase **ROCA**'s weight loss products.

21

111.    **RANDAZZA** made and disseminated Defamatory Statements with the knowledge and intent that they would reach **ROCA**'s potential consumers and cause them to view false, negative and misleading information when they search the internet using search engines. *See* Exhibit "7."

112.    **RANDAZZA** knowingly and intentionally warned (essentially counseled) internet users against the purchase of **ROCA** products.

113.    The conduct of **RANDAZZA** tainted the actual prospective economic relationship with numerous consumers and these customers were lost because of the malicious and intentional conduct of **RANDAZZA**.

114.    Indeed, customers have refused to order and reorder from **ROCA** as a direct and proximate result of **RANDAZZA'**s intentional interference with said relationships.

115.    But for the intentional interference, **ROCA** would have sold products to the internet users.

116.    As a direct and proximate cause of **RANDAZZA**'s conduct, consumers have not purchased **ROCA** products.

117.    Thus, as a direct and proximate cause of the **RANDAZZA**'s intentional and unjustified tortious interference, **ROCA** has suffered non-monetary and monetary damages.

WHEREFORE, Plaintiff, **ROCA LABS, INC.,** respectfully requests that this Honorable Court declare that Defendant, **MARC RANDAZZA**, has intentionally disrupted and interfered with **ROCA**'s prospective economic relationships, and further, that this Honorable Court grant temporary and permanent injunctive relief against the violating conduct, and award **ROCA** with

an amount fair and just to account for its money damages, interest, reasonable attorneys' fees, and costs incurred herein, and for such other relief as this Court deems just and proper.

<div align="center">

**COUNT II**
**TORTIOUS INTERFERENCE WITH ROCA's**
**PROSPECTIVE ECONOMIC RELATIONSHIPS**
*DEFENDANT RANDAZZA GROUP*

</div>

118.    The allegations set in forth in paragraphs 1 through 106 are incorporated by reference as if fully repeated herein.

119.    **ROCA** derives it revenues through online sales of its product to consumers seeking to lose weight.

120.    **ROCA** has an actual prospective economic relationship with internet users that search for **ROCA** and its products on search engines.

121.    **RANDAZZA GROUP** is aware of the existence of **ROCA**'s prospective economic relationship with internet users who desire to purchase **ROCA**'s weight loss products.

122.    **RANDAZZA GROUP** made and disseminated Defamatory Statements with the knowledge and intent that they would reach **ROCA**'s potential consumers and cause them to view false, negative and misleading information when they search the internet using search engines. *See* Exhibit "7."

123.    **RANDAZZA GROUP** knowingly and intentionally warned (essentially counseled) internet users against the purchase of **ROCA** products.

124.    The conduct of **RANDAZZA GROUP** tainted the actual prospective economic relationship with numerous consumers and these customers were lost because of the malicious and intentional conduct of **RANDAZZA GROUP**.

125.    Indeed, customers have refused to order and reorder from **ROCA** as a direct and proximate result of **RANDAZZA GROUP**'s intentional interference with said relationships.

126.    But for the intentional interference, **ROCA** would have sold products to the internet users.

127.    As a direct and proximate cause of **RANDAZZA GROUP**'s conduct, consumers have not purchased **ROCA** products.

128.    At all times material to the action, **RADAZZA** acted on behalf of, as a representative of, for the interests of, as the agent of, and as the employee of **RANDAZZA GROUP**.

129.    Thus, as a direct and proximate cause of the **RANDAZZA GROUP**'s intentional and unjustified tortious interference, **ROCA** has suffered non-monetary and monetary damages.

WHEREFORE, Plaintiff, **ROCA LABS, INC.,** respectfully requests that this Honorable Court declare that Defendant, **RANDAZZA GROUP**, has intentionally disrupted and interfered with **ROCA**'s prospective economic relationships, and further, that this Honorable Court grant temporary and permanent injunctive relief against the violating conduct, and award **ROCA** with an amount fair and just to account for its money damages, interest, reasonable attorneys' fees, and costs incurred herein, and for such other relief as this Court deems just and proper.

<div align="center">

**COUNT III**
**DEFAMATION *PER SE***
***DEFENDANT RANDAZZA***

</div>

**130.    The allegations set in forth in paragraphs 1 through 106 are incorporated by reference as if fully repeated herein.**

**131.    On September 9, 2014, BoingBoing.net published the statement "Roca Labs sells dubious snake-oil like a 'Gastric Bypass Alternative.'"**

<div align="center">24</div>

132.   Upon information and belief, this statement was first made by **RANDAZZA** to BoingBoing as early as September 4, 2014.

133.   As a result of **RANDAZZA**'s communications with BoingBoing, and his own voluntary actions of dissemination, the statements about **ROCA** were thereby purposefully and resolutely published and disseminated to numerous third-parties in online magazines, websites, and blogs.

134.   **RANDAZZA**'s statements caused and continue to cause injury, harm, and damage to **ROCA**, including, but not limited to irreparable harm, public humiliation, and unwarranted ill-repute in the community, which in this case extends to the internet.

135.   As a direct and proximate result of **RANDAZZA**'s reckless, wrongful and malicious statement, **ROCA** has suffered significant loss of reputation as well as business opportunities.

136.   Based on the foregoing, **RANDAZZA** engaged in conduct which was intentional, fraudulent, malicious, oppressive, and/or he engaged in conduct with such gross negligence as to indicate a wanton disregard for the rights of **ROCA**.

WHEREFORE, Plaintiff, **ROCA LABS, INC.,** respectfully requests that this Honorable Court declare that Defendant, **RANDAZZA**, has defamed **ROCA** *per se*, and further grant temporary and permanent injunctive relief against the violating conduct, and award **ROCA** with an amount fair and just to account for its money damages, interest, reasonable attorneys' fees, and costs incurred herein, and for such other relief as this court deems just and proper.

//

//

//

25

**COUNT IV**
**DEFAMATION *PER SE***
***DEFENDANT RANDAZZA GROUP***

137.   The allegations set in forth in paragraphs 1 through 106 are incorporated by reference as if fully repeated herein.

138.   On September 9, 2014, BoingBoing.net wrote "Roca Labs sells dubious snake-oil like a 'Gastric Bypass Alternative.'"

139.   Upon information and belief, this statement was first made by **RANDAZZA GROUP** to BoingBoing as early as September 4, 2014.

140.   As a result of **RANDAZZA GROUP**'s communications with BoingBoing, and its own voluntary actions of dissemination, the statements about **ROCA** were thereby purposefully and resolutely published and disseminated to numerous third-parties in online magazines, websites, and blogs.

141.   **RANDAZZA GROUP**'s statement caused and continue to cause injury, harm, and damage to **ROCA**, including, but not limited to irreparable harm, public humiliation, and unwarranted ill-repute in the community, which in this case extends to the internet.

142.   As a direct and proximate result of **RANDAZZA GROUP**'s reckless, wrongful and malicious statement, **ROCA** has suffered significant loss of reputation as well as business opportunities.

143.   **ROCA**'s losses include, but are not limited to, the failure of **ROCA** to sell its product to identifiable potential customers as well as significant lost revenues from other potential customers.

144.   Based on the foregoing, **RANDAZZA GROUP** engaged in conduct which was intentional, fraudulent, malicious, oppressive, and/or it engaged in conduct with such gross negligence as to indicate a wanton disregard for the rights of **ROCA**.

145.   At all times material to the action, **RADAZZA** acted on behalf of, as a representative of, for the interests of, as the agent of, and as the employee of **RANDAZZA GROUP**.

WHEREFORE, Plaintiff, **ROCA LABS, INC.,** respectfully requests that this Honorable Court declare that Defendant, **RANDAZZA GROUP**, has defamed **ROCA** *per se*, and further grant temporary and permanent injunctive relief against the violating conduct, and award **ROCA** with an amount fair and just to account for its money damages, interest, reasonable attorneys' fees, and costs incurred herein, and for such other relief as this court deems just and proper.

## COUNT V
### DEFAMATION *PER SE*
### *DEFENDANT RANDAZZA*

146.   **The allegations set in forth in paragraphs 1 through 106 are incorporated by reference as if fully repeated herein.**

147.   **RANDAZZA** is representing Pissed Consumer in a case justifiably brought against those Defendants by **ROCA** in the State of Florida.

148.   **RANDAZZA** authored and filed several pleadings in that action, and used the pleadings to defame **ROCA** under the false assumption that he would be immune from liability.

149.   On or about *September 18, 2014*, **RANDAZZA** filed Pissed Consumer's *Opposition to Plaintiff's Motion for Entry of a Temporary Injunction* (attached as Exhibit 9), which includes the following false, malicious and defamatory statements:

   a.   **ROCA** shows little concern for what happens to its users;

b. [**ROCA** sounds] like a disreputable company, producing tubs of snake oil (or snake oil goop, as it were);

c. **ROCA** Labs is desperately trying to force a cone of silence over each and every customer that discovers that **ROCA** Labs' product is not only a specious remedy for weight issues, but a potential cause of additional health problems;

d. Plaintiff [**ROCA**], desperate to sell as many tubs of goo to the public as it can before regulatory agencies come knocking; and

e. [**ROCA** Products may cause] a possible health crisis.

150.    Additionally, in Pissed Consumer's *Emergency Motion for a Temporary Restraining Order* (attached as Exhibit "10"), filed on or about ***September 22, 2014***, **RANDAZZA** repeated his false, malicious and defamatory statements he previously made to the media including, but not limited to:

a. **ROCA**'s product threatens the health and welfare of at least a portion (if not all) of its users; and

b. **ROCA** has threatened them [its customers].

151.     The statements were first made as factual allegations to the media, and cannot be claimed to be his personal opinion, puffery, or supposition.

152.    **RANDAZZA** authored and published the statements in paragraphs 149 and 150 to the media and disseminated the content via social media websites, prior to making the statements in any Court pleadings.

153.    *After the foregoing mass dissemination* of the above statements *to the media* perpetrated

by **RANDAZZA**, he *subsequently* repeated his statements over two weeks later in Court

filings.

154.    It is unequivocal that **RANDAZZA** made and disseminated his statements *first* to the

media *on or about September 4, 2014 and then two weeks later* in Court pleadings.

155.    In truth, **RANDAZZA** knew when he made the above statements that they lacked merit,

lacked truth, were unsubstantiated, and were injurious to **ROCA**. The statements were made

for his own war against **ROCA** and for **RANDAZZA**'s public relations efforts to gain new

business.

156.    **RANDAZZA**'s statements caused and continue to cause injury, harm, and damage to

**ROCA**, including, but not limited to irreparable harm, public humiliation, and unwarranted

ill-repute in the community, which in this case extends to the internet.

157.    **RANDAZZA**'s statements were made and disseminated by **RANDAZZA** to numerous

third-parties, with the full knowledge and intent that those third-parties would in fact further

disseminate his statements.

158.    As a direct and proximate result of **RANDAZZA**'s reckless, wrongful and malicious

statements, **ROCA** has suffered significant loss of reputation as well as business

opportunities.

159.    **ROCA**'s losses include, but are not limited to, the failure of **ROCA** to sell its product to

identifiable potential customers as well as significant lost revenues from other potential

customers.

160.    Based on the foregoing, **RANDAZZA** engaged in conduct which was intentional, fraudulent, malicious, oppressive, and/or he engaged in conduct with such gross negligence as to indicate a wanton disregard for the rights of **ROCA**.

161.    The statements made by **RANDAZZA** against **ROCA** constitute defamation *per se* under the law.

WHEREFORE, Plaintiff, **ROCA LABS, INC.,** respectfully requests that this Honorable Court declare that Defendant, **MARC RANDAZZA**, has defamed **ROCA** *per se*, and further grant temporary and permanent injunctive relief against the violating conduct, and award **ROCA** with an amount fair and just to account for its money damages, interest, reasonable attorneys' fees, and costs incurred herein, and for such other relief as this court deems just and proper.

**COUNT VI**
**DEFAMATION *PER SE***
***DEFENDANT RANDAZZA GROUP***

162.    **The allegations set in forth in paragraphs 1 through 106 are incorporated by reference as if fully repeated herein.**

163.    **RANDAZZA GROUP** is representing Pissed Consumer in a case justifiably brought against those Defendants by **ROCA** in the State of Florida.

164.    **RANDAZZA GROUP** authored and filed several pleadings in that action, and used the pleadings to defame **ROCA** under the false assumption that it would be immune from liability.

165.    On or about ***September 18, 2014***, **RANDAZZA GROUP** filed Pissed Consumer's *Opposition to Plaintiff's Motion for Entry of a Temporary Injunction* (attached as Exhibit "9"), which includes the following false, malicious and defamatory statements:

    a.  **ROCA** shows little concern for what happens to its users;

    b.  [**ROCA** sounds] like a disreputable company, producing tubs of snake oil (or snake oil goop, as it were);

    c.  **ROCA** Labs is desperately trying to force a cone of silence over each and every customer that discovers that **ROCA** Labs' product is not only a specious remedy for weight issues, but a potential cause of additional health problems;

    d.  Plaintiff [**ROCA**], desperate to sell as many tubs of goo to the public as it can before regulatory agencies come knocking; and

    e.  [**ROCA** Products may cause] a possible health crisis.

166.   Additionally, in Pissed Consumer's *Emergency Motion for a Temporary Restraining Order* (attached as Exhibit 10), filed on or about ***September 22, 2014***, **RANDAZZA GROUP** repeated the false, malicious and defamatory statements it previously made to the media including, but not limited to:

    a.  **ROCA**'s product threatens the health and welfare of at least a portion (if not all) of its users; and

    b.  **ROCA** has threatened them [its customers].

167.   The statements were first made as factual allegations to the media, and cannot be claimed to be opinion, puffery, or supposition.

168.  **RANDAZZA GROUP** authored and published the statements in paragraphs 165 and 166 to the media and disseminated the content via social media websites, prior to making the statements in any Court pleadings.

169.   *After the foregoing mass dissemination* of the Statements *to the media* perpetrated by **RANDAZZA GROUP**, he *subsequently* repeated the statements over two weeks later in Court filings.

170.   It is unequivocal that **RANDAZZA GROUP** made and disseminated the statements *first* to the media *on or about September 4, 2014 and then two weeks later* in Court pleadings.

171.   In truth, **RANDAZZA GROUP** knew when it made the above statements that they lacked merit, lacked truth, were unsubstantiated, and were injurious to **ROCA**. The above Statements were made only to wage war against **ROCA** and for **RANDAZZA GROUP 's** public relations efforts to gain new business.

172.   **RANDAZZA GROUP**'s statements caused and continue to cause injury, harm, and damage to **ROCA**, including, but not limited to irreparable harm, public humiliation, and unwarranted ill-repute in the community, which in this case extends to the internet.

173.   **RANDAZZA GROUP**'s statements were made and disseminated by **RANDAZZA GROUP** to numerous third-parties, with the full knowledge intent that those third-parties would in fact further disseminate the statements.

174.   As a direct and proximate result of **RANDAZZA GROUP**'s reckless, wrongful and malicious statements, **ROCA** has suffered significant loss of reputation as well as business opportunities.

175.   **ROCA**'s losses include, but are not limited to, the failure of **ROCA** to sell its product to identifiable potential customers as well as significant lost revenues from other potential customers.

176. Based on the foregoing, **RANDAZZA GROUP** engaged in conduct which was intentional, fraudulent, malicious, oppressive, and/or it engaged in conduct with such gross negligence as to indicate a wanton disregard for the rights of **ROCA**.

177. The statements made by **RANDAZZA GROUP** against **ROCA** constitute defamation *per se* under the law.

178. At all times material to the action, **RADAZZA** acted on behalf of, as a representative of, for the interests of, as the agent of, and as the employee of **RANDAZZA GROUP**.

WHEREFORE, Plaintiff, **ROCA LABS, INC.,** respectfully requests that this Honorable Court declare that Defendant, **RANDAZZA GROUP**, has defamed **ROCA** *per se*, and further grant temporary and permanent injunctive relief against the violating conduct, and award **ROCA** with an amount fair and just to account for its money damages, interest, reasonable attorneys' fees, and costs incurred herein, and for such other relief as this court deems just and proper.

### COUNT VII
### DEFAMATION *PER SE*
### *DEFENDANT RANDAZZA*

179. The allegations set in forth in paragraphs 1 through 106 are incorporated by reference as if fully repeated herein.

180. **RANDAZZA** is representing Pissed Consumer in a case justifiably brought against those Defendants by **ROCA** in the State of Florida.

181. **RANDAZZA** authored and filed several pleadings in that action, including Exhibits "9" and "10," with the intent of having these defamatory statements distributed by the media.

182. On September 22, 2014, TechDirt published an article that contained the following:

As the filing questions, all of these should raise red flags about the company and its products:

33

Does that sound like an upstanding company that stands behind its safe and reliable product? Or does that sound like a disreputable company, producing tubs of snake oil (or snake goop, as it were), and which knows that too much truth will hurt its fly-by-night bottom line? Roca Labs is desperately trying to force a cone of silence over each and every customer that discovers that Roca Labs' product is not only a specious remedy for their weight issues, but a potential cause of additional health problems. Plaintiff, desperate to sell as many of its tubs of goo to the public as it can before regulatory agencies come knocking does its best to bully its former customers into silence.

183.    The statement above that was published by TechDirt was done at the request of **RANDAZZA** to harm **ROCA** and to try to attract clients for **RANDAZZA**. The published statement was drafted by **RANDAZZA.**

184.    **RANDAZZA** knew when he made the above statement about **ROCA** in the pleadings that it lacked merit, lacked truth, was unsubstantiated, and was injurious to **ROCA**. The statement was intentionally included in the pleadings in a thinly veiled attempt to shield **RANDAZZA** and TechDirt.

185.    **RANDAZZA** and TechDirt have a symbiotic relationship, *i.e.*, **RANDAZZA** makes outlandish, false and defamatory statements in legal pleadings and TechDirt publishes these statements with assumed impunity for purposes of publicity, marketing, and attracting new clients.

186.    This is part of a scheme by **RANDAZZA** to create, foster, and promote the notion that he is a "renowned" first amendment lawyer. This scheme is executed with the blatant disregard for and/or express malice against the opposing party(ies) in the pleadings, which is evidenced by **RANDAZZA**'s emails and the twitter account bearing his name.

187.    **RANDAZZA**'s Defamatory Statements caused and continue to cause injury, harm, and damage to **ROCA**, including, but not limited to irreparable harm, public humiliation, and unwarranted ill-repute in the community, which in this case extends to the internet.

188. **RANDAZZA**'s Defamatory Statements were made and disseminated by **RANDAZZA** to numerous third-parties, with the full knowledge and intent that those third-parties would in fact further disseminate his Defamatory Statements.

189. Indeed, a third-party did in fact further publish and disseminate **RANDAZZA**'s statements.

190. As a direct and proximate result of **RANDAZZA**'s reckless, wrongful and malicious statements, **ROCA** has suffered significant loss of reputation as well as business opportunities.

191. **ROCA**'s losses include, but are not limited to, the failure of **ROCA** to sell its product to identifiable potential customers as well as significant lost revenues from other potential customers.

192. Based on the foregoing, **RANDAZZA** engaged in conduct which was intentional, fraudulent, malicious, oppressive, and/or he engaged in conduct with such gross negligence as to indicate a wanton disregard for the rights of **ROCA**.

193. The Defamatory Statements made by **RANDAZZA** against **ROCA** constitute defamation *per se* under the law.

194. **RANDAZZA** was provided with notice as required by Chapter 770, *Florida Statute*. A true a correct copy of the email notice is attached hereto as Exhibit "13."

WHEREFORE, Plaintiff, **ROCA LABS, INC.,** respectfully requests that this Honorable Court declare that Defendant, **MARC RANDAZZA**, has defamed **ROCA** *per se*, and further grant temporary and permanent injunctive relief against the violating conduct, and award **ROCA**

with an amount fair and just to account for its money damages, interest, reasonable attorneys'
fees, and costs incurred herein, and for such other relief as this court deems just and proper.

<p style="text-align:center"><strong><u>COUNT VIII</u><br><u>DEFAMATION <em>PER SE</em></u><br><em>DEFENDANT RANDAZZA GROUP</em></strong></p>

**195.   The allegations set in forth in paragraphs 1 through 106 are incorporated by reference as if fully repeated herein.**

**196.   RANDAZZA GROUP is representing Pissed Consumer in a case justifiably brought against those Defendants by ROCA** in the State of Florida.

197.   **RANDAZZA GROUP** authored and filed several pleadings in that action, including Exhibits "9" and "10," with the intent of having these defamatory statements distributed by the media.

198.   On September 22, 2014, TechDirt published an article that contained the following:

As the filing questions, all of these should raise red flags about the company and its products:

Does that sound like an upstanding company that stands behind its safe and reliable product? Or does that sound like a disreputable company, producing tubs of snake oil (or snake goop, as it were), and which knows that too much truth will hurt its fly-by-night bottom line? Roca Labs is desperately trying to force a cone of silence over each and every customer that discovers that Roca Labs' product is not only a specious remedy for their weight issues, but a potential cause of additional health problems. Plaintiff, desperate to sell as many of its tubs of goo to the public as it can before regulatory agencies come knocking does its best to bully its former customers into silence.

199.   The statement above that was published by TechDirt was done at the request of **RANDAZZA GROUP** to harm **ROCA** and to try to attract clients for **RANDAZZA GROUP**. The published statement was drafted by **RANDAZZA GROUP**.

200.    **RANDAZZA GROUP** knew when it made the above statement about **ROCA** in the pleadings that it lacked merit, lacked truth, was unsubstantiated, and was injurious to **ROCA**. The statement was intentionally included in the pleadings in a thinly veiled attempt to shield **RANDAZZA GROUP** and TechDirt.

201.    **RANDAZZA GROUP** and TechDirt have a symbiotic relationship, *i.e.*, **RANDAZZA GROUP** makes outlandish, false and defamatory statements in legal pleadings and TechDirt publishes these statements with assumed impunity for purposes of publicity, marketing, and attracting new clients.

202.    This is part of a scheme by **RANDAZZA GROUP** to create, foster, and promote the notion that it is a "renowned" first amendment law firm. This scheme is executed with the blatant disregard for and/or express malice against the opposing party(ies) in the pleadings, which is evidenced by **RANDAZZA GROUP**'s emails and the twitter account it endorses bearing **RANDAZZA**'s name.

203.    **RANDAZZA GROUP**'s Defamatory Statements caused and continue to cause injury, harm, and damage to **ROCA**, including, but not limited to irreparable harm, public humiliation, and unwarranted ill-repute in the community, which in this case extends to the internet.

204.    **RANDAZZA GROUP**'s Defamatory Statements were made and disseminated by **RANDAZZA GROUP** to numerous third-parties, with the full knowledge and intent that those third-parties would in fact further disseminate the Defamatory Statements.

205.    Indeed, a third-party did in fact further publish and disseminate **RANDAZZA GROUP**'s statements.

206.   As a direct and proximate result of **RANDAZZA GROUP**'s reckless, wrongful and malicious statements, **ROCA** has suffered significant loss of reputation as well as business opportunities.

207.   **ROCA**'s losses include, but are not limited to, the failure of **ROCA** to sell its product to identifiable potential customers as well as significant lost revenues from other potential customers.

208.   Based on the foregoing, **RANDAZZA GROUP** engaged in conduct which was intentional, fraudulent, malicious, oppressive, and/or it engaged in conduct with such gross negligence as to indicate a wanton disregard for the rights of **ROCA**.

209.   The Defamatory Statements made by **RANDAZZA GROUP** against **ROCA** constitute defamation *per se* under the law.

210.   **RANDAZZA** was provided with notice as required by Chapter 770, *Florida Statute*.  A true a correct copy of the email notice is attached hereto as Exhibit "13."

211.   At all times material to the action, **RADAZZA** acted on behalf of, as a representative of, for the interests of, as the agent of, and as the employee of **RANDAZZA GROUP**.

WHEREFORE, Plaintiff, **ROCA LABS, INC.,** respectfully requests that this Honorable Court declare that Defendant, **RANDAZZA GROUP**, has defamed **ROCA** *per se*, and further grant temporary and permanent injunctive relief against the violating conduct, and award **ROCA** with an amount fair and just to account for its money damages, interest, reasonable attorneys' fees, and costs incurred herein, and for such other relief as this court deems just and proper.

//

//

38

**COUNT IX**
**DEFAMATION *PER SE***
***DEFENDANT RANDAZZA***

212.    **The allegations set in forth in paragraphs 1 through 106 are incorporated by reference as if fully repeated herein.**

213.    **RANDAZZA continues to use the Court system to make and distribute false and baseless claims about ROCA**. In a pleading filed in a second lawsuit brought by Opinion Corp. against **ROCA**, **RANDAZZA** makes the following statement: "Roca Labs imports its questionable product from an unknown location in Mexico. Thus, the product must enter the United States through the Customs Service, assuming it is not smuggled across the border." *See* Exhibit "12," at page 8.

214.    **RANDAZZA** has no legitimate basis for this statement.

215.    **ROCA** products are made in the United States.

216.    **RANDAZZA**'s statement about country of origin would mean that **ROCA** is violating numerous laws.

217.    The statement implying that the product is smuggled into the U.S. implies that **ROCA** is engaged in an ongoing criminal conspiracy.

218.    The foregoing statements were made in a *Motion to Deem Roca Served* and bear no relation to or connection with the subject of inquiry in the underlying lawsuit.

219.    **RANDAZZA** is using the Court system to again smear **ROCA** with false and harmful allegations.

220.    At the time **RANDAZZA** voluntarily made the statement in Paragraph 213 above, he did not have any genuine knowledge or regard for the truth and veracity of the statement.

221.    In truth, **RANDAZZA** knew when he made this statement that it lacked merit, lacked truth, were unsubstantiated, and were injurious to **ROCA**. The statement was made only for his own war against **ROCA** and for **RANDAZZA**'s own public relations efforts.

222.    **RANDAZZA**'s statement caused and continue to cause injury, harm, and damage to **ROCA**, including, but not limited to irreparable harm, public humiliation, and unwarranted ill-repute in the community, which in this case extends to the internet.

223.    **RANDAZZA**'s statement was made and disseminated by **RANDAZZA** to numerous third-parties, with the full knowledge and intent that those third-parties would in fact further disseminate his statement.

224.    As a direct and proximate result of **RANDAZZA**'s reckless, wrongful and malicious statements, **ROCA** has suffered significant loss of reputation as well as business opportunities.

225.    **ROCA**'s losses include, but are not limited to, the failure of **ROCA** to sell its product to identifiable potential customers as well as significant lost revenues from other potential customers.

226.    Based on the foregoing, **RANDAZZA** engaged in conduct which was intentional, fraudulent, malicious, oppressive, and/or he engaged in conduct with such gross negligence as to indicate a wanton disregard for the rights of **ROCA**.

227.    The Defamatory Statements made by **RANDAZZA** against **ROCA** constitute defamation *per se* under the law.

        WHEREFORE, Plaintiff, **ROCA LABS, INC.,** respectfully requests that this Honorable Court declare that Defendant, **RANDAZZA**, has defamed **ROCA** *per se*, and further grant

40

temporary and permanent injunctive relief against the violating conduct, and award **ROCA** with

an amount fair and just to account for its money damages, interest, reasonable attorneys' fees,

and costs incurred herein, and for such other relief as this court deems just and proper.

**COUNT X**
**DEFAMATION _PER SE_**
**_DEFENDANT RANDAZZA GROUP_**

228.  **The allegations set in forth in paragraphs 1 through 106 are incorporated by reference as if fully repeated herein.**

229.  **RANDAZZA GROUP continues to use the Court system to make and distribute false and baseless claims about ROCA**. In a pleading filed in a second lawsuit brought by Opinion Corp. against **ROCA**, **RANDAZZA GROUP** makes the following statement: "Roca Labs imports its questionable product from an unknown location in Mexico. Thus, the product must enter the United States through the Customs Service, assuming it is not smuggled across the border." _See_ Exhibit "12," at page 8.

230.  **RANDAZZA GROUP** has no legitimate basis for this statement.

231.  **ROCA** products are made in the United States.

232.  **RANDAZZA GROUP**'s statement about country of origin would mean that **ROCA** is violating numerous laws.

233.  The statement implying that the product is smuggled into the U.S. implies that **ROCA** is engaged in an ongoing criminal conspiracy.

234.  The foregoing statements were made in a _Motion to Deem Roca Served_ and bear no relation to or connection with the subject of inquiry in the underlying lawsuit.

235.   **RANDAZZA GROUP** is using the Court system to again smear **ROCA** with false and harmful allegations.

236.   At the time **RANDAZZA GROUP** voluntarily made the statement in Paragraph 229 above, it did not have any genuine knowledge or regard for the truth and veracity of the statement.

237.   In truth, **RANDAZZA GROUP** knew when it made this statement that it lacked merit, lacked truth, were unsubstantiated, and were injurious to **ROCA**. The statement was made only for its own war against **ROCA** and for **RANDAZZA GROUP**'s own public relations efforts.

238.   **RANDAZZA GROUP**'s statement caused and continue to cause injury, harm, and damage to **ROCA**, including, but not limited to irreparable harm, public humiliation, and unwarranted ill-repute in the community, which in this case extends to the internet.

239.   **RANDAZZA GROUP**'s statement was made and disseminated by **RANDAZZA GROUP** to numerous third-parties, with the full knowledge and intent that those third-parties would in fact further disseminate the Defamatory Statements.

240.   As a direct and proximate result of **RANDAZZA GROUP**'s reckless, wrongful and malicious statements, **ROCA** has suffered significant loss of reputation as well as business opportunities.

241.   **ROCA**'s losses include, but are not limited to, the failure of **ROCA** to sell its product to identifiable potential customers as well as significant lost revenues from other potential customers.

242.   Based on the foregoing, **RANDAZZA GROUP** engaged in conduct which was intentional, fraudulent, malicious, oppressive, and/or it engaged in conduct with such gross negligence as to indicate a wanton disregard for the rights of **ROCA**.

243.   The Defamatory Statements made by **RANDAZZA GROUP** against **ROCA** constitute defamation *per se* under the law.

244.   At all times material to the action, **RADAZZA** acted on behalf of, as a representative of, for the interests of, as the agent of, and as the employee of **RANDAZZA GROUP**.

WHEREFORE, Plaintiff, **ROCA LABS, INC.,** respectfully requests that this Honorable Court declare that Defendant, **RANDAZZA GROUP**, has defamed **ROCA** *per se*, and further grant temporary and permanent injunctive relief against the violating conduct, and award **ROCA** with an amount fair and just to account for its money damages, interest, reasonable attorneys' fees, and costs incurred herein, and for such other relief as this court deems just and proper.

<div align="center">

**COUNT XI**
**DECLARATORY RELIEF**
*DEFENDANT RANDAZZA*

</div>

245.   The allegations set in forth in paragraphs 1 through 106 are incorporated by reference as if fully repeated herein.

246.   This is an action for declaratory relief pursuant to Section 86.011, *Florida Statute*.

247.   There is a bona fide, actual, present practical need for declaratory relief in this matter.

248.   A present controversy with ascertainable facts exists between the parties in this matter.

249.   **RANDAZZA** has intentionally interfered with **ROCA**'s economic relationship with potential customers when he made his Defamatory Statements to the media, and then later memorialized the exact statements in Court pleadings.

<div align="center">43</div>

250.    **RANDAZZA**'s conduct directly and proximately caused **ROCA** monetary damages that continue to accrue, as well as irreparable harm to **ROCA**'s reputation.

251.    **ROCA** is in doubt as to their rights under Florida law and is in need of a present declaration whether the conduct of **RANDAZZA**, *i.e.*, the Defamatory Statements, tortiously interfered with **ROCA**'s prospective economic relationship with potential customers.

252.    **ROCA** is in doubt as to their rights under Florida law and is in need of a present declaration whether the conduct of **RANDAZZA**, *i.e.*, the Defamatory Statements, defamed **ROCA** *per se*.

253.    There is a bona fide, actual dispute between the parties based on the refusal of **RANDAZZA** to cease and desist its conduct after **ROCA** has requested same.  *See* Exhibit "13."

254.    **ROCA** seeks relief in order to enforce contractual and legal rights, and does not merely seek legal advice from this Honorable Court.

255.    **ROCA**'s right to recovery is dependent upon the Court's finding of facts and/or application of same to Florida law.

256.    The parties' interests in this declaration of rights are actual, present, adverse and antagonistic of fact and/or law.

WHEREFORE, Plaintiff, **ROCA LABS, INC.,** requests the Court to:

a.    Take jurisdiction of the subject matter and parties hereto;

b.    Determine applicable law, including the provision(s) of *Florida Statute(s)* that apply to the parties;

c.      Declare that **RANDAZZA** has intentionally, tortiously interfered with **ROCA**'s economic relationship with consumers;

e.      Declare that **RANDAZZA** has defamed **ROCA** *per se*;

g.      Declare that **ROCA** has suffered economic damages as proximate result of **RANDAZZA**'s conduct;

h.      Declare that **ROCA** is entitled to attorneys' fees and costs against **RANDAZZA** and determine the amounts thereof;

i.      Declare that **ROCA** is entitled to award of monetary damages against **RANDAZZA** and determine the amounts thereof;

j.      Declare that **RANDAZZA** cease and desist his defamatory conduct;

k.      Award damages, interest, and taxable costs against **RANDAZZA**; and

m.      Award any other relief this Court deems just and proper against **RANDAZZA.**

WHEREFORE, Plaintiff, **ROCA LABS, INC.,** respectfully requests that this Honorable Court enter judgment against Defendant, **MARC RANDAZZA**, for all damages, attorneys' fees, and costs.

## COUNT XII
## DECLARATORY RELIEF
### *DEFENDANT RANDAZZA GROUP*

257.    The allegations set in forth in paragraphs 1 through 106 are incorporated by reference as if fully repeated herein.

258.    This is an action for declaratory relief pursuant to Section 86.011, *Florida Statute*.

259.    There is a bona fide, actual, present practical need for declaratory relief in this matter.

260.    A present controversy with ascertainable facts exists between the parties in this matter.

261.   **RANDAZZA GROUP** has intentionally interfered with **ROCA**'s economic relationship with potential customers when it made the Defamatory Statements to the media, and then later memorialized the exact statements in Court pleadings.

262.   At all times material to the action, **RADAZZA** acted on behalf of, as a representative of, for the interests of, as the agent of, and as the employee of **RANDAZZA GROUP**.

263.   **RANDAZZA GROUP**'s conduct directly and proximately caused **ROCA** monetary damages that continue to accrue, as well as irreparable harm to **ROCA**'s reputation.

264.   **ROCA** is in doubt as to their rights under Florida law and is in need of a present declaration whether the conduct of **RANDAZZA GROUP**, *i.e.*, the Defamatory Statements, tortiously interfered with **ROCA**'s prospective economic relationship with potential customers.

265.   **ROCA** is in doubt as to their rights under Florida law and is in need of a present declaration whether the conduct of **RANDAZZA GROUP**, *i.e.*, the Defamatory Statements, defamed **ROCA** *per se*.

266.   There is a bona fide, actual dispute between the parties based on the refusal of **RANDAZZA GROUP** to cease and desist its conduct after **ROCA** has requested same. *See* Exhibit "13."

267.   **ROCA** seeks relief in order to enforce contractual and legal rights, and does not merely seek legal advice from this Honorable Court.

268.   **ROCA**'s right to recovery is dependent upon the Court's finding of facts and/or application of same to Florida law.

269.    The parties' interests in this declaration of rights are actual, present, adverse and antagonistic of fact and/or law.

WHEREFORE, Plaintiff, **ROCA LABS, INC.,** requests the Court to:

a.    Take jurisdiction of the subject matter and parties hereto;

b.    Determine applicable law, including the provision(s) of *Florida Statute(s)* that apply to the parties;

c.    Declare that **RANDAZZA GROUP** has intentionally, tortiously interfered with **ROCA**'s economic relationship with consumers;

e.    Declare that **RANDAZZA GROUP** has defamed **ROCA** *per se*;

g.    Declare that **ROCA** has suffered economic damages as proximate result of **RANDAZZA GROUP**'s conduct;

h.    Declare that **ROCA** is entitled to attorneys' fees and costs against **RANDAZZA GROUP** and determine the amounts thereof;

i.    Declare that **ROCA** is entitled to award of monetary damages against **RANDAZZA GROUP** and determine the amounts thereof;

j.    Declare that **RANDAZZA GROUP** cease and desist its defamatory conduct;

k.    Award damages, interest, and taxable costs against **RANDAZZA GROUP**; and

m.    Award any other relief this Court deems just and proper against **RANDAZZA GROUP.**

WHEREFORE, Plaintiff, **ROCA LABS, INC.,** respectfully requests that this Honorable Court enter judgment against Defendant, **RANDAZZA GROUP**, for all damages, attorneys' fees, and costs.

**REQUEST FOR ATTORNEY'S FEES**

Plaintiff, **ROCA LABS, INC.,** requests an award of attorney's fees, costs, and such other relief that the Court finds to be appropriate.

**DEMAND FOR JURY TRIAL ON COMPLAINT**

Plaintiff, **ROCA LABS, INC.,** hereby demands trial by jury as to all issues so triable as to the Complaint.

Respectfully submitted on this ___X___ day of January, 2015.

> */s/ John DeGirolamo*
> JOHNNY G. DEGIROLAMO, ESQ.
> FLORIDA BAR NO: 0089792
> *The Law Offices of John DeGirolamo, Esq.*
> 6000 South Florida Avenue,
> P.O. Box 7122, Lakeland, FL 33807
> *Attorney for Plaintiff, Roca Labs, Inc.*
> Phone: (863) 603-3461
> Pr. Email:  JohnD@inlawwetrust.com
> Sc. Email:  Legal4@RocaLabs.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on ___X___ day of January, 2015. I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF PACER system which will send a notice of electronic filing to the following:

Lawrence G. Walters, Esq. (E-mail: Larry@FirstAmendment.com)
Walters Law Group, 195 W. Pine Ave., Longwood, FL 32750

Luke Lirot, Esq. (E-mail: Luke2@lirotlaw.com)
Luke Litor, P.A., 2240 Belleair Road, Clearwater, FL 33764

Ira Perry Rothken, Esq. (E-mail: Ira@techfirm.net)
Jared Robinson Smith, Esq. (Email: Jared@techfirm.net)
Rothken Law Firm, 3 Hamilton Landing, Suite 280, Novato, CA 94949

*/s/ John DeGirolamo*
JOHNNY G. DEGIROLAMO, ESQ.

Exhibit 1

**2014 FLORIDA PROFIT CORPORATION ANNUAL REPORT**

DOCUMENT# P08000111631

**Entity Name:** MARC J. RANDAZZA, P.A.

**FILED**

**Jan 13, 2014**
**Secretary of State**
**CC4811701335**

**Current Principal  Place of Business:**

3625 S. TOWN CENTER DRIVE
 SUITE 150
LAS VEGAS,  NV  89135

**Current Mailing Address:**

2 SOUTH BISCAYNE BOULEVARD
 SUITE 2600
MIAMI,  FL  33131  US

**FEI Number: 26-3977742**                            Certificate of Status Desired:  No

**Name and Address of Current Registered Agent:**

FISCHER, JASON A
2 SOUTH BISCAYNE BOULEVARD
 SUITE 2600
MIAMI, FL  33131  US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE:  JASON A. FISCHER                                               01/13/2014
                    Electronic Signature of Registered Agent                              Date

**Officer/Director Detail :**

| | |
|---|---|
| Title | DIRECTOR, CEO, SECRETARY |
| Name | RANDAZZA, MARC J |
| Address | 3625 S. TOWN CENTER DRIVE |
| | SUITE 150 |
| City-State-Zip: | LAS VEGAS NV  89135 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: MARC J. RANDAZZA                          DIRECTOR, CEO,           01/13/2014
                                                                       SECRETARY

                  Electronic Signature of Signing Officer/Director Detail                       Date

Exhibit 2

# P08000111631

_____
(Requestor's Name)

_____
(Address)

_____
(Address)

_____
(City/State/Zip/Phone #)

☐ PICK-UP     ☐ WAIT     ☐ MAIL

_____
(Business Entity Name)

_____
(Document Number)

Certified Copies _____     Certificates of Status _____

```
┌─────────────────────────────────────────┐
│ Special Instructions to Filing Officer:   │
│                                           │
│                                           │
│                                           │
│                                           │
│                                           │
└─────────────────────────────────────────┘
```

Office Use Only



400139301814

12/30/08--01051--002   **78.75

08 DEC 30  PM 4:45
SECRETARY OF STATE
TALLAHASSEE, FLORIDA
APPROVED
AND
FILED

LAW OFFICES

## WESTON, GARROU, WALTERS & MOONEY

A PARTNERSHIP OF PROFESSIONAL BUSINESS ENTITIES

JOHN H. WESTON¹‡
G. RANDALL GARROU¹‡
LAWRENCE G. WALTERS²⁵
JEROME H. MOONEY¹⁶◊
MARK P. BINDER¹‡

MARC J. RANDAZZA²⁴
DEREK B. BRETT²⁵

OF COUNSEL
CATHY E. CROSSON¹³
A. DALE MANICOM¹

1  ADMITTED IN CALIFORNIA
2  ADMITTED IN FLORIDA
3  ADMITTED IN INDIANA
4  ADMITTED IN MASSACHUSETTS
5  ADMITTED IN DISTRICT OF COLUMBIA
6  ADMITTED IN UTAH

‡  A CALIFORNIA PROFESSIONAL CORPORATION
*  A FLORIDA PROFESSIONAL ASSOCIATION
◊  A UTAH PROFESSIONAL CORPORATION

781 DOUGLAS AVENUE
ALTAMONTE SPRINGS, FLORIDA 32714

FAX (407) 774-6151

(407) 975-9150

REPLY TO
FLORIDA

December 29, 2008

PRINCIPAL OFFICE
LOS ANGELES, CALIFORNIA
12121 WILSHIRE BLVD., SUITE 900
LOS ANGELES, CA 90025-1176
FAX (310) 442-0899
(310) 442-0072

SALT LAKE CITY
50 WEST BROADWAY, SUITE 1000
SALT LAKE CITY, UT 84101-2006
(801) 364-5635

SAN DIEGO
1205 J STREET, SUITE B
SAN DIEGO, CA 92101-7500
FAX (619) 239-1717
(619) 232-3255

**VIA FEDEX DELIVERY**

Department of State
Division of Corporations
Clifton Building
2661 Executive Center Circle
Tallahassee, FL 32301

     RE:   Marc J. Randazza, P.A.

Dear Correspondent:

     Enclosed please find an original and one (1) copy of the Articles of Incorporation for the above-referenced corporation and our firm's check in the amount of $78.75 to cover the cost of the Filing Fee, Certified Copy of Charter and Registered Agent Fee.

     Please return to us a certified copy of the Articles of Incorporation in the enclosed envelope.

     Thank you for your cooperation in this matter.

                      Sincerely,

                      Marc J. Randazza

MJR/lb
Encls.

APPROVED

FILED

08 DEC 30 PM 4:45

SECRETARY OF STATE
TALLAHASSEE, FLORIDA

## ARTICLES OF INCORPORATION
## OF
## MARC J. RANDAZZA, P.A.

### ARTICLE I.  NAME

The name of this corporation shall be Marc J. Randazza, P.A.

### ARTICLE II.  PRINCIPAL OFFICE

The address of this corporation's principal office shall be: 781 Douglas Ave., Altamonte

Springs, FL 32714.

### ARTICLE III.   MAILING ADDRESS

The mailing address of the corporation is: 781 Douglas Ave., Altamonte Springs, FL 32714.

### ARTICLE IV.  PURPOSE

The corporation shall be engaged in the rendering of professional legal services.

### ARTICLE V.  INITIAL DIRECTORS

Name:                        Address:

Marc J. Randazza             781 Douglas Ave.
                             Altamonte Springs, FL 32714

### ARTICLE VI. CAPITAL STOCK

This corporation shall have the authority to issue 100 shares of common capital stock at a par

value of $1.00 per share.

### ARTICLE VII.  PREEMPTIVE RIGHTS

Every shareholder, upon the sale for cash by this corporation of any shares of new capital

stock of the same kind, class, or series, as that which the shareholder already holds, shall have the

preemptive right to purchase a pro rata share thereof (as nearly as may be done without the issuance

of fractional shares) at the price at which such shares are offered to others.

## ARTICLE VIII.  TRANSFER RESTRICTIONS

No shareholder shall have the right to sell, assign, pledge, encumber, transfer, or otherwise dispose of any shares of the capital stock of this corporation, without first offering such shares for sale to this corporation at the net asset value thereof.  Such offer shall be in writing, signed by the shareholder, sent by registered or certified mail to this corporation at its registered office address, and open for acceptance by this corporation for a period of fifteen days from the date of mailing.  If this corporation fails or refuses, within such period, to make satisfactory arrangements for the purchase of such shares, the shareholder shall have the right to dispose of such shares without any further restrictions.

On the death of any shareholder, this corporation shall have the right to purchase any shares of the capital stock of this corporation owned by the shareholder immediately prior to the shareholder's death, on the terms set forth above, and this provision shall be binding upon the personal representative of the shareholder.

Each stock certificate issued by this corporation shall carry the following legend:

> "These Shares Are Held Subject To Certain Transfer Restrictions
> Imposed By This Corporation's Articles Of Incorporation, A Copy Of
> Which Is On File At This Corporation's Principal Office."

## ARTICLE IX.  INITIAL REGISTERED OFFICE & AGENT

The name of the individual who shall serve as this corporation's initial registered agent and address is Marc J. Randazza., 781 Douglas Avenue, Altamonte Springs, FL  32714.

## ARTICLE X.  INCORPORATOR

The name and address of the individual who shall serve as this corporation's incorporator are:

Marc J. Randazza, Esq., 781 Douglas Avenue, Altamonte Springs, FL 32714.

Marc J. Randazza - Incorporator

I hereby accept my designation as registered agent and agree to serve as the registered agent

of Marc J. Randazza, P.A.  I hereby state that I am familiar with and accept the duties and

responsibilities as registered agent for Marc J. Randazza, P.A.

Marc J. Randazza - Registered Agent

State Of Florida
County Of Seminole

On $12/29/08$, Marc J. Randazza, designated above as the individual who shall serve as

the corporation's initial registered agent and incorporator, who is personally known to me, personally

appeared before me at the time of notarization, and, after being given the oath, acknowledged signing

these Articles of Incorporation of Marc J. Randazza, P.A.

Notary Public

LISA A. BROWN
(Printed or Typed Name)

Notary Public - State of Florida
my commission expires: $07/11/2009$          (SEAL)



Notary Public State of Florida
Lisa A Brown
My Commission DD443674
Expires 07/11/2009

Exhibit 3

Note: Acknowledgements/certificates will be sent to the address in Section 1 only.

**Section 1**

1. **Randazza Legal Group**
Fictitious Name to be Registered (see instructions if name includes "Corp" or "Inc")

2 South Biscayne Boulevard, Suite 2600
Mailing Address of Business
Miami, Florida 33131
City                    State                    Zip Code

3. Florida County of principal place of business: **Dade**

(see instructions if more than one county)

FEI Number: 26-3977742

FILED
09 DEC -8 PM 1: 57
SECRETARY OF STATE
TALLAHASSEE, FLORIDA

G09000182185
12/08/09--01023--005 **$50.00

This space for office use only

**Section 2**

**A. Owner(s) of Fictitious Name if individual(s): (Use an attachment if necessary):**

1. _____
Last          First          M.I.

_____
Address

_____
City          State          Zip Code

2. _____
Last          First          M.I.

_____
Address

_____
City          State          Zip Code

**B. Owner(s) of Fictitious Name if other than an individual: (Use attachment if necessary):**

1. Marc J. Randazza PA
Entity Name
2 South Biscayne Blvd, Suite 2600
Address
Miami, Florida, 331341
City          State          Zip Code
Florida Document Number P0800011631

FEI Number: 26-3977742
☐ Applied for    ☐ Not Applicable

2. _____
Entity Name

_____
Address

_____
City          State          Zip Code
Florida Document Number _____

FEI Number: _____
☐ Applied for    ☐ Not Applicable

**Section 3**

I the undersigned, being an owner in the above fictitious name, certify that the information indicated on this form is true and accurate. In accordance with Section 865.09, F.S., I further certify that the fictitious name to be registered has been advertised at least once in a newspaper as defined in chapter 50, Florida Statutes, in the county where the principal place of business is located. I understand that the signature below shall have the same legal effect as if made under oath.

_Marc JR_          12/3/09          MJRPA@ME.COM
Signature of Owner          Date          E-mail address: (to be used for future renewal notification)

Phone Number: _____

**Section 4**

**FOR CANCELLATION COMPLETE SECTION 4 ONLY:**
**FOR FICTITIOUS NAME OR OWNERSHIP CHANGE COMPLETE SECTIONS 1 THROUGH 4:**

I (we) the undersigned, hereby cancel the fictitious name _____

_____, which was registered on _____ and was assigned

registration number _____

_____          _____
Signature of Owner          Date          Signature of Owner          Date

Mark the applicable boxes     ☐ Certificate of Status — $10     ☐ Certified Copy — $30
**NON-REFUNDABLE PROCESSING FEE: $50**

Single     CR4E001 (11/09)

Exhibit 4

# RANDAZZA
## LEGAL GROUP

- Home
- About
- Team
- Practice Areas
- News & Media
- Offices

# Miami Office

- Home
- /
- Miami Office

## CONTACT FORM

| Your name... | Your email... | Subject of message |
|---|---|---|

Completion and submission of this form does not establish an attorney-client relationship. Nothing you send through this form should be considered to be confidential information. Do not send any confidential or time-sensitive information with this form. Information sent using this form will not be subject to attorney-client privilege.

SEND MESSAGE

## Office Info

**Tel:** 888 / 667 - 1113

**Fax:** 305 / 437 - 7662

**Email:** info@randazza.com

**Web:** randazza.com

**MIAMI**
2 S. Biscayne Blvd
Suite Number 2600
Miami, FL 33131
305.791.2891

**STAFF AT THIS LOCATION**

MARC J. RANDAZZA
JASON A. FISCHER

# SIGN UP FOR NEWSLETTER

Stay in touch with latest news from our website. Enter your email address below and start receiveing our newsletter.

| Type your email here... | )

## Offices

LAS VEGAS
3625 S Town Center Dr
Las Vegas, NV 89135
702.420.2001

PHILADELPHIA
2424 E York St
Ste 316
Philadelphia, PA 19125
215.385.LAW1 (5291)

MIAMI

2 S. Biscayne Blvd
Ste 2600
Miami, FL 33131
305.791.2891

SAN FRANCISCO
345 Grove St
San Francisco, CA 94102
415.404.6615

## Contact Info

**Toll Free::** 888 / 667 - 1113
**Fax:** 305 / 437 - 7662
Email: info@randazza.com

## Search Our Site

| Search |   | ) |

- Home
- Team
- FIRST AMENDMENT LAW
- Terms of Use / Privacy Page

Copyright 2013 © Marc J. Randazza, P.A. d/b/a Randazza Legal Group. All rights reserved.

Exhibit 5



18 December 2014

<u>Via Email and Fax</u>
Legal2@rocalabs.com
877-539-6507

James T. Hetz, Esq.
Roca Labs
PO Box 5309
Sarasota, Florida 34277

      *Re: Roca Labs' First Set of Interrogatories*

Dear Mr. Hetz:

Attached, please find a copy of Defendants' responses to Roca Labs' discovery.  While we object to these discovery requests as being wholly improper pending a Motion for Summary Judgment (absent a proper motion), we wanted to provide this information to you since we really do not care if you have it or not.

We note that your opposition to the motion for summary judgment was not actually due last Friday, and it was actually only due on Tuesday.  Nevertheless, rather than meeting and conferring on your requests you decided to respond four days early.  It was not lost on me that your diligence in serving it early made my reply brief due the day after Christmas.  While I am sure that you and your colleague got a laugh out of that, it failed to rattle me in the least.  It was actually pretty stupid, because you only get one chance to do something that ridiculous, and you picked *that play?*

Now that you have the responses, if you would like to supplement your Opposition with a three page supplement addressing only the discovery responses and how the responses might have changed your Opposition, I will stipulate to its propriety as long as it is filed by 4:00 p.m. Eastern Standard Time, tomorrow (December 19).  While I realize that this is a short fuse, I am already offering you much more than you are entitled to, and it isn't exactly as if you have earned any courtesy.

      Happy Holidays!

      Marc J. Randazza

Encl: Opinion Corp. and Consumer Opinion Corp.'s Responses to Roca Labs' First Set of Interrogatories (such as they are)

Exhibit 6



Re: Roca Labs adv. Pissed Consumer    Inbox   x

**Marc Randazza** <mjr@randazza.com>                                    9/18/14
to me

murum aries attigit

Exhibit 7

# RANDAZZA
LEGAL GROUP

Marc Randazza <mjr@randazza.com>

## this will make you laugh
1 message

**Marc Randazza** <mjr@randazza.com>
To: Eric Goldman ████████████, Michael Masnick ████████

Thu, Sep 4, 2014 at 5:39 PM

feel free to use it for whatever purpose you like

--

**Marc John Randazza, JD, MAMC, LLM·** | Randazza Legal Group
3625 South Town Center Drive | Las Vegas, NV 89135
Tel: 702-420-2001 | Fax: 305-437-7662
Email: mjr@randazza.com | Website: www.randazza.com

| Philadelphia | San Francisco | Miami

* Licensed to practice law in Arizona, California, Florida, Massachusetts, and Nevada

📄 **005 - Plaintiff's Verified Motion for Entry of a Temporary Injunction and Supporting Memorandum of
Law.pdf**
1881K

# RANDAZZA

Marc Randazza <mjr@randazza.com>

LEGAL GROUP

## Roca Labs
1 message

**Marc Randazza** <mjr@randazza.com>                    Mon, Sep 15, 2014 at 8:12 PM
To: Michael Masnick <span style="background:black">▮▮▮▮▮</span>

Mike,

Is it something you'd do, ask anyone reading your post if they've been threatened by Roca Labs?

I'm defending Pissed Consumer. I'd really like some threatened parties as witnesses.

Further, i think there's a hell of a class action here - and finding the right class rep would be a good way to serve
Roca right.

--

**Marc John Randazza, JD, MAMC, LLM·** | Randazza Legal Group
3625 South Town Center Drive | Las Vegas, NV 89135
Tel: 702-420-2001 | Fax: 305-437-7662
Email: mjr@randazza.com | Website: www.randazza.com

<span style="background:black">▮▮▮▮</span> | Philadelphia | San Francisco | Miami

* Licensed to practice law in Arizona, California, Florida, Massachusetts, and Nevada.

# RANDAZZA

LEGAL GROUP

Marc Randazza <mjr@randazza.com>

## Roca Labs Case

3 messages

**Marc Randazza** <mjr@randazza.com>                                    Thu, Sep 18, 2014 at 7:01 PM
To: Marc Randazza <mjr@randazza.com>
Bcc: Michael Masnick ▓▓▓▓▓▓▓▓▓, Paul Alan Levy ▓▓▓▓▓▓▓ Ken At Popehat
▓▓▓▓▓▓▓▓ Scott Greenfield ▓▓▓▓▓▓▓, DMB S ▓▓▓▓▓▓▓▓▓, John Zajac
▓▓▓▓▓▓▓▓ Kurt Opsahl ▓▓▓▓▓▓

If you're following this case....


**Marc John Randazza, JD, MAMC, LLM·** | Randazza Legal Group
3625 South Town Center Drive | Las Vegas, NV 89135
Tel: 702-420-2001 | Fax: 305-437-7662
Email: mjr@randazza.com | Website: www.randazza.com

▓▓▓▓ | Philadelphia | San Francisco | Miami

_____

· Licensed to practice law in Arizona, California, Florida, Massachusetts, and Nevada.

### 7 attachments

📄 **047113843349-1.pdf**
    291K

📄 **047113843350-1.pdf**
    1922K

📄 **047113843351-1.pdf**
    910K

📄 **047113843352-1.pdf**
    689K

📄 **047113843353-1.pdf**
    161K

📄 **show_temp.pl-2 copy.pdf**
    115K

📄 **show_temp.pl-2-1.pdf**
    588K


**Marc Randazza** <mjr@randazza.com>                                    Thu, Sep 18, 2014 at 10:45 PM
To: ntriphon@hotmail.com


If you're following my case....

How is yours going?

[Quoted text hidden]

### 7 attachments

⊟ **047113843349-1.pdf**
  291K

⊟ **047113843350-1.pdf**
  1922K

⊟ **047113843351-1.pdf**
  910K

⊟ **047113843352-1.pdf**
  689K

⊟ **047113843353-1.pdf**
  161K

⊟ **show_temp.pl-2 copy.pdf**
  115K

⊟ **show_temp.pl-2-1.pdf**
  588K

---

**Darren Spielman**                                              Fri, Sep 19, 2014 at 5:54 AM
To: Marc Randazza <mjr@randazza.com>

Nicely done.


Darren Spielman, Esq.

Kain & Associates, Attorneys at Law

900 S.E. 3rd Ave., Suite 205

Ft. Lauderdale, FL 33316

954-768-9002

954-768-0158 (fax)

www.ComplexIP.com

dspielman@complexip.com


Don't forget to visit our Blogs:

www.ComplexIP.com/news-events/complex-i-p-blog/

www.DefendMyDomain.com/blog/


This message is intended only for the use of the individual or entity to which it is addressed and may contain information

intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please destroy the file.

**From:** Marc Randazza [mailto:mjr@randazza.com]
**Sent:** Thursday, September 18, 2014 10:01 PM
**To:** Marc Randazza
**Subject:** Roca Labs Case

[Quoted text hidden]

# RANDAZZA

Marc Randazza <mjr@randazza.com>

LEGAL GROUP

## First Amendment Case

8 messages

**Marc Randazza** <mjr@randazza.com>                              Sat, Sep 20, 2014 at 6:13 PM
To: Tracy Coenen

You would probably enjoy this

---

**Marc John Randazza, JD, MAMC, LLM·** | Randazza Legal Group
3625 South Town Center Drive | Las Vegas, NV 89135
Tel: 702-420-2001 | Fax: 305-437-7662
Email: mjr@randazza.com | Website: www.randazza.com

 | Philadelphia | San Francisco | Miami

---

* Licensed to practice law in Arizona, California, Florida, Massachusetts, and Nevada

📎 **show_multidocs.pdf**
4615K

**Tracy Coenen**                                                  Sun, Sep 21, 2014 at 10:56 AM
To: Marc Randazza <mjr@randazza.com>

Very much!
[Quoted text hidden]

--
Tracy L. Coenen, CPA, CFF
Sequence Inc. Forensic Accounting

Corporate blog:   www.sequenceinc.com/fraudfiles

MILWAUKEE:
310 East Buffalo Street
Milwaukee, WI 53202
414.727.2361

CHICAGO:
312.498.3661

**Marc Randazza** <mjr@randazza.com>                              Sun, Sep 21, 2014 at 10:59 AM
To: Tracy Coenen

Fraud File?
[Quoted text hidden]

1/2

**Tracy Coenen** ▬▬▬▬▬▬▬▬
To: Marc Randazza <mjr@randazza.com>

> For sure!
> [Quoted text hidden]

**Tracy Coenen** ▬▬▬▬▬▬▬▬             Sun, Sep 21, 2014 at 11:22 AM
To: Marc Randazza <mjr@randazza.com>

> Gosh, it's not sketchy AT ALL that the company has the following URL:
>
> http://rocalabsscam.wordpress.com/
>
> On 09/21/14 12:59 PM, Marc Randazza wrote:
> [Quoted text hidden]

**Marc Randazza** <mjr@randazza.com>             Sun, Sep 21, 2014 at 11:24 AM
To: Tracy Coenen ▬▬▬▬▬▬▬▬

> You have to give them credit for at least disclosing that at the bottom of the page, huh?
> [Quoted text hidden]

**Tracy Coenen** ▬▬▬▬▬▬▬▬             Sun, Sep 21, 2014 at 11:25 AM
To: Marc Randazza <mjr@randazza.com>

> Yes, of course. LOL
> [Quoted text hidden]

**Tracy Coenen** ▬▬▬▬▬▬▬▬             Sun, Sep 21, 2014 at 11:28 AM
To: Marc Randazza <mjr@randazza.com>

> And another one: http://rocalabsscamexperience.wordpress.com/
> [Quoted text hidden]

Exhibit 8



Insider Shop    Insight Community    Step2    Search Techdirt    Search

Techdirt    Wireless News    Innovation    Case Studies    Startups    Net Neutrality                Preferences    Register    Sign In

Main    Submit a Story    RSS

Follow Techdirt

<< Comcast Using Packet Injection To Push Its Own...    'Trusted Third Parties' Add One More Link In... >>

# 'Dietary Supplement' Company Tries Suing PissedConsumer, Citing Buyer's Agreement To Never Say Anything Negative

from the good-thing-we-never-bought-anything-from-roca-labs dept

**Legal Issues**
by Mike Masnick
Mon, Sep 8th 2014
1:32pm

0

Filed Under:
dietary
supplements,
gastric bypass
alternative,
opinion, pissed
consumer, reviews,
secondary liability,
section 230

Companies:
consumer opinion
corp.,
pissedconsumer,
roca labs

Permalink.

Roca Labs is a company that describes itself as a manufacturer of "dietary supplements" some of which they label with highly questionable claims that I imagine would not be supported by anything the FDA would consider to be credible evidence. In particular, they have something called "Gastric Bypass Alternative" which claims to help people lose weight -- though I would treat such claims skeptically without further proof. Indeed, it appears that many of Roca Labs' buyers are not happy about it. The Better Business Bureau gives Roca Labs an F grade due to the large number of complaints, many of which remain unresolved. Meanwhile the site PissedConsumer also has a bunch of complaints about Roca Labs and its products -- and it appears that the PissedConsumer page ranks rather highly on Google for searches on Roca Labs. Roca Labs is -- apparently -- not happy about that.

So it has now sued the parent company of PissedConsumer, Consumer Opinion Corp, trying to get the reviews taken down. The lawsuit is worth reading. It claims that PissedConsumer is engaged in "deceptive and unfair trade practices" and that part of this is... because customers of Roca Labs agree to never say anything negative about the company.

> Roca sells its products directly to the public and in exchange a discounted price, Roca's customers agree under the terms and conditions of said purchase that regardless of their outcome, they will not speak, publish, print, blog or write negatively about Roca or its products in any forum.

Of course, any such agreement is of questionable legality. However, we've certainly been seeing a lot of these questionable "no negative reviews or you pay" agreements showing up lately.

But, you say, PissedConsumer isn't the issue here, right? After all, the company never agreed to those conditions, even if the buyers did agree to them (whether or not they're legally sound). Roca is trying to get around that by arguing that because it has this clause and because PissedConsumer urges angry consumers to complain, the company is "tortiously interfering" with Roca's business because it's encouraging people to break the agreement. I'm not joking.

> Defendants deliberately and tortiously interfere with Roca Lab's customers by encouraging them to breach their customer agreement with Roca as Defendants author or co-author false, malicious and negative posts about Roca that are published on their subject website and Twecred to Twitter's 271 million users.

Where to start? First of all, no. Almost everything there is ridiculous. Presenting a platform for people to express their own opinions is not encouraging them to break any contract (which, again, is of dubious legality in the first place). Second, the site is not authoring or co-authoring the posts. Third, there's no evidence that anything being posted is "false." Fourth, what does Twitter's total user base have to do with anything? It appears that @PissedConsumer's account has a few thousand followers.

None of this matters anyway, because even if any of the other arguments made sense (and none of them seem to make much, if any, sense) PissedConsumer is clearly well protected by Section 230 of the CDA, which protects websites from the actions of their users. And, of course, PissedConsumer and its legal team are well aware of all this having hit back at previous bogus legal threats in the past. I don't expect Roca Labs will get very far with this complaint. However, if you'd like to see which complaints Roca Labs especially wants deleted, check page four of the complaint below, where the company conveniently lists out the statements it doesn't like. And, because they're so wrong on just about every other legal claim, it seems worth noting that many of them are clearly statements of opinion, rather than anything that would be clearly defamatory anyway (and if they were defamatory the company would need to go after those individuals who made them in the first place, rather than the company hosting the content).

To print the document, click the "Original Document" link to open the original PDF. At this time it is not possible to print the

Advertisement



Essential Reading

Hot Topics

6.5    Former NSA Lawyer Says Reason Blackberry Failed Was 'Too Much Encryption' Warns Google/Apple Not To Make Same Mistake

5.6    Latest EFF DMCA Exemption Requests Include The Right to Tinker With and Maintain Unsupported Video Games

5.3    Attention Kim Kardashian: You Can't Sue Another Woman For Having A Big Ass And An Instagram Account

New To Techdirt?
Explore some core concepts:

An Economic Explanation For Why DRM Cannot Open Up New Business Model Opportunities

Step One To Embracing A Lack Of Scarcity: Recognize What Market You're Really In

Infinity Is Your Friend In Economics

read all »

Techdirt Reading List

Remix: Making Art and Commerce Thr...
Lawrence Lessig (Hardcover - Oct 16, 2008)
$0.01
★★★★☆

Reclaiming Fair Use: How to Put Balan...
Patricia Aufderheide, Peter Jaszi (Paperback - A...
$12.85
★★★★☆

Hollywood's Copyright Wars: From Edi...
Peter Decherney (Hardcover - Apr 10, 2012)
$31.05
★★★★☆

Patent Failure: How Judges, Bureaucr...
James Bessen, Michael J. Meurer (Paperback - ...
$25.60
★★★★☆

1 2 3 4 5 >



Get Widget    Privacy    amazon.com



11/5/2014    Dietary Supplement Company Tries Suing Pissed Consumer, Citing Buyer's Agreement To Never Say Anything Negative | Techdirt

Case 8:14-cv-03014-SCB-MAP   Document 20   Filed 01/29/15   Page 90 of 197   PageID 777

document with annotations.

Techdirt Insider Chat

we won't be seeing that torture report after all

**silverscarcat:** *Sad face*

Udall should have ran on the platform that stated that he was for less government intrusion in your lives.

**RadioactiveSmurf:** It does bother me that candidates who stand up for the people have a harder time getting re-elected. People complain about not being represented but when they are they vote that candidate out. Sends a bad message to politicians

**silverscarcat:** That's because Udall didn't campaign enough on representing the people and standing up for their rights.

**Violynne:** Stupid country? Try a stupid planet.

**Machin Shin:** Just think, with us pushing to go to Mars, before long it will be "stupid solar system"

Get the Insider Chat!

Advertisement


Recent Stories

Tweet   70    Like   1.1k    ▲ ▼ 17 points    g+1

**31 Comments** | **Leave a Comment**

If you liked this post, you may also be interested in...

- Pianist Dejan Lazic Defends His Takedown Request By Pointing Out That The WaPo Reviewer Is Really Mean
- Misguided Pianist Asks Washington Post To Remove A Less-Than-Wonderful Review Under Right To Be Forgotten
- Magistrate Judge Not Impressed By Roca Labs' Legal Arguments: Recommends Against An Injunction
- Roca Labs Story Gets More Bizarre: Senator Threatens Bogus Defamation Lawsuit, While Nevada Quickly Rejects Bogus Bribery Charge
- Roca Labs Exec Claims Marc Randazza Bribed Nevada Politician To Get Anti-SLAPP Law Passed

## Reader Comments (rss)

(Flattened / Threaded)

Show All Comments ▼



1. Baron von Robber, Sep 8th, 2014 @ 2:02pm    insightful | funny | report

   I foresee a Popehat signal in the near future.

   [ reply to this | link to this | view in thread ]

2. Roger Strong (profile), Sep 8th, 2014 @ 2:06pm    insightful | funny | report

   Paging Ken...

   PopeHat's summary of On Press case applies to Roca Labs and it's crack legal team:

   The hardest game on the internet is one I call "C/S/T", which is short for "Crazy, Stupid, Or Troll?" Whoever is running the internet-threat operation under the name "On Press, Inc." has certain defining characteristics – truculence, functional illiteracy, and a grasp of law cobbled together by listening to 13-year-olds swearing at each other on Xbox Live.

   [ reply to this | link to this | view in thread ]

3. observer, Sep 8th, 2014 @ 2:06pm    insightful | funny | report

   Re:

   He's already tweeting about it.

   [ reply to this | link to this | view in thread ]

4. Anonymous Coward, Sep 8th, 2014 @ 2:15pm    insightful | funny | report

   They give ALL of their customers a "discount"?

**Wednesday**

06:22 Former NSA Lawyer Says Reason Blackberry Failed Was 'Too Much Encryption' Warns Google/Apple Not To Make Same Mistake (23)

04:21 Latest EFF DMCA Exemption Requests Include The Right to Tinker With and Maintain Unsupported Video Games (22)

01:16 UK Launches Orphan Work Licensing Scheme, Misses Huge Opportunity To Make It Much Better (8)

**Tuesday**

21:13 Airbnb Competitor Sues San Francisco For Making New 'Legalize Airbnb' Law Too Restricted To Airbnb (4)

17:00 DailyDirt: Who Needs A Mouse And Keyboard Anymore? (16)

15:57 Here's Hoping Judge Ignores The Nutty Plaintiff With An Important Case On NSA Surveillance Of Business Records (21)

14:58 Virginia Police Departments Have Been Collaborating On An Ad Hoc, Secret Phone Record Database (13)

13:50 Chris Hadfield's Outer Space Version Of Space Oddity Is Back... But It Still Never Should Have Gone Away (23)

12:46 Russia Dismantles Steve Jobs Memorial, Fearing That Tim Cook's Homosexuality Might Be Contagious (58)

11:36 Pianist Dejan Lazic Defends His Takedown Request By Pointing Out That The WaPo Reviewer Is Really Mean (27)

More ➤

Advertisement

That's not called a discount. That's called a price.

[ reply to this | link to this | view in thread ]

5.  **ACasey** (profile), Sep 8th, 2014 @ 2:17pm    insightful  funny  report

Talk about the Streisand Effect!

[ reply to this | link to this | view in thread ]

6.  **Vidiot** (profile), Sep 8th, 2014 @ 2:22pm    insightful  funny  report

Their own brand of dyspepsea

Number 2 search result via Google for "Roca Labs":

Better Business Bureau, West Florida - "This business is not accredited," followed by:

Additional Complaint Information

It has come to BBB's attention that the company will demand the removal of any complaint, web post or other publication that constitutes a breach of the terms and conditions agreed to by the consumer at the time of purchase, regardless of whether or not the consumer complaint is resolved.

[ reply to this | link to this | view in thread ]

7.  **kenichi tanaka** (profile), Sep 8th, 2014 @ 2:25pm    insightful  funny  report

That's crazy because it's like saying "I robbed a bank because lyrics in a rap song told me too". Does Roca Labs make any sense and are they serious?

First of all, just because Roca Labs has it written that you cannot post negative comments about its products after you purchase them, doesn't mean that Roca Labs has a leg to stand on. Any court in this country, on this planet, would laugh Roca Labs out of their court for being so restrictive on consumers in the first place. Why? Because that violates an individual's first amendment right to free speech. Roca cannot claim that your purchase of their product prevents you from speaking negatively about their company. After all, if that were true, then why aren't they suing the Better Business Bureau?

I don't even see this passing the laugh test with any competent court because any judge in this country would dismiss any such lawsuit before it could even get put on the docket.

[ reply to this | link to this | view in thread ]

8.  **ACasey** (profile), Sep 8th, 2014 @ 2:29pm    insightful  funny  report

Re:

Freedom of speech and internet businesses rarely go together. Just see all those "defamation" cases.

[ reply to this | link to this | view in thread ]

9.  **Anonymous Coward**, Sep 8th, 2014 @ 2:46pm    insightful  funny  report

I must say, Roca's got guts referencing the Florida Deceptive and Unfair Trade Practices Act, when you consider THEIR practice of not allowing consumers to say anything negative about them.

Of course, if the allegations about PissedConsumer are correct in that they sell "reputation management" where they ask companies for money to take down complaints, then PissedConsumer is hardly an innocent victim here. It's possible that this case is two bad actors going against each other.

[ reply to this | link to this | view in thread ]

10. **Gracey** (profile), Sep 8th, 2014 @ 3:02pm    insightful  funny  report

[quote]PissedConsumer urges angry consumers to complain that the company is "tortiously interfering" with Roca's business[/quote]

No. Roca's unfounded claims and poor products are interfering with their business.

Maybe they should just sue themselves.

[ reply to this | link to this | view in thread ]

11. **connermac725** (profile), Sep 8th, 2014 @ 3:04pm    insightful  funny  report

11/5/2014 Dietary Supplement Company Tries Suing Pissed Consumer, Citing Buyer's Agreement To Never Say Any... Techdirt.

Case 8:14-cv-03014-SCB-MAP Document 20 Filed 01/29/15 Page 92 of 197 PageID 779

Just an Idea

Maybe if they answered the complaints from their customers they would not have to vent in other places.
Instead of the we suck so we are going to ignore you business model they have now

[ reply to this | link to this | view in thread ]

12. Anonymous Coward, Sep 8th, 2014 @ 3:21pm

All they need to do is get Congress to pass a law making "Printing or saying mean things about me/us" illegal.
Then they have to figure out how to enforce it.

[ reply to this | link to this | view in thread ]

13. Mark Noo, Sep 8th, 2014 @ 3:23pm

Puffery or Buggery

Now that people pay such large amounts for advertising. Now that they consult psychologist and professional
marketers can anything be said to be "puffery" any more.

With 50 percent of our GDP (I think that is the number) dependent on consumer spending should we change the
the word "puffery" to "buggery" so that people will better understand what unfettered marketing really is?

I think we should.

[ reply to this | link to this | view in thread ]

14. DannyB (profile), Sep 8th, 2014 @ 3:26pm

EULAs

By opening this bottle of high quality dietary supplement, and in consideration of the discount price you were
offered, you agree to the 80 page EULA (provided on microfilm, inside the bottle).

[ reply to this | link to this | view in thread ]

15. kenichi tanaka (profile), Sep 8th, 2014 @ 3:48pm

Roca Labs needs to understand that you cannot sue somebody for exercising their first amendment rights. But, I
gotta give them credit for having big balls for trying to do exactly that. It will be the first time that someone has
been sued for practicing their right to free speech.

[ reply to this | link to this | view in thread ]

16. Anonymous Coward, Sep 8th, 2014 @ 3:58pm

Even sadder than the lawsuit is the sheer number of lawyers willing to make these kinds of bullshit claims on
their clients' behalf. You'd think they'd rather be defending thieves, murderers and pedophiles -- at least then
they'd have a chance of being on the right side of justice (after all, not everyone who is accused of these things
is guilty).

[ reply to this | link to this | view in thread ]

17. Anonymous Coward, Sep 8th, 2014 @ 4:02pm

s/Twecred/tweeted/g

The PDF has more readable and less twecred text.

[ reply to this | link to this | view in thread ]

18. That Anonymous Coward (profile), Sep 8th, 2014 @ 4:05pm

And the sense of entitlement grows.
Because we business, we have a right nto perfect glowing reviews, even when we fail our customers.
If you dare tell anyone how we failed you, you owe us money because we lost potential sales.
Our dropping sales figures are because people said mean things online and not because we are a company so
shitty we have to attempt to gag you into silence with the threat of lawsuits.

[ reply to this | link to this | view in thread ]

19. ACasey (profile), Sep 8th, 2014 @ 4:37pm

Re:

Pretty pathetic, eh? Somebody actually did this sort of thing to me 7 years ago on Amazon - I gave a negative
review of a (self-published, mind you) book I didn't like, and the author sent me a extortion letter demanding a

11/5/2014     Dietary Supplement Company Tries Suing Pissed Consumer, Citing Buyer's Agreement To Never Say Anything Bad | Techdirt

Case 8:14-cv-03014-SCB-MAP   Document 20   Filed 01/29/15   Page 93 of 197 PageID 780

260 fine. I didn't pay it, of course, because I had a lawyer, but what about the people who didn't?

[ reply to this | link to this | view in thread ]

20.   Anonymous Coward, Sep 8th, 2014 @ 7:18pm     insightful   funny   report

Who wants to bet that copyright law has foisted all these unreasonable expectations to some degree?

Until recently it was the copyright industries whining about "lost sales" in arguments that would never fly in the analog world. And now suddenly everyone is arguing that consumers should never be allowed to say anything bad about any product, because "contract law" and "lost sales".

[ reply to this | link to this | view in thread ]

21.   That One Guy (profile), Sep 8th, 2014 @ 8:29pm     insightful   funny   report

Re: Re:

On Amazon? Oh did they get off lightly if that's all you did, from what I've heard, Amazon is extremely touchy about that sort of thing, and simply forwarding the email to them would likely have gotten the author kicked clean off their service. They do not look kindly on people/companies who try and bully buyers, and for good reason.

[ reply to this | link to this | view in thread ]

22.   Anonymous Coward, Sep 9th, 2014 @ 7:36am     insightful   funny   report

Re:

Yeah that is for sure. Having that policy in the first place makes them look worse than anything that a customer could say about them. It shows not only did they know that they would have problems but their response is to cover it up instead of trying to fix the issue.

[ reply to this | link to this | view in thread ]

23.   John Fenderson (profile), Sep 9th, 2014 @ 8:02am     insightful   funny   report

Re:

"you cannot sue somebody for exercising their first amendment rights"

This is not true as a blanket statement. You can absolutely contractually agree to restrict your first amendment rights and be sued if you break that agreement. Pretty much every job I've had has included a non-disclosure agreement, for instance. That restricts my first amendment rights, but should I break it I can expect a lawsuit.

[ reply to this | link to this | view in thread ]

24.   Just Another Anonymous Troll, Sep 9th, 2014 @ 9:30am     insightful   funny   report

Re:

[cough] Kleargear [cough]

[ reply to this | link to this | view in thread ]

25.   Ian, Sep 9th, 2014 @ 5:16pm     insightful   funny   report

Re:

Actually, you *can* sue someone for exercising their first amendment rights. The first amendment insulates you - to a degree - from *government* abridging your free speech rights. While it's a very difficult hurdle to overcome, private persons and entities can and do successfully sue folks for shooting off their mouths. Defamation and libel cases work out for plaintiffs all the time. The real underlying issues will - in general terms, since I haven't researched the law - revolve around (a) whether the restriction on discussing the product or Roca is lawful; (b) if it is, whether Roca can prove pissedcustomer.com and its parent was aware of and sought to interfere with existing contractual relationships between Roca and its suckers, er, customers; (c) if so, whether Roca was damaged by that knowing interference. In my view (a) is a dead bang loser for Roca, but assuming the gag requirement is valid, they have big problems with (b) and (c). Looking forward to Ken White's more penetrating analysis, to be sure.

[ reply to this | link to this | view in thread ]

26.   Regretfulness (profile), Sep 10th, 2014 @ 3:26pm     insightful   funny   report

The world has a way of dealing with scumbags. The practice of including nondisparagement clauses in consumer contracts will soon be illegal in California. http://bit.ly/1umy6O5
Other progressive states will follow.

[ reply to this | link to this | view in thread ]

27. Sheogorath (profile), Sep 13th, 2014 @ 9:19am    insightful  funny  report

The Better Business Bureau gives Roca Labs an F grade due to the large number of complaints, many of which remain unresolved.
Really? Or is the actual case that Roca are simply too cheap to buy a better rating from the BBB?

[ reply to this | link to this | view in thread ]

28. Carl, Sep 14th, 2014 @ 9:40am    insightful  funny  report

$800?

From p.5 of the complaint: "Discounts average $800". Really? That's an extraordinary figure. How much does this product cost that they can discount it by that much? Does this cost as much as a car?

How can such a thing be unregulated?

[ reply to this | link to this | view in thread ]

29. Robert, Sep 14th, 2014 @ 12:29pm    insightful  funny  report

Roca Labs, should be shut down for fraud and deceptive trade.

I imagine that if this comes to the notice of the Attorney General of the US; that Roca Labs should soon loose its license to market in the US and this highlights the reasons corporate officers should be charged criminally, imprisoned, and forbidden from selling any products in the market place ever again (even a garage sale). It is my hope that the judge will see this for what it is a nuisance suit, with no legitimate merit ... based on a contract with no legitimacy; and it will bring to light this company's neglectful and dangerous impact on the any community. In full transparency, I am not, not have I ever been a customer of Roca Labs ... however the allowance of the persistance of charleton con artistry groups like this are a blight on any market and cause harm to me through making products less viable for all of us. The market is served and the consumer is served by not allowing con men to con. End Roca Labs; they will not be missed ... more over indict its officers for racketeering, fraud, wire fraud, and deceptive practises ... up to and including ... proliferating illegitimate contracts.

[ reply to this | link to this | view in thread ]

30. Anonymous Coward, Sep 22nd, 2014 @ 11:50pm    insightful  funny  report

Re: Roca Labs, should be shut down for fraud and deceptive trade.

They're small potatoes and probably will be. If they were one of the big multinationals, no way. Look at the crap the Pharma industry is pulling, daily! And getting away with it, daily!

[ reply to this | link to this | view in thread ]

31. Kevin, Oct 19th, 2014 @ 10:00pm    insightful  funny  report

Suits/Freedom of Speech

I agree freedom of speech should be protected. When a person goes to far and their comments become defaming and or slanderous then they can be held libel for sure. People get sued and lose all the time for not wording their "freedom of speech" correctly. Pissedconsumer.com relies on a loophole to try and squeeze between the legal cracks. You can say and do whatever you feel big enough to do, but don't whine if you get sued or in trouble for it. There's a fine line and we should be able to say what we want it seems we just can't offend anyone by it or if it is worded in the wrong manner there will be consequences.

[ reply to this | link to this | view in thread ]

## Add Your Comment

Have a Techdirt Account? Sign in now. Want one? Register here

Name [ ]
Email [ ]  □ Get Techdirt's Daily Email
URL [ ]
Subject [ ]
Comment [ ]

Options  □ Save me a cookie

Submit    Preview

- Note: A CRLF will be replaced by a break tag (<br>), all other allowable HTML will remain intact
- Allowed HTML Tags: <b> <i> <a> <em> <br> <strong> <blockquote> <hr> <tt>

<< Comcast Using Packet Injection To Push Its Own...                    'Trusted Third Parties' Add One More Link In... >>



**Company**
About Us
Advertising Policies
Privacy

**Contact**
Help & Feedback
Media Kit
Sponsor/Advertise
Submit a Story

**Tools & Services**
Twitter
Facebook
RSS
Techdirt for Mobile
Research & Reports

**More**
Insight Community
Step2
Insider Shop

Brought to you by Floor64

BLOG      FEATURES      VIDEO      BBS          TWITTER          FACEBOOK          TUMBLR

**Dietary supplement company sues website for providing a forum for dissatisfied customers**

Cory Doctorow at 3:00 pm Tue, Sep 9, 2014

SHARE              TWEET                STUMBLE                    COMMENTS

Roca Labs sells dubious snake-oil like a "Gastric Bypass Alternative," and their terms of service forbid their customers from ever complaining; they say that Pissedconsumer.com committed "tortious interference" by providing a place where disgruntled buyers could air their grievances.



But, you say, PissedConsumer isn't the issue here, right? After all, the company never agreed to those conditions, even if the buyers did agree to them (whether or not they're legally sound). Roca is trying to get around that by arguing that because it has this clause and because PissedConsumer urges angry consumers to complain that the company is "tortiously interfering" with Roca's business because it's encouraging people to break the agreement. I'm not joking.

*Defendants deliberately and tortiously interfere with Roca Lab's customers by encouraging them to breach their customer agreement with Roca as Defendants author or co-author false, malicious and negative posts about Roca that are published on their subject website and Twecred to Twitter's 271 million users.*

'Dietary Supplement' Company Tries Suing PissedConsumer, Citing Buyer's Agreement To Never Say Anything Negative [Mike Masnick/Techdirt]

**DISCUSS**

## READ MORE AT BOING BOING



**Norwegian atheist velociraptor trike: the movie**

**Mel Brooks cement prank at the Chinese Theater**

**Stellar bargains at Top Shelf Comix's $3 sale!**

AD BY FEDERATED MEDIA

### Inside The Howling Tongues' Rockin' 'Paste' Performance



-from Paste Magazine-

The Howling Tongues know how to get a crowd moving, but when it comes to

CLICK TO VIEW



ABOUT US    CONTACT    ADVERTISE    PRIVACY    TOS    •    FACEBOOK    TWITTER    RSS    EMAIL

Exhibit 9

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

ROCA LABS, INC.,                                 Case No: 8:14-cv-2096-T-33EAJ

       Plaintiff,

   v.

CONSUMER OPINION CORP. and
OPINION CORP.,

       Defendants.

_____/

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S
## MOTION FOR ENTRY OF A TEMPORARY INJUNCTION

DEFENDANTS, OPINION CORP & CONSUMER OPINION CORP., hereby oppose Plaintiff's Motion for Entry of a Temporary Injunction.[1]

## I.      Introduction

Roca Labs ("Roca") is a company that *really* wants to avoid criticism.  However, instead of doing so by delivering a quality product and quality service, it seeks to suppress all criticism through underhanded (if not illegal) means.  No matter what kind of hyperbole or unsupported assertions the Plaintiff tries to throw into the docket, *that* is why we are before this Honorable Court, nothing more, nothing less.

---

[1] Plaintiff improperly conflates these two entities, but for the purposes of this opposition, the Defendants will forgive this, as it is largely irrelevant to the outcome of the motion.  The Motion is doomed for far less technical reasons than claims against the wrong party.

Roca sells a diet product, as an alternative to gastric bypass surgery. Roca claims that its "components are Guar Gum, Konjac, Inulin, Beta Glucan, Xanthan Gum, Maltodextrin, Vitamins B-6, B-12, C," and flavoring. ECF 2 at 51.[2] Roca claims "these fibers are activated by large amounts of water and occupy most of the stomach, leaving only 20% available for food intake."[3] In other words, Roca Labs' product primarily consists of industrial-food thickening agents that expands and increases the viscosity of water. Declaration of Dr. Thomas Parisi, attached hereto as Exhibit 1 (hereinafter "Parisi Decl.") ¶8. The theory is simple: If you fill your stomach with it, you don't have room, or hopefully desire, to fill it with anything else.[4] A layperson might readily presume that such a scheme would result in weight loss. However, this low-tech, low-research formula is of specious value to many people – as such an approach can lead to health problems and even weight *gain* in some users. Parisi Decl. ¶¶9-10.

Even legitimate, FDA-approved medicines, foods, and medical treatments, will have varying results and physical reactions. Part of how our body of knowledge grows, in the absence of FDA trials, is through consumers sharing their experiences. Parisi Decl. ¶¶15-17. This is almost imperative in the often shady underworld of "nutraceuticals," which are neither FDA approved, nor seemingly regulated by anyone except their producers' own ethics, such as they are.[5] Therefore, consumers need feedback from prior users, so that they can at least have some

---

[2] In a promotional video, a spokes model vacantly reads from a teleprompter and misleadingly states that the ingredients are "approved by the World Health Organization," as if that United Nations institute took some time off from fighting ebola in order to stamp its imprimatur on Roca's concoction. <youtube.com/watch?v=0wNYozD1XEM> (last visited 15 Sept. 2014).

[3] <youtube.com/watch?v=0wNYozD1XEM>

[4] <youtube.com/watch?v=gJ9UeimqSqs&list=UUl7sVLkpP6ivf1P8BIyPW_g>

ability to predict side effects or efficacy issues. Parisi Decl. ¶18. Without this feedback, the public is put at risk. Parisi Decl. ¶19. But, Roca shows little concern for what happens to its users – if its product works for them, then Roca wants that information out there, but woe unto the user who gets sick or finds it ineffective. If they don't keep their traps shut, Roca threatens to sue them. See Exhibit 2 (Example of Roca's threats issued to dissatisfied customers); see also Exhibit 3, Declaration of Jennifer Schaive ("Schaive Decl.") ¶11).[6]

The Defendants provide a consumer review site upon which users share their experiences with any number of consumer goods and services. See Exhibit 4 (declaration of Michael Podolsky (hereinafter Podolsky Decl.")). Roca Labs is only one of thousands of businesses reviewed on Defendants' site. Podolsky Decl. ¶8. Some reviews are negative. Some are gushingly positive. The Defendants do not author any of the reviews, which are all provided by third parties. Podolsky Decl. ¶9. With respect to content, the Defendants are agnostic, hoping that the power of the marketplace of ideas will give consumers the ability to make an informed decision about whether they wish to put Roca Labs' concoction into their bodies, and whether they trust their health to this "nutraceutical" manufacturer. Podolsky Decl. ¶10.

---

[5] Roca Labs discloses a number of possible side effects, in a YouTube video starring "Dr. Ross Finesmith."
<youtube.com/watch?v=sfZpZ-0zTus&list=UUl7sVLkpP6ivf1P8BIyPW_g>
<youtube.com/watch?v=F7HQx2oZxY8&list=UUl7sVLkpP6ivf1P8BIyPW_g>
However, "Dr." Finesmith does not appear to be a physician licensed in any state.

[6] Some of these threats are signed by a "paralegal" who purports to "represent" Roca Labs. See Exhibit A to Schaive Decl. Among other concerns, this is the unauthorized practice of law. Activity that involves an important legal right of another is the practice of law. See *Florida Bar v. Sperry*, 140 So. 2d 587, 591 (Fla. 1962), vacated on other grounds, 373 U.S. 379 (1963); *Florida Bar v. Warren*, 655 So.2d 1131 (Fla. 1995) (corresponding with parties relative to a legal matter constitutes the practice of law).

RANDAZZA | LEGAL GROUP

A critical reader would likely presume that something is amiss upon reading the key clause in Roca Labs' purchase terms.[7]  ECF 2 at 46.  "*In exchange for a significant discount… customers contractually agree that, regardless of their outcome, they will not speak, publish, print, blog or write negatively about ROCA or its products in any forum.*"  ECF 2 at ¶ 24, ¶144.  However, these same terms fail to disclose the amount of this "discount" or "subsidy."   ECF 2 at 46; *see* Walsh Decl. ¶4.  Roca then requires its customers to agree *inter alia* that they "*consent to and agree to entry of an injunction… in enforcement of your violation of this term and condition,*" and that the customer will then pay an elevated price for the product.  ECF 2 at ¶ 130-131, 136.  This is alongside the company's "no refunds" and "no returns" policies, and a waiver of any chargeback rights even if the product never arrives.  ECF 2 at 48-49.  See Exhibit 6 (declaration of Tameka Anderson, describing the inequity of Roca Labs' "no refunds" policy); *see also* Schaive Decl. ¶¶13-19.  Roca Labs tries to scare its customers with clauses that provide it with a unilateral right to recoup not only an elevated price for the product, but "*any expenses we incur in resolving the issue*", and that if any of them make a negative comment, it will (apparently even if true) "*constitute defamation per se, entitling [Roca Labs] to injunctive relief and damages.*"[8]  ECF 2 at 53.  The *coup de grace* is a section providing for a one-sided attorneys' fees provision, if a user dares to utter a negative word in public.

> Your breach of the Agreement as it relates to your obligation to refrain from making, posting, or otherwise commenting negatively about the Formula, Website, or The Company, is deemed a material breach of the Agreement, and

---

[7] That is, if they read them.  They do not appear to be something the average consumer would read or could understand.  *See* Exhibit 5, Declaration of Margaret Walsh ("Walsh Decl.") ¶4.
[8] While Roca may claim that this provision amounts to a stipulation of irreparable harm justifying injunctive relief, the Court is not bound by such a purported stipulation between the parties.  *Clark v. Merrill Lynch*, 1995 U.S. Dist. LEXIS 11541 (M.D. Fla. June 15, 1995).

you agree to pay all costs and attorney's fees related to The Company's subsequent efforts to enforce this term of the Agreement.[9]

ECF 2 at 58-59.

Does that sound like an upstanding company that stands behind its safe and reliable product? Or does that sound like a disreputable company, producing tubs of snake oil (or snake goop, as it were), and which knows that too much truth will hurt its fly-by-night bottom line? Roca Labs is desperately trying to force a cone of silence over each and every customer that discovers that Roca Labs' product is not only a specious remedy for their weight issues, but a potential cause of additional health problems.[10]  Plaintiff, desperate to sell as many of its tubs of goo to the public as it can before regulatory agencies come knocking does its best to bully its former customers into silence.  Schaive Decl. ¶11; Exhibit A to Schaive Decl.

Roca Labs now seeks this Court's assistance to scrub consumer review sites of negative reviews, or seemingly any reviews at all, by filing this lawsuit. Roca wishes to deprive the public of these reviews, even if they might alert a consumer to a possible health crisis.  In this spirit, Roca comes to this Court seeking a prior restraint, unethically trying to cast a sanctionable defamation claim as something else, in the hope that this Court will not notice.

//

//

//

---

[9] Presumably, Roca Labs' demand for attorneys' fees in the prayer for relief is based upon its position that the Agreement is enforceable against the Defendants, and thus Roca Labs believes that this clause binds the Defendants as well.

[10] Noting that the Defendant is a New York company, it sounds to the Defendants like Roca is a company that wants to be called to task for violating New York law.  This kind of agreement was held to be not only unenforceable, but subject to fines and injunctive relief prohibiting any further use of such language in New York. See *People v. Network Assocs.*, 758 N.Y.S.2d 466; 195 Misc. 2d 384 (N.Y. Sup. Ct. 2003).

## II.    Legal Analysis

### A.    Entry of a preliminary injunction is impermissible in this case

Temporary injunctive relief is not available to plaintiffs seeking to suppress allegedly defamatory speech. *Concerned Citizens for Judicial Fairness v. Yacucci*, 2014 Fla. App. LEXIS 13670 (Fla. 4th DCA Sept. 3, 2014); *Vrasic v. Leibel*, 106 So. 3d 485, 486 (Fla. 4th DCA 2013); *Chevaldina v. R.K./FL Mgmt., Inc.,* 133 So. 3d 1086, 1091 (Fla. 3d DCA 2014).[11] Presumably for that reason, Roca Labs has attempted to disguise this defamation claim as a Florida Deceptive and Unfair Trade Practices Act (FDUTPA) and tortious interference claim in order to try to side-step the clear case law that cuts against it in defamation actions.  But, no matter many times you call a "dog" a "duck," it will neither lay eggs nor quack.[12]  Styling a baseless defamation claim as something else does not shield it from First Amendment scrutiny and render palatable the most odiferous and despised remedy known to our courts – the prior restraint. This exceptional relief is impermissible under Florida law and the First Amendment.

A prior restraint is an advance limitation on First Amendment activity. *Fantasy Book Shop, Inc. v. City of Boston*, 652 F.2d 1115, 1120 (1st Cir. 1981).  This includes an injunction that prohibits speech prior to a determination that the speech is unprotected. See *Near v. Minnesota*, 283 U.S. 697, 75 L. Ed. 1357, 51 S. Ct. 625 (1931).  There is a "heavy presumption" against their validity.  *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558, 43 L. Ed. 2d 448, 95 S. Ct. 1239 (1975); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 9 L. Ed. 2d 584, 83 S. Ct. 631 (1963); *New*

---

[11] This is even the case when the speech is *false*.  *Town of Lantana v. Pelczynski*, 290 So. 2d 566, 569 (Fla. 4th DCA 1974) ("Freedom from prior restraint upon speech and press extends to false, as well as true statements.")

[12] *See Fla. Bar v. Neiman*, 816 So. 2d 587, 599 (Fla. 2002) (Describing the "duck test").  This case involves the "inverse duck test."

*York Times Co. v. United States*, 403 U.S. 713, 714, 29 L. Ed. 2d 822, 91 S. Ct. 2140 (1971);

*Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419, 29 L. Ed. 2d 1, 91 S. Ct. 1575 (1971).

Nevertheless, the Plaintiff comes to this Court, with clearly inapplicable claims, attempting to engage in misdirection – by asking the court to avert its gaze from the fact that what the Plaintiff truly wants is a prior restraint removing consumer reviews from publication before a trial. That is a textbook example of a prior restraint, and as explained above, the Supreme Court has *roundly rejected* prior restraints. See *Kinney v. Barnes*, 57 Tex. Sup. J. 1428 at n.7, 2014 Tex. LEXIS 764 (Tex. 2014) (citing Sobchak, W., The Big Lebowski, 1998).

Perhaps after a trial, if the proper defendants (the authors of the comments) appeared in the case, *and* their speech was found to be unlawful, a narrow injunction *might* issue, but even *that* would be a challenging exercise, for even injunctions against speech that come *after* a trial are usually impermissible prior restraints. See Erwin Chemerinsky, *Injunctions in Defamation Cases*, 57 Syracuse L. Rev. 157, 165 (2007); see also *Oakley, Inc. v. McWilliams*, 879 F. Supp. 2d 1087, 1089 (C.D. Cal. 2012) ("Injunctions against any speech, even libel, constitute prior restraints: they prevent[] speech before it occurs, by requiring court permission before that speech can be repeated." (citation and internal quotation marks omitted)).

Nevertheless, Roca Labs asks this Court to invite a prime specimen of the precise genus and species of the most despised of all constitutional vermin. *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) (holding that prior restraints are "the most serious and least tolerable infringement on First Amendment rights"). This particular prior restraint would, quite likely, be the most offensive one that we could consider – as it seeks to suppress warnings about products

that have *actually made people ill.* Walsh Decl. ¶¶6-8.[13] Roca Labs wants this Court to help it hide the truth -- that its products make some people sick. Parisi Decl. ¶11-13; Walsh Decl. ¶¶6-8. This is information that needs to be disseminated to allow consumers to make an informed decision about Roca's product -- not censored.

Defamation plaintiffs seeking prior restraints are hardly rare. After all, if a company can enlist the power of the courts to stop criticism of its business practices, it scores a coup. But, as the Supreme Court said in *Organization for a Better Austin v. Keefe*, in overturning one, "[n]o prior decisions support the claim that the interest of an individual in being free from public criticism of his business practices . . . warrants use of the injunctive power of a court." 402 U.S. 415, 419-20 (1971). There are no modern cases in which a court has granted a preliminary injunction in a defamation claim that withstood appellate scrutiny. Armed with this knowledge, the Plaintiff attempted to dress up its defamation claim as a one of tortious interference and FDUTPA. This clumsy and unsuccessful sleight of hand[14] was an attempt to try to side-step the clear case law that cuts against prior restraints in defamation actions, and it is not a new page in the would-be censor's playbook. In *Chevaldina v. R.K./FL Mgmt.*, 133 So. 3d 1086 (Fla. 3d DCA 2013), the

---

[13] The complained-of statements are about evenly split between warnings about Roca Labs' product causing health problems, it simply not working, and complaints about Roca Labs' business practices, including the very "gag clause" that they seek to invoke in this case. Even in the absence of the Constitutional presumption against such an injunction, the negative policy implications of such an injunction are staggering.

[14] Despite claiming a right to injunctive relief under specious tortious interference and FDUTPA claims in the Motion ECF 5, the Plaintiff simply uses such claims as point headings, while still speaking in defamation terms. For example, in arguing that there is irreparable injury, the Plaintiff does not claim that existing contracts will be tortiously interfered with, nor that it will be deceived by an unfair business practice. Instead, the alleged harm is reputational. "Roca has already suffered harm to its reputation … Each week approximately one thousand people see the false and malicious negative reviews… Once a posting is made… damage to Roca's reputation is done…" ECF 5 at 15. Despite sprinkling the words FDUTPA and "tortious interference" in where we have placed ellipses, the Plaintiffs fail to turn this into anything but a garden variety defamation claim, where the Plaintiff should join countless others who have failed to convince a court to grant a prior restraint.

plaintiff tried to dress up its defamation claims as tortious interference claims for the purposes of seeking a preliminary injunction. The trial court erroneously granted the motion, but the 3d DCA did not let it stand. *Id.*[15]

Even if we were to suspend the First Amendment for the purposes of this case, the motion would still fail. Roca cannot possibly prevail on the claims raised in the motion, and thus, cannot show a *possibility*, much less a *likelihood* of success on the merits. The Defendants are immune under 47 U.S.C. § 230, and therefore, is not liable for the content of any statements made by third parties, and thus none of the claims should survive even cursory review. Further, the public interest would be grossly disserved by the requested censorship. To boot, there is no urgency supporting a finding of irreparable harm.[16] Roca Labs failed to offer any evidence or a suggested security amount, violating Fed. R. Civ. P. 65 / Fla. R. Civ. P. 1.610.

**B.    Plaintiff has no likelihood of success on the merits**

  **1.   Tortious Interference**

To prevail in a tortious interference claim, a plaintiff must show "(1) the existence of a business relationship under which the plaintiff has legal rights; (2) knowledge of the relationship on the part of the defendant; (3) an **intentional and unjustified interference** with that relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the

---

[15] Florida *state* court judges seem less careful when it comes to prior restraints, despite the fact that **every** time they do, they get slapped down by their appellate courts. See, e.g., *Concerned Citizens for Judicial Fairness v. Yacucci*, 2014 Fla. App. LEXIS 13670 (Fla. 4th DCA Sept. 3, 2014) (overturning unconstitutional prior restraint by Judge Shahood); *Chevaldina v. R.K./FL Mgmt.*, 133 So. 3d 1086 (Fla. 3d DCA 2013) (Reversing Judge Leesfield's entry of an unconstitutional prior restraint when plaintiff claimed that the defamatory statements were made in furtherance of tortious interference); *Vrasic v. Leibel*, 106 So. 3d 485 (Fla. 4th DCA 2013) (overturning Judge Ross).

[16] Plaintiff has waited well in excess of two years to seek injunctive relief. The Tweets Plaintiff complains of date back to at least June 2012. ECF 2, Exhibit E. The first comment on <pissedconsumer.com> was posted March 9, 2012. ECF 2, Exhibit F. This negates any claim of urgency warranting preliminary relief.

business relationship." *Bortell v. White Mountains Ins. Group, Ltd.*, 2 So. 3d 1041, 1048 (Fla. 4th DCA 2009) (emphasis added), see also *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985). Even if Defendants had knowledge of Roca Labs' customers beforehand, they would have been entirely justified warn them about the questionable product and unethical business practices, (as evidenced by the gag clause of the terms and conditions). "This cause of action requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Ethan Allen Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994).

Plaintiff's tortious interference claim swings on the notion that the Defendants "tortiously interfere[d] with Roca Lab's customers by encouraging them to breach their customer agreement with Roca" by posting reviews on the Defendants' website. ECF 5 at 2. While Defendants assert, *infra*, that this does not constitute tortious interference, neither Defendant denies that the Pissed Consumer website wishes for consumers to review products or services they have tried. But, this does not support liability, as there is no tort in allowing consumers to review products.

"[A]n action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Ethan Allen*, 647 So. 2d at 815. Roca Labs provides no evidence of an agreement which *would have been completed*. It simply speculates that everyone who reads the reviews is someone who was about to purchase Roca's questionable product, but after the would-be-buyer saw a warning that it might make them ill (or that the company requires purchasers to enter into an unconscionable contract) they

thought better of it. That is not called "tortious interference," that is called "an informed consumer making an intelligent choice."

Further, the basis for Roca's claims is that anyone who purchased the product *must* have agreed to the "gag clause" limiting the customer's right to speak negatively (even truthfully so) about the product or the company. ECF 5 at 2. Anyone who did *not* buy the product would have no basis to agree to the gag-provision, and it would be inapplicable. But, the "Agreement" that these would-be buyers would have entered into is itself unlawful, as discussed *infra*.

Even if these facts could support a tortious interference claim, a relationship with a *past customer* does not provide a basis for the claim. *Ethan Allen,* 647 So. 2d at 815. While Roca Labs has burdensome terms and conditions, we can find nowhere among those burdens any obligation to be a repeat customer.[17] "The mere hope that some of its past customers may choose to buy again cannot be the basis for a tortious interference claim." *Id.* Therefore, Roca has no substantial likelihood of prevailing on the merits of its tortious interference claim, because the claim fails as a matter of law.

Finally, the tortious interference claim is barred as duplicative. In cases addressing this scenario – a plaintiff claiming defamation and basing a claim of tortious interference with business relations upon that supposed defamation – the tortious interference claim is precluded. *Orlando Sports Stadium, Inc. v. Sentinel Star Co.*, 316 So. 2d 607, 609 (Fla. 4th DCA 1975); *see Easton v. Weir*, 167 So.2d 245 (Fla. 2d DCA 1964) (holding that a single wrongful act gives rise to only a single cause of action). The single action rule applies to tortious interference claims like the one

---

[17] In fact, repeat business does not seem to be Roca's business plan, and discovery will likely show very few repeat customers.

in this case. "In Florida, a single publication gives rise to a single cause of action." *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002).

In *Orlando Sports Stadium*, the plaintiff filed suit against a newspaper for defamation and tortious interference, alleging that the articles concerning the plaintiff were defamatory. 316 So. 2d at 608. The appellate court found that the defamation and tortious interference claims overlapped because they were based on the same articles and because the "thrust" of the complaint was that these articles were injurious to the plaintiff. *Id.* at 609. The extraneous tortious interference claim was "nothing more than elements of damage flowing from the alleged wrongful publications." *Id.* Roca Labs must establish an additional, distinct action that is not embodied within the defamation causes of action to bring a tortious interference claim. Therefore, without an independent basis, this claim itself cannot be sustained, much less serve as the basis for injunctive relief.

a.     **Roca Labs' Agreement is Unenforceable**

Roca Labs uses the "Agreement" with their customers as the basis for much of its complaint. *"In exchange for a significant discount… customers contractually agree that, regardless of their outcome, they will not speak, publish, print, blog or write negatively about Roca or its products in any forum."* ECF 6 at 5 (emphasis added). Preliminarily, no Defendant is a party to, or bound by, this contract, and neither has an obligation to respect it. "[A] contract does not bind one who is not a party to the contract, or who has not agreed to accept its terms.'" *Marlite, Inc. v. Eckenrod*, 2012 U.S. Dist. LEXIS 118140, 2012 WL 3620024 (S.D. Fla. July 13, 2012), *citing Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1074-75 (11th Cir. 2003).

Even if the Defendants were so bound, the "gag clauses" in the Agreement are unconscionable and unenforceable, as to *anyone*. An unconscionable contract is one "'such as no

man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'" *Hume v. United States*, 132 U.S. 406, 411 (1889) (quoting *Earl of Chesterfield v. Janssen*, 28 Eng. Rep. 82, 100 (Ch. 1750)).[18] "In general, an unconscionable contract has been defined as one which is so grossly unreasonable as to be unenforceable because of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *King v Fox*, 7 NY 3d 181, 191 (2006); *see also McCollum v. Xcare.net, Inc.*, 212 F. Supp. 2d 1142, 1148 (N.D. Cal. 2002) (noting that "the California Supreme Court defined an unconscionable contract as one that considered in its context, is unduly oppressive"). Roca Labs complains that it put the Defendants on notice of the unconscionable contract, and on that basis claims that it compelled them to respect its outrageous (and unlawful) terms.

> The standard for injunctive relief with respect to restrictive covenants requires plaintiff to plead and prove: (1) the existence of an enforceable contract, including a statutorily-defined legitimate business reason supporting each restrictive covenant; (2) defendants' intentional breach of the restrictive covenants; and (3) that plaintiff has no adequate remedy other than injunctive relief.

*Milner Voice & Data, Inc. v. Tassy*, 377 F. Supp. 2d 1209, 1214 (S.D. Fla. 2005). Roca Labs cannot use the gag clauses as the basis for seeking injunctive relief, even as it applies to its customers who wrote the reviews on the Defendants' website, because Roca Labs has presented no legitimate business reason to support the gag clause.

> Legitimate business interest may include trade secrets; valuable confidential business or professional information that otherwise does not qualify as trade secrets; substantial relationships with specific prospective or existing customers; or customer goodwill

---

[18] Roca's contract is procedurally unenforceable as well as substantively so. Nowhere in their "Agreement" do they so much as discuss how much the "discounted" price is. This two-tiered pricing is an illusion. See *In re Zappos, Inc.*, 893 F. Supp. 2d 1058, 1064 (D. Nev. 2012).

associated with: an ongoing business by way of trade name, trademark, service mark, or 'trade dress,' or a specific geographic location, or a specific marketing or trade area.

*United Subcontractors, Inc. v. Godwin*, 2012 U.S. Dist. LEXIS 67061, 18, 2012 WL 1593173 (S.D. Fla. Feb. 3, 2012). Preventing customers from providing their opinion of Roca Labs' product is not a legitimate business interest, but instead is itself a deceptive trade practice. Any act "which unfairly takes advantage of the lack of knowledge, ability, experience or capacity of a consumer; or results in a gross disparity between the value received by a consumer and the price paid, to the consumer's detriment" constitutes an unconscionable trade practice. See *People v. Network Assocs.*, 758 N.Y.S.2d 466; 195 Misc. 2d 384 (N.Y. Sup. Ct. 2003). Deceiving customers about their ability to post factual reviews about the product online is itself unlawful in the Defendants' home district. *Id.* Of course, the end result of this unconscionable agreement is that the only information about this product that can be readily obtained is the fluff disseminated by the Plaintiff. Therefore, consumers buying this product are deprived of the ability to make an informed decision about something that could negatively affect their physical well-being. Parisi Decl. ¶15-19; Schaive Decl. ¶8, 18 And then, once they purchase it, based on information skewed by Roca's bullying of anyone who might share inconvenient truths, Roca refuses to give the consumers refunds if they are dissatisfied or even if they get ill from it. Schaive Decl. ¶¶6-7, 13, 16; Walsh Decl. ¶¶9, 14.

Suppressing consumer reviews is unconscionable and unenforceable – no matter what the product. New York law (the law that governs the Defendants' conduct) prohibits user agreements that restrict a customer's right to discuss the services. See *People v. Network Assocs.*, 758 N.Y.S.2d at 469. This is even more so when we consider the context. While Plaintiff calls its product a "food additive" (presumably to avoid FDA regulation), is the concoction a drug, a

food, or something else? Whatever it is, this is a product that has made some consumers sick. Walsh Decl. ¶¶6-8. Forcing them to remain silent, thus depriving other victims of the ability to make an informed decision, is unconscionable.

### 2.       FDUTPA

It is most ironic that Roca Labs seeks to invoke FDUTPA in this case, given its own practices. The purpose of FDUTPA is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.202(2); see also *Natural Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325 (11th Cir. 2008). A proper analogy here might involve a pot and a kettle.

FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *City First Mortg. Corp. v. Barton*, 988 So.2d 82, 86 (Fla. 4th DCA 2008) (quoting *Rollins*, 951 So.2d at 869, *rev. den.*, 962 So.2d 335 (Fla. 2007)). But, the *sine qua non* of a FDUTPA claim is that the plaintiff must be a consumer or a competitor wronged by the defendant's conduct. *See Kertesz v. Net Transactions, Ltd.*,635 F. Supp. 2d 1339, 1349 (S.D. Fla. 2009) (holding that the original version of FDUTPA applied only to "consumers." Legislative change of this term to "person" encompassed businesses, but did not broaden the degree of factual standing to bring a FDUTPA claim); *Dobbins v. Scriptfleet, Inc.*, 2012 U.S. Dist. LEXIS 23131, 2012 WL 601145 (M.D. Fla. Feb. 23, 2012) (same). FDUTPA requires a consumer transaction. *Monsanto Co. v. Campuzano*, 206 F. Supp. 2d 1239, 1251 (S.D. Fla. 2002).

Florida courts clarified that while the language of the FDUTPA was amended with the 2001 revision, and substituted the word "person" for "consumer," there still must be a consumer relationship between the parties, to provide for FDUTPA standing.

> [T]he legislative intent of the 2001 amendment was to clarify that 'remedies available to individuals are also available to businesses,' as opposed to creating a cause of action for non-consumers. Accordingly, the Court is not convinced that the 2001 amendment to FDUTPA creates a cause of action for [two parties], when there is no consumer relationship between them.

*Dobbins v. Scriptfleet, Inc.*, citing *Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1349 (S.D. Fla. 2009) (quoting Senate Staff Analysis and Economic Impact Statement, Florida Staff Analysis, SB 208, March 22, 2001, at p. 7). Roca is not a consumer of Defendants' services, and has not provided any evidence to suggest that it is. Roca Labs lacks FDUTPA standing.

Even if Roca had standing, it could not sustain a FDUTPA claim. Under the Act, an "unfair practice" is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *PNR, Inc. v. Beacon Prop. Mgmt.*, 842 So. 2d 773, 777 (Fla. 2003) (quoting *Samuels v. King Motor Co.*, 782 So.2d 489, 499 (Fla. 4th DCA 2001)). A "deceptive act" occurs when there is a "representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *PNR, Inc.*, 842 So.2d at 777 (quoting *Millennium Communs. & Fulfillment, Inc. v. Office of the AG, Dep't of Legal Affairs*, 761 So.2d 1256, 1263 (Fla. 3d DCA 2000)).

In this case, any affected consumer would be one who received an honest review from the Pissed Consumer website, and thus made an informed decision to purchase or not purchase the product. This is precisely the opposite of a FDUTPA claim.

Plaintiff says that a "practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious." ECF 5 at 12. Defendants agree. The suppression of consumer reviews, some of which warn consumers of negative health consequences, fits that description. Meanwhile, no reasonable person could

contort that definition into "allowing consumers to share their experiences to the benefit of other consumers."

Let us presume, *arguendo*, that Defendants are the evil conspiracy that Roca paints them to be; even reprehensible conduct is not actionable under FDUTPA absent loss or damage to a consumer. *Hetrick v. Ideal Image Dev. Corp.*, 758 F. Supp. 2d 1220, 1229-30 (M.D. Fla. 2010), citing *General Motors Acceptance Corp. v. Laesser*, 718 So. 2d 276, 277 (Fla. 4th DCA 1998). There is no identifiable loss or damage to a consumer here, and unless Roca is a consumer of the Defendants' services or products, it lacks standing to bring such a claim on behalf of other consumers who have no quarrel with the Defendants. Roca Labs calling this business "immoral," is not enough to give it standing under FDUTPA[19] (although it is ironic).

Furthermore, FDUTPA has no extraterritorial effect over these New York defendants. See *Carnival Corp. v. Rolls-Royce PLC*, 2009 U.S. Dist. LEXIS 107261 (S.D. Fla. Nov. 17, 2009) (holding "Plaintiffs' claim that Defendants violated FDUTPA must be based entirely on actions that occurred within Florida"); *Millennium Communications & Fulfillment, Inc. v. Office of Attorney General*, 761 So.2d 1256, 1262 (Fla. 3d DCA 2000) (affirming that the purpose of FDUTPA is to prohibit unfair and deceptive practices which transpire within Florida). Defendants are New York corporations, and consumers that post reviews on the Pissed Consumer website hail from

---

[19] Even if its practices are "unethical," which they are not, as a § 230 protected business, it still has immunity: Claims against another, far more maligned, consumer review business famously failed in Florida. "The business practices of Xcentric, as presented by the evidence before this Court, are appalling. Xcentric appears to pride itself on having created a forum for defamation. No checks are in place to ensure that only reliable information is publicized… However much as this Court may disapprove of business practices like those embraced by Xcentric, the law on this issue is clear. Xcentric enjoys complete immunity from any action brought against it as a result of the postings of third party users of its website." *Giordano v. Romeo*, 76 So. 3d 1100, 1102 (Fla. 3d DCA 2011).

all over the world.  The only thing that seems to have occurred in Florida is that Roca Labs itself

engaged in questionable business practices here.

As if we need more, Plaintiff has no evidence of damages.  "Proof of actual damages is

necessary to sustain a FDUTPA claim." *Dorestin v. Hollywood Imps., Inc.*, 45 So. 3d 819, 824 (Fla.

4th DCA 2010); *see Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984).  Instead,

Plaintiff makes generic, broad sweeping statements that it suffered damage.  ECF 6 at 14.  This

is insufficient.  Further, it is not "damages" if a potential customer thinks better of the

transaction after receiving truthful information about a product or a company's questionable

business practices.  That is the marketplace of ideas at work.

Despite Roca's claims of Defendants' morality lapses, the only thing that is unethical in

this case is that Roca Labs wishes to keep negative data out of the public eye – presumably so

that any health problems it causes will never be reported in the light of day.  Parisi Decl. ¶¶20-

22. The only thing that Roca Labs bases its claims of "immorality" upon is the fact that it does

not want the truth out there – that its product does not work for everyone, and it makes some

people sick.  Parisi Decl. ¶¶12-13, 24; Walsh Decl. ¶¶6-8.  Roca now wants this Honorable Court

to be its censor, ordering these shared experiences wiped from publication, before a trial on the

merits.  If this Court does so, then the next victim is on this Court's conscience.

### 3.    Defamation

Plaintiff only cites to tortious interference and FDUTPA as the basis for its request for a

prior restraint, presumably because a preliminary injunction is not available in defamation cases.

Nevertheless, they base the request on the foundation that the contents of the third party posts

published on <pissedconsumer.com> are false and defamatory.  ECF 2 at 33.  Even if they are,

the Pissed Consumer website is subject to immunity under 47 U.S.C. § 230, and cannot be held

liable for the content of statements made by third parties, not even for equitable remedies. See *Giordano v. Romeo*, 76 So. 3d 1100 (Fla. 3d DCA 2011).

    a.    **Section 230**

The Pissed Consumer website only hosts third-party produced content appearing on <pissedconsumer.com> and is neither the author nor the editor of the reviews. Podolsky Decl. ¶9. Because it is a service provider, and not a publisher, Defendants are immune from liability under 47 U.S.C. § 230 (the "Communications Decency Act" or "CDA"). "The purpose of the CDA is to establish 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'" *Alvi Armani Med., Inc. v. Hennessey*, 629 F. Supp. 2d 1302, 1306 (S.D. Fla. 2008), quoting *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321-1322 (11th Cir. 2006). In order to qualify as a service provider under Section 230, (1) the defendant must be a provider or user of an interactive computer service; (2) the cause of action must treat the defendant as a publisher or speaker of information; and (3) the subject information must be provided by another information content provider. *Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*, 2008 U.S. Dist. LEXIS 11632, 26, 2008 WL 450095 (M.D. Fla. Feb. 15, 2008). While Plaintiff wants to hold Defendants liable as the "publisher" of the Tweets that are generated from reviews posted on <pissedconsumer.com>, the Tweets are automatically broadcast third party statements, and are not written by the Defense. Podolsky Decl. ¶11. Accordingly, even this creative argument fails as a matter of law.

"[L]awsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions-such as deciding whether to publish, withdraw, postpone or alter content-are barred by the CDA." *Hopkins v. Doe*, 2011 U.S. Dist. LEXIS 136038, 4, 2011 WL 5921446 (N.D. Ga. Nov. 28, 2011), citing *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir.

1997). Reviews posted on Pissed Consumer are automatically disseminated on Twitter, but that does not make Defendants "publishers" under the CDA, but instead falls within the purview of immunity. Defendants' users authored the statements. Dissemination of them does not trigger a § 230 exception. Disseminating the content to the public is not enough. "A 'provider' of an interactive computer service includes websites that host third-party generated content." *Regions Bank v. Kaplan*, 2013 U.S. Dist. LEXIS 40805, 47, 2013 WL 1193831 (M.D. Fla. Mar. 22, 2013); citing *Doe v. Friendfinder Network, Inc.*, 540 F. Supp. 2d 288, 293 (D.N.H. 2008).

Furthermore, Plaintiff is attempting to confer liability on Defendants as "co-authoring" the posts on the website because there is a set form that third-party users must use to submit reviews. However, providing a form for third parties to submit information to the website is also not sufficient to give rise to liability.

> The website's content submission form simply instructs users to '[t]ell us what's happening. Remember to tell us who, what, when, where, why.' The form additionally provides labels by which to categorize the submission. These tools, neutral (both in orientation and design) as to what third parties submit, do not constitute a material contribution to any defamatory speech that is uploaded.[20]

The submission form in this case is also neutral, and does not amount to "material contribution" such that could give rise to liability as the publisher of the third-party statements.[21]

Since Section 230 bars its claims against the Defendants, Plaintiff cannot show by clear and convincing evidence that it has a strong likelihood of success on the merits to warrant granting an injunction on any claims in this case at all.

---

[20] *Jones v. Dirty World Entm't Recordings, et al.*, 755 F.3d 398, 416 (6th Cir. 2014).

[21] The Plaintiff tries to rely upon the Ninth Circuit's decision in *Fair Hous. Council v. Roommates.com, LLC* for this argument, but in *Roommates*, the users had no choice but to render unlawful statements by using a drop down menu. 521 F.3d 1157, 1166 (9th Cir. 2008). This is why Roommates.com was held liable, and this is a most narrow ruling that does not constitute the wide gap in section 230 claimed by the Plaintiff. *Id.*

## C.     The Harm of an Injunction Outweighs its Benefit

The Plaintiff must prove that the alleged threatened injury to it would not disserve the public interest.  Silencing consumers, who share presumptively First Amendment protected opinions, because Roca Labs wants to sell more unverified product to make more people sick, harms the public interest because of the censorship inherent in the relief.  Furthermore, there are likely hundreds of other individuals who may be bilked just as prior customers were, by a product that not only does not guarantee weight loss, but may actually cause substantial medical harm.  Parisi Decl. ¶11-13. The public has a right to know about side effects and health hazards, and the Pissed Consumer website. provides a service that allows individuals to provide their experiences and opinions, both positive and negative, in order to create a better-informed public.  "Consumer reporting plays a vital role in ensuring that a company's desire to maximize profit, if abused, will not go unnoticed; and online fora for the exchange of those ideas play an increasingly large role in informing consumers about the choices that make sense for them." *Neumont Univ., LLC v. Little Bizzy, LLC*, 2014 U.S. Dist. LEXIS 69168 (D. Nev. May 20, 2014).

If the Court issues a prior restraint in this case, it will silence consumer warnings about a dangerous product.  Further, it would violate core First Amendment principles, and impinge on the public right to receive this information.  Plaintiff does not attempt to balance the equities to determine the relative harms.  Instead, Plaintiff simply states "Defendants will suffer little or no harm by ceasing to interfere with our contractual relationships and removing the interfering postings about Roca."  ECF 5 at 16.  Meanwhile, Plaintiff says nothing of the damage to free expression, nor of the damage to the public's right to know.

The standard is not whether suppressing free speech rights of Defendant would harm the Defendant (which it would), but instead, it is a balancing test of whether the harm to the

defendant and the public interest, if the injunction were granted, would outweigh the harm to the plaintiff if the injunction were not granted. Consumer protection and review sites are of the utmost constitutional importance. See, e.g., *Neumont Univ., LLC v. Little Bizzy*, LLC, 2014 U.S. Dist. LEXIS 69168; *Carver v. Bonds*, 135 Cal. App. 4th 328, 343 (2005). Postings intended to aid consumers in choosing among service providers, are "directly connected to an issue of public concern." See *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 897 (2004). Plaintiff cannot articulate any compelling interest sufficient to outweigh the harm to Defendant's rights of free speech, nor the public's right to know.

**D.     Plaintiff Shows No Irreparable Harm**

Plaintiff simply, and generically states that "[i]f the injunction is not granted, Roca will face a substantial threat of irreparable injury." ECF 5 at 15. However, it offers up no evidence in support of this request for highly extraordinary relief.[22]

**1.     Delay is fatal to Plaintiff's claim of irreparable harm**

Plaintiff claims irreparable harm, yet waited more than two years to bring a claim. "Delay, or too much of it, indicates that a suit or request for injunctive relief is more about gaining an advantage (either a commercial or litigation advantage) than protecting a party from irreparable harm." *Pippin v. Playboy Entm't Group, Inc.*, 2003 U.S. Dist. LEXIS 25415, 5-6, 16 Fla. L. Weekly Fed. D 506 (M.D. Fla. July 1, 2003) (internal citations omitted). *See Love v. Blue Cross & Blue Shield of Ariz., Inc.*, 2010 U.S. Dist. LEXIS 39988, 38-39, 2010 WL 1249120 (S.D. Fla. Mar. 25, 2010) (delay is sufficient to deny a request for preliminary injunction), *Citibank, N.A. v.*

---

[22] Defendants agree that the more dissemination of the truth, the less Roca will likely sell. But, this is not a legal harm. It is as if a mugger were to sue for an injunction preventing someone from warning passer-by that the criminal is waiting in a dark alley, and that they should take an alternate route.

*Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) (finding that a ten week delay was sufficient to negate a plaintiff's claim of irreparable harm); *Badillo v. Playboy Entm't Group, Inc.*, 2004 U.S. Dist. LEXIS 8236, 8, 17 Fla. L. Weekly Fed. D 529 (M.D. Fla. Apr. 16, 2004) (finding that "a nine month delay is fatal in this case to Plaintiffs claims of irreparable harm").

2.      **Plaintiff Has An Adequate Remedy at Law**

The second requirement of demonstrating irreparable harm is that there must exist no adequate remedy at law.  The burden of irreparable injury cannot be met by mere economic injury.  "An injury is irreparable only if it cannot be undone through monetary remedies." *Taylor v. Florida State Fair Auth.*, 1995 U.S. Dist. LEXIS 17786, 17-18 (M.D. Fla. Aug. 15, 1995) *citing Sampson v. Murray*, 415 U.S. 61, 90, 94 S. Ct. 937, 953 (1974).  Courts that have analyzed this issue have found that defamation is a claim arising under law, not equity, and for which claimants are entitled only to legal relief (i.e., monetary damages). *See In re King World Productions*, 898 F.2d 56, 60 (6th Cir. 1990) (holding that fact that a physician may be embarrassed by publication of video allegedly showing him engaging in medical malpractice did not justify temporary restraining order).  Moreover, economic loss, even if difficult to quantify, is no basis for the entry of a preliminary injunction restricting speech." *Bollea v. Gawker Media, LLC*, 2012 U.S. Dist. LEXIS 162711, 13, 105 U.S.P.Q.2D (BNA) 1496, 40 Media L. Rep. 2601 (M.D. Fla. Nov. 13, 2012).  Finally, Roca seems to have no trouble calculating its damages.  Roca says that every person who views the reviews is a *certain* customer, and thus Roca loses one sale.  If their claims are true, then the calculation is simple – count the views and multiply by the purchase price.[23]

//

---

[23] Defendants do not agree that this claim has any basis in fact or logic, but if it was good enough for the Plaintiffs to demand payment, they should be estopped from arguing that they now can't possibly do the math.

### E. Plaintiff Fails to Pledge Security

Federal Rule of Civil Procedure 65(c) provides that a district court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Fed. R. Civ. P. 65(c). A preliminary injunction is improper where a plaintiff "did not provide any such security, and the district court was unable to discern what amount was proper under Rule 65(c) because [the plaintiff] failed to adequately set forth facts on which the Court [could] make a reasoned determination as to the amount of security which must be posted." *Jones v. Brown*, 518 F. App'x 643, 644 (11th Cir. 2013). That is where we are now.

Additionally, in the alternative, as this Motion was initially filed in state court, Florida Rule of Civil Procedure 1.610 requires a movant to give bond in an amount the court deems proper before issuing a preliminary injunction. Fla. R. Civ. P. 1.610(b). "The purpose of an injunction bond is to provide sufficient funds to over the adverse party's costs and damages in the event the injunction is later deemed to have been improvidently entered." *Bieda v. Bieda*, 42 So.3d 859, 862 (Fla.3d DCA 2010). A trial court may not enter a preliminary injunction without complying with the bond requirement. Roca Labs' Motion includes no discussion of the bond requirement, as required under the Florida Rules of Civil Procedure.

In the event that this Honorable Court decides that it wishes to be the first court to ever sustain a prior restraint under the claims brought before it, the Court should note that Roca has brought at least one claim, FDUTPA, where the Defendant should have an opportunity to seek prevailing party attorneys' fees. Given the shotgun pleading in this case, it is clear that this plaintiff will seek to multiply these proceedings out of any proportion that might be reasonable under the law. Accordingly, it is foreseeable that the prevailing party fees in this case will be

above $200,000. Therefore, any bond should be in excess of $200,000 for this alone, unless the Court wishes to make it clear that this case should end early, given its frivolous nature. Furthermore, if the statements are taken offline, the Defendant will lose months and months of viewers, and the suppression of such content will likely lead to at least a handful of victims with health problems from the concoction – which could have been avoided had the truth remained published. Therefore, Roca Labs should be compelled to place at least $2.5 million in a "potential victims fund" bond.

## III. CONCLUSION

Based on the foregoing, this Court must not issue an injunction. Plaintiff has failed to prove any of the elements necessary to obtain a preliminary injunction, as they have not demonstrated likelihood of success on the merits, they have not demonstrated irreparable harm, and they have not adequately balanced the relative harms to Defendants and the public, to demonstrate that a preliminary injunction is warranted. The public's interest in free speech and debate would be seriously, and negatively, impacted by an injunction against Defendant in this case. The injunction Roca Labs wants would constitute an impermissible restraint on speech, one that the Florida courts, and courts around the country, have roundly rejected.

Respectfully Submitted,

*Marc J. Randazza*

_____

Marc J. Randazza, Esq.
Florida Bar No. 625566
RANDAZZA LEGAL GROUP
3625 S. Town Center Drive
Las Vegas, Nevada 89135
Tele: 702-420-2001
Fax: 305-437-7662
Email: ecf@randazza.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 18, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that a true and correct copy of the foregoing document is being served upon: Paul Berger, Esq. and Nicole Freedlander, Esq., counsel for Plaintiff, via transmission of Notices of Electronic Filing generated by CM/ECF and courtesy copies have been emailed to the following attorneys.

Paul Berger
P.O. Box 7898
Delray Beach, Florida 33482-7898
legal5@rocalabs.com

Nicole Freedlander
P.O. Box 402653
Miami Beach, Florida 33140
nicole@freedlanderlaw.com

Respectfully Submitted,

*Marc J. Randazza*
_____
Marc J. Randazza, Esq.
Florida Bar No. 625566
RANDAZZA LEGAL GROUP
3625 S. Town Center Drive
Las Vegas, Nevada 89135
Tele:  702-420-2001
Fax: 305-437-7662
Email: ecf@randazza.com

RANDAZZA | LEGAL GROUP

Exhibit 10

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ROCA LABS, INC.,                                    Case No:  8:14-cv-2096-T-33EAJ

        Plaintiff,

    v.

CONSUMER OPINION CORP. and
OPINION CORP.,

        Defendants.

_____/

**MOTION FOR AN EMERGENCY TEMPORARY RESTRAINING ORDER**
**AND FOR AN ORDER TO SHOW CAUSE AS TO WHY ROCA LABS SHOULD**
**NOT BE SANCTIONED FOR WITNESS INTIMIDATION**

        DEFENDANTS, OPINION CORP & CONSUMER OPINION CORP., hereby seek a

temporary restraining order enjoining the Plaintiff from taking acts to intimidate and harass

defense witnesses in this case, and seek sanctions against Plaintiff for already doing so.

**I.       Introduction**

        Roca Labs (hereinafter, "Roca") sells a product, which it describes as a "nutraceutical."

This product has questionable results, and has resulted in at least 78 complaints to the Better

Business Bureau, and 34 complaints on the PisssedConsumer.com website.  Not only are the

results questionable, but Roca's product threatens the health and welfare of at least a portion (if

not all) of its users.  ECF 13-5.

RANDAZZA | LEGAL GROUP

To try and suppress consumers from sharing their experiences, including experiences that include negative health consequences, (ECF 13-5 at ¶7) Roca filed the instant action, hoping to put an end to any consumer sharing negative information about their product.  ECF 2 at 46.

In large part, the fulcrum upon which Roca's lever rests is its "Agreement."  ECF 2 at 46.  No matter how negative of an experience consumers have with the Roca product, the Agreement purports to bar them from making any negative statements about Roca's product or its business practices.  ECF 2 at 53-54.  Of course, this Agreement is unconscionable and unenforceable. See ECF 13 at 12.  But, that does not stop Roca from trying to scare consumers nationwide with threats of litigation, in the hope that the only information that will make it to the marketplace is information that Roca approves.

The Defense managed to contact a handful of Roca's prior customers to serve as fact witnesses in this case.  Most whom the Defense reached out to declined to respond, presumably due to the fact that Roca had already threatened them, or our of fear that Roca would retaliate against them for testifying.  Those concerns have proven to be well founded, as Roca has now threatened at least one of the witnesses in this case, Jennifer Schaive.  ECF 13-3.  Attached hereto as Exhibit 1 is the e-mail from Roca Labs to Ms. Schaive, threatening suit against her.  Attached hereto as Exhibit 2 is the declaration of Marc Randazza, Esq. attesting to the authenticity of the e-mail from Ms. Schaive.  Although Roca will likely claim that it simply seeks to enforce its "Agreement," the timing of its aggression against Ms. Schaive makes its intentions transparent – Roca wants to intimidate Ms. Schaive.  Further, its goals are likely broader than that. Roca Labs knows that if it follows through on its threats to file suit against Ms. Schaive, other witnesses will be far more reluctant to come forward.

In order to prevent Roca Labs from unlawfully interfering with witness statements in this lawsuit, the Defense seeks an immediate restraining order preventing Roca from threatening or otherwise harassing Ms. Schaive,[1] Ms. Anderson,[2] and Ms. Walsh,[3] by filing suit against witnesses in this case. Furthermore, Roca should be compelled to immediately disclose any and all communications it has engaged in with potential witnesses in this case, and should be enjoined from engaging in further threatening or harassing communications with any consumers who have negatively reviewed the product, at least until the enforceability of its Agreement has been adjudicated. That should be achieved at the October 8 hearing, and thus the relief sought should only impact Roca for 17 days.

## II.   Legal Analysis

## A.   Standard for a TRO

"A temporary restraining order protects against irreparable harm and preserves the status quo until a meaningful decision on the merits can be made." *Schiavo ex rel. Schindler v. Schiavo*, 358 F. Supp. 2d 1161, 1163 (M.D. Fla. 2005). In order to obtain a temporary restraining order, Plaintiff must demonstrate (1) a substantial likelihood that Plaintiff will eventually prevail on the merits; (2) a showing of irreparable injury to the Plaintiff unless the injunction issues; (3) proof that the threatened injury to Plaintiff outweighs whatever damage the proposed injunction may cause Defendant; and (4) a showing that the injunction, if issued, would not be adverse to the public interest. *Johnson v. U.S. Dept. of Agriculture*, 734 F.2d 774, 781 (11th Cir. 1984).

---

[1] ECF 13-3
[2] ECF 13-6
[3] ECF 13-5

No particular quantum of proof is required as to each of the four criteria. *Louis v. Meissner*, 530 F. Supp. 924, 925 (S.D. Fla. 1981) the trial court should use a balancing-type approach. *State of Texas v. Seatrain International, S. A.*, 518 F.2d 175, 180 (5th Cir. 1975) ("none of the four prerequisites has a fixed quantitative value. Rather, a sliding scale is utilized, which takes into account the intensity of each in a given calculus."). Even if the movant has little chance of success on the merits, "the importance of this requirement varies with the relative balance of threatened hardships facing each of the parties." *Louis v. Meissner*, 530 F. Supp. 924, 925 (S.D. Fla. 1981) (citing *Canal Authority v. Callaway* at 576). "Moreover, a showing that plaintiffs will be more severely prejudiced by a denial of the temporary restraining order or injunction then will defendants should it be granted, lessens the standard likelihood of success that must be met." *Id.*

**B.      The Factors**

**1.      There is a Substantial Likelihood that the Plaintiff will Prevail on the Merits of the Gag Clause's Enforceability**

The merits in this context are limited. The only merits that the Court need consider for the purposes of this Motion are the merits of the argument that the Roca "Gag Clause" is unenforceable. If it is not, then the threats against these witnesses (and most of the claims against the Defendants) will immediately evaporate.

The Agreement that Roca threatens these witnesses with is unconscionable. An unconscionable contract is one "'such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'" *Hume v. United States*, 132 U.S. 406, 411 (1889) (quoting *Earl of Chesterfield v. Janssen*, 28 Eng. Rep. 82, 100

(Ch. 1750)).[4]  "In general, an unconscionable contract has been defined as one which is so grossly unreasonable as to be unenforceable because of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *King v Fox*, 7 NY 3d 181, 191 (2006); *see also McCollum v. Xcare.net, Inc.*, 212 F. Supp. 2d 1142, 1148 (N.D. Cal. 2002) (noting that "the California Supreme Court defined an unconscionable contract as one that considered in its context, is unduly oppressive").  Roca Labs complains that it put the Defendants on notice of the unconscionable contract, and on that basis claims that it compelled them to respect its outrageous (and unlawful) terms.  Roca Labs has presented no legitimate business reason to support the gag clause.

> Legitimate business interest may include trade secrets; valuable confidential business or professional information that otherwise does not qualify as trade secrets; substantial relationships with specific prospective or existing customers; or customer goodwill associated with: an ongoing business by way of trade name, trademark, service mark, or 'trade dress,' or a specific geographic location, or a specific marketing or trade area.

*United Subcontractors, Inc. v. Godwin*, 2012 U.S. Dist. LEXIS 67061, 18, 2012 WL 1593173 (S.D. Fla. Feb. 3, 2012).  Preventing customers from providing their opinion of Roca Labs' product is not a legitimate business interest, but instead is itself a deceptive trade practice.  Any act "which unfairly takes advantage of the lack of knowledge, ability, experience or capacity of a consumer; or results in a gross disparity between the value received by a consumer and the price paid, to the consumer's detriment" constitutes an unconscionable trade practice.  See *People v. Network Assocs.*, 758 N.Y.S.2d 466; 195 Misc. 2d 384 (N.Y. Sup. Ct. 2003).  Deceiving customers about their ability to post factual reviews about the product online is itself unlawful in the Defendants'

---

[4] Roca's contract is procedurally unenforceable as well as substantively so.  Nowhere in their "Agreement" do they so much as discuss how much the "discounted" price is.  This two-tiered pricing is an illusion.  See *In re Zappos, Inc.*, 893 F. Supp. 2d 1058, 1064 (D. Nev. 2012).

home district.  *Id.*  Of course, the end result of this unconscionable agreement is that the only information about this product that can be readily obtained is the fluff disseminated by the Plaintiff.  Therefore, consumers buying this product are deprived of the ability to make an informed decision about something that could negatively affect their physical well-being.  ECF 13-1 at ¶15-19; ECF 13-3 at ¶¶8, 18.  And then, once they purchase it, based on information skewed by Roca's bullying of anyone who might share inconvenient truths, Roca refuses to give the consumers refunds if they are dissatisfied or even if they get ill from it.  ECF 13-3 at ¶¶6-7, 13, 16; ECF 13-5 at ¶¶9, 14.

Suppressing consumer reviews is unconscionable and unenforceable – no matter what the product. See *People v. Network Assocs.*, 758 N.Y.S.2d at 469.  This is even more so when we consider the context.  While Plaintiff calls its product a "food additive" (presumably to avoid FDA regulation), is the concoction a drug, a food, or something else?  Whatever it is, this is a product that has made some consumers sick.  ECF 13-5 at ¶¶6-8.  Forcing them to remain silent, thus depriving other victims of the ability to make an informed decision, is unconscionable.

Accordingly, the defendants have a substantial likelihood of success on the merits of the issue that the Roca "Agreement" is unenforceable.

## 2.    There Will Be Irreparable Injury Unless the Injunction Issues

This case is in a precarious state.  Roca has tried to intimidate the Better Business Bureau, as well as any consumer who might dare to share his constitutionally-protected opinions of Roca's product.  In this case, much of the defense may turn on testimony by former Roca Labs customers.  If this Court tolerates Roca's intimidation tactics, it will place more of Roca's consumers in fear that they too will be the victims of retaliatory legal action if they testify or discuss their negative experiences with Roca's product in any forum.  Once so frightened, it will

likely be difficult to pry them from their defensive postures.  This Court must show these people that they need not fear that the Court will turn a blind eye to violations of 18 U.S.C. § 1512.

　　　3.　　**The Threatened Injury Outweighs Whatever Damage the Proposed Injunction may cause to Roca**

　　　The injunctive relief sought is limited.  The defendants presume that at the October 8, 2014 hearing, the unenforceability of the Agreement's "gag clause" will be resolved. Accordingly, the TRO can be as limited as a 17-day delay, if the court resolves the enforceability issue at the October 8 hearing.  If the court does not, the defendants will address extending the TRO into a preliminary injunction at that time.  "Fundamentally, temporary restraining orders are designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction."  *Wells v. Daugherty Sys.*, 2014 U.S. Dist. LEXIS 127762 (N.D. Ga. Sept. 12, 2014), see M.D. Fla. Local Rule 4.05 (temporary restraining orders will be entered in emergency cases to maintain the status quo).

　　　4.　　**The Injunction Would Serve the Public Interest**

　　　The public interest is best served by the federal witness intimidation statute being upheld.  In the absence of our mutual respect for Section 1512, defendants will be subject to the whims and threats of abusive plaintiffs, who may wish to silence witnesses for the other side. There is no possible way that a 17-day delay in any witness intimidation could adversely affect the public interest.

　　　5.　　**There should be no need for a bond**

　　　There can be no damages to the Plaintiff in the issuance of a 17-day injunction, forcing the Plaintiff to simply stop committing felonies.  Nevertheless, the Defendants offer a bond of $10 in the interest of formality.

C.      **Witness Intimidation**

1.       **18 U.S.C. § 1512**

Witness intimidation is a crime.  See 18 U.S.C. §1512(b)(1) (Knowingly using intimidation or threats, to "influence, delay, or prevent the testimony of any person in an official proceeding" or attempting to do so, constitutes witness intimidation).  See 18 U.S.C. §1512(d)(1) (Witness tampering includes any action that "intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from attending or testifying in an official proceeding" or attempts to do so).

2.       **Roca's Acts Are Prohibited by 18 U.S.C. § 1512**

While the statute is normally considered in the context of violent threats, "[t]he section was written broadly to encompass non-coercive efforts to tamper with a witness." *United States v. Amato*, 86 F. App'x 447, 450 (2d Cir. 2004) (finding evidence sufficient to support conviction for witness tampering where the defendant, "[c]oncerned [the witness] would testify against him… directed intermediaries… to reach out to [the witness] and deliver a message."  A party offends Section 1512 if it is "motivated by an improper purpose." *United States v. Thompson*, 76 F.3d 442, 452 (2d Cir. 1996).  It is an improper purpose to cause a witness to withhold relevant facts about a defendant's wrongful acts.  See *United States v. Price*, 443 F. App'x 576, 582 (2d Cir. 2011).  Even when there is an absence of evident of intent behind the message, or an absence of evidence concerning the effect thereof, 18 U.S.C. § 1512 acts to prohibit a party from engaging in acts that may negatively influence testimony.  See *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 594-595 (S.D.N.Y.2014).

In this case, there can be no other conclusion, except that Roca's actions violate Section 1512.  The timing of its imminent threats against Ms. Schaive make it clear that the intent is to

intimidate her and any other parties who might be inclined to serve as witnesses in this case. This seems even more clear given that Roca seems to have selectively targeted Ms. Schiave, but did not send similar updated threats to other complaining parties, who have not appeared as witnesses in this case.  See *Randazza decl.*   Even if Roca's behavior is a coincidence, there can be no question that it has had the *effect* of intimidating Ms. Schaive.  Further, it is clear that once Roca files its suit against Schaive, it will use that information to try and intimidate other witnesses.  One need look no further than the email sent to Ms. Schiave today, in which Roca brags about having already sued one unfortunate victim.  See Exhibit A.  The next round of letters will likely cite that Roca sued *two or more* witnesses.   Once this happens, this Court will be deprived of a key source of facts that will allow it to evaluate this case.

**C.      Remedies Sought**

The Defense seeks an immediate restraining order preventing Roca from threatening or otherwise harassing Ms. Schaive, Ms. Anderson, or Ms. Walsh, by filing suit against them or threatening to do so until at least October 8, 2014.  The Order should also prohibit taking these actions against any other witnesses in this case until at least October 8, 2014.

Furthermore, Roca should be compelled to immediately disclose any and all communications it has engaged in with witnesses or potential witnesses in this case, and should be enjoined from engaging in further threatening or harassing communications with any consumers who have negatively reviewed the product, at least until the enforceability of its Agreement has been adjudicated on or after October 8, 2014.

Furthermore, should Roca Labs file suit or otherwise threaten suit against any witness in this case, prior to the Court's determination of Roca's Motion for Preliminary Injunction, sanctions ought to be imposed against Roca.

**D.      Immediate Sanctions Are Appropriate**

"A court may impose sanctions for litigation misconduct under its inherent power." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009). Furthermore, "[t]he key to unlocking a court's inherent power is a finding of bad faith… A party demonstrates bad faith by, inter alia, delaying or disrupting the litigation or hampering enforcement of a court order." *Id.*, citing *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). By intimidating witnesses in this case, Roca Labs is disrupting the litigation, and is threatening the very sanctity of this Court's procedure.

Roca knew precisely what it was doing, when it did it. This coercive and unlawful conduct cannot be given this Honorable Court's imprimatur by the administration of a soft touch. If a party engages in felonious activity, with the intent (or the foreseeable effect), of intimidating witnesses and thus placing an unwelcome finger on the scales of justice, that party should not be permitted to escape from such conduct with a mere admonishment that it should not commit any more felonies. At the very least, Roca should be compelled to pay the costs and fees incurred in the bringing of this Motion and any subsequent fees and costs incurred in prosecuting the Motion.

**III.     CONCLUSION**

Based on the foregoing, Defendant respectfully requests this Court grant the Motion for Emergency Temporary Restraining Order against Roca Labs, preventing them from continuing

to intimidate and threaten witnesses and potential witnesses in this case, at least until the Motion

for Preliminary Injunction has been adjudicated; and, Roca should be sanctioned for its conduct

leading to the necessity of filing this motion.

Respectfully Submitted,

*Marc J. Randazza*

_____
Marc J. Randazza, Esq.
Florida Bar No. 625566
RANDAZZA LEGAL GROUP
3625 S. Town Center Drive
Las Vegas, Nevada 89135
Tele:  702-420-2001
Fax: 305-437-7662
Email: ecf@randazza.com

CASE NO.: 8:14-cv-2096-T-33EAJ

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 22, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will transmit the motion to all counsel of record. I also certify that a true and correct copy of the foregoing document is being served upon: Paul Berger, Esq. and Nicole Freedlander, Esq., via email.

Paul Berger
P.O. Box 7898
Delray Beach, Florida 33482-7898
legal5@rocalabs.com

Nicole Freedlander
P.O. Box 402653
Miami Beach, Florida 33140
nicole@freedlanderlaw.com

/s/ Theresa M. Haar_____
An employee / agent of
RANDAZZA LEGAL GROUP

RANDAZZA | LEGAL GROUP

Exhibit 11



# Roca Labs Weight Loss Scam



Is Food Babe a Fraud?

Roca Labs Sues Customers, Seemingly Violating Their Own Terms and Conditions



🕐 September 22, 2014        ✎ Consumer Protection

Roca Labs sells a weight loss product that may be viewed as a scam by some consumers. They call it "Gastric Bypass No Surgery," and it is essentially a product that you ingest, which the company claims will fill your stomach and limit the space available for food:

> Gastric Bypass Alternative® Procedure can achieve similar results to bariatric surgery without the surgery: a dose of the Roca Labs Mixture consumed when you wake up, immediately limits your stomach space down to as little as 20%: you are in control of the daily dose. The gastric bypass effect continues to limit stomach space for up to two days so you are "forced" to eat very little.

Eating only 1,200 to 1,500 calories a day becomes easy. You start losing weight
from day one almost as if you underwent a gastric bypass surgery. Results
may vary. Description refers to a successful regime. See scientific studies.

In addition to supposedly limiting the space available in your stomach, Roca Labs claims it reduces cravings for food with its "Anti-Cravings." Over time, the user's stomach allegedly shrinks.



What is in this nonsense? This is the nutrition label for the "Basic" formula. The first ingredient is beta glucan. Next is guar gum, which is primarily used as a laxative or a thickener in foods. Then comes xanthan gum,  which is also used as a thickener in foods. Basically, you will be eating a jar of goop that might expand and make you feel full-ish. All for the low, low price of $480 or (probably) more. This is not the only snake oil of its kind out there. Google searches will find you tons of these products that supposedly expand in your stomach.

Whether these products are a reliable method for weight loss remains to be seen. Yes, I'm sure there are those who claim success. If you eat fewer calories, you will lose weight, so in that regard, the products might be effective. But I am sure there are many people who have not had success, and have wasted a lot of money trying. (They could drink a bunch of water, virtually for free, and probably have better results!)

**Negative Reviews**

But because the product obviously works so well [/sarcasm], Roca Labs is committed to having **no negative comments** about it on the internet.

Roca Labs attempts to silence its unhappy users **before** they even buy the products. The company says that in exchange for a "significant discount" (about $800) off the normal price of $1,580 for the weight loss goop, customers agree to not speak, publish, print, blog or write negatively about the company or products.

(5) You agree that regardless of your outcome, you will **not** disparage RLN and/or any of

our employees or services. This prohibition you will make in this because to be published, print, tweet, review, blog or write negatively about RLN, or our products or employees in any way. You further agree that in an effort to prevent the publishing of libelous or slanderous content in any form, your acceptance of this sales contract prohibits you from taking any action that negatively impacts RLN, its reputation, products, services, management or employees.

Pissed Consumer is a website that is essentially a forum for dissatisfied consumers to air their complaints about thousands of products. As of the writing of this article, PissedConsumer.com shows 39 reviews of the Roca Labs products, including both positive and negative reviews. The complaints include the following comments:

- It is expensive, tastes horrible and the doesn't do anything.
- They made it absolutely impossible for anyone to be reached who could help cancel the order.
- This product sucks. It's expensive, horrible to drink & doesn't do nothing. Let alone the horrible customer care you get from the staff.
- The product made me very sick
- RUN AWAY FROM ROCA LABS AND BE AWARE OF THE POSSIBLE MEDICAL PROBLEMS THAT MAY OCCUR WITH CONSUMPTION OF THEIR FORMULA. The harsh formula doesn't digest and may cause bowel obstruction, which can result in death or a permanent colostomy!!!!!
- Product made me ill enough to seek medical attention after following all directions to the letter.
- I believe that this is a scam. I was not given all the information I needed. I was not told that this product would cause vomiting, which is what I do every time I try to use it.

- Your product does not work for me. Spent all that money for nothing.
- I received the product last Sunday and started it. Within hours, I was vomiting, had bad stomach cramps, nausea, light-headiness and my body was shaky.

You can see why it is so important for Roca Labs to shut up unhappy users of their products. The negative reviews sound pretty bad. The Better Business Bureau has a slew of complaints on hand as well:

## Customer Complaints Summary

Read complaint details

### 73 complaints closed with BBB in last 3 years | 38 closed in last 12 months

| Complaint Type | Total Closed Complaints |
| --- | --- |
| Advertising / Sales Issues | 5 |
| Billing / Collection Issues | 19 |
| Delivery Issues | 4 |
| Guarantee / Warranty Issues | 1 |
| Problems with Product / Service | 44 |
| **Total Closed Complaints** | 73 |

### Additional Complaint Information

It has come to BBB's attention that the company will demand the removal of any complaint, web post or other publication that constitutes a breach of the terms and conditions agreed to by the consumer at the time of purchase, regardless of whether or not the consumer complaint is resolved.

## Lawsuit Against Pissed Consumer

Since Roca Labs clearly hasn't been successful in gagging their customers, they have decided to sue third parties. Roca Labs has sued Consumer Opinion Corp. and Opinion Corp. (dba PissedConsumer.com) over the negative reviews of Gastric Bypass Alternative. The goal is to shut up unhappy users of Roca's product (and stifle their First Amendment rights), but the lawsuit is not filed that way. It was not filed against those who spoke out, rather it was filed against those who created a forum for people to air their complaints.

The Pissed Consumer website is exactly what it sounds like…. a forum for dissatisfied consumers to air their complaints about all sorts of products and services. Roca Labs claims that Pissed Consumer is a "co-author" of reviews since the website has a particular format that complaints must follow, and that it is an "advertising platform" since consumers can pay to make to give their reviews "premium" placement on the site.

Roca Labs claims that PissedConsumer.com allows users to post defamatory, inaccurate, abusive, and offensive material about Roca on its website, and that the site will not remove any of the postings.

Under the guise of unfair and deceptive trade practices, Roca complains that the defendants are making money from advertising and reputation management services, that is has not helped resolve any of the complaints, that it allows untrue things to be published about Roca, and that it has hurt Roca's profits and reputation. Roca claims its damages are in excess of $1 million.

Roca also alleges tortious interference with the contracts between Roca and its customers. As discussed above, purchasers of Roca's products agree that they will never write negatively about the products, or they will be charged "full price" for them. Roca wants Pissed Consumer to reveal the identities of the people who wrote the negative reviews so they can charge them the additional money. Pissed Consumer refuses to identify

And then there is tortious interference with a prospective economic relationship…. in which Roca claims that potential purchasers of its goop decided not to buy because they saw the negative reviews.

And of course there is defamation, in which Roca Labs claims that the complaints posted by consumers were false and that Pissed Consumer knew they were false, etc. Included are statements on the site, as well as tweets published on Twitter, based on the consumer complaints posted on the site.

## Motion For Temporary Injunction

Roca Labs went on to file a motion for a temporary injunction, asking the court to force PissedConsumer.com to remove postings about Roca Labs from its website.  And last week, Marc Randazza responded on behalf of the defendants:

> Roca Labs ("Roca") is a company that really wants to avoid criticism. However, instead of doing so by delivering a quality product and quality service, it seeks to suppress all criticism through underhanded (if not illegal) means. No matter what kind of hyperbole or unsupported assertions the Plaintiff tries to throw into the docket, that is why we are before this Honorable Court, nothing more, nothing less.

In responding, Randazza included a declaration by Dr. Thomas Parisi, who says of the Roca Labs product:

9. Roca is claiming that its dietary supplement, which consists primarily of industrial food thickening agents, expands and increases the viscosity of water. In other words, it operates under the principal that ingesting Roca's product will expand cause it to expand in the user's stomach, leaving her with no room or desire for anything else, thus prompting weight loss which renders gastric bypass surgery unnecessary.

10. To a layperson, Roca's weight-loss claims likely make logical sense, given that the Product fills the stomach up to 80% capacity with high-fiber, indigestible materials.

11. However, based upon my review of the Product and its ingredients, it could lead to health problems in some individuals, including gastrointestinal distress.

12. Moreover, based upon the ingredients contained in the Product, it could also cause additional unintended side effects in a large number of users, including diarrhea, bloating, intestinal discomfort, gas, constipation, intestinal blockage, dehydration, headaches, and dizziness.

Dr. Parisi discussed the ingredients in Gastric Bypass No Surgery, and declared all of them ineffective in aiding weight loss, with the exception of Konjac. The ingredient Knojac is a "Chinese laxative," according to the doctor. While it can cause weight loss, he says that no competent medical physician would recommend the regular

Randazza says:

> But, Roca shows little concern for what happens to its users – if its product works for them, then Roca wants that information out there, but woe unto the user who gets sick or finds it ineffective. If they don't keep their traps shut, Roca threatens to sue them.

Pissed Consumer denies co-authoring complaints. The complaints are authored by third party consumers alone, and PissedConsumer.com merely provides one platform from which consumers (both happy and unhappy) may speak.

Regarding the portion of the customer agreement which demands silence from unhappy consumers, Randazza says:

> Does that sound like an upstanding company that stands behind its safe and reliable product? Or does that sound like a disreputable company, producing tubs of snake oil (or snake goop, as it were), and which knows that too much truth will hurt its fly-by-night bottom line? Roca Labs is desperately trying to force a cone of silence over each and every customer that discovers that Roca Labs' product is not only a specious remedy for their weight issues, but a potential cause of additional health problems. Plaintiff, desperate to sell as many of its tubs of goo to the public as it can before regulatory agencies come

knocking does its best to bully its former customers into silence.

And:

> Roca Labs now seeks this Court's assistance to scrub consumer review sites of negative reviews, or seemingly any reviews at all, by filing this lawsuit. Roca wishes to deprive the public of these reviews, even if they might alert a consumer to a possible health crisis. In this spirit, Roca comes to this Court seeking a prior restraint, unethically trying to cast a sanctionable defamation claim as something else, in the hope that this Court will not notice.

You can read the legalese if you enjoy that type of thing, but suffice it to say that Marc Randazza takes the court through all the arguments made by Roca Labs, and destroys them one by one. Roca Labs is exactly the type of company consumers should be talking about, largely because of its questionable (at best) product and its unethical business practices.

**Is Gastric Bypass No Surgery a Scam?**

Is the Gastric Bypass No Surgery product itself a scam? I have never tried it and I never will. The consumer reviews are horrifying enough. But a little additional research confirms the sketchy nature of the company and

Here is the first hint that something is scammy (click on image to enlarge):

# Bariatric Surgeries Alternative

Best non-surgical alternative to all bariatric surgeries. Immediately creates gastric bypass effect: NO cutting – NO surgery.

## Alternative to Tummy Tuck


Tummy Tuck Alternative

Tummy tuck average cost: $4,000 to $20,000 Death rate: 1 in 620 Complications: bleeding, fluid accumulation, seroma, pain, swelling, hematoma

## Alternative to Gastric Bypass


Gastric Bypass Alternative

Gastric bypass average cost: $12,000. Death rate: 1 in 200. Complications: dumping syndrome, hernia, blood clots, kidney stones, gallstones & stomach pouch problems. Average excess weight loss: 60% to 70%.

## Alternative to Vertical Banded


Gastric Sleeve Alternative

Vertical banded average cost: $20,000. Death rate: 1 in 100. Complications: bad infection, outlet stenosis vomiting, staple-line leak & fistula, band erosion, stoma stenosis, food intolerance, and pouch dilation. 37% excess weight loss at 5 years.

## Alternative to Lap Band


Lap Band® Alternative

Lap Band average cost: $9,000 to $22,000 Death rate: 1 in 1000 Complications: band problems, blood clots, bowel perforation, gallstones, constipation, nausea & vomiting. Average excess weight loss: 52% in 2 years

## Alternative to Gastric Sleeve


Gastric Sleeve Alternative

Gastric sleeve average cost: $9,500 to $24,000 Death rate: 1 in 500 Complications: bleeding, leaks, stricture, GERD. Average excess weight loss: 60%

## Alternative to Liposuction


Liposuction Alternative

Liposuction average cost: $4500 Death rate: 1 in 5000 Complications: infections, embolism, seroma, skin necrosis, fluid imbalance, puncture wounds in the organs.



Roux-en-Y average cost: $19,000. Death rate:
1 in 200. Complications: dumping syndrome,
hernia, blood clots, kidney stones, gallstones
& stomach pouch problems. Average excess
weight loss: 60%

Roux-en-Y
Alternative



The Roca Labs home page lists seven surgeries that it says it is an alternative to… except that can't possibly be true. The Roca Labs  product is goop that you ingest to make you feel full (supposedly).  It can't possibly be an alternative to a tummy tuck (which removes excess fat and skin) or liposuction (which removes excess fat). The Roca Labs product doesn't remove anything from your body, so it is clear that they home page (the first point of contact for many) is already dishonest.

Then there is the curious results when one Googles "roca labs scam." Sites such as Roca Labs Scam Experience (rocalabsscamexperience.wordpress.com)  and Roca Labs Scam (rocalabsscam.wordpress.com) come up, among others. Except those sites aren't actually related to anyone claiming Roca Labs is a scam. Those sites are created and maintained **by Roca Labs to promote their products**. I've seen this type of tactic used before by companies that are attempting to dominate Google search results for their company name and the word "scam." **What does the company have to hide?**

## Similar Posts:

- Roca Labs and the Alfonso Ribeiro Endorsement
- Roca Labs Sues Customers, Seemingly Violating Their Own Terms and Conditions



- Xyngular Works: Losing Weight Fast!
- Roca Labs Legal Threats
- Kevin Trudeau Is On His Way to Prison!

Posted in:   Consumer Protection    Tagged    gastric bypass no surgery    marc randazza

randazza law    randazza legal group    roca labs    roca labs fraud    roca labs scam

Tracy Coenen

# 3 Comments

# Leave a Reply

Enter your comment here...

Search ...   Search

## About the Author  ═



Tracy Coenen is a forensic accountant and fraud investigator with Sequence Inc. in Chicago and Milwaukee. She investigates cases of white collar crime, divorce, embezzlement, tax fraud, insurance fraud, and financial statement fraud nationwide.



## Recent Comments ══

---

### SJD on These 5 Steps Delivered $1.65 Million in Stock Trading Profits

His latest "credential" is a participation in a copyright extortion scheme (a.k.a....

---

### Fish James on Why I Hate Intuit and Quickbooks

Lets get this class-action suit together there are thousands of us. I...

---

### Tracy Coenen on Why I Hate Intuit and Quickbooks

I can't tell you how many people I've heard of canceling their...

---

### Will Bradley on Why I Hate Intuit and Quickbooks

I have no problem with the Quickbooks Enterprise program, but these guys...

---

**Tracy Coenen on** Isagenix Scam: Questionable Medical Claims, No Science Behind Them

Fructose is sugar, moron. You criticized me for saying that the Isagenix...





# H A N D B O O K



# E S S E N T I A L S

---



© 2014 Sequence Inc. All rights reserved. View our privacy policy here.

HOME        BLOG        BOOKS BY TRACY        FRAUD SPEAKER

18/18 | http://www.sequenceinc.com/fraudfiles/2014/09/roca-labs-weight-loss-scam/

Exhibit 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Opinion Corp. and
Consumer Opinion Corp.,

Case No: 9:15-cv-80051

Plaintiffs,

v.

Roca Labs, Inc.,
Defendant.

/

MOTION TO DEEM DEFENDANT
SERVED. IN THE ALTERNATIVE, MOTION
FOR ALTERNATE SERVICE. IN THE
FURTHER ALTERNATIVE, MOTION FOR
EARLY DISCOVERY

## 1.0    INTRODUCTION

Roca Labs is actively involved in multiple cases in this state. However, despite the mandates of Fla. Stat. § 607.0501, it does not have a registered agent. Its attorneys refuse to accept service of the complaint. Its registered agent address is consistently unoccupied, or its registered agent is barricaded inside, refusing to come out or open the door. Plaintiff has attempted to serve Defendant on multiple occasions at the location listed with the Florida Secretary of State. As far back as August, the Plaintiff attempted service in another action at the current registered agent address. The undersigned conducted an investigation and learned that another plaintiff is also attempting to serve Roca at the same address – to no avail. Attached as Exhibit 1 is an affidavit of non-service in the matter of *The Solomon Law, PA v. Don Juravin; Roca Labs, Inc.*, Case No.: 14-CC-035101. Finally, for the sake of completeness, Plaintiff tried to serve this instant action at Roca Labs' registered agent address, and found that nothing has changed since August – Roca Labs appears to have gone into

hiding. Attached as Exhibit 2 is an affidavit of non-service from the process server dated January 23, 2015.

By all indications, Roca Labs is evading service of not just this Complaint, but of at least two other complaints including a class action against it for deceptive trade practices, and a lawsuit filed against it by one of its prior law firms – for non-payment of fees. More diligence on the Plaintiff's part is not likely to yield new results.

Furthermore, Roca Labs is utilizing the courts, where it sees fit, as it is the Plaintiff in no fewer than 6 suits. *Roca Labs, Inc. v. Schaive et al.*, Broward County, Florida (Case No.: CACE 14-020786); *Roca Labs, Inc. v. Does 1-11*, Broward County, Florida (Case No.: CACE 14-021978); *Roca Labs Inc. v. Lina Scibelli*, Miami-Dade County, Florida (Case No: 14-CA-025302); *Roca Labs Inc. v. Marc Randazza*, Hillsborough County, Florida (Case No.: 14-CA-011251); *Roca Labs, Inc v. Opinion Corp. and Consumer Opinion Corp.* (Case No.: 8:14-cv-02096); *Roca Labs, Inc v. Alice King*, (Case No.: 8:14-cv-02811); just to name a few. Roca has no aversion to actively litigating case after case, as long as it is the plaintiff.

Given that the Defendant is actively evading service, the Plaintiff requires relief from this Court, or service may never be effected. Plaintiff requests that this court either deem Roca Labs served (as one of its attorneys has filed the complaint in this case as an exhibit in another case, thus definitively proving that Roca Labs has complete and adequate notice of the claim). In the event that the court declines to deem Roca Labs served, Plaintiff requests the right to serve Roca Labs through alternate means. In the further alternative, Plaintiff requests the right to begin issuing subpoenas to find Roca Labs' true principal place of business, or other premises where Roca Labs employees or principals may be found, so that they may be served. In short, Plaintiff requires judicial intervention

lest Roca Labs succeed in simply evading service, as has been its modus operandi for months to date.

## 2.0 The Court Should Deem Roca Labs Served

Immediately upon filing the instant complaint, Roca Labs was sent, and received, the complaint via email. The complaint was sent to Roca Labs' General Counsel, and all of its other known attorneys at legal@rocalabs.com, legal1@rocalabs.com, legal2@rocalabs.com, legal3@rocalabs.com, legal4@rocalabs.com, and legal5@rocalabs.com. These emails were sent using a service that confirms when the emails are received and opened. The Counsel for Opinion Corp. and Consumer Opinion Corp. utilizes a service, Read Notify, which provides a report as to when and where an email was opened and read. Here, these emails were opened on January 14, 2015, shortly after initially sent, and again another 26 times thereafter. Attached as Exhibit 3 is the declaration of Theresa M. Haar. Attached as Exhibit 4 is the Read Notify printout.

Attorney Paul Berger is Roca Labs' general counsel and the author of the DMCA Notice and 770 notice at issue in this action. Attached as Exhibit 5 is a copy of the DMCA Notice. Attached as Exhibit 6 is the §770 Notice. On January 19, 2015 Berger sent an email to Theresa Haar, in response to a letter from Marc Randazza, Esq. requesting waiver of service of the summons in this case, stating that he refused to accept service of the Complaint. Email attached as Exhibit 7. Nevertheless, mere hours later, also on January 19, 2015, Roca Labs filed the very complaint in this action as an exhibit in a separate case. Attached as Exhibit 8 is Case No.: 8:14-cv-02096, ECF 79, Exhibit A, whereby Roca Labs filed the Complaint in this action as an exhibit in a separate action. Once its attorney filed the Complaint as an exhibit, he established that Roca Labs has possession of the complaint, it is aware of the complaint, and is aware of its contents. It is well settled that, "[g]enerally, an attorney serves as agent for his client; the

attorney's acts are the acts of the principal, the client." *Chamberlain v. Integraclick, Inc.*, 2011 U.S. Dist. LEXIS 42645, 11 (N.D. Fla. Apr. 15, 2011) (quoting *Andrew H. Boros, P.A., v. Arnold P. Carter, M.D., P.A.*, 537 So.2d 1134, 1135 (3d DCA 1989)).  Once Attorney Tanner filed the Complaint as an exhibit in another case, on behalf of Roca Labs, Tanner effectively waived service of the Complaint – or at least definitively made it clear that Roca Labs had the Complaint in its possession.  The fact that Roca Labs used the Complaint as part of a quest for affirmative relief in another case makes it doubly so.

The goal of service under Rule 4 of the Federal Rules of Civil Procedure is to provide notice that a legal action has been filed to allow the defending party to have a fair opportunity to respond to the pleading.  *See Henderson v. U.S.*, 517 U.S. 654, 672 (1996).  In some circumstances, there may be doubt.  But, by actually attaching the Complaint as an exhibit to a motion in another action, Roca Labs cannot seriously contend that it remains ignorant as to the existence and pendency of this case.

Once the Defendant has adequate notice of the suit, the Defendant should not be rewarded for playing games with service.  *See Willie McCormick & Assocs. v. Lakeshore Eng'g Servs.*, 2013 U.S. Dist. LEXIS 158125, 5 (E.D. Mich. Nov. 5, 2013) (When evading defendant was deemed by court to have adequate notice of suit, court issued order that defendant was deemed served).  *See also Gaffigan v. Doe*, 689 F. Supp. 2d 1332, 1342 (S.D. Fla. 2009) (citing *Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007, 1018 (9th Cir. 2002) ("[W]hen faced with an international e-business scofflaw, playing hide-and-seek with the federal court, e-mail may be the only means of effecting service of process")).

Accordingly, Plaintiff requests that this court deem Roca Labs served as of the date that the complaint was filed as an exhibit on January 19, 2015.  See Exhibit 8.  "Where it is evident that Plaintiffs have tried to comply with every

available means to provide Defendant with notice, that Defendant does have actual notice of suit, and that Defendant has been evading service, it seems futile to require Plaintiffs to expend countless additional resources in order to effect service upon Defendants." *Chamberlain v. Integraclick*, Inc., 2011 U.S. Dist. LEXIS 42645, 12 (N.D. Fla. Apr. 15, 2011).

3.0    In the alternative, the Court should authorize alternate service

The goal of service is to provide notice that a legal action has been filed to allow the defending party to have a fair opportunity to respond to the pleading. See *Henderson v. U.S.* at 672. "[T]he decision to issue an order allowing service by alternate means lies solely within the discretion of the district court." *Chanel, Inc. v. Lin*, 2009 U.S. Dist. LEXIS 36741, 2009 WL 1034627, at *1 (S.D. Fla. Apr. 16, 2009). Under Rule 4(e) Plaintiffs may effect service on Defendant "pursuant to the law of the state in which the district court is located." Therefore, the Court may authorize service in any form contemplated under Florida law.

Florida Rule 1.290(a)(2) allows a court to "make an order for service by publication or otherwise" when "service cannot with due diligence be made upon any expected adverse party named in the petition." Service of process by publication may be allowed where Plaintiff has made "an honest and conscientious effort . . . to acquire information necessary to fully comply with controlling statutes." *Cook v. Smith*, 2005 WL 1345741, at *1 (M.D. Fla. June 3, 2005) (*citing Gans v. Heathgate-Sunflower Homeowners Ass'n*, 593 So.2d 549 (Fla. Dist. Ct. App. 1992)).

As demonstrated above, there has been more than an honest and conscientious effort to serve Roca Labs – including multiple attempts and coordination with other plaintiffs.  Roca is in hiding.  No traditional service methods will be successful for as long as Roca Labs has entered this state of

barricading itself behind unknown doors in an effort to escape the multiple parties who are all lining up to take it to task for its wrongdoing.

### 3.1    This Court Should Allow Service of Process by Upon Counsel

In the event that the Court does not wish to deem Roca Labs already served, it would be proper to authorize service upon Roca Labs' attorneys. As of today, Roca Labs is represented by at least three law firms in the various litigation matters listed above. One of them has already proven, definitively, that it has the Complaint and that Roca Labs is at least constructively aware of it. But this court may simply, in the interest of justice and in light of the evidence of Roca Labs' extensive efforts to evade service, pre-authorize service of process upon any attorney of record for Roca Labs. This would ensure that Roca Labs is fully aware of the claims against it.

Service upon Roca Labs' attorneys may, admittedly, be complicated by the fact that neither Mr. Berger nor Mr. Tanner list physical addresses, only practicing law from P.O. Boxes. This is consistent with their clients' goals of evading service, if perhaps questionable in terms of legal practice. Plaintiffs respectfully submits that it would be in the interest of the effective administration of justice the Court authorize service by email to these attorneys, who as officers of the court should as a general rule never be incapable of physical service. Naturally, if the Court prefers that  plaintiffs nonetheless make the requisite due diligence efforts for physical service on Roca Labs' attorneys as would normally be required on the parties themselves under Fed. R. Civ. P. 4, Plaintiff will endeavor to find their mysterious lairs.

/ /

/ /

3.2    In the alternative, service by publication would be reasonable under the circumstances

In the further alternative Plaintiffs respectfully request that this Court allow and Order that service of the Summons and Complaint on Roca Labs may be effected by publication of the name of the Defendant and its known principals and employees, the name, status and description of Roca Labs; the nature of the action or proceeding in short and simple terms; the name of the court in which the action or proceeding was instituted and an abbreviated title of the case; such publication to occur for two weeks in publications certain to be reviewed by Roca Labs. Plaintiffs submit that the most likely place for Roca Labs to view such publication is Plaintiff's website, which the record indicates is monitored by Defendant to the point of obsession. Alternatively, Plaintiff submits that the traditional print publication route would be satisfied by a notice printed once per week for three consecutive weeks in the *Palm Beach Post* and the *St. Petersburg Times*.

Plaintiffs respectfully remind the Court, however, that Roca Labs has clearly already received notice of the complaint and summonses. Its attorneys have received it. Its principal has received it. At least one attorney has filed it as an exhibit seeking affirmative relief. Thus, allowing service of process by publication will not prejudice or deprive Roca Labs of a fair opportunity to respond to the pleading.

4.0    As a final alternative, the Court should authorize early discovery

Roca Labs is clearly in "crisis mode," one indication of which is its "Defcon" strategy of secreting its principals in multiple undisclosed locations to a swarm of process servers deployed by multiple law firms. Notwithstanding these efforts, it is likely possible to ascertain the whereabouts of persons representing the

corporate defendants upon whom service can be effectuated through issuance of subpoenas to third parties.

### 4.1    The Federal Rules of Civil Procedure Allow Early Discovery

"A court may authorize early discovery for convenience of the parties or witnesses, and in the interests of justice, and may order discovery of any relevant matter for good cause. Fed. R. Civ. P. 26(b); Fed. R. Civ. P. 26(d)(2)." *Good Man Prods. v. Doe*, 2015 U.S. Dist. LEXIS 7830, 2 (Jan. 23, 2015).  *See also Dell Inc. v. BelgiumDomains, LLC*, 2007 U.S. Dist. LEXIS 98676, *18 (S.D. Fla. 2007); *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005) (granting ex parte expedited discovery from third parties where plaintiff showed good cause); *Semitool, Inc. v. Tokyo Electronic America, Inc.*, 208 F.R.D. 273, 275-76 (N.D. Cal. 2002) (applying a good cause standard to plaintiff's request for expedited discovery); and *Pod-Ners, LLC v. N. Feed & Bean of Lucerne Ltd. Liab. Co.*, 204 F.R.D. 675, 676 (D. Colo. 2002) (applying a good cause standard to plaintiff's request for expedited discovery).  More specifically, courts have authorized early discovery when the particular nature of a defendant's actions leave service as a challenge, absent authorization to conduct discovery. *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999).

### 4.2    Early Discovery Is Appropriate Under These Circumstances

The foregoing authority applies at least as well the case as bar as any other imaginable.  On information and belief, Roca Labs imports its questionable product from an unknown location in Mexico.  Thus the product must enter the United States through the Customs Service, assuming it is not smuggled across the border.  Early discovery will enable plaintiffs to turn up paths leading to and from order fulfillment facilities, contractors, and other parties with some knowledge of Roca's location.  Finally, the company's location would not be a matter of attorney-client privilege, therefore, as a last resort, Plaintiff would seek

the depositions of Roca Labs' attorneys – who, again, must as officers of the court ultimately be amenable to the service themselves – concerning non-privileged information of which they are aware tending to lead to the discovery of where Roca and its principals have gone into hiding.

Similarly, Plaintiffs request expedited discovery upon Roca Labs' domain name registrar and web hosting company, and any other online services that Roca Labs may use, in order to discover where bills are sent and where service communications come from. In addition, Plaintiff requests that it be permitted to serve written discovery upon any attorneys representing Roca Labs in order to seek information about Roca Labs' whereabouts and the whereabouts of its principals (but no information that could be deemed attorney-client privileged, and only upon raising of valid objections with this court). Additionally, Plaintiff would like permission to issue subpoenas for information from the Department of Motor Vehicles and other state agencies for the whereabouts of Donald Juravin and George C. Whiting, as the addresses listed in any public records do not appear to be current for either of them. (Mr. Juravin is the principal owner of Roca Labs and George Whiting is its registered agent and Vice President).

5.0    Local Rule Meet and Confer Certification

Because Roca Labs is actively evading service and no attorney known to represent Roca Labs has entered an appearance, Plaintiffs counsel could not meet and confer with adversary counsel to obviate the need for this motion. Plaintiff nonetheless did seek a waiver of service from Defendant's Attorney Paul Berger, who immediately declined to accept service. See Exhibit 7. To the extent that a Rule 7.1(A)(3) conference could be executed, it was, or at least the spirit of the local rule was honored in pre-motion actions. Furthermore, this motion will be served upon Attorney Berger via email and U.S. Mail, and should

his client then either accept service or authorize him to, it will moot the instant motion, and Plaintiff will promptly notify the Court.

## 6.0    Attorneys Fees are Appropriate

It is nothing less than ludicrous, and a poke in the eye to the legal system, that this motion should be necessary.  Florida law requires Roca Labs to maintain a registered agent.  Roca Labs refuses to, and is clearly evading service.  Its attorney had the authority to issue abusive DMCA takedown demands and unsupportable §770 notices, but when the consequences of those very transmissions come to roost, Roca (and its attorney) decide to play hide and seek.  Despite receiving the Complaint and using it as an exhibit (for no reason) in another case, Roca simply wishes to pretend that this case does not exist.  Accordingly, it would be proper under the court's inherent power, to tax the costs and fees of this motion to the Defendant.   At this point, these fees and costs are approximately $2,000.  Upon the court determining that the Plaintiff has a right to fees, the Plaintiff will present billing and declarations in support of the full amount billed.

Furthermore, pursuant to Fed. R. Civ. P. 4(d)(2), by refusing to accept waiver of service, Roca Labs is liable not only for the expenses incurred by Opinion Corp. in making service, but also other reasonable expenses, including attorneys' fees expended in bringing this motion.  Fed. R. Civ. P. 4(d)(2)(B).

## 7.0    Conclusion and Relief

Since Roca Labs has gone to ground and is actively evading multiple lawsuits, the Plaintiff requires the assistance of this court.  The simplest solution would be to issue an order that Roca Labs has effectively been served.

In the alternative, Plaintiff requests that this Court issue an Order authorizing alternate service upon counsel for Roca or by publication.

As a final alternative, Plaintiff requests that this Court authorize it to begin taking discovery reasonably calculated to learn the whereabouts of Roca Labs' operations, and the locations of its employees and principals.

Whatever the relief granted, it would be proper and permissible for the court to order Roca Labs to pay the Plaintiff's fees and costs incurred in the drafting of this motion.

DATED:  this 26th day of January 2015.

Respectfully Submitted,

s/ Marc Randazza
MARC J. RANDAZZA
Florida Bar No.: 625566
RANDAZZA LEGAL GROUP
3625 S. Town Center Drive
Las Vegas, Nevada 89135
Tele:  702-420-2001
Fax: 305-437-7662
Email: ecf@randazza.com

RONALD D. COLEMAN
Pro Hac Vice Pending
GOETZ FITZPATRICK LLP
One Penn Plaza, Suite 3100
New York, New York 10119
Tele: 212-695-8100
Fax: 212-629-4013
Email: rcoleman@goetzfitz.com

Attorneys for Plaintiffs

CASE NO.: 9:15-cv-80051

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 26th of January 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that a true and correct copy of the foregoing document is being served upon: Paul Berger, Esq., counsel for Roca Labs, via e-mail and US Mail to:

Paul Berger, Esq.
PO. Box 7898
Delray Beach, FL 33483

Legal5@rocalabs.com

_T. Waan_

An employee / agent of
RANDAZZA LEGAL GROUP

Exhibit 13



Roca Labs™ USA
Pharmaceuticals

￼

Exhibit 2

# RANDAZZA

LEGAL GROUP

Marc Randazza <mjr@randazza.com>

## this will make you laugh
1 message

**Marc Randazza** <mjr@randazza.com>                                          Thu, Sep 4, 2014 at 5:39 PM
To: Eric Goldman ███████████████, Michael Masnick ███████████████

feel free to use it for whatever purpose you like

--

_____

**Marc John Randazza, JD, MAMC, LLM·** | Randazza Legal Group
3625 South Town Center Drive | Las Vegas, NV 89135
Tel: 702-420-2001 | Fax: 305-437-7662
Email: mjr@randazza.com | Website: www.randazza.com

        | Philadelphia | San Francisco | Miami
_____

* Licensed to practice law in Arizona, California, Florida, Massachusetts, and Nevada

_____

📄 **005 - Plaintiff's Verified Motion for Entry of a Temporary Injunction and Supporting Memorandum of
   Law.pdf**
   1881K

# RANDAZZA

LEGAL GROUP

Marc Randazza <mjr@randazza.com>

## Roca Labs

1 message

**Marc Randazza** <mjr@randazza.com>                          Mon, Sep 15, 2014 at 8:12 PM
To: Michael Masnick

Mike,

Is it something you'd do, ask anyone reading your post if they've been threatened by Roca Labs?

I'm defending Pissed Consumer. I'd really like some threatened parties as witnesses.

Further, i think there's a hell of a class action here - and finding the right class rep would be a good way to serve
Roca right.

--

**Marc John Randazza, JD, MAMC, LLM·** | Randazza Legal Group
3625 South Town Center Drive | Las Vegas, NV 89135
Tel: 702-420-2001 | Fax: 305-437-7662
Email: mjr@randazza.com | Website: www.randazza.com

| Philadelphia | San Francisco | Miami

* Licensed to practice law in Arizona, California, Florida, Massachusetts, and Nevada

1/1

# RANDAZZA

Marc Randazza <mjr@randazza.com>

LEGAL GROUP

## Roca Labs Case

3 messages

**Marc Randazza** <mjr@randazza.com>                     Thu, Sep 18, 2014 at 7:01 PM
To: Marc Randazza <mjr@randazza.com>
Bcc: Michael Masnick ⬛⬛⬛⬛⬛⬛⬛, Paul Alan Levy ⬛⬛⬛⬛⬛⬛⬛ Ken At Popehat
⬛⬛⬛⬛⬛⬛⬛⬛⬛ Scott Greenfield ⬛⬛⬛⬛, DMB S ⬛⬛⬛⬛⬛⬛⬛⬛, John Zajac
⬛⬛⬛⬛⬛⬛⬛⬛⬛ Kurt Opsahl ⬛⬛⬛⬛

If you're following this case....


**Marc John Randazza, JD, MAMC, LLM·** | Randazza Legal Group
3625 South Town Center Drive | Las Vegas, NV 89135
Tel: 702-420-2001 | Fax: 305-437-7662
Email: mjr@randazza.com | Website: www.randazza.com

⬛⬛⬛ | Philadelphia | San Francisco | Miami

---

· Licensed to practice law in Arizona, California, Florida, Massachusetts, and Nevada.


### 7 attachments

📄 **047113843349-1.pdf**
   291K

📄 **047113843350-1.pdf**
   1922K

📄 **047113843351-1.pdf**
   910K

📄 **047113843352-1.pdf**
   689K

📄 **047113843353-1.pdf**
   161K

📄 **show_temp.pl-2 copy.pdf**
   115K

📄 **show_temp.pl-2-1.pdf**
   588K


**Marc Randazza** <mjr@randazza.com>                     Thu, Sep 18, 2014 at 10:45 PM
To: ntriphon@hotmail.com


If you're following my case....

How is yours going?

[Quoted text hidden]

### 7 attachments

📎 **047113843349-1.pdf**
  291K

📎 **047113843350-1.pdf**
  1922K

📎 **047113843351-1.pdf**
  910K

📎 **047113843352-1.pdf**
  689K

📎 **047113843353-1.pdf**
  161K

📎 **show_temp.pl-2 copy.pdf**
  115K

📎 **show_temp.pl-2-1.pdf**
  588K

---

**Darren Spielman**                                          Fri, Sep 19, 2014 at 5:54 AM
To: Marc Randazza <mjr@randazza.com>

Nicely done.


Darren Spielman, Esq.

Kain & Associates, Attorneys at Law

900 S.E. 3rd Ave., Suite 205

Ft. Lauderdale, FL 33316

954-768-9002

954-768-0158 (fax)

www.ComplexIP.com

dspielman@complexip.com


Don't forget to visit our Blogs:

www.ComplexIP.com/news-events/complex-i-p-blog/

www.DefendMyDomain.com/blog/

---

This message is intended only for the use of the individual or entity to which it is addressed and may contain information

intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please destroy the file.

**From:** Marc Randazza [mailto:mjr@randazza.com]
**Sent:** Thursday, September 18, 2014 10:01 PM
**To:** Marc Randazza
**Subject:** Roca Labs Case

[Quoted text hidden]

# RANDAZZA

LEGAL GROUP

## First Amendment Case

8 messages

**Marc Randazza** <mjr@randazza.com>
To: Tracy Coenen ~~████████████~~

Sat, Sep 20, 2014 at 6:13 PM

You would probably enjoy this

---

**Marc John Randazza, JD, MAMC, LLM·** | Randazza Legal Group
3625 South Town Center Drive | Las Vegas, NV 89135
Tel: 702-420-2001 | Fax: 305-437-7682
Email: mjr@randazza.com | Website: www.randazza.com

~~████~~ | Philadelphia | San Francisco | Miami

---

* Licensed to practice law in Arizona, California, Florida, Massachusetts, and Nevada

📎 **show_multidocs.pdf**
4615K

**Tracy Coenen** ~~████████████~~
To: Marc Randazza <mjr@randazza.com>

Sun, Sep 21, 2014 at 10:56 AM

Very much!
[Quoted text hidden]

```
--
Tracy L. Coenen, CPA, CFF
Sequence Inc. Forensic Accounting

Corporate blog:   www.sequenceinc.com/fraudfiles

MILWAUKEE:
310 East Buffalo Street
Milwaukee, WI 53202
414.727.2361

CHICAGO:
312.498.3661
```

**Marc Randazza** <mjr@randazza.com>
To: Tracy Coenen ~~████████████~~

Sun, Sep 21, 2014 at 10:59 AM

Fraud File?
[Quoted text hidden]

1/2

**Tracy Coenen** ██████████████
To: Marc Randazza <mjr@randazza.com>

For sure!
[Quoted text hidden]

**Tracy Coenen** ██████████████                              Sun, Sep 21, 2014 at 11:22 AM
To: Marc Randazza <mjr@randazza.com>

Gosh, it's not sketchy AT ALL that the company has the following URL:

http://rocalabsscam.wordpress.com/

On 09/21/14 12:59 PM, Marc Randazza wrote:
[Quoted text hidden]

**Marc Randazza** <mjr@randazza.com>                         Sun, Sep 21, 2014 at 11:24 AM
To: Tracy Coenen ██████████████

You have to give them credit for at least disclosing that at the bottom of the page, huh?
[Quoted text hidden]

**Tracy Coenen** ██████████████                              Sun, Sep 21, 2014 at 11:25 AM
To: Marc Randazza <mjr@randazza.com>

Yes, of course. LOL
[Quoted text hidden]

**Tracy Coenen** ██████████████                              Sun, Sep 21, 2014 at 11:28 AM
To: Marc Randazza <mjr@randazza.com>

And another one: http://rocalabsscamexperience.wordpress.com/
[Quoted text hidden]

Exhibit 3



# FLORIDA DEPARTMENT OF STATE
# DIVISION OF CORPORATIONS

# Detail by FEI/EIN Number

## Florida Profit Corporation

MARC J. RANDAZZA, P.A.

## Filing Information

| | |
|---|---|
| **Document Number** | P08000111631 |
| **FEI/EIN Number** | 263977742 |
| **Date Filed** | 12/30/2008 |
| **State** | FL |
| **Status** | ACTIVE |

## Principal Address

3625 S. Town Center Drive
SUITE 150
LAS VEGAS, NV 89135

Changed: 01/13/2014

## Mailing Address

2 SOUTH BISCAYNE BOULEVARD
Suite 2600
MIAMI, FL 33131

Changed: 01/17/2013

## Registered Agent Name & Address

FISCHER, JASON A
2 SOUTH BISCAYNE BOULEVARD
Suite 2600
MIAMI, FL 33131

Name Changed: 01/17/2013

Address Changed: 01/17/2013

## Officer/Director Detail

## Name & Address

Title Director, CEO, Secretary

RANDAZZA, MARC J
3625 S. Town Center Drive
Suite 150

Las Vegas, NV 89185

## Annual Reports

| Report Year | Filed Date |
|---|---|
| 2012 | 01/11/2012 |
| 2013 | 01/17/2013 |
| 2014 | 01/13/2014 |

## Document Images

| | |
|---|---|
| 01/13/2014 -- ANNUAL REPORT | View image in PDF format |
| 01/17/2013 -- ANNUAL REPORT | View image in PDF format |
| 01/11/2012 -- ANNUAL REPORT | View image in PDF format |
| 02/21/2011 -- ANNUAL REPORT | View image in PDF format |
| 01/07/2010 -- ANNUAL REPORT | View image in PDF format |
| 04/29/2009 -- ANNUAL REPORT | View image in PDF format |
| 12/30/2008 -- Domestic Profit | View image in PDF format |

Copyright © and Privacy Policies
State of Florida, Department of State

# FLORIDA DEPARTMENT OF STATE
# DIVISION OF CORPORATIONS



| Home | Contact Us | E-Filing Services | Document Searches | Forms | Help |

Previous on List     Next on List     Return to List

**No Filing History**

Fictitious Name Search

Submit

## Fictitious Name Detail

### Fictitious Name

RANDAZZA LEGAL GROUP

### Filing Information

| | |
|---|---|
| **Registration Number** | G09000182185 |
| **Status** | ACTIVE |
| **Filed Date** | 12/08/2009 |
| **Expiration Date** | 12/31/2014 |
| **Current Owners** | 1 |
| **County** | MIAMI-DADE |
| **Total Pages** | 1 |
| **Events Filed** | NONE |
| **FEI/EIN Number** | 26-3977742 |

### Mailing Address

2 SOUTH BISCAYNE BLVD., STE. 2600
MIAMI, FL 33131

### Owner Information

MARC J. RANDAZZA, P.A.
2 SOUTH BISCAYNE BLVD., STE. 2600
MIAMI, FL 33131
**FEI/EIN Number:** 26-3977742
**Document Number:** P08000111631

### Document Images

12/08/2009 – REGISTRATION    View image in PDF format

Previous on List     Next on List     Return to List

**No Filing History**

Fictitious Name Search

Submit

| Home | Contact Us | Document Searches | E-Filing Services | Forms | Help |
Division of Corporations
State of Florida, Department of State

**2014 FLORIDA PROFIT CORPORATION ANNUAL REPORT**

DOCUMENT# P08000111631

**Entity Name:** MARC J. RANDAZZA, P.A.

**FILED**
**Jan 13, 2014**
**Secretary of State**
**CC4811701335**

**Current Principal  Place of Business:**

3625 S. TOWN CENTER DRIVE
 SUITE 150
LAS VEGAS,  NV  89135

**Current Mailing Address:**

2 SOUTH BISCAYNE BOULEVARD
 SUITE 2600
MIAMI,  FL  33131  US

**FEI Number: 26-3977742**                                          Certificate of Status Desired:  No

**Name and Address of Current Registered Agent:**

FISCHER, JASON A
2 SOUTH BISCAYNE BOULEVARD
 SUITE 2600
MIAMI, FL  33131  US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE:   JASON A. FISCHER                                                    01/13/2014

               Electronic Signature of Registered Agent                                          Date

**Officer/Director Detail :**

| | |
|---|---|
| Title | DIRECTOR, CEO, SECRETARY |
| Name | RANDAZZA, MARC J |
| Address | 3625 S. TOWN CENTER DRIVE  SUITE 150 |
| City-State-Zip: | LAS VEGAS  NV  89135 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: MARC J. RANDAZZA                            DIRECTOR, CEO,                01/13/2014
                                                                                     SECRETARY

          Electronic Signature of Signing Officer/Director Detail                              Date

# P08000111631

_____
(Requestor's Name)

_____
(Address)

_____
(Address)

_____
(City/State/Zip/Phone #)

☐ PICK-UP       ☐ WAIT       ☐ MAIL

_____
(Business Entity Name)

_____
(Document Number)

Certified Copies _____     Certificates of Status _____

Special Instructions to Filing Officer:

Office Use Only



400139301814

12/30/08--01051--002    **78.75



LAW OFFICES

# WESTON, GARROU, WALTERS & MOONEY

A PARTNERSHIP OF PROFESSIONAL BUSINESS ENTITIES

JOHN H. WESTON[1][3]
G. RANDALL GARROU[1][3]
LAWRENCE G. WALTERS[2][3]
JEROME H. MOONEY[1,6,0]
MARK P. BINDER[1][3]

MARC J. RANDAZZA[2][4]
DEREK B. BRETT[2][5]

OF COUNSEL
CATHY E. CROSSON[1][3]
A. DALE MANICOM[1]

1  ADMITTED IN CALIFORNIA
2  ADMITTED IN FLORIDA
3  ADMITTED IN INDIANA
4  ADMITTED IN MASSACHUSETTS
5  ADMITTED IN DISTRICT OF COLUMBIA
6  ADMITTED IN UTAH

I   A CALIFORNIA PROFESSIONAL CORPORATION
*  A FLORIDA PROFESSIONAL ASSOCIATION
◊  A UTAH PROFESSIONAL CORPORATION

781 DOUGLAS AVENUE
ALTAMONTE SPRINGS, FLORIDA 32714
FAX (407) 774-6151
(407) 975-9150

REPLY TO
FLORIDA

December 29, 2008

PRINCIPAL OFFICE
LOS ANGELES, CALIFORNIA
12121 WILSHIRE BLVD., SUITE 900
LOS ANGELES, CA 90025-1176
FAX (310) 442-0899
(310) 442-0072

SALT LAKE CITY
50 WEST BROADWAY, SUITE 1000
SALT LAKE CITY, UT 84101-2006
(801) 364-5635

SAN DIEGO
1205 J STREET, SUITE B
SAN DIEGO, CA 92101-7500
FAX (619) 239-1717
(619) 232-3255

**VIA FEDEX DELIVERY**

Department of State
Division of Corporations
Clifton Building
2661 Executive Center Circle
Tallahassee, FL 32301

  RE: Marc J. Randazza, P.A.

Dear Correspondent:

  Enclosed please find an original and one (1) copy of the Articles of Incorporation for the above-referenced corporation and our firm's check in the amount of $78.75 to cover the cost of the Filing Fee, Certified Copy of Charter and Registered Agent Fee.

  Please return to us a certified copy of the Articles of Incorporation in the enclosed envelope.

  Thank you for your cooperation in this matter.

           Sincerely,

           Marc J. Randazza

MJR/lb
Encls.



APPROVED
FILED

08 DEC 30 PM 4:45

SECRETARY OF STATE
TALLAHASSEE, FLORIDA

# ARTICLES OF INCORPORATION
## OF
## MARC J. RANDAZZA, P.A.

## ARTICLE I.  NAME

The name of this corporation shall be Marc J. Randazza, P.A.

## ARTICLE II.  PRINCIPAL OFFICE

The address of this corporation's principal office shall be: 781 Douglas Ave., Altamonte Springs, FL 32714.

## ARTICLE III.   MAILING ADDRESS

The mailing address of the corporation is: 781 Douglas Ave., Altamonte Springs, FL 32714.

## ARTICLE IV.  PURPOSE

The corporation shall be engaged in the rendering of professional legal services.

## ARTICLE V.  INITIAL DIRECTORS

Name:                          Address:

Marc J. Randazza            781 Douglas Ave.
                            Altamonte Springs, FL 32714

## ARTICLE VI. CAPITAL STOCK

This corporation shall have the authority to issue 100 shares of common capital stock at a par value of $1.00 per share.

## ARTICLE VII.  PREEMPTIVE RIGHTS

Every shareholder, upon the sale for cash by this corporation of any shares of new capital stock of the same kind, class, or series, as that which the shareholder already holds, shall have the preemptive right to purchase a pro rata share thereof (as nearly as may be done without the issuance of fractional shares) at the price at which such shares are offered to others.

## ARTICLE VIII.  TRANSFER RESTRICTIONS

No shareholder shall have the right to sell, assign, pledge, encumber, transfer, or otherwise dispose of any shares of the capital stock of this corporation, without first offering such shares for sale to this corporation at the net asset value thereof.  Such offer shall be in writing, signed by the shareholder, sent by registered or certified mail to this corporation at its registered office address, and open for acceptance by this corporation for a period of fifteen days from the date of mailing.  If this corporation fails or refuses, within such period, to make satisfactory arrangements for the purchase of such shares, the shareholder shall have the right to dispose of such shares without any further restrictions.

On the death of any shareholder, this corporation shall have the right to purchase any shares of the capital stock of this corporation owned by the shareholder immediately prior to the shareholder's death, on the terms set forth above, and this provision shall be binding upon the personal representative of the shareholder.

Each stock certificate issued by this corporation shall carry the following legend:

> "These Shares Are Held Subject To Certain Transfer Restrictions
> Imposed By This Corporation's Articles Of Incorporation, A Copy Of
> Which Is On File At This Corporation's Principal Office."

## ARTICLE IX.  INITIAL REGISTERED OFFICE & AGENT

The name of the individual who shall serve as this corporation's initial registered agent and address is Marc J. Randazza., 781 Douglas Avenue, Altamonte Springs, FL  32714.

## ARTICLE X. INCORPORATOR

The name and address of the individual who shall serve as this corporation's incorporator are:

Marc J. Randazza, Esq., 781 Douglas Avenue, Altamonte Springs, FL 32714.

Marc J. Randazza - Incorporator

I hereby accept my designation as registered agent and agree to serve as the registered agent

of Marc J. Randazza, P.A.  I hereby state that I am familiar with and accept the duties and

responsibilities as registered agent for Marc J. Randazza, P.A.

Marc J. Randazza - Registered Agent

State Of Florida
County Of Seminole

On 12/29/08, Marc J. Randazza, designated above as the individual who shall serve as

the corporation's initial registered agent and incorporator, who is personally known to me, personally

appeared before me at the time of notarization, and, after being given the oath, acknowledged signing

these Articles of Incorporation of Marc J. Randazza, P.A.

Notary Public

LISA A. BROWN
(Printed or Typed Name)

Notary Public - State of Florida
my commission expires: 07/11/2009     (SEAL)



Notary Public State of Florida
Lisa A Brown
My Commission DD443674
Expires 07/11/2009

Note: Acknowledgements/certificates will be sent to the address in Section 1 only.

**Section 1**

1. Randazza Legal Group
   Fictitious Name to be Registered (see instructions if name includes "Corp" or "Inc")

   2 South Biscayne Boulevard, Suite 2600
   Mailing Address of Business
   Miami, Florida 33131
   City                State                Zip Code

3. Florida County of principal place of business: Dade
   (see instructions if more than one county)

   FEI Number: 26-3977742

*FILED*

09 DEC -8 PM 1:57

SECRETARY OF STATE
TALLAHASSEE, FLORIDA

G09000182185
12/08/09--01023--005 **50.00

This space for office use only

---

**Section 2**

**A. Owner(s) of Fictitious Name if Individual(s): (Use an attachment if necessary):**

1. _____
   Last        First        M.I.

   _____
   Address

   _____
   City        State        Zip Code

2. _____
   Last        First        M.I.

   _____
   Address

   _____
   City        State        Zip Code

**B. Owner(s) of Fictitious Name if other than an Individual: (Use attachment if necessary):**

1. Marc J. Randazza PA
   Entity Name
   2 South Biscayne Blvd, Suite 2600
   Address
   Miami, Florida, 331341
   City        State        Zip Code
   Florida Document Number  PO800011631

   FEI Number: 26-3977742
   ☐ Applied for   ☐ Not Applicable

2. _____
   Entity Name
   _____
   Address
   _____
   City        State        Zip Code
   Florida Document Number _____

   FEI Number: _____
   ☐ Applied for   ☐ Not Applicable

---

**Section 3**

I the undersigned, being an owner in the above fictitious name, certify that the information indicated on this form is true and accurate. In accordance with Section 865.09, F.S., I further certify that the fictitious name to be registered has been advertised at least once in a newspaper as defined in chapter 50, Florida Statutes, in the county where the principal place of business is located. I understand that the signature below shall have the same legal effect as if made under oath.

_[signature]_        12/3/09        MJRPA@ME.COM
Signature of Owner      Date          E-mail address: (to be used for future renewal notification)

Phone Number: _____

---

**Section 4**

**FOR CANCELLATION COMPLETE SECTION 4 ONLY:**
**FOR FICTITIOUS NAME OR OWNERSHIP CHANGE COMPLETE SECTIONS 1 THROUGH 4:**

I (we) the undersigned, hereby cancel the fictitious name _____

_____, which was registered on _____ and was assigned

registration number _____

_____        _____        _____        _____
Signature of Owner        Date        Signature of Owner        Date

---

Mark the applicable boxes        ☐ Certificate of Status — $10        ☐ Certified Copy — $30
**NON-REFUNDABLE PROCESSING FEE: $50**

Single        CR4E001 (11/09)

Exhibit 4

# RANDAZZA
## LEGAL GROUP

- Home
- About
- Team
- Practice Areas
- News & Media
- Offices

# Miami Office

- Home
- /
- Miami Office

# CONTACT FORM

| Your name... | Your email... | Subject of message |

Completion and submission of this form does not establish an attorney-client relationship. Nothing you send through this form should be considered to be confidential information. Do not send any confidential or time-sensitive information with this form. Information sent using this form will not be subject to attorney-client privilege.

SEND MESSAGE

## Office Info

**Tel:** 888 / 667 - 1113

**Fax:** 305 / 437 - 7662

**Email:** info@randazza.com

**Web:** randazza.com

**MIAMI**
2 S. Biscayne Blvd
Suite Number 2600
Miami, FL 33131
305.791.2891

## STAFF AT THIS LOCATION
MARC J. RANDAZZA
JASON A. FISCHER

## SIGN UP FOR NEWSLETTER

Stay in touch with latest news from our website. Enter your email address below and start receiveing our newsletter.

| Type your email here... | )

## Offices

**LAS VEGAS**
3625 S Town Center Dr
Las Vegas, NV 89135
702.420.2001

**MIAMI**

2 S. Biscayne Blvd
Ste 2600
Miami, FL 33131
305.791.2891

**PHILADELPHIA**
2424 E York St
Ste 316
Philadelphia, PA 19125
215.385.LAW1 (5291)

**SAN FRANCISCO**
345 Grove St
San Francisco, CA 94102
415.404.6615

## Contact Info

**Toll Free::** 888 / 667 - 1113
**Fax:** 305 / 437 - 7662
Email: info@randazza.com

## Search Our Site

| Search | )

- Home
- Team
- FIRST AMENDMENT LAW
- Terms of Use / Privacy Page

Copyright 2013 © Marc J. Randazza, P.A. d/b/a Randazza Legal Group. All rights reserved.

Exhibit 5

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ROCA LABS, INC.,                Case No: 8:14-cv-2096-T-33EAJ

      Plaintiff,

    v.

CONSUMER OPINION CORP. and
OPINION CORP.,

      Defendants.

_____/

## UNOPPOSED MOTION FOR RONALD D. COLEMAN
## TO APPEAR *PRO HAC VICE*

DEFENDANTS, OPINION CORP & CONSUMER OPINION CORP., hereby respectfully request, pursuant to Rule 2.02 of the Local Rules of the United States District Court for the Middle District of Florida, that this Court permit Ronald D. Coleman, Goetz Fitzpatrick LLP, One Penn Plaza, Suite 3100, New York, NY 10119, to appear and practice in this Court in the above-entitled action as co-counsel for Defendants Opinion Corp. and Consumer Opinion Corp. Defendants submit the following Memorandum in support of this Motion.

Ronald D. Coleman is a member in good standing in the bars of the following courts:

New York (admitted 1989)

New Jersey (admitted 1989)

Ronald D. Coleman is a member of the bar in good standing in every jurisdiction where he has been admitted, and there are no disciplinary proceedings pending against him as a member of the bar in any jurisdiction.

The appearance and active participation of Ronald D. Coleman is necessary for the thorough and effective presentation of Defendants' defense in this matter. Mr. Coleman is counsel of record on behalf of Opinion Corp. in the Southern District of New York complaint for declaratory judgment, that is currently pending against Roca Labs.

Pursuant to Local Rule 2.02, Ronald D. Coleman designates Marc J. Randazza, Esq., who maintains an office in the State of Florida for the practice of law, and is the attorney of record in this matter, as local counsel.

Ronald D. Coleman's Certificate in Support of this Motion is attached here as Exhibit 1.

The undersigned has conferred with James Hetz, counsel for Plaintiff and represents to the Court that Plaintiff has no objection to the granting of this Motion.

Based on the foregoing, Defendants respectfully request that the Court grant this Motion to Appear *Pro Hac Vice* on behalf of Ronald D. Coleman.

Respectfully Submitted,

*Marc J. Randazza*
_____
Marc J. Randazza, Esq.
Florida Bar No. 625566
RANDAZZA LEGAL GROUP
3625 S. Town Center Drive
Las Vegas, Nevada 89135
Tele: 702-420-2001
Fax: 305-437-7662
Email: ecf@randazza.com

CASE NO.: 8:14-cv-2096-T-33EAJ

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on 13 November 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that a true and correct copy of the foregoing document is being served upon: Paul Berger, Esq. and James Hetz, Esq., counsel for Plaintiff, via transmission of Notices of Electronic Filing generated by CM/ECF.

_____
An employee / agent of
RANDAZZA LEGAL GROUP